IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| POWERWEB TECHNOLOGIES, INC., et al., | : | |
| | : | |
| Defendants | : | NO. 02-2733 (HB) |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION
OF COUNTERCLAIM DEFENDANT RETX, INC. TO
DISMISS THE COUNTERCLAIMS ASSERTED BY
COUNTERCLAIMANT POWERWEB TECHNOLOGIES, INC.**

Counterclaim Defendant RETX, Inc.'s ("RETX") argument that it is not subject to the jurisdiction of this Court because "it does not do significant business in Pennsylvania," is simply untrue. Pennsylvania is one of two states in which RETX first successfully marketed the energy savings products it developed with the confidential information it stole from Counterclaimant Powerweb Technologies, Inc. ("Powerweb"). From at least September 2000 to June 2003, RETX has held itself out to the public as "[doing] business in Pennsylvania." In a September 19, 2000 press release (the "Press Release"), RETX stated "Retx.com currently does business in Pennsylvania and Illinois and plans to expand to California, New York, New Jersey, New England, and Canada." (9/19/2000 Press Release attached hereto as Exhibit "A.") The Press Release remained on RETX's website at least until June 18, 2003 (Id.) – two days before the deposition of RETX's CEO, Ross Malme. After Mr. Malme was questioned about the Press Release at his deposition, RETX conveniently removed the Press Release from its

745382.1 7/7/03

website presumably because the statements in the Press Release were entirely inconsistent with the arguments that RETX had already put forth in its motion to dismiss in this case.

RETX has now amended its supporting affidavits and its discovery responses in order to correct misstatements put forth in its motion that incorrectly minimized the business RETX has conducted and continues to conduct in Pennsylvania. The indisputable facts establish that RETX has had continuous and systematic contacts with Pennsylvania, and that many of those contacts arise out of the conduct alleged in the claims asserted against RETX in this lawsuit. Thus, RETX is subject to both the specific and general jurisdiction of the Pennsylvania courts. Accordingly, Powerweb hereby submits this Memorandum of Law in Opposition to the Motion of Counterclaim Defendant RETX, Inc. to Dismiss the counterclaims asserted against it by Powerweb based on lack of personal jurisdiction.

## I.   FACTUAL BACKGROUND

### A.   POWERWEB'S CREATION OF THE OMNI-LINK SYSTEM

Powerweb, a corporation with its principal place of business in Media, Pennsylvania, is in the business of designing, developing, installing and operating Internet-based information services and control systems for the management of energy consumption by utility companies and energy service providers. (Def's Amended Ans. & Counterclaims ¶ 92). As a part of its business, Powerweb developed a novel three-module system, the "Omni-Link System." Using Powerweb's proprietary and patented technology, the Omni-Link System married (1) monitoring and control technology, (2) internet-service software, and (3) sophisticated contracting documents to, among other things, create new capacity and effectuate

the buy back and resale of electricity blocks in the energy market in ways previously unknown to the market.  (Id. ¶ 97).

In March 1999, Powerweb approached Bell Atlantic Corporation ("Bell Atlantic") to offer the services provided by the Omni-Link System at Bell Atlantic's New Jersey facilities.  (Id. ¶ 101.)  In response, Bell Atlantic suggested that Powerweb contact Bell Atlantic's energy supplier, defendant Constellation NewEnergy, Inc., then known as NewEnergy East, LLC (hereinafter "NewEnergy").  (Id. ¶ 102.)

Thereafter Powerweb and NewEnergy teamed up to market the Omni-Link System to Bell Atlantic and to other customers across the country.  (Id. ¶¶ 120-122.)  To protect Powerweb's proprietary technology regarding the Omni-Link System, NewEnergy and Powerweb entered into several agreements regarding the development of a joint-venture, including a broad confidentiality agreement ("Confidentiality Agreement").  (Id. ¶¶ 105-11.)

### B. RETX'S MISAPPROPRIATION OF POWERWEB'S OMNI-LINK TECHNOLOGY

In February 2000, under the guise that its affiliate, AES CILCO ("CILCO"), was interested in pursuing a joint-venture with Powerweb, NewEnergy instructed Powerweb to send Peter Scarpelli ("Scarpelli"), then an employee of CILCO, confidential proprietary information regarding the Omni-Link System.  (Id. ¶¶ 125-128.)  Pursuant to NewEnergy and CILCO's requests and only with the understanding that Powerweb's confidential information would be protected under the terms of the Confidentiality Agreement, Powerweb sent CILCO information regarding the Omni-Link System.  (Id.)

Thereafter, Scarpelli provided RETX with Powerweb's confidential proprietary information, despite knowing the dissemination of such information was not permissible.

RETX, in turn, has wrongfully used Powerweb's confidential information to develop a rival product, RETX's Load Management Dispatcher ("LMD"). (Id. ¶¶ 148-157.) Not surprisingly, Scarpelli used the improper dissemination of Powerweb's confidential information to "earn" a position as RETX's Vice President of Strategy and Business Development – a position that Scarpelli still holds today. Based on these facts, Powerweb joined RETX as a defendant to its Counterclaims and asserted causes of action against RETX for the following: (1) misappropriation of trade secrets; (2) tortious interference with prospective contractual relations; and (3) unfair competition.

### C.     RETX'S CONTACTS WITH PENNSYLVANIA

In its motion to dismiss, RETX alleges that it has few contacts with Pennsylvania on which to base a finding of jurisdiction. (RETX's Memo. of Law p. 10.) Despite this allegation, RETX has admitted to the following contacts with Pennsylvania: (1) doing "business in Pennsylvania" as set forth in the September 19, 2000 Press Release; (2) three visits to Allegheny Power in connection with an ongoing business relationship with the Pennsylvania based company; (3) six visits to Pennsylvania venture capitalist firms for funding between 1999 and January 2002; (4) six visits to Pennsylvania companies, other than Powerweb, to make a sales presentation; (5) three Pennsylvania meetings with Powerweb to discuss joint business opportunities; (6) approximately ten telephone conversations with Lou Budike regarding possible joint business opportunities; (7) telephone conversations to Pennsylvania businesses to solicit business; and (8) attendance at a Demand Response conference presented by the PJM in Pennsylvania. (Josephson Aff. ¶ 9.)

These contacts are more significant than RETX asserts. First, in terms of RETX's contract with Allegheny Power, the product sold to Allegheny Power was RETX's Notification Manager software designed "to facilitate [Allegheny's] tariff interruptible rate schedules and certain of its peak load reduction programs, such as the Generation Buy-Back Program." (4/06/2002 Press Release attached hereto as Exhibit "B.") In addition, "Allegheny Power serves more than three million people and is one of the largest energy companies in the PJM Interconnection LLC area." (Id.) The PJM's service area, and Allegheny Power's customer base, include a substantial amount of Pennsylvania customers. (Scarpelli Dep. 64:11 attached hereto as Exhibit "C.") RETX's contract with Allegheny Power is facilitating RETX's improper use of Powerweb's confidential information and has caused Powerweb to suffer substantial damages in the Pennsylvania market.

RETX was also a party to a metering agreement with Powerweb and at one time considered purchasing the assets of Powerweb. (RETX Resp. to Interrog No. 17 attached hereto as Exhibit "D.") RETX's agreement with Powerweb and discussion of a business venture evidence RETX's interest and effort to continue its business in Pennsylvania.

RETX's contact with PJM Interconnection ("the PJM") is also an important contact in terms of the business RETX conducts. The PJM, which stands for "Pennsylvania, New Jersey, Maryland" (Malme Dep. 73:15 attached hereto as Exhibit "E."), is one of five independent system operators ("ISOs") in the country (Exh. C at p. 45:15; Exh. E at p. 73:8-9). The PJM is located in Pennsylvania (Exh. E at p. 84:21) and manages the power grid for Pennsylvania (Exh. C at p. 49:8-11) and the surrounding states. Consequently, RETX's involvement in and marketing through the PJM focuses directly on energy customers within

Pennsylvania, all of whom are potential customers of Powerweb and the Omni-Link System. In addition to continuous involvement with the PJM, Ross Malme recently participated in a PJM Demand Response Working Group conference, where 50-60 people attended and "quite a number of PJM companies" were represented. (Exh. E at pp. 70:15-17 & 19.) Participation in such a group is added evidence of RETX's attempt to solicit business from Pennsylvania companies and to compete against Powerweb in the Pennsylvania market. More significantly, the products RETX is offering to these Pennsylvania businesses were developed from Powerweb's confidential information.

      RETX also actively advertises and promotes its products and services in Pennsylvania. At his deposition, Peter Scarpelli admitted that the primary advertising RETX does in any market comes in the form of product sheets and press releases. (Exh. C at p. 58:5.) At the PJM Demand Response Working Group conference in Philadelphia, RETX distributed these advertising materials to potential customers at its marketing booth. (Exh. D at Resp. No. 6, Exh. E at p. 121:3-4.) CEO Ross Malme also admitted that he takes RETX brochures to meetings of the Peak Load Management Alliance ("PLMA") (Exh. E at pp. 58:25-59:5.), which includes Pennsylvania members (E.g., Exh. E at pp. 36:3-7 & 53:19-22). RETX also maintains a Pennsylvania contact list for mass emailing (attached hereto as Exhibit "F"), and has sent product updates to a PJM distribution list (attached hereto as Exhibit "G"). Lastly, a list of Pennsylvania correspondence since March 2002 provided by RETX lists several promotional contacts within Pennsylvania, such as distribution of "The RETX Dispatcher" to Pennsylvania companies. The list of correspondence is attached hereto as Exhibit "H."

Based on these extensive contacts with Pennsylvania, including those directly related to Powerweb's Counterclaims, this Court has personal jurisdiction over RETX.

## II.   ARGUMENT

### A.   LEGAL STANDARD

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the court must accept all allegations of the Complaint, or in this case, Counterclaim, as true. Stevens v. Meaut, Civ. A. No. 02-7532, 2003 WL 21222924, at *3 (E.D. Pa. May 28, 2003); Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Where a defense of lack of jurisdiction has been raised, the party asserting jurisdiction bears the burden of showing, through affidavits or competent evidence, that jurisdiction is proper. Stevens, 2003 WL 21222924, at *3. Once a prima facie case in favor of personal jurisdiction is made, the burden shifts to the defendant to establish that the presence of other considerations renders jurisdiction unreasonable. Id. In the present case, Powerweb has met its burden, through the evidence presented in this memorandum and the exhibits attached hereto, of proving that RETX is subject to jurisdiction in Pennsylvania. Because RETX has not, and cannot, present any significant evidence to show that Pennsylvania jurisdiction is unreasonable, RETX is subject to suit here, and its motion to dismiss based on lack of personal jurisdiction should be denied.

### B.   JURISDICTION

Pennsylvania courts exercise jurisdiction over both resident and non-resident defendants pursuant to Pennsylvania statute, 42 Pa. C.S.A. § 5301, et seq. Jurisdiction over non-resident defendants may be based on either the defendant's specific or general contacts

with the forum.  Provident Nat'l Bank v. California Fed. Sav. & Loan Assn., 819 F.2d 434, 437 (3d Cir. 1987).  Specific jurisdiction focuses on the defendant's activities within Pennsylvania that directly relate to the cause of action.  § 5322(a).  General jurisdiction necessitates that the defendant have "systematic and continuous" contacts with Pennsylvania, even if unrelated to the cause of action.  § 5301(a)(2)(iii).  In the present case, Pennsylvania has jurisdiction over RETX based on both RETX's contacts with the forum that are directly related to Powerweb's counterclaims and on RETX's general contacts with the state of Pennsylvania.

1.  **Pennsylvania Has Specific Jurisdiction Over RETX Under 42 Pa. C.S.A. Section 5322(a)(4) And The Constitutional Standards Of Due Process.**

　　　　Pursuant to Pennsylvania's long-arm statute, Pennsylvania courts may exercise specific jurisdiction over an individual or company who "[c]aus[es] harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."  42 Pa. C.S.A. § 5322 (a)(4).  Jurisdiction in Pennsylvania is understood to extend "to the fullest extent allowed under the Constitution of the United States."  § 5322(b).  In addressing questions of specific jurisdiction, Pennsylvania courts often analyze a defendant's specific contacts with the forum under both the long-arm statute and constitutional due process standards.  E.g., Pennzoil Prods. Co. v. Colelli & Assoc., Inc., 149 F.3d 197 (3d Cir. 1998).

　　　　Powerweb's counterclaims against RETX include claims for (1) misappropriation of trade secrets; (2) tortious interference with prospective contractual relations; and (3) unfair competition.  (Defs' Amend. Ans. & Counterclaims at ¶¶ 200-210 & 221-225.)  RETX misappropriated Powerweb's confidential information concerning its Omni-Link System and used this information to create a rival product, LMD. (Id. ¶¶ 200-210.)

Although the misappropriation of Powerweb's confidential information and creation of LMD may have, at least in part, occurred outside of Pennsylvania, RETX markets the LMD to energy suppliers and organizations within Pennsylvania, causing Powerweb to suffer damages in Pennsylvania as a result of this unfair competition. (Exh. D Resp. Nos. 6 & 15.)  RETX is therefore subject to jurisdiction in Pennsylvania based on the in-state harm caused by its tortious activity.

    a.    <u>The "effects test" for intentional torts dictates personal jurisdiction over RETX in Pennsylvania</u>.

Pennsylvania courts rely on the "effects test" first set out by the Supreme Court in <u>Calder v. Jones</u>, 465 U.S. 783 (1984), to determine whether jurisdiction is proper where the tort may have been committed outside of Pennsylvania, but causes harm within the state. <u>Remick v. Manfredy</u>, 238 F.3d 248, 258 (3d Cir. 2001).  The effects test requires the plaintiff to show that:

> (1) The defendant committed an *intentional tort*; (2) [t]he plaintiff *felt the brunt of the harm in the forum* such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant *expressly aimed his tortious conduct at the forum* such that the forum can be said to be the focal point of the tortious activity.

<u>Id</u>.  In this case, Powerweb has asserted causes of action against RETX for misappropriation of trade secrets, tortious interference with prospective contractual relations and unfair competition arising from RETX's misappropriation of Powerweb's confidential technology and use of this technology to create a competing product, LMD.  (Defs. Amend. Ans. & Counterclaims ¶¶ 200-210 & 221-225.)  Because misappropriation, tortious interference and unfair competition are all intentional torts, the first element of the effects test is clearly met.  The second element of the effects test is also met.  As laid out in Powerweb's Counterclaims, Powerweb has its

principal place of business in Pennsylvania, it continues to market its Omni-Link technology in Pennsylvania, and it conducts the majority of its business operations in Pennsylvania. (Id. ¶ 92.) Therefore, the majority of Powerweb's damages caused by RETX's intentional tortious activity have been suffered by Powerweb in Pennsylvania.

The third element of the "effects test" is also easily satisfied. RETX expressly aimed its tortious conduct at the forum. RETX is aware that Powerweb's principal place of business is located in Pennsylvania, as representatives of RETX met with Powerweb in Pennsylvania on several occasions (Josephson Aff. ¶ 9), and RETX and Powerweb engaged in a metering agreement and considered a joint-venture (Exh. D at Resp. No. 17). RETX also has an ongoing business relationship with Allegheny Power and its Pennsylvania customers. (Exh. B.) RETX further admits to marketing, and providing installation and training on, LMD, the product RETX developed from the information it stole from Powerweb. (Exh. D at Resp. Nos. 6 & 15; Exh. E at pp. 39:6-8, 55:17-22.) Indeed, Pennsylvania was one of two states where RETX first successfully marketed its stolen product as admitted by RETX in the Press Release. (Exh. A.)

These specific activities within Pennsylvania show that RETX aimed its tortious conduct with respect to the theft of Powerweb's confidential technology; subsequent unfair competition; and interference with Powerweb's prospective business in Pennsylvania at the forum through targeted marketing of LMD to Pennsylvania companies. Because (1) RETX committed intentional torts, (2) the brunt of the harm to Powerweb occurred in Pennsylvania and (3) RETX knew that Powerweb was located in Pennsylvania and marketed its competing product to Pennsylvania businesses, Pennsylvania has jurisdiction over RETX under 42 Pa.

C.S.A. section 5322(a)(4) based on the in-state harm caused by the tortious activity of RETX outside of Pennsylvania.

> b. <u>Personal jurisdiction over RETX in Pennsylvania does not offend the constitutional standards of due process</u>.

Specific jurisdiction over RETX in Pennsylvania is similarly appropriate under the due process clause of the Fourteenth Amendment. Due process requires that a defendant have "minimum contacts" with the forum, such that the maintenance of a suit against it "does not offend the notions of fair play and substantial justice." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

> > (1) RETX has the requisite minimum contacts with Pennsylvania such that suit against it here is proper.

Although the contacts necessary for minimum contacts need not be numerous, the contacts must be such that the defendant has purposefully availed itself of the privilege of conducting activities in the forum and therefore can reasonably anticipate being haled into court there. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). After misappropriating Powerweb's confidential information and using it to create its competing LMD product, RETX *directly marketed* LMD to Pennsylvania companies. (Exh. D at Resp. Nos. 6 & 15; Exh. E at pp. 39:6-8, 55:17-22.) These contacts with Pennsylvania are directly related to Powerweb's causes of action for misappropriation, tortious interference and unfair competition. By direct marketing of its LMD product in Pennsylvania, RETX purposefully availed itself of the forum such that it could reasonably anticipate being haled into court in Pennsylvania. RETX actions in this regard establish the requisite minimum contacts for Pennsylvania jurisdiction.

(2) Suit against RETX in Pennsylvania does not offend traditional notions of fair play and substantial justice.

In addition to whether a defendant has the requisite minimum contacts with the forum, a court must consider whether permitting suit against the defendant in that forum would offend "traditional notions of fair play and substantial justice." International Shoe Co., 326 U.S. at 316. In determining the fairness of subjecting a defendant to suit in the forum, the court may consider the following five factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the interest of the plaintiff in obtaining relief; (4) the interest of the judicial system in the efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California, 480 U.S. 102, 113 (1987).

In this case, both Powerweb and RETX are headquartered and do business in the United States. RETX representatives have traveled to Pennsylvania many times in the past, doing regular business with Allegheny Power and soliciting numerous other Pennsylvania businesses for use of the LMD product (Josephson Aff. ¶ 9; Exh. D at Resp. Nos. 1, 7, 8 & 16.) Therefore, RETX cannot argue that travel to Pennsylvania will be too burdensome.

Pennsylvania also has a substantial interest in the outcome of this suit. Powerweb is a Pennsylvania-based business and conducts the majority of its business in this state. Pennsylvania has an express interest in protecting the rights of its businesses against the tortious activities of outside companies. If Powerweb is forced to litigate its claims against RETX in another forum, it would require Powerweb to expend additional financial resources and would risk the same issues being decided in two jurisdictions because Powerweb would continue its lawsuit against NewEnergy and CILCO in this Court. For these reasons, not only

would litigation against RETX in another forum be contrary to the interest of Powerweb, it would also be contrary to the judicial system's interest in the effective and efficient resolution of controversies. Lastly, no fundamental social policies will be affected by allowing suit against RETX to proceed in this forum. Consequently, this suit against RETX in Pennsylvania does not offend traditional notions of fair play and substantial justice.

RETX targeted its tortious activity at Powerweb a Pennsylvania-based business. By this same activity, RETX has purposefully availed itself of Pennsylvania laws such that it should expect to be haled into court here, and suit against RETX in Pennsylvania is not unfair. Therefore, RETX is subject to suit in Pennsylvania based on its specific activities directed at this forum.

**2. Pennsylvania Has General Jurisdiction Over RETX Under 42 Pa. C.S.A. Section 5301(a)(2)(iii).**

In addition to specific jurisdiction, Pennsylvania has jurisdiction over RETX based on RETX's general conduct of business in the state. Contrary to RETX's assertion in its motion to dismiss that the contacts needed for general jurisdiction must relate to Powerweb's counterclaims (RETX's Mem. of Law at p. 9), general jurisdiction examines all of RETX's contacts with Pennsylvania, regardless of whether they are related to the specific counterclaims alleged in this suit. Strick Corp. v. A.J.F. Warehouse Distrib., Inc., 532 F. Supp. 951, 955 (E.D. Pa. 1982); § 5301(b).

General jurisdiction requires "continuous and systematic" contacts with the forum. Provident Nat'l Bank v. California Fed. Sav. & Loan Assn., 819 F.2d 434, 437 (3d Cir. 1987). In determining the contacts necessary for general jurisdiction, courts examine whether the non-resident defendant (1) makes a substantial number of direct sales in the forum,

(2) solicits business regularly, and (3) advertises in a way specifically targeted at the forum market. Elbeco Inc. v. Estrella de Plato Corp., 989 F. Supp. 669, 673 (E.D. Pa. 1997).[1]

RETX's contacts with Pennsylvania meet the Elbeco test. In terms of direct sales, RETX admits to contracting with Allegheny Power for the sale of its Notification Manager software. (Josephson Aff. ¶ 8.) While RETX claims that this contract encompasses only a small percentage of its total revenue (RETX's Mem. of Law at p. 10), the contract is more significant that it appears for several reasons. First, the contract with Allegheny Power is for RETX's Notification Manager software, which is a key product marketed by RETX. (Exh. B.) Second, "Allegheny Power serves more than three million people and is one of the largest energy companies in the PJM Interconnection LLC area." (Id.) The PJM's service area, and Allegheny Power's customer base, include Pennsylvania customers. (Id.; Exh. C at p. 64:11.) Therefore, RETX's contract with Allegheny Power allows its software to reach a large segment of the Pennsylvania population. Third, because RETX's Notification Manager software allows customers to directly track changes in load response via the internet (Exh. B), Allegheny Power's use of RETX's Notification Manager software allows direct contact between RETX's software and Pennsylvania customers.

As for the second element of the Elbeco test, solicitation of Pennsylvania business, RETX admits to the following contacts with Pennsylvania companies: (1) three visits to Allegheny Power in connection with the Allegheny business deal; (2) six visits to Pennsylvania venture capitalist firms for funding between 1999 and January 2002; (3) six visits

---

[1] While the judge in Elbeco looked only at the defendant's contacts with the forum state when the cause of action arose, the Third Circuit has found *all* the defendant's contacts, including those arising after the cause of action, to be relevant in determining general jurisdiction. Mellon Bank PSFS v. Farino, 960 F.2d 1217, 1224 (3d Cir. 1992); Accord McMullen v. European Adoption Consultants, Inc., 109 F. Supp. 2d 417, 420 (W.D. Pa. 2000).

to Pennsylvania companies, other than Powerweb, to make a sales presentation; (4) three Pennsylvania meetings with Powerweb to discuss joint business opportunities; (5) approximately ten telephone conversations with Lou Budike regarding possible joint business opportunities; (6) telephone conversations to Pennsylvania businesses to solicit business; and (7) attendance at a Demand Response conference presented by the PJM.  (Josephson Aff. ¶ 9.) Each of these contacts demonstrates specific targeting of Pennsylvania businesses and customers by RETX.

Although RETX claims that it "does not do meaningful business in Pennsylvania" (Josephson Aff. ¶ 4), in reality, there is not much more that RETX could have done to solicit business from Pennsylvania companies and consumers.  The PJM, with which RETX is involved, manages the power grid for Pennsylvania. (Exh. C at p. 49:8-11.) Consequently, RETX's involvement in and marketing through the PJM focuses directly on energy customers within the greater Pennsylvania area.  Indeed, in speaking of the PJM Demand Response conference referenced above, Ross Malme testified that there were "quite a number of PJM companies at that meeting" (Exh. E at p. 70:15-17), and that 50-60 people attended (Id. at p. 70:19).  In addition to its PJM contacts, RETX was a party to a metering agreement with Powerweb and at one time considered purchasing the assets of Powerweb. (Exh. D at Resp. No. 17.)  RETX's agreement with Powerweb and discussion of a business combination again evidences RETX's interest and effort to continue conducting business in Pennsylvania.  RETX's contacts with Pennsylvania reveal systematic solicitation of Pennsylvania companies.

RETX has also targeted Pennsylvania companies in its advertising campaign. At his deposition, Peter Scarpelli admitted that the primary advertising RETX does in any market comes in the form of product sheets and press releases. (Exh. C at p. 58:5.) As previously mentioned, a RETX press release states that RETX does business in Pennsylvania. (Exh. A.) In terms of product sheets, at the PJM Demand Response Working Group conference in Philadelphia, RETX set up a booth and distributed these sheets to potential customers. (Exh. D at Resp. No. 6, Exh. E at p. 121:3-4.) RETX also distributed product sheets to Allegheny Power. (Exh. E at p. 121:5-7.) Ross Malme further testified that he takes RETX brochures to meetings of the Peak Load Management Alliance ("PLMA") (Exh. E at pp. 58:25-59:5), which includes Pennsylvania members (Exh. E at pp. 36:3-7, 53:19-22). RETX additionally maintains a Pennsylvania contact list for mass emailing. (Exh. F.) Lastly, a list of Pennsylvania correspondence since March 2002 provided by RETX lists several promotional contacts with the state, such as distribution of "The RETX Dispatcher" to Pennsylvania companies. (Exh. H.)

For all of the above reasons, RETX's contacts with Pennsylvania meet the Elbeco test and establish a systematic and continuous relationship with the state.

### III.   CONCLUSION

Pennsylvania has personal jurisdiction over RETX based on both specific and general jurisdiction. Pennsylvania has specific jurisdiction over RETX because RETX misappropriated Powerweb's confidential technology and used this technology to create a competing product that interferes with Powerweb's prospective contracts with customers. The effects of RETX's tortious conduct are felt by Powerweb in Pennsylvania. By these actions,

RETX purposefully availed itself of Pennsylvania laws, making it fair to subject RETX to suit here.

In addition, RETX conducts systematic and continuous business in Pennsylvania such that general jurisdiction over RETX is proper here.  RETX continues to solicit business from all major Pennsylvania energy providers and participants in the PJM and continues its contractual relationship with Allegheny Power, a Pennsylvania company.  RETX also continues to market and advertise its products to Pennsylvania companies.  Lastly, in a press release that was recently removed from RETX's website, RETX claims that it "currently does business in Pennsylvania."  These contacts show significant targeting of Pennsylvania businesses and represent substantial contacts with the forum.  Accordingly, RETX's motion to dismiss for lack of jurisdiction is properly denied.

Respectfully submitted,

Rudolph Garcia
Kara H. Goodchild
Nicholas J. Nastasi
Kristin L. Calabrese
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-1961, -7187

Attorneys for Powerweb Technologies, Inc.

Date:   July 7, 2003

## CERTIFICATE OF SERVICE

I, Kristin L. Calabrese, hereby certify that true and correct copies of the foregoing Memorandum of Law in Opposition to Motion of Counterclaim Defendant RETX, Inc. to Dismiss the Counterclaims Asserted by Counterclaimant Powerweb Technologies, Inc. were served by first-class mail upon the following counsel of record:

>Lee A. Rosengard, Esq.
>Stradley, Ronon, Stevens & Young, LLP
>2600 One Commerce Square
>Philadelphia, PA 19103
>*Attorneys for Counterclaim Defendant RETX, Inc.*
>
>Tacita A. Mikel Scott, Esq.
>Morris, Manning & Main, LLP
>1600 Atlanta Financial Center
>3343 Peachtree Road, N.E.
>Atlanta, GA 30326
>*Co-Attorneys for Counterclaim Defendant RETX, Inc.*
>
>Madeline S. Baio, Esq.
>Marshall, Dennehey, Warner, Coleman & Goggin
>1845 Walnut Street
>Philadelphia, PA 19103-4979
>*Attorneys for Counterclaim Defendant AES CILCO*
>
>Joel M. Sweet, Esquire
>Wolf, Block, Schorr and Solis-Cohen, LLP
>1650 Arch St., 22nd Floor
>Philadelphia, PA 19103-2097
>*Attorneys for Plaintiff Constellation NewEnergy*

_____
Kristin L. Calabrese

Date: July 7, 2003