IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.    :        CIVIL ACTION
                                 :
        v.                       :
                                 :
POWERWEB TECHNOLOGIES, INC.,     :
et al.                           :        NO. 02-2733

MEMORANDUM

Bartle, J.                                    August   , 2003

        Presently before the court are the motions of third-party defendants AmerenCILCO ("CILCO") and RETX, Inc. ("RETX") to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

I.

        Plaintiff Constellation NewEnergy ("NewEnergy") has brought this diversity action against Powerweb Technologies, Inc., A-Valey Engineers, Inc., and Lothar Budike, Jr. (hereinafter referred to collectively as "Powerweb") for claims arising from a Joint Marketing Agreement between NewEnergy and Powerweb.  Powerweb's amended answer includes counterclaims against NewEnergy.  It has also filed a third-party complaint against CILCO and RETX.

        NewEnergy alleges that Powerweb made fraudulent misrepresentations about its skills and abilities in order to induce NewEnergy to enter into a Joint Marketing Agreement and then breached its obligations under that agreement.  NewEnergy

also avers that Powerweb accepted $100,000 from it on the condition that it would not use any of the money without NewEnergy's advance approval.  Thereafter, Powerweb allegedly spent the money without approval and has refused to return it.

In its counterclaim, Powerweb contends that NewEnergy breached its obligations under a confidentiality agreement and a letter agreement signed by the parties by appropriating Powerweb's confidential information and using it to compete against Powerweb.  Powerweb's claims against NewEnergy include: (1) breach of contract (Counts I, II, and III); (2) breach of duty of good faith and fair dealing (Count IV); (3) breach of fiduciary duty (Count V); (4) fraudulent misrepresentation (Count VI); (5) misappropriation of trade secrets (Count VII); (6) tortious interference with prospective contractual relations (Count VIII); (7) tortious interference with contractual relations (Count IX); and (8) unfair competition (Count X).

Powerweb's third-party complaint against CILCO and RETX states that at NewEnergy's request, Powerweb contacted CILCO regarding the creation of a marketing plan similar to the joint venture agreement between NewEnergy and Powerweb.  According to Powerweb, Peter Scarpelli, then Vice President of CILCO, requested that Powerweb send CILCO information regarding its Omni-Link Technology.  Powerweb maintains that after Peter Scarpelli left CILCO's employ to work for RETX, he improperly shared with RETX the information he had obtained from Powerweb and that CILCO and RETX then conspired to use Powerweb's

confidential information to create a product that directly competed with the Omni-Link system. Powerweb asserts claims against CILCO for: (1) breach of contract (Count I); (2) breach of duty of good faith and fair dealing (Count IV); (3) fraudulent misrepresentation (Count VI); (4) misappropriation of trade secrets (Count VII); (5) tortious interference with prospective contractual relations (Count VIII); (6) and unfair competition (Count X). As to RETX, Powerweb makes claims for: (1) misappropriation of trade secrets (Count VII); (2) tortious interference with prospective contractual relations (Count VIII); and (3) unfair competition (Count X).

CILCO, an Illinois corporation with its principal place of business in Peoria, Illinois, is a public utility company providing energy to customers within the state of Illinois. It has no offices or employees in Pennsylvania, is not registered to do business in the Commonwealth, and does not sell any goods or services here.

RETX, a Delaware corporation with its principal place of business in Georgia, provides "internet-based energy information to energy providers, utilities, regional transmission organizations, independent system operators and their end-users through its technology infrastructure and services." RETX is not registered to do business and does not own property in Pennsylvania. Nor does it maintain an agent for service of process or an office or sales agent here.

II.

A federal district court may assert personal jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which the action is brought, consistent with the demands of the Constitution.  See Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987) (citing Fed. R. Civ. P. 4(e)).  Pennsylvania law permits courts to "exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment."  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992) (citations omitted); see also 42 Pa. Cons. Stat. Ann. § 5322(b).  The Pennsylvania long-arm statute specifically authorizes personal jurisdiction over a person "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."  42 Pa. Cons. Stat. Ann. § 5322(a)(4).  Of course, a party can always consent to personal jurisdiction.  See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982).

Once the jurisdictional issue has been raised, the plaintiff bears the burden of establishing with reasonable particularity contacts sufficient to support the court's exercise of personal jurisdiction.  See Provident Nat'l Bank, 819 F.2d at 437.  General averments in an unverified complaint or response without the support of "sworn affidavits or other competent evidence" are insufficient to establish jurisdictional facts.

-4-

Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66
n.9 (3d Cir. 1984).  Otherwise, for the purposes of this motion,
we must accept all of Powerweb's substantive allegations as true
and construe disputed facts related to those claims in their
favor.  Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d
Cir. 1998); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142
n.1 (3d Cir. 1992).

        General personal jurisdiction exists when "the
defendant has such extensive contacts with the forum state that
the defendant is continually subject to the state's personal
jurisdiction." Modern Mailers, Inc. v. Johnson & Quin, Inc., 844
F. Supp. 1048, 1051 (E.D. Pa. 1994).  To establish general
jurisdiction the plaintiff must establish that a defendant has
affiliations or business activities in the forum which are
"continuous and substantial," that is, "extensive and pervasive."
See, e.g., Reliance Steel Prods. Co. v. Watson, 675 F.2d 587,
588-89 (3d Cir. 1982)[1]; Elbeco, Inc. v. Estrella de Plato, Corp.,
989 F. Supp. 669, 673 (E.D. Pa. 1997); Fields v. Ramada Inn, 816
F. Supp. 1033, 1036 (E.D. Pa. 1993).

        To invoke specific jurisdiction, a plaintiff's cause of
action must arise from or relate to the defendant's forum-related
activities, such that the defendant should reasonably anticipate
being haled into court in the forum.  Helicopteros Nacionales de

---

1.  The Reliance opinion actually uses the word "persuasive"
which is a misprint.  The word "pervasive" is used in Compagnie
des Bauxites de Guinea v. Ins. Co. of North America, 651 F.2d
877, 890 (3d Cir. 1981), which Reliance cites.

Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); North Penn Gas Co. v. Corning Nat'l Gas Corp., 897 F.2d 687, 690 (3d Cir.), cert. denied, 498 U.S. 847 (1990).  A determination of whether sufficient minimum contacts exist essentially involves an examination of the relationship among the defendant, the forum and the litigation.  Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Once a showing of sufficient minimum contacts has been made, a court may find that an exercise of personal jurisdiction is nevertheless incompatible with due process upon the presentation of compelling evidence of other factors which would make an order requiring a defendant to litigate in the chosen forum inconsistent with "fair play and substantial justice."  See Int'l Shoe v. Wash., 326 U.S. 310 (1945); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150-51 (3d Cir. 1996); D'Almeida v. Stork Brabant B.V., 71 F.3d 50, 51 (1st Cir. 1995), cert. denied, 517 U.S. 1168 (1996); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir. 1993).  The factors generally considered are the burden on the defendant to litigate in the forum, the interest of the forum state in the litigation, the plaintiff's interest in obtaining meaningful relief, the general interest in obtaining efficient resolution of controversies and any mutual interest of the various states in furthering any relevant underlying social policies.  Id. at 483.

III.

Powerweb first contends that this court has general jurisdiction over RETX because of the latter's activity in Pennsylvania.  In support, Powerweb points to the following contacts RETX has had with Pennsylvania over the last five years:

(1)    doing "business in Pennsylvania" as set forth in a September 19, 2000 Press Release;

(2)    three visits to Allegheny Power in connection with an ongoing business relationship with the Pennsylvania based company;

(3)    six visits to Pennsylvania venture capitalist firms for funding between 1999 and January 2002;

(4)    six visits to Pennsylvania companies, other than Powerweb, to make a sales presentation;

(5)    three Pennsylvania meetings with Powerweb to discuss joint business opportunities;

(6)    approximately ten telephone conversations with Lou Budike [of Powerweb] regarding possible joint business opportunities;

(7)    telephone conversations to Pennsylvania businesses to solicit business; and

(8)    attendance at a Demand Response conference presented by the PJM in Philadelphia.[2]

---

2.  PJM, which stands for "Pennsylvania-New Jersey-Maryland," is one of several Independent Service Operators ("ISO") throughout the United States.  According to its website, PJM "ensures the reliability of the largest centrally dispatched control area in North America by coordinating the movement of electricity in all or parts of Delaware, Maryland, New Jersey, Ohio, Pennsylvania,
(continued...)

-7-

With the exception of the Allegheny Power contract, which is worth at most only $30,000, none of RETX's visits or telephone solicitations to Pennsylvania resulted in any business. Moreover, while RETX's September, 2000 press release stated that it "does business in Pennsylvania," it was not actually conducting any business in the Commonwealth at the time the release was issued, but rather, was expressing a willingness to do so. Pennsylvania had recently deregulated its power and RETX's initial marketing strategy was to market to companies within recently deregulated states. Its marketing strategy subsequently changed, and it decided not to market in Pennsylvania after all.

RETX has no office or sales representative and owns no property in Pennsylvania. Its contract with Allegheny Power is its sole business relationship in the state and that can only be characterized as minimal. Other evidence demonstrates that at most RETX has solicited business here only sporadically over the last five years. RETX's involvement with the PJM working group does not speak to specific contacts with Pennsylvania since, despite its acronym, PJM covers a region including six states and the District of Columbia. RETX, as a part of the "energy demand response community," participates in working groups for all of the ISOs throughout the United States. Nothing is before us

---

2.(...continued)
Virginia, West Virginia and the District of Columbia." Working to Perfect the Flow of Energy, at PJM website http://www.pjm.com/index.jsp (last visited Aug. 19, 2003).

concerning the extent of its involvement with this state other
than one meeting in Philadelphia.  We do not view the limited
activities of RETX in Pennsylvania as "continuous and
substantial" or "extensive and pervasive" so as to subject it to
the general personal jurisdiction of this court.  See Reliance,
675 F.2d at 588-89.

We need not decide the issue of general jurisdiction as
to CILCO since Powerweb does not raise it.

IV.

Powerweb further contends that this court has specific
jurisdiction over both CILCO and RETX.  Powerweb's sole argument
with respect to CILCO rests on its alleged consent to suit in
Pennsylvania given by David McGeown, whom Powerweb contends was
acting as an agent of CILCO.  In July, 1999, Powerweb and
NewEnergy began to discuss the possibility of entering into a
joint venture to market Powerweb's Omni-Link system to Bell
Atlantic.  On October 11, 1999, NewEnergy and Powerweb entered
into a "Non-Disclosure Confidentiality Agreement"
("confidentiality agreement") designed to protect Powerweb's
proprietary interest in the Omni-Link system.  The
confidentiality agreement was signed on behalf of NewEnergy by
McGeown, who was identified in the agreement as Director of
Energy Services.  It purports to bind not only NewEnergy but also
"any current, or future, direct or indirect subsidiaries, joint
ventures, affiliates, or sub-contractors."  Its final paragraph

-9-

states, "This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania."

Powerweb and NewEnergy also entered into a letter agreement dated October 25, 1999.  McGeown again signed for NewEnergy.  Included was the following provision:

> The Parties agree that this letter agreement shall [be] interpreted under the laws of the Commonwealth of Pennsylvania and that they shall seek to enforce its provisions only in the courts of the Commonwealth of Pennsylvania.
>
> This letter agreement, in addition to the non-disclosure agreement [confidentiality agreement] attached hereto, represents the whole agreement between the Parties.

Letter of Intent at 3.

At all relevant times, both NewEnergy and CILCO were separate corporations owned by AES Corporation ("AES").  Powerweb contends that McGeown held the position of Director of Energy Services not only for NewEnergy but also for all AES companies and thus had authority to bind all of them, including CILCO, to the confidentiality agreement and to the subsequent letter agreement containing a Pennsylvania forum selection clause.  Thus, Powerweb argues, CILCO has consented to personal jurisdiction in Pennsylvania.

The burden of establishing an agency relationship rests with Powerweb, the party asserting that relationship.  See Cohen v. Salick Health Care, Inc., Civ.A. No. 89-9025, 1992 WL 7033, at *2 (E.D. Pa. Jan. 6, 1992); Goodway Mktg., Inc. v. Faulkner Adver. Assoc., Inc., 545 F. Supp. 263, 267 (E.D. Pa. 1982).

Under Pennsylvania law, the basic elements of agency are "the
manifestation by the principal that the agent shall act for him,
the agent's acceptance of the undertaking, and the understanding
of the parties that the principal is to be in control of the
undertaking." Cohen, 1992 WL 7033, at *2 (quoting Scott v.
Purcell, 415 A.2d 56, 60 (Pa. 1980)).  Among other things, there
must be "some manifestation *by the principal*, by words or
conduct, to the agent or to the third party, of its intent to be
bound." United Hosp., Inc. v. Comprehensive Care Corp., Civ.A.
No. 90-3889, 1991 WL 125902, at *3 (E.D. Pa. June 26, 1991)
(quoting Browne v. Maxfield, 663 F. Supp. 1193, 1198 (E.D. Pa.
1987)).

       Powerweb has presented the following evidence of
McGeown's agency relationship with CILCO:  (1) a declaration by
Powerweb's President, Lothar Budike, Jr., stating that McGeown
told him he was authorized to agree to confidentiality on behalf
of all AES companies; (2) the testimony of Peter Scarpelli,
former Vice President of CILCO, that he understood NewEnergy and
CILCO to be "sister companies"; and (3) the confidentiality
agreement itself.

       As explained above, a manifestation by the principal of
intent to be bound by the agent's action is an essential element
of agency in Pennsylvania.  The words themselves of the
confidentiality agreement or letter agreement cannot prove
agency.  Simply because McGeown signed on behalf of a number of
parties does not mean he had authority to do so.  The out-of-

court declarations of an agent cannot be used to prove the fact or scope of the agency. Restatement (Second) of Agency § 285; Midland Credit Co. v. White, 104 A.2d 350, 352 (Pa. Super. 1954). We have not heard from McGeown in this lawsuit. Clearly, since the words in the two agreements with his signature are not sufficient to prove agency, the declaration of Powerweb's president, Lothar Budike, Jr., which simply parrots an out-of-court statement of the putative agent, cannot make up the deficiency. Thus, Budike's declaration that McGeown stated that he was authorized to agree to confidentiality on behalf of all AES companies is of no help to Powerweb. Finally, the fact that NewEnergy and CILCO may have been "sister companies" says nothing about the authority of McGeown to act on behalf of either or both.

In sum, Powerweb has not established that the court has specific personal jurisdiction over CILCO.

V.

Powerweb argues that it has specific jurisdiction over RETX under 42 Pa. Cons. Stat. Ann. § 5322(a)(4), which provides for specific jurisdiction over a foreign defendant who causes "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."

Powerweb relies on the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). In Calder, the plaintiff, an entertainer living and working in California, brought a defamation action in a California state court against National

-12-

Enquirer, Inc., one of its writers, and one of its editors for an article accusing her of having difficulties with alcohol.  The National Enquirer had its largest circulation in that state.  The individual defendants were residents of Florida, the forum in which the article was researched, written, reviewed, and approved, but they had had little or no contact with California.  Both individuals moved to dismiss plaintiff's actions for lack of personal jurisdiction.  The Supreme Court upheld the exercise of jurisdiction, concluding:

> The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.  In sum, California is the focal point both of the story and of the harm suffered.  Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

> . . . .

> ... [T]heir intentional, and allegedly tortious, actions were expressly aimed at California.  Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent.  And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation.

Calder, 465 U.S. at 788-90 (citations and footnote omitted).

In Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998), a case involving a business tort, the Court of

Appeals narrowly interpreted the "effects test" established in
Calder.  It held that under this test a court may exercise
personal jurisdiction only if:

> (1)  The [nonresident] defendant committed an
> intentional tort;
>
> (2)  The plaintiff felt the brunt of the harm
> in the forum such that the forum can be said
> to be the focal point of the harm suffered by
> the plaintiff as a result of that tort;
>
> (3)  The defendant expressly aimed his
> tortious conduct at the forum such that the
> forum can be said to be the focal point of
> the tortious activity.

155 F.3d at 265-66 (footnote omitted).  Proof of these three
elements would "enhance otherwise insufficient contacts with the
forum such that the 'minimum contacts' prong of the Due Process
test is satisfied."  Id. at 260 (citing Keeton v. Hustler
Magazine, Inc., 465 U.S. 770, 780 (1984)).

In Imo, the court rejected plaintiff's argument that
the defendant, a German corporation, had "expressly aimed" its
conduct toward New Jersey, plaintiff's headquarters and selected
forum.[3]  155 F.3d at 267.  The plaintiff corporation had brought
a tortious interference with contract claim against defendant,
alleging that defendant's promise to revoke its license agreement
with plaintiff's Italian subsidiary prevented plaintiff from
consummating the sale of that entity.  The court held in Imo that
"[s]imply asserting that the defendant knew that the plaintiff's

---

3.  Having found that plaintiff failed to prove the third prong
of the test, the court refrained from addressing whether the
"brunt of the harm" was suffered in New Jersey.

-14-

principal place of business was located in the forum would be insufficient" to satisfy the third prong of the effects test. Id. at 265. Rather, "[t]he defendant must 'manifest behavior intentionally targeted at and focused on' the forum for Calder to be satisfied." Id. (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)).

While the Imo court acknowledged that its holding "may significantly limit the types of business tort cases that will satisfy the requirements of personal jurisdiction via the 'effects test,'" id. at 265, it held that "such a result is consistent with the Supreme Court's intended relationship between Calder and the traditional minimum contacts analysis." Id.

In analyzing the claims against RETX, which are business torts, we apply the three-prong test as interpreted by the Third Circuit in Imo. Powerweb has alleged that RETX committed the intentional business torts of misappropriation of trade secrets, tortious interference with prospective contractual relations, and unfair competition. Therefore, Powerweb satisfies the first prong of the Imo test with respect to RETX. Furthermore, it can hardly be doubted that Powerweb "felt the brunt of the harm" in Pennsylvania, where it has its principal place of business. Id. at 265. Thus, Powerweb has also met the second prong of Imo. The third prong requires us to decipher whether RETX "expressly aimed its tortious conduct" at Pennsylvania such that Pennsylvania was the "focal point of the tortious activity." Id. at 266. We will analyze each of the

-15-

intentional torts alleged by Powerweb with respect to this
element of the effects test.

      Powerweb alleges that RETX improperly obtained
Powerweb's proprietary information from CILCO when Peter
Scarpelli left CILCO to become Vice President of RETX.  The
allegations involve no contacts between RETX and Powerweb or even
between RETX and Pennsylvania.  Rather, from what is before us
RETX received the information in Georgia from an Illinois
corporation with its principal place of business in Illinois.
The mere fact that RETX may have known Powerweb was located in
Pennsylvania and would thus experience any harm caused in that
state is insufficient to satisfy the effects test.

      We turn to the claims against RETX for unfair
competition and prospective contractual relations.  Powerweb has
not come forward with any affidavits or other evidence that any
relevant activity of RETX was "expressly aimed" at Powerweb in
this forum, such that this forum was "the focal point of the
tortious activity."  In Remick v. Manfredy, 238 F.3d 248, 260 (3d
Cir. 2001), the Court of Appeals upheld personal jurisdiction,
based on the Calder effects test, over a claim by the plaintiff
attorney for tortious interference with contractual relations.
However, in that case the plaintiff submitted a specific
supporting affidavit.  The Court of Appeals emphasized that the
majority of negotiations, consultations and the legal services
under the contract had occurred in Pennsylvania where the
plaintiff attorney lived and worked.  In contrast, while Powerweb

-16-

is headquartered here, we do not know where the party or parties to the prospective contract with Powerweb were located, where any discussions took place, or where or how any alleged interference occurred.  The information concerning the unfair competition claim is similarly lacking.

The facts before us do not satisfy the requirements of <u>Calder</u>, <u>Imo</u>, or <u>Remick</u> for personal specific jurisdiction over RETX based on the effects test.

VI.

Powerweb has not established that this court has personal jurisdiction over either CILCO or RETX.  Accordingly, we will grant the motions of CILCO and RETX to dismiss the third-party complaint against them pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CONSTELLATION NEWENERGY, INC.   :        CIVIL ACTION
                                :
        v.                      :
                                :
POWERWEB TECHNOLOGIES, INC.,    :
et al.                          :        NO. 02-2733


ORDER


        AND NOW, this      day of August, 2003, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that the motions of AmerenCILCO and RETX, Inc. to dismiss
the third-party complaint are GRANTED due to this court's lack of
personal jurisdiction over them.

                                BY THE COURT:


                                _____
                                                            J.