IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC., :
:
       Plaintiff,         :      Civil Action No. 02-CV-2733 (HB)
:
v.                            :
:
POWERWEB TECHNOLOGIES, INC.,   :
:
:
       Defendant.      :

### DECLARATION OF DAVID McGEOWN

David McGeown declares:

1.     I am currently employed as an independent consultant and act as nonexecutive chairman of Energy Tracking, Inc. ("ETI").

2.     I have held this position since Spring 2001, when I left AES Intricity.

3.     I make this declaration from personal knowledge.

4.     In the Spring of 1999, I was hired by NewEnergy Ventures, the predecessor of AES NewEnergy, to develop and market energy services programs. Attached as Exhibit A to this declaration is a document Bates-labeled McGeown001-002, a true and correct copy of a letter regarding the proposed purchase of a customer's excess capacity. I recall that I was given the document by NewEnergy Ventures as an example of the type of projects New Energy Ventures was pursuing and that I should help to develop.

5.     NewEnergy Ventures was a non-regulated energy supplier, operating in several energy markets where deregulation first started, including Pennsylvania, New York, New England and California.



DSB:969009.3/AES003-158567

6. In addition to supplying electricity to customers with retail choice, NewEnergy Ventures sought out and invested in additional services to lower their customers' energy costs and compete for customers who had traditionally purchased energy from regulated utilities.

7. In July 1999, Lothar Budike, Jr., President of Powerweb Technologies, Inc. ("Powerweb") sent to me materials related to his company about its product called Omni-Link.

8. The materials consisted of marketing information about the company and Omni-Link.

9. The value of Powerweb's system was their claim to be able turn generators on and off remotely and to extract energy usage data directly from the Bell Atlantic's central offices and their claimed ability to assist us in closing a deal for Bell Atlantic.

10. On a trip to Powerweb's offices I briefly viewed a demonstration of the Omni-Link dashboard layout which appeared to present information extracted from a building automation system, a system which was commonplace in the industry at that time.

11. During due diligence, Powerweb provided a password for its website in which I was able to view an on-line demonstration which provided general information about Powerweb's system.

12. To the best of my recollection, neither I nor anyone else at NewEnergy ever received or viewed any sample contracts written by Powerweb, Andy Bakey, or EPEX regarding load capacity sales or energy capacity sales.

13. To the best of my knowledge, neither I nor anyone at NewEnergy Ventures, AES NewEnergy, AES Intricity or AES CILCO received or used any of technical information or technology provided by Powerweb or disclosed it to any third parties.



14. After our initial meetings, Mr. Budike asked me for assistance in obtaining additional contracts that would support Powerweb's goal of soliciting venture capital funding. In response to his requests I posted a email through the AES intranet to business development leaders throughout the company, making them aware of Powerweb.

15. As a result of this email, I facilitated a sales discussion between Powerweb and Peter Scarpelli, then of AES CILCO in Chicago, to assist Budike in pursuing additional AES contracts.

16. In 2000, Keith Mistry and I advised AES NewEnergy's "curtailment team," comprised of several AES NewEnergy employees and headed by Doug Short. Mistry and I participated in drafting specifications for curtailment software which was circulated by the "curtailment team" to several vendors, including Powerweb, as part of a request for bids.

17. Powerweb submitted a bid which confirmed its belief that its software could meet the AES NewEnergy specifications. Powerweb's proposal contained sales literature and generic information about the functions of its software and its price. Powerweb's proposal contained no technical information.

18. Ultimately, NewEnergy's "curtailment team" selected AES Intricity (which had absorbed Keith's company) to design and implement its curtailment software. Attached as Exhibit B and Bates-labeled NE000709-10 (PW Ex. 221) is a true and correct copy of an e-mail from Deirdre Lord, responding to my e-mail and stating that Keith Mistry was chosen to deliver a curtailment product.

19. At the end of the bidding process, I advised the curtailment team to destroy all materials that we received and not to disclose them. A true and correct copy of this directive is attached to this declaration as Exhibit C and Bates-labeled ETI000565 (PW Ex. 193).



DSB:969009.3/AES003-158567                          - 3 -

I understand that the statements made in this declaration are made subject to 28 U.S.C § 1746, and as such I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 28, 2004 in Bridgewater, NJ

*[signature]*
David McGeown

Exhibit A



April 29, 1999

Edward Kulik, Jr., Senior Vice President
The New Water Street Corporation
Building Management Office
55 Water Street
New York, NY

Re: **Sale of capacity from emergency generators**

Dear Mr. Kulik:

Following our meeting at the end of February, I have had a telephone discussion with Frank Magnani and we conducted some additional research into the emergency generator program.

First some information which may be of interest to you:

- Compensation to you for participation in the program would consist of two components:

    - payment for capacity from the retail energy supplier (*e.g.*, NEV) who purchases your capacity; and

    - offsets to the payment you would otherwise make for electricity to your power supplier during the period of power generation. For example, assuming Con Edison were your power supplier, during the period of emergency generation, you, not Con Edison, would be supplying your own load, your electric meter wouldn't be turning, and you would not be paying Con Edison for electricity you used during such periods. Depending on the tariff under which you take electricity and your own costs of generation, the savings on your Con Edison payment could actually exceed your cost of generation.

- I have heard that some other participants in the emergency generator program are not seeking permit modifications and believe that their existing permits allow them to generate for the purposes of this program. I have no knowledge of their specific circumstances and whether these have any implications regarding your facility but you may want to double-check to see whether air quality regulations do, in fact, preclude your participation under your current permit.

McGeown 001

1350 Avenue of the Americas, Suite 2015, New York, NY 10019   212-586-6600   Fax: 212-586-6688

*Kulik/April 29, 1999*                                                                                    Page 2

- An Independent System Operator ("ISO") is being established to take over from the utilities many of the responsibilities for managing the state's bulk power system. These responsibilities would include setting the rules governing the use of emergency generators to satisfy installed capacity requirements. The ISO is expected to become operational this coming fall and it is possible that it could change the rules that currently apply under the Con Edison program.

NEV is interested in purchasing capacity from your facility under the following proposed terms:

- 55 Water is responsible for receiving calls from Con Ed or the ISO, operating the generating facilities pursuant to the program rules, paying for the fuel and any O&M that may be incurred, paying any penalties as may be applicable for failure to generate as required under the program.

- 55 Water would retain the savings that result when its electric commodity bill is reduced during periods when it is generating

- NEV would pay $30,000 per megawatt to 55 Water for installed capacity

Although the deadline for signing up emergency generators as capacity for this coming summer under Con Edison's retail access program rules would normally have passed, Con Edison is still short of capacity and they have extended the deadline. If, upon further review, you determine that it is possible for you to participate in the program this summer, we would be very interested in purchasing your capacity for this summer immediately. If not, we have a long term interest in purchasing your capacity and would be interested in continuing discussions in this regard as well.

I would appreciate hearing from you after you have reviewed this proposal. Please call me at 516-751-9800.

Sincerely,


Harry Davitian

cc:   Frank Magnani, Plant Manager


McGeown 002

NEW ENERGY VENTURES

Exhibit B

Tue, 20 Feb 2001 05:30:41 -0800

**From:** Deirdre Lord
**Subject:** Re: Change of plan - no call Tuesday
**To:** dmcgeown@newenergy.com
**Cc:** Doug Short
curtailmentteam@iknow.aesks.com
Greg Tinfow

Dear All,

I think we should talk anyway to make sure that all are comfortable with this approach.

Deirdre

dmcgeown@newenergy.com writes:

*We are writing to let you all know of a change in direction for the EIS group. In accordance with the request we got on Friday Keith Mistry has assumed the role of project leader to deliver a curtailment product that meets your needs (time, features, costs). It is our understanding that you have expressed a desire to commit to an EIS development program that is led by Keith.*

*At this time we are committing our best efforts to create a product that will have most of the features described in the January list at a lower cost, and is able to support your programs this summer. The areas of greatest difficulty that may arise will be in meeting the original schedule for testing. We may have to ask for you help in prioritizing the feature release schedule, with some features coming on line after May. We believe that we have an understanding of the 'must haves' for May.*

*Features that we are placing 'on the back burner' are the building automation links. Pending the release of the e-meter, we will rely on whatever capabilities can be provided by vendors for real time usage data.*

*The immediate effect of this change is that the document due today is not ready. There is no point in meeting by telephone conference tomorrow. We need to be fair to Keith and give him time to come up to speed, so we are postponing the call. So far all his preparations had followed the advice to look to an external vendor for most of the work. He is now working on a fast track development program and reprioritizing his other development commitments for the e-meter.*

*We will send you whatever we have as we produce it. Our immediate priority is a specification for the product features. That will be followed by costs and a delivery schedule for the features. Keith and I have created a draft, but we are not comfortable with it yet. We will continue to work on it with a target release late on Wednesday. We suggest rescheduling the call for 11 am Thursday morning, allowing time for you to digest it, or 4pm on Wednesday as we release the plan. Which do you prefer?*

*Given the very short time to implement this product we must maximize the time spent developing the tool. We have to adopt a '2 minute offense'.*

http://208.171.210.30/Login/MailBox/Sent/#4113300

EXHIBIT
powerweb
221
2-26-04

CONFIDENTIAL

NE000709

1/29/2003

Re: Change of plan - no call Tuesday                                        Page 2 of 2

*We will keep the curtailment team continuously apprised of our progress and seek advice on product features, but our participation in the curtailment team meetings will have to be very limited. Following the football analogy, Keith is the quarterback, he knows where the goal line is, and will have to call a lot of plays at the line of scrimmage. There is not time for us to call the plays for him. He will put the points on the board, but we have to trust him to get us there.*

*Thank you for your patience as we sort this out*

*David McGeown*
*AES*
*Tel 908 704 8437*
*Fax 413 581 9034*
*Urgent email is automatically forwarded to my phone at dmcgeown@myvzw.com*

»

Deirdre Lord
AES NewEnergy
Phone 617 772 7507
Phone 212 883 5880 ext. 287 (NY)
Cell    617 593 8906

---

| Desktop | Mailbox | Calendar | Up One Level | Home | Directory | Who's Online | Chat |
| History | New Message | Reply | Forward |
| Previous In Thread | Next In Thread | Previous Unread | Next Unread |
| Unsend | Undelete | Delete | Help |

CONFIDENTIAL

NE000710

http://208.171.210.30/Login/MailBox/Sent/#4113300                         1/29/2003

Exhibit C

**Keith Mistry**

| | |
|---|---|
| From: | David McGeown [dmcgeown@newenergy.com] |
| Sent: | Monday, March 19, 2001 11:12 AM |
| To: | EIS_leaders@newenergy.com |
| Cc: | CT@newenergy.com |
| Subject: | Disposal of materials supplied by curtailment vendors |

EIS team, please delete or destroy any materials that were provided to us by the prospective vendors of curtailment products.

I believe this to be a prudent measure as we embark on the additions to our Webjoules product. I am not aware of any information that we have been provided that could be considered intellectual property. Most of what we have been given is sales literature that is generally in the public domain. There were some sensitive portions of the proposals. We have been consistently careful to avoid any such difficulties. Doug did a good job in the due diligence phase to isolate us from any areas of conflict.

Please make a note in your records that you have complied with this request.

If you have any concerns please let me know.

I am copying this e-mail to the curtailment team so that you can decide on actions appropriate for your region.

David McGeown
AES
Tel 908 704 8437
Fax 413 581 9034
Urgent email is automatically forwarded to my phone at dmcgeown@myvzw.com



CONFIDENTIAL
AUTHORIZED PERSONS ONLY
ETI 000565

1

**CERTIFICATE OF SERVICE**

I, Jennifer C. O'Neill, certify that on June 1, 2004, I caused true and correct copies of the Declaration of Ketan "Keith" Mistry and the Declaration of David McGeown to be served electronically upon:

>Rudolph Garcia, Esquire
>SAUL EWING LLP
>Centre Square West
>1500 Market Street, 38th Floor
>Philadelphia, PA  19102-2186

s/JO416
Jennifer C. O'Neill
Attorney I.D. #89755
