IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

## **O R D E R**

AND NOW, this        day of                , 2004, it is hereby ORDERED

that the Motion by Powerweb, Inc. for Summary Judgment (Doc. #  ) is GRANTED and all

remaining claims asserted by Constellation NewEnergy, Inc. are DISMISSED.

BY THE COURT:

_____

                                                              J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC., :
       Plaintiff, :
         :
     v. :   No. 02-CV-2733 (HB)
         :
POWERWEB TECHNOLOGIES, INC., :
       Defendant. :

## MOTION BY POWERWEB, INC. FOR SUMMARY JUDGMENT

Powerweb, Inc.[1] hereby moves the Court to enter a summary judgment dismissing all remaining claims asserted by Constellation NewEnergy, Inc., for the reasons set forth in the accompanying memorandum of law.

        _____kc571_____
        Rudolph Garcia, Esquire
        Kara H. Goodchild, Esquire
        Kristin L. Calabrese, Esquire
        SAUL EWING LLP
        1500 Market Street, 38th Floor
        Philadelphia, PA 19102
        (215) 972-1961; -7187; -7533
        Attorneys for Powerweb, Inc.

Date: June 1, 2004

---

[1] Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW BY POWERWEB, INC.
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Powerweb, Inc. ("Powerweb")[1] submits this memorandum in support of its motion for a summary judgment against Constellation NewEnergy, Inc. ("NewEnergy").

While there are many disputed factual issues in this case, none of them is material to NewEnergy's remaining claims against Powerweb.[2] Indeed, those claims may be disposed of as a matter of law by a simple review of the very contract upon which they are based, thereby streamlining the trial by limiting it to Powerweb's counterclaims against NewEnergy.

## I.      BACKGROUND

In 1996, the electricity markets in various regions across the United States began to be deregulated, opening the door to competition and new methods for reducing energy costs. Because electricity cannot be stored, all generated power must be consumed instantaneously. That makes balancing supply and demand a constant challenge and causes electricity prices to be extremely volatile. During high demand periods, the wholesale price of electricity can fluctuate by as much as 1,000%. Powerweb designed a system that enables large commercial customers to

---

[1]      Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

[2]      Counts II and III of NewEnergy's Second Amended Complaint, including all claims against two other defendants, were dismissed by stipulation of the parties on May 13, 2004 (Doc. #77). The only remaining claims are asserted against Powerweb in Counts I, IV and V.

profit from that fluctuation by using their own emergency generators when prices are at their highest ("Omni-Link system").

NewEnergy agreed to enter into a series of joint ventures with Powerweb to license the Omni-Link system, first to Bell Atlantic Corporation ("Bell Atlantic"), and then to other customers. Accordingly, Powerweb disclosed the details of its system to NewEnergy under a written agreement that prohibited NewEnergy from unilaterally using or disclosing any of the information that Powerweb provided. NewEnergy then abandoned Powerweb, used the information to develop competing products and services of its own, and carelessly disclosed it to others who also used it to become competitors of Powerweb.

As noted above, NewEnergy disputes these facts, as a result of which a trial will be needed to resolve Powerweb's counterclaims. However, the material facts are not disputed regarding NewEnergy's claims against Powerweb.

## II.    UNDISPUTED FACTS REGARDING NEWENERGY'S CLAIMS

On January 7, 2000, Powerweb and NewEnergy entered into a written contract ("Contract") to work together regarding a proposed installation of the Omni-Link system at certain of Bell Atlantic's facilities in New Jersey.[3] NewEnergy paid $100,000 to Powerweb for project development costs.[4] Powerweb incurred engineering expenses in excess of that amount.[5] Thereafter, due to unforeseen environmental permitting issues, Bell Atlantic decided not to

---

[3]    A true and correct copy of the Contract is attached hereto as Exhibit A.

[4]    See Exh. A at 2, See Budike, Jr. deposition, the relevant portions of which are attached as Exhibit B, at 564:2-4.

[5]    See Exh. B, at 560:4 – 561:23, 565:8-19; Budike Sr. deposition, the relevant portions of which are attached as Exhibit C, at 133:21 – 134:4.

proceed with the project in New Jersey.[6] The Contract then expired without any other projects being jointly undertaken.[7]

NewEnergy seeks to recover the entire $100,000 payment, by contending that it did not authorize Powerweb's expenditures.[8] However, the Contract did not require Powerweb to return any of the funds under any circumstances—NewEnergy's sole source of repayment was from profits that never materialized.[9] Moreover, NewEnergy has *admitted* that Powerweb never agreed to return any of the $100,000 payment.[10] Indeed, NewEnergy had sought to include an obligation to return any unused funds, but Powerweb refused and the Contract was signed without such a requirement.[11] Thus, it makes no difference whether NewEnergy authorized the expenditures or not. In either event, Powerweb was entitled to keep the funds (in lieu of a previously negotiated prepayment of $500,000).[12]

## III.    ARGUMENT

### A.    Legal Standard For Summary Judgment

Summary judgment must be granted when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it may affect the ultimate outcome of the case. Anderson v. Liberty

---

[6]    See Second Amended Complaint at ¶32.

[7]    See Second Amended Complaint at ¶33.

[8]    See Second Amended Complaint at ¶37.

[9]    See Exh. A at 2.

[10]    See Hayduk Dep., the relevant portions of which are attached as Exhibit D, at 68:9-15 ("Q. Well, does it say in here anywhere that [the $100,000] would be returned if it wasn't used for Bell? A. No."), 20-22 ("Q. Powerweb never agreed to that, did they? A. Not in – no.").

[11]    See email from David McGeown dated December 30, 1999, marked as deposition exhibit Powerweb 209 and attached as Exhibit E, and email from L. Budike dated January 2, 2000, marked as deposition exhibit Powerweb 210 and attached as Exhibit F.

[12]    See October 26, 1999 Letter of Intent, a true and correct copy of which is attached hereto as Exhibit G.

Lobby, Inc., 477 U.S. 242, 255 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. Furthermore, the dispute of fact must be "genuine," that is, evidence must exist such that "a reasonable jury could return a verdict in favor of the non-moving party." Id. The moving party has the initial burden of showing the basis for its summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant sufficiently supports its summary judgment motion, the burden shifts to the non-moving party to go beyond the pleadings and present evidence that there is a genuine issue for trial. See id. at 324. "It is a fundamental principle of contract law that 'disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment.'" Tamarind Resort Assocs. v. Gov't of Virgin Islands, 138 F.3d 107, 110 (3d Cir. 1998).

**B.    NewEnergy May Not Recover for any Alleged Breach of the Contract.**

In Count I of its Second Amended Complaint, NewEnergy claims that Powerweb breached the Contract by refusing to return the $100,000 and by failing to complete certain tasks. However, both of those theories must fail as a matter of law, because the Contract imposed no duty to refund any money and the condition precedent for Powerweb's performance of the tasks at issue did not occur.

**1.    The Contract Did Not Impose an Obligation to Refund the $100,000.**

Powerweb has not breached the Contract by refusing to return the $100,000 because Powerweb had no obligation to refund that payment. "A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) *a breach of a duty imposed by the contract* and (3) resultant damages." Corestates

Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (emphasis added).[13] In determining

the duties imposed by a contract, "[t]he court must construe the contract only as written and may

not modify the plain meaning of the words under the guise of interpretation." Vaccarello v.

Vaccarello, 757 A.2d 909, 914 (Pa. 2000) (citing Carosone v. Carosone, 688 A.2d 733 (Pa.

Super. Ct. 1997), appeal denied, 704 A.2d 633 (Pa. 1997)). "Extrinsic evidence . . . is not

admissible in expounding written contracts to prove that other terms were agreed to, which are

not expressed in the writing, or that the parties had other intentions than those to be inferred from

it." West v. Smith, 101 U.S. 263, 271-72 (1879).

> The pertinent provision of the Contract states:
>
> NEE [NewEnergy] agrees to fund project development costs of up to One
> Hundred Thousand Dollars (100,000.00) for Powerweb to create a detailed
> project implementation plan, schedule and investment analysis of an
> Omni-Link application for Bell Atlantic. NEE will deposit the funds with
> Powerweb within ten (10) business days after execution of this agreement.
> Allocation and use of the funds will be subject to the sole approval of NEE
> in advance. If Bell Atlantic does not proceed with the project unused funds
> will be allocated to joint development of other opportunities. These
> development funds will be repaid from the first project payments made by
> Bell Atlantic to either PWT [Powerweb] or to NEE. The specific form of
> repayments will be determined and agreed upon with both parties before
> the final contract negotiations with Bell Atlantic.[14]

While this paragraph contemplated that NewEnergy would be repaid out of amounts received

from Bell Atlantic or other customers, it did not require Powerweb to return any of the funds

itself if no customer payments were ever received. That omission was intentional—Powerweb

had explicitly refused to include such a requirement in the Contract, and NewEnergy knowingly

accepted the risk that it might never recover its investment.[15]

---

[13]    The Contract states that Pennsylvania law applies.  See Exh. A at 2.

[14]    See Exh. A at p.2.

[15]    On December 30, 1999, New Energy's Director of Energy Services, Mr. McGeown, sent an email
message to Powerweb's President, Mr. Budike, saying "Note one small adder - got some

Moreover, Brian Hayduk, the NewEnergy's signatory to the Contract, has admitted that Powerweb did not agree to refund any of the development costs:

> Q.    On the second page, the fourth paragraph says, "NewEnergy agrees to fund project development costs up to $100,000." But then further down that same paragraph it says, "If Bell Atlantic does not proceed with the project, unused funds will be allocated to joint development of other opportunities."
>
> Do you see that?
>
> A.    Mm-hmm.
>
> Q.    Was it your understanding that if there was anything left over, it would be used for other opportunities?
>
> A.    Yes. It was my understanding that during the term of the agreement, that's what would happen. It would be used for other opportunities.
>
> Q.    Well, does it say in here anywhere that it would be returned if it wasn't used for Bell?
>
> A.    No. But certainly my assumption was that if the entire contract was terminated and the funds weren't used for Bell Atlantic or other opportunities, then it would be refunded.
>
> Q.    And that was your assumption based on what?
>
> A.    Based on a contract being terminated, that that's what would happen.
>
> Q.    Powerweb never agreed to that, did they?
>
> A.    Not in -- no.[16]

Powerweb never agreed to return any of the $100,000 if the deal fell through. Thus, Powerweb's refusal to refund the money did not breach the Contract.

---

feedback that we may want the unspent money back if we do not move forward on other deals." See Exh. E. Mr. Budike responded by email on January 2, 2000, saying "I do not agree with the adder of yours, by giving money back says were not going to approach other deals together. I want a partner to approach other deals with, if that's not the case they let me know now." See Exh. F. NewEnergy then signed the Contract on January 7, 2000 without the rejected provision. See Exh. A.

16    See Exh. D at 68:9-22.

2.    **The Condition Precedent for Powerweb's Performance of the Specified Tasks Did Not Occur.**

NewEnergy's second theory for breach of contract also fails, because it is not supported by the plain language of the Contract. NewEnergy's claim rests on Powerweb's alleged failure to create a detailed project implementation plan, schedule and cost analysis for the integration of Omni-Link into Bell Atlantic's energy program, design an Omni-Link System for Bell Atlantic, or to provide post-installation software and hardware maintenance for the Omni-Link System.[17] However, Powerweb's obligation to perform those tasks was to arise only upon execution of proposed agreements with Bell Atlantic that were never signed.

NewEnergy's allegations of breach are derived from the portion of the Contract that states:

> The specific form of profit distribution will be determined and agreed upon with both parties before the final development of contracts with Bell Atlantic. In these contracts
>
> **Powerweb will be responsible for:**
>
> (i)    creation of a detailed project implementation plan, schedule and cost analysis;
>
> (ii)    turnkey Design Engineer Procure Construct (EPC) of an Omni-Link system; [and]
>
> (iii)    post installation software and hardware maintenance of the Omni-Link system.[18]

NewEnergy overlooks the prefatory phrase "[i]n these contracts," which refers to the anticipated future "contracts with Bell Atlantic." The unambiguous meaning of the quoted language is that the anticipated future agreements with Bell Atlantic would include a provision requiring Powerweb to perform the listed tasks, not that Powerweb was obligated by the current Contract

---

17    <u>See</u> Second Amended Complaint at ¶ 35.

18    <u>See</u> Ex. A at 1 (emphasis in original).

to perform them. As NewEnergy has admitted numerous times, no such agreements were reached with Bell Atlantic.[19] Thus, Powerweb could not have breached the promise to include the specified requirements in any such nonexistent agreements.

The Contract also mentions the project implementation plan a second time, in the paragraph obligating NewEnergy to fund the development costs.[20] Even if that were construed as a separate promise, there still would be no breach, because the promise to complete the specified tasks was for a project that never came into being. Powerweb's obligation to prepare a project implementation plan assumed, and was conditioned on, the existence of a project to implement. Therefore, the alleged obligations never arose and could not have been breached. See Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board, 739 A.2d 133, 139 (Pa. 1999) ("Where a condition has not been fulfilled, the duty to perform the contract lays dormant and no damages are due for non-performance.").

Accordingly, NewEnergy has no basis for a breach of contract claim against Powerweb under any theory. Thus, summary judgment should be granted in Powerweb's favor on Count I of the Second Amended Complaint.

## C.    There Is No Basis for an Equitable Accounting.

In Count IV of its Second Amended Complaint, NewEnergy requests an accounting of the $100,000 that it provided to Powerweb. However, that is an equitable remedy and is not available in this case.

An equitable accounting is only available in situations where a fiduciary relationship exists between the parties, the accounts are mutual or complicated, or discovery is

---

[19]     See, e.g., Exh. D at 101:10 – 102:18, McGeown Dep., the relevant portions of which are attached hereto as Exhibit H, at p. 153:5 – 154:18; see also Second Amended Complaint ¶¶ 31 and 32.

[20]     See Exh. A. at 2.

needed and is material to the relief. Ebbert v. Plymouth Oil Co., 34 A.2d 493, 495 (Pa. 1943); Krasas v. Segal, 71 Pa. D. & C. 2d 179, 180 (Pa. Com. Pl. 1974). "Unless at least one such factor exists, the remedy at law is deemed adequate." Krasas, at 180.

NewEnergy cannot establish any of the factors necessary for an accounting. There is no fiduciary relationship between the parties sufficient to render an equitable accounting appropriate where the record evidences only a contractual relationship arising from an arms length negotiation between sophisticated businesses. Penn City Investments, Inc. v. Soltech, Inc., No. Civ. A. 01-5542, 2003 WL 22844210, at *10 (E.D. Pa. Nov. 23, 2003). As in Penn City Investments, the only relationship alleged in the Second Amended Complaint is contractual, not fiduciary.[21] Thus, NewEnergy has not even asserted the type of relationship that would give rise to the right to an equitable accounting.

Similarly, NewEnergy seeks an accounting of a fixed sum, deposited in a single transaction. A claim based upon a single transaction and a fixed sum has been found not to involve mutual or complicated accounts, such that an equitable accounting is required. See Krasas, 71 Pa. D. & C. 2d at 181.

Finally, "[e]quitable jurisdiction for an accounting does not exist merely because the plaintiff desires information that he could obtain through discovery." Buczek v. First Nat'l Bank, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987). Therefore, where the information requested is readily available through the discovery process, no accounting is warranted. See Pennsylvania Ship Supply, Inc. v. Fleming Int'l, Ltd., 113 F. Supp. 2d 760, 764 (E.D. Pa. 2000). Indeed,

---

[21]    In contrast, the confidentiality agreement relied upon in Powerweb's counterclaims established a fiduciary relationship with respect to the proprietary information that was improperly disclosed.

information regarding the expenditures by Powerweb was disclosed to NewEnergy through the discovery process.[22]

     For all of these reasons, an equitable accounting is inappropriate as a matter of law, and summary judgment should be granted in favor of Powerweb on Count IV of the Second Amended Complaint.

     **D.    There Is No Basis for NewEnergy's Unjust Enrichment Claim, Because the Parties' Relationship Was Governed by a Valid Contract and Because Powerweb Was Not Unjustly Enriched.**

     In Count V of its Second Amended Complaint, NewEnergy asserts a claim for unjust enrichment based on Powerweb's refusal to return the $100,000. However, an equitable claim for unjust enrichment is unavailable, because the parties' relationship was governed by a valid contract.[23]

     A claim for unjust enrichment "is not applicable to agreements deliberately entered into by the parties however harsh the provisions of such contracts may seem in the light of subsequent happenings." Third Nat'l Bank & Trust Co. v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (Pa. 1945); see also Birchwood Lakes Community Assn., Inc. v. Comis, 442 A.2d 304, 309 (Pa. Super. Ct. 1982) (stating that an unjust enrichment claim is not applicable where the relationship between the parties is based on an express agreement). Here, the Contract governs this aspect of the relationship between New Energy and Powerweb and the Contract does not obligate Powerweb to refund any money. NewEnergy cannot assert a claim for unjust enrichment because it now finds the operation of the Contract to be harsh in light of subsequent happenings.

---

[22]    See, e.g., deposition exhibits NE 54 and NE 55, attached hereto as Exh. I; Exh. C at 133:21-134:4; Exh. B at 400:2-5, 12-24; 560:4-561:23.

[23]    See Second Amended Complaint ¶42, Answer to Second Amended Complaint, Affirmative Defenses and Counterclaims, ¶ 42. There are a series of agreements between the parties, however, only the Contract relates to the $100,000 paid to Powerweb by NewEnergy.

Moreover, "The most significant element of the doctrine [of unjust enrichment] is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." Ameripro Search, Inc., at 991. Powerweb incurred expenses and completed the preliminary work necessary for the creation of a project implementation plan, schedule and investment analysis of an Omni-Link application for Bell Atlantic.[24] That was within the scope of the work that NewEnergy agreed to fund.[25] It would not be inequitable to allow Powerweb to retain the 100,000 payment when it incurred an even greater expense in reliance on the parties' Contract.[26] In fact, it would be a greater inequity to require Powerweb to return the funds to NewEnergy, when it is NewEnergy who elected to discontinue the venture after Powerweb had spent the money in reliance on the parties' Contract.

Thus, summary judgment should be granted in favor of Powerweb on Count V of the Second Amended Complaint.

## IV.     CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of Powerweb on all of NewEnergy's remaining claims.

---

[24]     See, e.g., Exh. B at p. 560:4-561:23, 565:8-19, Exh. C at 133:21-134:4

[25]     See Exh. A at p. 2.

[26]     See Exh. B at 560:4-561:23.

Respectfully submitted,


kc571


Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:   June 1, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing proposed order, motion and memorandum were served today upon counsel for Constellation NewEnergy, Inc. by hand delivery, addressed as follows:

David E. Landau, Esquire
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch St., 22nd Floor
Philadelphia, PA 19102

_____kc571_____
Kristin L. Calabrese, Esquire

Date:   June 1, 2004