IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-CV-2733 (HB) |
| | : | |
| v. | : | |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF CONSTELLATION NEWENERGY, INC.'S RESPONSE TO
POWERWEB'S MOTION FOR SUMMARY JUDGMENT**

**I.    PRELIMINARY STATEMENT**

Constellation NewEnergy, Inc. ("NewEnergy") asserts three claims against Powerweb Technologies, Inc. ("Powerweb") for breach of contract or, alternatively, unjust enrichment and an accounting. Powerweb seeks summary judgment on all three claims. The heart of the dispute involves Powerweb's wrongful retention of $100,000 of NewEnergy's money.

**II.    UNDISPUTED FACTS**

In 1999, Powerweb approached NewEnergy with a product which it purportedly designed for Bell Atlantic. Because NewEnergy was looking to expand its relationship with Bell Atlantic in the New Jersey region, it entertained Powerweb's proposal. NewEnergy entered into a narrow agreement pursuant to which Powerweb would supply the necessary hardware and software to facilitate Bell Atlantic's participation in certain energy savings programs being offered by local energy providers, with the idea that NewEnergy would supply energy to Bell Atlantic pursuant to this new program.

DSB:971346.3/AES003-158567

NewEnergy seeks the return of the $100,000 which it provided to Powerweb pursuant to the following provision in the Exclusive Agreement with Bell Atlantic (the "Agreement"):

> NEE agrees to fund project development costs of up to One Hundred Thousand Dollars ($100,000.00) for Powerweb to create a detailed project implementation plan, schedule and investment analysis of an Omni-Link application for Bell Atlantic . . . . Allocation and use of the funds will be subject to the sole approval of NEE in advance.

*See* Ex. A (PW-5).

The only approval given by NewEnergy for the use of the $100,000 was on March 3, 2000, when David McGeown authorized the expenditure of $5,000 to deliver opinions regarding regulations governing the operation of on-site generators. *See* Ex. B (PW-48). No further expenditures were authorized by NewEnergy. Powerweb failed to deliver these opinions, and did not present the plan, schedule and analysis for which this money was designated. Ex. C (McGeown Dep. 134:5-136:4). Powerweb's corporate designee and alter-ego, Mr. Budike, confirmed that Powerweb still retains this money. Ex. D (Powerweb Dep. 562:13-24). NewEnergy was never told what Powerweb had done, if anything, with the money. Ex. C (McGeown Dep. 244:8-10, 245:14-22).

Powerweb admits that the transaction with Bell Atlantic did not come to fruition because "due to unforeseen environmental permitting issues, Bell Atlantic decided not to proceed with the project in New Jersey." Def. Mem. at 4-5. The Agreement between the parties expired by its own terms (it was for a one year term), and no other projects commenced. *Id.*; *see also* Ex. A.

III. ARGUMENT

    A. **Powerweb Has Breached the Bell Atlantic Agreement and Must Return The $100,000.**

        1. **Powerweb Failed to Perform Under the Agreement**

"A breach of contract is a non-performance of any contractual duty of immediate performance." *Barnes v. McKellar*, 434 Pa. Super. 597, 608, 644 A.2d 770, 775 (1994) (citations omitted) (finding a breach when a party failed to fulfill his obligation under the agreement of sale). The express language of the Agreement states that "NEE agrees to fund project development costs of up to One Hundred Thousand Dollars ($100,000.00) for Powerweb to create a detailed project implementation plan, schedule and investment analysis of an Omni-Link application for Bell Atlantic." Ex. A. Powerweb did not fulfill its obligation under the Agreement to provide NewEnergy with these items. *See* Ex. C.; Ex. E (Curnyn Dep. 157:8-158:7). The entire purpose of the money was to fund planning and implementation for the Bell Atlantic project. Powerweb does not challenge its non-performance. Def. Mem. at 9. Powerweb proffers no evidence that it used any part of the $100,00 for "planning and implementation." Instead, it hopes to keep the money. Powerweb is in breach, and NewEnergy should be placed in the position it occupied prior to the breach. *See The Mountbatten Sur. Co., Inc. v. Brunswick Ins. Ag'y*, No. Civ.A. 00-CV-1255, 2001 WL 34371699, at *15 (E.D. Pa. Nov. 13, 2001) (defendant breached agreement when it released bonds prior to obtaining plaintiff's approval).

    Hoping to avoid the plain impact of its failure to have performed under the contract, Powerweb attempts to characterize Powerweb's obligation as extinguished because a condition precedent to Powerweb's performance did not occur. Def. Mem. at 9-10. In support of this distraction, Powerweb misleadingly points to an inapposite provision of the Agreement relating

to profit distribution rather than the controlling provision relating directly to the $100,000 for development costs.[1]  *Id.*

Powerweb surprisingly argues that even applying the correct provision, there was no breach because the obligation to prepare a project plan never arose.[2]  Def. Mem. at 10.  Nothing in the language suggests that Powerweb's duty to create a detailed project implementation plan, schedule and investment analysis of an Omni-Link application for Bell Atlantic was contingent upon a signed contract with Bell Atlantic.  *See First Capital Corp. v. Country Fruit, Inc.*, 19 F. Supp. 2d 397, 400-1 (E.D. Pa. 1998) (granting summary judgment in favor of plaintiff on breach of contract claim).  Reading the contract, together with the undisputed fact of NewEnergy's request for the expenditure of $5,000, there is no logical explanation--and Powerweb doesn't posit one--other than that the tasks allocated to Powerweb were given it pursuant to the contract.  There is no evidence that Powerweb performed even these minimal duties, much less that it appropriately expended any other funds (again, there is no evidence that NewEnergy approved any other expenditure).

Powerweb never explains:  (a) what it did to earn the $100,000 and (b) why it should (as a matter of contract) be permitted to keep unearned money.  Powerweb is in breach of its obligation to create a detailed project implementation plan.  Summary judgment is appropriate in NewEnergy's favor, and the $100,000 should be returned.

---

[1]  The transaction with Bell Atlantic never proceeded; there were no profits.

[2]  For this argument, Powerweb cites *Shovel Transfer and Storage, Inc. v. Penn. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999).  In that case, the court found that the defendant breached the contract and remanded for a determination of damages.

## 2. Powerweb Is Obligated to Return $100,000

Because the Agreement expired by its own terms on January 7, 2001, and these funds[3] were never allocated or authorized to be spent, summary judgment is appropriate in favor of NewEnergy and judgment should be entered for $100,000, plus interest. *See McDermott v. Party City Corp.*, 11 F. Supp. 2d. 612, 632 (E.D. Pa. 1998) (citations omitted). According to Powerweb, the $100,000.00 which was provided for the creation of a project implementation plan, schedule and investment analysis is still being held by Powerweb, but appears in Powerweb's books and records as "an outstanding bill to A-Valey Engineers[4] for engineering services on this project." Ex. D (Powerweb Dep. 565:6-13). There is, however, no evidence that Powerweb ever spent the money, that A-Valey has made any genuine effort to collect this supposedly outstanding amount,[5] or that any collection efforts would be within any applicable statute of limitations.[6] Finally there is no evidence of how these engineering services invoices supposedly satisfied the requirement that Powerweb use the money to create a project implementation plan, schedule and investment analysis of Omni-Link. And, of course, no work product from these invoices was ever given to NewEnergy, save for the invoices themselves (between A-Valey and Powerweb) which were produced pursuant to a subpoena as part of

---

[3]   Powerweb failed to deliver the opinions regarding regulations governing the operation of on-site generators for which the $5,000 was designated. *See* Ex. C.

[4]   A-Valey Engineers ("A-Valey") is owned by Lothar Budike, Sr., Mr. Budike's father. Mr. Budike, Sr. owns 400,000 shares in Powerweb and has also made significant loans to Powerweb. Ex. F (A-Valey Dep. 13:12-18:23).

[5]   "Q. You haven't started any kind of lawsuit against Powerweb?  A.  No, come on, no." Ex. F (A-Valey Dep. 127:24-128:2).

[6]   Under Pennsylvania law, the statute of limitations for a breach of contract claim is four years. *See* 42 Pa. C.S. § 5525. The work performed for Powerweb by A-Valey is more than four years old, and the last A-Valey invoice to Powerweb is dated May 20, 2000. *See* Ex. F (A-Valey Dep. 120:23-121:11).

discovery in this case. *See* Ex. G (NE-55).

Powerweb argues that it can keep the money because the Agreement does not explicitly require its return. Def. Mem. at 7. The Agreement, however, states that "[i]f Bell Atlantic does not proceed with the project unused funds will be allocated to joint development of other opportunities." Ex. A. These opportunities never came to fruition either, leaving Powerweb to argue that the contract implicitly permits it to run off with the money. The contract, of course, doesn't provide for that result. *Id.*

The contract provided how the $100,000 was to be spent and that only NewEnergy could approve any expenditures. *Id.* New Energy approved only $5,000 of expenditures, and there is no evidence that Powerweb even incurred these costs. The contract provides that unused funds could be used for other "opportunities." But these didn't transpire. Then, the contract expired. New Energy is entitled to the funds it advanced for development costs that were never incurred for a project that never happened. NewEnergy requests that this Court dismiss Powerweb's motion for summary judgment and grant NewEnergy's motion for summary judgment regarding Powerweb's breach of contract.

### B. Powerweb Has No Right to the $100,000 and Equity Demands That the Money Be Refunded to NewEnergy

In the event that the Court determines that the Agreement does not explicitly mandate that Powerweb refund the $100,000, NewEnergy seeks equitable relief in the form of unjust enrichment.[7] The elements needed to establish a claim for unjust enrichment are: "benefits

---

[7] NewEnergy may recover under a quasi-contract theory and may also seek damages under a breach of contract theory. *See United Nat'l Ins. Co. v. Equip. Ins. Mgrs.*, No. 95-0116, No. 95-2892, 1995 U.S. Dist. LEXIS 15868, at *22-3 (E.D. Pa. Oct. 27, 1995) (to the extent that plaintiffs have asserted claims not based in express contract, or do not prove actual contractual undertakings, but prove defendants have wrongfully benefited from the dealings between the parties, plaintiffs could recover under unjust enrichment); *see also Allied Fire & Safety Equip.*

conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995). Recovery for unjust enrichment requires that "the party against whom recovery is sought either wrongfully or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Torchia on Behalf of Torchia v. Torchia*, 499 A.2d 581, 582 (1985) (finding that it would be unjust to allow wife to retain proceeds of a policy in preference to the children).

NewEnergy conferred a benefit of $100,000 on Powerweb. Powerweb still has this money in its possession and has proffered no evidence that it used these funds for development or implementation costs. Powerweb has produced no work to NewEnergy as a result of this expenditure, and NewEnergy has received no benefit from it. It would be inequitable to allow Powerweb to retain the money. *See Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 677, 686 (M.D. Pa. 1994) (finding that if plaintiff fails to establish a contract, he still may be able to show unjust enrichment); *see also Schenck*, 666 A.2d at 328 (key factor in deciding whether plaintiff can recover under this theory is whether the enrichment is unjust).

Powerweb argues that the Agreement "did not require Powerweb to return any of the funds under any circumstances . . . ." and that Powerweb refused to sign the Agreement with such a requirement.[8] Def. Mem. at 5. NewEnergy's recovery on a quasi-contract theory, however, does not require that an expression of assent exists, and "indeed may be found in spite

---

*Co. v. Dick Enters., Inc.*, 886 F. Supp. 491, 495 (E.D. Pa. 1995) (allowing unjust enrichment claim to withstand motion to dismiss).

[8]   As Powerweb acknowledges, such evidence is inadmissible "in expounding written contracts to prove that other terms were agreed to . . . or that the parties had other intentions than those to be inferred from it." Def. Mem. at 7 (citing *West v. Smith*, 101 U.S. 263, 271-2 (1879)).

of the party's contrary intention." *Nabisco, Inc. v. Ellison*, No. 94-1722, 1994 U.S. Dist. LEXIS 16041, at *9-10 (E.D. Pa. Nov. 9, 1994) (citation omitted). The focus in determining whether unjust enrichment applies is not on the parties' intentions but "on whether the defendant has been unjustly enriched." *Schenck*, 666 A.2d at 328. Powerweb has $100,000 of NewEnergy's money in its coffers, and NewEnergy has nothing to show for it.

Further, Powerweb's assertion that "it would be a greater inequity to require Powerweb to return the funds to NewEnergy, when it is NewEnergy who elected to discontinue the venture after Powerweb had spent the money in reliance on the parties' Contract" is an outlandish misstatement of the record. Def. Mem. at 13. As Powerweb admits in its undisputed facts, "due to unforeseen environmental permitting issues, Bell Atlantic decided not to proceed with the project in New Jersey. The Contract then expired without any other projects being jointly undertaken." Def. Mem. at 4-5 (emphasis added).

### C. Powerweb Should Provide an Accounting to Show NewEnergy the Fate of the $100,000.

As an alternative to its breach of contract claim, NewEnergy seeks an equitable accounting from Powerweb regarding the $100,000. An equitable accounting is appropriate under these circumstances--when discovery is needed and material to relief, or where plaintiff does not have an adequate legal remedy. *See Meier v. Maleski*, 648 A.2d 595, 606 (Pa. Commw. Ct. 1994).

While NewEnergy agrees that no fiduciary relationship exists between the parties and the account should not be too complicated, NewEnergy disagrees that the information regarding the odyssey of the $100,000 was made available in discovery or that it has been explained at all. Throughout the discovery process, NewEnergy sought the details surrounding Powerweb's use of the $100,000 but has never received an honest, complete answer. *See* Ex. D (Powerweb Dep.

560:4-564:20).[9]  Powerweb's failure to provide NewEnergy with a simple explanation forces NewEnergy to retain its accounting claim.  Unpaid bills produced by the defendant's father, without any actual evidence of the underlying work that was allegedly performed, is suspect at best and insufficient to satisfy NewEnergy's demand for an accounting.  *See* Ex. G.

Under Pennsylvania law, a legal accounting is required if the defendant has breached its contract with the plaintiff.  *See Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001).  To support a claim for a legal accounting, NewEnergy must show:

> (1) there was a valid contract, express or implied between the parties whereby the defendant received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant . . . and (2) that the defendant breached or was in dereliction of his duty under the contract.

*Id.*  NewEnergy's requirement that Powerweb not use any portion of the $100,000 absent approval from NewEnergy and the restrictions attached to Powerweb expenditures imposed on Powerweb a legal obligation to account to NewEnergy.  Powerweb has resolutely refused to enlighten NewEnergy or this Court as to the status of this $100,000.  The money should be returned.

---

[9]   Powerweb's double-talk on this issue is typified in the following exchange:  Q: "How is that money spent?  Was it spent?"  A: "No, not particularly, not all of the money.  I mean, it was spent in my mind, basically, because the bill from -- from A-Valey is over $100,000."  Ex. D (Powerweb Dep. 564:5-10).

IV. CONCLUSION

Because Powerweb has no defense to NewEnergy's claim for the return of the $100,000, judgment should be entered in favor of NewEnergy and against Powerweb.

                Wolf, Block, Schorr & Solis-Cohen LLP

                By:    s/DL422
                    David E. Landau, I.D. #43341
                    Matthew A. White, I.D. #55812
                    Zachary C. Glaser, I.D. #85979
                    Jennifer C. O'Neill, I.D. #89755
1650 Arch Street, 22nd floor
Philadelphia, PA 19103-2097
(215) 977-2000

Dated: June 15, 2004