IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-CV-2733 (HB) |
| | : | |
| v. | : | |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CONSTELLATION
NEWENERGY, INC.'S MOTION TO STRIKE THE SECOND EXPERT REPORT OF
<u>CONSTANTINOS PAPPAS AND PRECLUDE EVIDENCE</u>**

**I.     INTRODUCTION**

Long after the Court's deadline for submitting expert reports had passed, Defendant Powerweb Technologies, Inc. ("Powerweb") served additional expert reports from both of its experts. The first report from Dr. Peter Fox-Penner updated his initial report based on the critique of Plaintiff Constellation NewEnergy, Inc.'s ("NewEnergy") experts. The other report, that of Constantinos Pappas, CPA, however, did not merely update its calculations or provide corrected information. Rather, Mr. Pappas submitted a report which identified for the first time thirteen utilities for which Powerweb allegedly lost business to competitors RETX and Silicon Energy based on NewEnergy's alleged breach of the Non-Disclosure Agreement at issue in this case. By failing to disclose the identities of these thirteen utilities, either in Initial Disclosures or in response to specific written discovery requests, Powerweb has ambushed NewEnergy with less than six (6) weeks remaining to trial.

Moreover, Mr. Pappas' second report throws out the methodology for calculating most of Powerweb's damages and substitutes instead an entirely new methodology for calculating damages. This violates the Federal Rules of Civil Procedure as well as the Court's scheduling

order and severely prejudices NewEnergy in its trial preparation. Accordingly, NewEnergy has moved for preclusion of damages based on the thirteen lost contracts and moved to strike the second Pappas report.

## II.   FACTUAL BACKGROUND

### A.   Powerweb's Initial Disclosures

Powerweb's initial disclosures did not identify any non-party witness with knowledge or information about Powerweb's attempts to compete with RETX or Silicon Energy for the thirteen contracts. Peter Scarpelli, a RETX employee, is listed as a potential witness, but the subject about which Powerweb disclosed that Scarpelli had knowledge was limited to "[b]usiness dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb." (Disclosures, Exhibit A at 5, ¶ 31). Not one of the thirteen companies now at issue was identified. With respect to the mandatory disclosure of categories of documents supporting Powerweb's claims, there is no mention of RETX or Silicon Energy, no bid proposals submitted to utilities, no presentations to the thirteen companies or documents reflecting the utilities' selection of RETX or Silicon Energy instead of Powerweb. *Id.* at 6. Powerweb disclosed that its "damages include expenses related to the Bell Atlantic project and lost profits on that project and many others, the full extent of which has not yet been determined." *Id.* at 7. At no time did Powerweb serve supplemental disclosures with respect to lost bids to RETX or Silicon Energy.[1]

---

[1] This omission is particularly glaring in light of Powerweb's allegation in the Amended Counterclaim that non-parties, CILCO and RETX, who Powerweb attempted (but failed) to drag into this litigation, conspired to use Powerweb's Energy Technology information to develop a product to compete with Omni-Link, causing Powerweb to lose profits. Am. C.C. ¶¶ 154-156. The claims against RETX and CILCO were dismissed.

B.     **NewEnergy's Written Discovery Requests and Powerweb's Responses**

In its written discovery, NewEnergy requested that Powerweb "state each separate category of damages you claim and the amount of damages you claim and the amount of damages for each category." Third Set of Interrogatories, Number 34. In response, Powerweb did not identify any information with respect to damages. Rather, it simply referred to its anticipated expert reports:

> **RESPONSE:** Powerweb incorporates here all of the "general objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: At trial, Powerweb will offer expert testimony as to the measure of damages to which Powerweb is entitled as a result of NewEnergy's outrageous, fraudulent and deceptive conduct. Powerweb's experts will be disclosed in this litigation in accordance with the Court's First Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure.

Ex. B.

NewEnergy also asked Powerweb to identify each document that related to its claim for damages. In response, Powerweb gave the virtually identical response to Interrogatory 34, merely stating that its expert report would be disclosed in accordance with the Scheduling Order and that it was gathering documents from NewEnergy and non-parties. *Id.* It identified no documents responsive to the interrogatory. *Id.* These interrogatory responses have never been supplemented.

By March 1, 2004, the close of discovery in this case, Powerweb never identified a single utility with which it had prospective contractual relations which it claimed to have lost due to premature competition. Nor had Powerweb identified any documents which would contain the information responsive to NewEnergy's damages interrogatories. Based on all of the disclosures, depositions, document subpoenas, written discovery and documents produced,

NewEnergy had no notice that Powerweb would base its claim for damages on lost contractual relations with thirteen specific utilities.

      **C.**    **The First Pappas Report**

On April 1, 2004, Powerweb served the expert report of Constantinos Pappas, CPA, attached hereto as Exhibit C. Mr. Pappas is proffered as an expert although he is the Chief Financial Officer of Powerweb as well as its regular outside accountant. Mr. Pappas calculated Powerweb's lost profits stemming from alleged breaches of contract in four categories relating to Powerweb's lost opportunity to market its Omni-Link system and other services to NewEnergy's customers, to Bell Atlantic, to Baltimore Gas & Electric ("BG&E") and to thirteen unidentified utilities. The potential contracts with the last category of companies, according to Pappas, were lost to Powerweb as a result of premature competition because of NewEnergy's breach of the Non-Disclosure Agreement. Mr. Pappas did not discuss or disclose the identity of any of the companies with which Powerweb allegedly lost contracts, did not disclose the basis for his selection of these utilities, and did not mention any documents as other information relied upon for his inclusion of the utilities in his damage calculation.

Mr. Pappas' methodology -- which was dropped in his second report -- attempts to calculate the profits per utility for sales of Omni-Link load management by using forecasts which Dr. Peter Fox-Penner had devised to describe NewEnergy's ability to sell load management services to its commercial and industrial customers. Mr. Pappas assumed that Powerweb's revenues under contracts which each of these unnamed utilities would have been identical to those anticipated under Powerweb's BG&E contract. Using this methodology, Mr. Pappas concludes that Powerweb would have earned almost $27 million in load management profits between 2002 and 2004. Exhibits F and G to Pappas' First Report.

Mr. Pappas next calculation -- which was also dropped in his second report -- attempted to predict the percentage of load management customers of each unnamed utility who would have also purchased additional energy management services from Powerweb based on a market potential survey prepared specifically for BG&E (PWeb 164).[2]  These sums are not part of the Omni-Link Systems as mentioned in the Amended Counterclaims.  Mr. Pappas used the results of an internet survey of BG&E customers in 2001 to estimate the rate at which BG&E's load management customers might buy additional energy services.  By multiplying this rate by the number of load management customers assumed for each utility, Mr. Pappas attempted to calculate energy management profits per utility.  This number was multiplied by 13 to come up with an additional $9 million in lost energy management profits.

### D. The Second Pappas Report

On April 1, 2004, NewEnergy served three responsive expert reports, each highly critical of Mr. Pappas' assumptions, methodology and calculations.  Almost a month later, and seven weeks after Powerweb's expert reports were served, Mr. Pappas submitted a new report, attached hereto as Exhibit D.  This new report, served three months after the close of discovery, identified for the first time the names of the thirteen utilities and drastically changed the methodology by which lost profits are calculated.

It turns out these utilities are companies which chose two of Powerweb's competitors for load management.  The second Pappas Report, like the first, identifies no documents relied upon for the identification and selection of these utilities.  Powerweb has never produced any

---

[2]   It is never made clear what "energy management services" refer to in this section, nor has it ever been suggested prior to Mr. Pappas' report that Powerweb would be seeking damages based on services that it purports to provide in addition to its Omni-Link System.  No pleadings or disclosures have been made on this subject.

documents related to its efforts to obtain business from these utilities, its bids, or the process by which RETX or Silicon Energy's products were chosen.[3]

In addition, the entire methodology by which Mr. Pappas attempted to calculate lost profits is replaced in the new report. Rather than using Dr. Fox-Penner's forecasts as to NewEnergy's ability to sell load management services and the BG&E forecast to predict which of those customers would also buy energy management services, Mr. Pappas instead incorporates, "Powerweb's experience under its current contracts." This new methodology generates a rate so significantly higher than that in either of Powerweb's original expert reports that Powerweb's projected energy management profits for only 11 of the original 13 contracts (two utilities were dropped from the calculus) jumped by approximately 600%.

### E.     Procedural History.

When the second Fox-Penner report was served, NewEnergy raised questions about the propriety of supplementing reports. The parties reached an agreement that supplemental reports could be served, but at the time, the second Pappas report had not yet been submitted. During negotiations, NewEnergy was never made aware that Mr. Pappas was going to identify new information which previously had not been disclosed during discovery, nor was it advised that Mr. Pappas was going to throw out his methodology from his first report. NewEnergy certainly did not waive any of its rights to assert discovery violations, violations of the Federal Rules, or the Court's scheduling order. Dr. Fox-Penner was deposed on Friday, June 18, 2004. At his

---

[3]     In negotiation over this dispute, Powerweb's counsel stated that the identity of these companies was disclosed on a CD-Rom labeled PW002290. This CD contains Powerweb marketing information, project files and PowerPoint presentations relating to hundreds of potential customers, utilities and energy aggregators to which Powerweb has unsuccessfully marketed over the years. It was never identified in response to Interrogatory 35. It contains no information indicating which of the utilities sought or received proposals from Powerweb, and in any event, there are no documents relating to most of the thirteen utilities.

deposition, Powerweb's counsel moved the target again based on Mr. Pappas' new calculations -- raising the highest possible damage figure to over $145 million. Of this astronomical figure, Dr. Fox-Penner was only willing to vouch for the accuracy of approximately $3 to 5 million. Mr. Pappas is scheduled to be deposed during the week of June 28, 2004.

### III. ARGUMENT

#### A. Evidence of the 13 Previously Unnamed Utilities Should be Precluded.

The Federal Rules of Civil Procedure require notice pleading, disclosures and discovery to avoid undue surprise and resulting prejudice to parties. At no time in pleadings, disclosures or in discovery did Powerweb put NewEnergy on notice that it intended to seek damages relating to thirteen specific utilities which entered into contracts with RETX or Silicon Energy instead of Powerweb. This category of damages was not even mentioned until the service of Mr. Pappas' first report, and not specifically disclosed until Mr. Pappas' second report -- 3 months after the close of discovery.

Rule 26(e)(2) of the Federal Rules of Civil Procedure requires a party to amend a prior response to an interrogatory or request for production of documents "if the party learns that the response is in some material respect incomplete or incorrect and the additional corrective information is not otherwise has been made known to other parties during the discovery process or in writing." Rules 37(c) provides for sanctions for failure to disclose or to supplement incomplete or inaccurate interrogatory answers pursuant to Rule 26(e)(2).

> A party without substantial justification fails . . . to amend a prior responses discoveries required by Rule 26(e)(2), is not, unless such failures are harmless, permitted to use as evidence at trial, at a hearing, or at a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c) (emphasis supplied).

Here, Powerweb has failed to comply with its obligations under Rule 33 in answering interrogatories in the first instance and, under Rule 26(e)(2), in supplementing the interrogatory answers. By failing to comply with its obligations under the Rules, Powerweb has precluded NewEnergy from taking discovery on the factual basis of its damage claims. Had it been made known to NewEnergy during discovery that Powerweb intended to seek damages for thirteen specific contracts, NewEnergy would have been able to subpoena third parties and seek records to test the veracity of Powerweb's damage claim. For example, although Powerweb boldly asserts it lost contracts, these companies might have documentation or give testimony which say that Powerweb was never in contention for such contracts or that the contracts would have been worth far less than Mr. Pappas assumes them to be worth.

With respect to the CD-Rom which Powerweb produced, Rule 33(d) provides that a party may produce documents in responses to an interrogatory but only if those documents are specifically identified.

> A specification shall be in sufficient detail to permit the interrogatory party to locate and to identify, as readily as can the party served, the record from which the answer can be ascertained.

Fed. R. Civ. P. 33. Powerweb never identified this CD-Rom or the PowerPoint presentations as containing responsive information to Interrogatories 34 and 35. Even if it had, the information contained on the CD-Rom did not identify any particular prospects (among hundreds) that would serve as the basis for Powerweb's damages.

The sanction for Powerweb's breach of the Federal Rules is preclusion of the supplemental expert report. In considering whether the exclusion of evidence is appropriate as a sanction under Rule 37, this court should consider the following four factors:

1. the prejudice or surprise to NewEnergy;
2. Powerweb's ability to cure the prejudice;

> 3. the extent to which permitting the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
>
> 4. bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Stein v. Foamex Int'l., Inc.*, Civ. No. 00-2356, 2001 U.S. Dist. LEXIS 1221, at *9 (E.D.Pa. Aug. 15, 2001) (granting motion to preclude late expert disclosures)(citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994); *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)).

Discovery ended long ago. Summary judgment has been filed. This case goes into the trial pool on August 2, 2004. The only way to avoid prejudice in this instance would be to reopen discovery and permit NewEnergy to depose and seek documents from each of the thirteen utilities, to depose a representative from Silicon Energy and to redepose a representative from RETX and Powerweb. The would be extremely costly and time consuming -- involving nationwide travel and potential discovery battles in other jurisdictions. It is simply too late for Powerweb specifically to identify lost contracts as a basis for its damage claim for the first time. The general failure of Powerweb's counsel "to supplement discovery as promised and as required by the Federal Rules . . . intimates bad faith." *Ware Communications, Inc. v. Rodale Press, Inc.*, Civ. No. 95-5870, 2002 WL 89604, at *5 (E.D. Pa. Jan. 23, 2002) (precluding plaintiff's damages evidence based on failure to properly disclose expert opinions) (quoting *Sheppard v. Glock, Inc.*, 176 F.R.D. 471, 477 (E.D. Pa. 1997)). Accordingly, all the factors necessary for preclusion are present and the damages claim for the thirteen utilities should be precluded.

In the alternative, should the court decide that preclusion is not warranted, then NewEnergy respectively requests an opportunity to attempt to cure the prejudice by subpoenaing and taking trial depositions of these third parties and of Powerweb.

>   B.  **The Supplemental Pappas Report Should Be Stricken Because It Violates Rule 26(a)(2) and the Court's Scheduling Order.**

The supplemental Pappas report is also defective because it wholly changes the methodology for calculating damages. The Scheduling Order in this case requires that the reports of experts be made by April 1, 2004. Rule 26(a)(2), requires that expert reports, "shall contain a <u>complete</u> statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions." (emphasis supplied). Although Rule 26(e) requires supplementation of a report in the situations where new facts may arise or incorrect information is discovered, Rule 26(e) does not permit a wholesale revision of the methodology by which an expert arrives at its conclusions.

Rule 26(a) has to read in conjunction with Rule 26(e) and the Court's Scheduling Order.

Here, NewEnergy's experts pointed out certain inaccuracies and incorrect information in the expert reports of Powerweb. Powerweb's other expert, Dr. Fox-Penner, acknowledged some of the errors NewEnergy's experts identified and, in a supplemental report, made corrections. The new methodology in the Pappas report, however, is no mere correction. Rather, Mr. Pappas throws out his entire damage calculation on the thirteen loss contracts under one method and substitutes instead a different methodology for calculating damages. If Mr. Pappas is permitted to substitute an entirely new opinion at this late stage, it would render the scheduling order and the requirements of Rule 26(a)(2) meaningless. Any expert would be able to review a response for report and issue a completely new report using a new methodology shortly before trial.

A similar issue was addressed in *Stein v. Foamex, supra,* 2001 U.S. Dist. LEXIS 12211, a memorandum opinion granting a motion to preclude an affidavit filed by an expert which contained expert disclosures not found in that experts original report. *Id.* at *5-6. The court considered the two situations when the Rules permit supplemental expert reports -- rebuttal

opinions under Rule 26(a)(2)(c) and supplementing reports containing incomplete or incorrect information under Rule 26(e)(1) -- and concluded that the additional submission filed by the plaintiff's expert did not qualify as a supplemental report:

> Stein would have the court allow him to file preliminary expert reports and freely supplement them with information and opinions it should have been disclosed in the initial report. This result would effectively circumvent the requirement for the disclosure of a timely and incomplete expert report. . . allowing preliminary expert reports as a matter of course would afford litigants an opportunity to "mold their expert reports to meet their [opponents} and legal challenges."

*Id,* at *18-19 (citations omitted). Accordingly, the supplemental Pappas report should be precluded.

## IV.   CONCLUSION

For the foregoing reasons, NewEnergy's Motion to Strike the Second Expert Report of Constantinos Pappas and Preclude Evidence should be granted.

Respectfully submitted,

WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP


      s/DL422
David E. Landau
Matthew A. White
Zachary C. Glaser
Jennifer C. O'Neill
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania 19102-2097
(215) 977-2000

*Attorneys for Plaintiff,
Constellation NewEnergy, Inc.*

Dated:  June 21, 2004