IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSTELLATION NEWENERGY, INC., | : |
| | : |
| Plaintiff, | : Civil Action No. 02-CV-2733 (HB) |
| | : |
| v. | : |
| | : |
| POWERWEB TECHNOLOGIES, INC., | : |
| | : |
| Defendant. | : |

**PLAINTIFF CONSTELLATION NEWENERGY, INC.'S REPLY TO POWERWEB'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   PRELIMINARY STATEMENT**

Powerweb's attempt to generate a disputed fact and prevent summary judgment should fail. Powerweb smudges the record and fails to answer the simple challenge posed by NewEnergy in its Motion for Summary Judgment: <u>what</u> confidential information did Powerweb give to NewEnergy and <u>how</u> did NewEnergy supposedly use it to Powerweb's detriment? When the Court peruses Powerweb's proffered "disputed" "facts" (principally espoused in Mr. Budike's new affidavit), the answers are not forthcoming and, for purposes of summary judgment, must be answered against Powerweb.

Nor does Powerweb mount a serious challenge to the straight-forward legal precepts that work to preclude its tort claims. Under well-established Pennsylvania law, Powerweb's tort claims are simply recast contract claims. This fact precludes the redundant causes of action sounding in tort.

In addition, Powerweb leaps directly to the conclusion that NewEnergy has breached its fiduciary duty to Powerweb and its duty of good faith and fair dealing without explaining to NewEnergy or the Court any factual basis for the existence of this fiduciary relationship. Powerweb also ignores the legal arguments necessary to prevent summary judgment on its BG&E tortious interference claim. Its innuendos are insufficient to defeat summary judgment, especially under the more strenuous legal hurdles that Powerweb must overcome to succeed under Maryland law.

Finally, Powerweb relies on a single sentence allegedly uttered by David McGeown in an effort to create a disputed material fact to avoid summary judgment on NewEnergy's breach of contract claim. "Get it done" is insufficient to get this claim in front of a jury.

Thus, as a matter of fact and of law, summary judgment should be entered against Powerweb.

**II.    ARGUMENT**

    **A.    Powerweb Fails to Create An Issue of Disputed Fact on its Contract Claims and its Tort Claims.**

From the time Powerweb asserted its counterclaims, NewEnergy has been pressing Powerweb to describe with particularity precisely what information (whether it be a trade secret or contractually protected "Energy Technology") was made available to NewEnergy and how that information was purportedly used. NewEnergy's Requests for Trade Secret Information were entirely devoted to this end and included both interrogatories and document requests. *See* Ex. A. Powerweb responded with vague references to "methods for monitoring energy usage, monitoring trading prices . . . use of the Internet to provide such services . . . the infrastructure needed to develop and deploy a comprehensive platform to interpret load data . . . ." Ex. B.

Powerweb's "final answer" is set forth in the newly minted affidavit of Lothar Budike, Jr. *See* A1 to Powerweb's Mem. in Opp. to NewEnergy's Motion for Summary Judgment ("PW Resp.").

The sum of the confidential and proprietary information that Powerweb claims to have provided to NewEnergy is set forth in paragraphs 18 through 26 of Mr. Budike's affidavit.[1] *See* A1 to PW's Resp. None of this is sufficient to establish a fact of disclosure:

- In paragraph 18, Mr. Budike vaguely describes how he told NewEnergy about pricing matters and that he gave NewEnergy a list of companies that would be prime candidates to use Omni-Link. He gives no specifics (i.e., the name of any companies, the price lists, etc.) and does not allege how this information is a trade secret or confidential.

- In paragraph 19, Mr. Budike states that he showed NewEnergy software using a NewEnergy computer. He does not allege how this demonstration was confidential or secret, or even what information was specifically revealed. Nor does he state that he gave this software to NewEnergy.

- In paragraph 20, Mr. Budike again claims that he showed NewEnergy a demonstration. Again, he alleges nothing confidential or proprietary about this demonstration, nor does he state that he actually provided NewEnergy with anything concrete.

- In paragraph 21, Mr. Budike states that NewEnergy was provided with computer passwords to view Powerweb's product. He does not state that NewEnergy ever availed

---

[1] NewEnergy's Memorandum of Law in Support of its Motion for Summary Judgment has summarized the lack of any disclosure to it of Energy Technology. *See* CNE Mem. at 4-7, 18-21. It was incumbent upon Powerweb to dispute these facts. *See Parry v. Jackson Nat'l Life Ins. Co.*, 54 F. Supp. 2d 473, 477 (E.D. Pa. 1999) (a party cannot defeat summary judgment simply by denying facts or by making conclusory statements).

itself of this opportunity to review any program or learned anything confidential and proprietary from doing so.

- In paragraph 22, Mr. Budike alleges that he showed a NewEnergy representative an actual installation of Omni-Link in a Bell Atlantic facility. The description reveals that Mr. Budike showed NewEnergy wires and controls -- he does not say how this is protected Energy Technology.  Nor does not he state that anything was given to NewEnergy during this one and only visit. This visit also would reveal that Powerweb's product could access the internet.  This could not possibly be confidential, it is, in fact, Powerweb's raison d'etre.

- In paragraph 23, Mr. Budike states that NewEnergy was given a list of hardware components. This list is not attached, nor is there evidence of its transmittal to NewEnergy.  Mr. Budike self-servingly opines that Mr. McGeown's one visit, coupled with this unidentified list of hardware, could have enabled NewEnergy to reverse engineer the entire system, but not one fact is identified to support this conclusion. Notably absent is any expert opinion to support Mr. Budike's opinion. *See Harkovich v. Keene Corp.*, 745 F.Supp. 1062, 1064 (M.D. Pa. 1989) (granting motion for summary judgment because the evidence submitted in affidavits was insufficient proof). Powerweb does not point to one document, one portion of deposition testimony, or any valid expert opinion to support this bald, self-serving argument.  This cannot be the basis for a disputed fact.

- In paragraph  24, Mr. Budike claims to have shown a demonstration to Jim Curnyn, David McGeown and Brian Hayduk.  Again, no details are given to support a finding that

confidential or proprietary information were involved, and nothing is alleged to have been actually given to NewEnergy.

- In paragraph 25, Mr. Budike admits that the only item he sent to Mr. Scarpelli was a "demonstration CD."

- In paragraph 26, Mr. Budike claims to have conveyed some other "information" to Mr. Scarpelli. He does not identify this other information at all.

At the end of the day, there is simply no evidence -- and 22 pages of argument to the contrary doesn't change the fact -- that Powerweb gave NewEnergy anything confidential or proprietary.

Further, Mr. Budike's affidavit, and the entire 4 inches of paper upon which Powerweb hopes to generate some disputed fact, is silent on the most crucial point: whether NewEnergy used this purportedly confidential information in any way. Whether under tort or contract, Powerweb must still, pursuant to Rule 56, show that there is some disputed fact. NewEnergy has established that it did not use Powerweb's technology. Powerweb fails to dispute this and, as a result, cannot survive NewEnergy's motion for summary judgment on any theory of liability.

### B. Powerweb's Tort Claims are Coterminous with its Contract Claims and Are Barred.

As a matter of law, Powerweb's tort claims should be dismissed. The Court need look no further than Powerweb's own brief for proof that Powerweb's tort claims are, in fact, different labels affixed to its existing contract claims. Powerweb admits that it is unable to assert any difference between its tort claims and its contract claims. *See* PW Resp. at 14. It simply states that, hypothetically, there could be a difference, which "cannot be determined at this stage." Moreover, Powerweb's own damages expert reports only discuss damages in relation to breach

of written agreements.  *See* Ex. C (Expert Report by The Brattle Group at 1); Ex. D (Expert Report by Pappas & Co. at 1, 4, 5).  This failure to address any damages related to Powerweb's tort claims is evidence that even Powerweb views its damages as based only in contract.

The time for Powerweb to explain any purported difference between its tort and contract claims is now.  Put simply, Powerweb does not tell the Court how NewEnergy's purported use of Powerweb's Energy Technology that is the subject of the Non-Disclosure Agreement is not the "gist of the action," rather than some nebulous tort claim.

Similarly, Powerweb's efforts to skirt its contract by injecting notions of fraudulent misrepresentation are unavailing. First, Powerweb tries to manufacture a disputed fact -- that there were some alleged representations made, not the subject of the integrated, written contract -- that caused Powerweb to forego hypothetical business opportunities (Powerweb's citation to its Appendix does nothing to demonstrate that any such opportunities existed for it).  Then, Powerweb tries to shoehorn that non-existent and irrelevant fact into a theory of post-signing contract performance.  If the claim involves the putative performance under the contract, there is a remedy -- it's called breach of contract -- and the "gist of the action" doctrine makes clear that that is the only remedy available to a dissatisfied party to a contract.

Even assuming "gist of the action" does not apply, Powerweb's argument that "NewEnergy [fraudulently] induced Powerweb to enter into the contracts" through misrepresentations is unavailing.  PW's Resp. at 15.  Courts interpreting Pennsylvania law protect the sanctity of the parties' contract.  *See HCB Contractors v. Liberty Place Hotel Assocs.*, 539 Pa. 395, 399; 652 A.2d 1278, 1279 (Pa. 1995) ("[T]he parol evidence rule would become a mockery, because all a party to the written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were fraudulently made.") (citations

omitted). If the claim involves a purported misrepresentation that leads a party to enter into the contract, then Pennsylvania law mandates that those purported representations cannot form the basis of a fraud claim. *Id*. at 400 (affirming dismissal of lien claims); *see also 1726 Cherry St. Partnership v. Bell Atlantic Props.*, 653 A.2d 663, 664 (Pa. Super. Ct. 1995) (applying parol evidence rule to preclude admission of evidence of fraudulent misrepresentations because alleged misrepresentations concerned a subject dealt with in the agreements). "If plaintiff relied on any understanding, promises, representations, or agreements made prior to the execution of the written contract . . . they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely . . . ." *1726 Cherry St. Partnership*, 653 A.2d at 669 (citing *Bardwell v. Willis Co.*, 375 Pa. 503, 507, 100 A.2d 102, 104 (1953)).

Here, the last sentence of the Exclusive Agreement with Bell Atlantic states that both it and the Non-Disclosure Agreement "represent the entire agreement between the parties." A5 to PW's Resp. This clause precludes Powerweb from asserting that it relied upon oral misrepresentations as the basis for its fraud claim. *See HCB Contractors*, 539 Pa. at 399 ("[T]he integration clause of the contract expressly overrides all prior oral representations . . . ."); *1726 Cherry St. Partnership*, 653 A.2d at 665 ("The effect of an integration clause is to make the parol evidence rule particularly applicable.").

  **C.** **Powerweb's Remaining Tort Claims are Without Foundation.**

    **1.** **Powerweb's tortious interference claim with BG&E cannot overcome legal hurdles.**

Powerweb fails to identify a single case under either Pennsylvania or Maryland law to support its claim that NewEnergy tortiously interfered with Powerweb's contract with

Constellation Energy Group's subsidiary, BG&E.[2]  Powerweb sidesteps the argument that its Powerweb's contract with BG&E was terminable at will and thus subject to a more stringent standard than a claim for interference with an existing contract.  *See Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994); CNE Mem. at 23.  Powerweb ignores the elements necessary to establish its claim for tortious interference and instead launches into a fanciful parsing of the record, hoping to create the impression that disputed issues of material fact exist.

While creative, Powerweb does not provide adequate support for its allegations.  To show that Jordan Karp,[3] was acting on behalf of NewEnergy, Powerweb attaches NewEnergy's Annual Franchise Tax Report which shows that Mr. Karp was its corporate secretary for the year 2003.  *See* A43 to PW's Resp.  This document is not evidence that Mr. Karp acted on behalf of NewEnergy rather than its parent company, because the alleged tortious conduct occurred in 2002, not 2003.  Powerweb offers nothing to show that Mr. Karp acted on behalf of NewEnergy.[4]  Powerweb also misleads the Court regarding Ms. Kiselewich's testimony.  Powerweb states in its brief that "[d]espite personally wanting to continue the relationship with Powerweb, Ms. Kiselewich bowed to the pressure and recommended terminating the license agreement."  PW Resp. at 13.  It cites to page 161 of Ms. Kiselewich's deposition for this point, but the testimony makes no mention of her "bow[ing] to pressure" or "wanting to continue the relationship with Powerweb."  This is simply another misguided attempt by Powerweb to create

---

[2]   Powerweb does not dispute the fact that Maryland law applies to this claim.

[3]   Mr. Karp is the Constellation Energy Group lawyer who contacted BG&E's Ruth Kiselewich.

[4]   Powerweb also attempts to rely on Ms. Kiselewich's testimony to support its position, however, Ms. Kiselewich's opinion on the identity of Mr. Karp's employer is irrelevant on this point.

a disputed issue of material fact where none exists. In fact, Ms. Kiselewich is unequivocal in her testimony about the reasons BG&E exercised its termination clause:

> Q: Did any part of the discussion or reasons behind terminating Powerweb have anything to do whatsoever with any conversations you had with Mr. Karp?
>
> A. Absolutely not.

*See* Ex. E (BG&E Dep. 192:14-193:8). She further states that Powerweb was terminated for two main reasons: financial reasons and the issue of market acceptance. *Id.* Moreover, she was insulted by the insinuation that NewEnergy was somehow the impetus for the termination. *Id.* Powerweb has offered no evidence -- no one with firsthand knowledge and no circumstantial evidence -- to dispute this explanation. Accordingly, NewEnergy is entitled to summary judgment on this claim.

### 2. Powerweb cannot show the existence of a fiduciary relationship.

Powerweb argues its fiduciary duty claim based upon a false premise. Powerweb assumes, without either a factual or legal analysis, that the Exclusive Agreement with Bell Atlantic and the Exclusive PWT Customer Marketing Agreement (which it conveniently refers to as the Joint Marketing Agreement)[5] between the parties were joint venture agreements, thereby creating a fiduciary relationship. PW Resp. at 18. Interestingly, this argument is contrary to the position Powerweb takes in its Motion for Summary Judgment, where it argues that the

---

[5] Powerweb not only insists that the Exclusive PWT Customer Marketing Agreement is a joint venture agreement, it also insists that NewEnergy breached this agreement as well, despite the fact that Powerweb has not included it as a separate count for breach of contract. *See* PW Resp. at n.9. In fact, Powerweb attempted to add such a count in its Motion For Leave to File Second Amended Counterclaims, but the Court denied the motion. NewEnergy objects to Powerweb's attempt to circumvent that order.

Exclusive Agreement does not give rise to a fiduciary relationship between the parties because "the record evidences only a contractual relationship arising from an arms length negotiation . . . ." PW Mem. at 11. Based on this concession alone, Powerweb's claim for breach of duty should be dismissed.[6]

"The general test for determining the existence of such a relationship is whether it is clear that the parties did not deal on equal terms." *Paul J. Muller Assoc., Inc. v. Transamerica Occidental Life Insur.*, No. 90-3128, 1991 U.S. Dist. LEXIS 18489, at *10 (E.D. Pa. Dec. 23, 1991) (citation omitted). Powerweb does not allege that it was in an unequal bargaining position to NewEnergy. Quite the contrary, in its allegations for its fiduciary duty claim, it refers to "Powerweb's unique position in the . . . market." Am. CC ¶ 185. In addition, the type of confidential relationship needed to establish a fiduciary relationship is not based on two parties signing a Non-Disclosure Agreement (the obvious purpose of which is to protect confidential business information), but on whether a party surrenders substantial control over some part of their business affairs or its property is placed in the charge of another.[7] *See The Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein and Co.*, No. 91-4919, 1992 U.S. Dist. LEXIS 11618, at *32 (E.D. Pa. Aug. 10, 1992) (citations omitted). Powerweb misses the critical distinction that simply sharing information (and protecting that information via a Non-Disclosure Agreement) is insufficient by itself to create a fiduciary relationship. Powerweb does not come forward with any facts to show that it relinquished any control over its business nor was

---

[6] Similarly, Powerweb piggybacks its assumption that a fiduciary relationship exists onto its claim for breach of the duty of good faith and fair dealing. PW Resp. at n.16. Again, the mere incantation that a fiduciary relationship exists, without a shred of evidentiary support, is insufficient to withstand summary judgment.

[7] The defendant must also have accepted the fiduciary relationship but discovery has yielded no such evidence. *Id.*

NewEnergy in any superior, influential position.  In short, it fails to establish any facts to support the existence of a fiduciary relationship.

### 3. Powerweb's unfair competition claim is without support.

Rather than making an argument in support of its claim for unfair competition, Powerweb merely presents a general discussion of the common law tort without actually applying the law to its facts.  Moreover, although Powerweb chastises NewEnergy for only referring to one species of unfair competition, the two cases cited by Powerweb also deal with trademark infringement, not trade secrets or wrongful use of confidential information.  PW's Resp. at 17-18.  Either way, Powerweb has not offered more than a conclusory statement in support of this claim ("[A]ll of the other tort claims asserted here also constitute unfair competition.") and, accordingly, this claim should not survive summary judgment.  *Id.* at 18.  Additionally, Powerweb's trade secret misappropriation claim cannot support its unfair competition claim.  If Powerweb's information were reverse-engineered, as Mr. Budike essentially states in paragraph 23 of his Declaration, then the information cannot be a trade secret.  *Mateson Chem. Corp. v. Vernon*, No. 96-7914, 2000 U.S. Dist. LEXIS 6208, at *28 (E.D. Pa. May 9, 2000).  Nor can information in the public domain be a trade secret.  *Id*.

### 4. Powerweb cannot demonstrate any facts to support its tortious interference with prospective contractual relations claim.

Powerweb's claim for tortious interference with prospective contractual relations is equally unpersuasive.  "Gist of the action" aside, under Pennsylvania law, Powerweb must establish four elements: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) actual damage resulting from the defendant's conduct.  *See W.G. Nichols, Inc. v. Ferguson*, No. 03-824, 2004 U.S. Dist. LEXIS 7331, at

*44 (E.D. Pa. Apr. 21, 2004) (granting summary judgment in favor of defendant). Powerweb has failed "to present facts sufficient to give rise to a reasonable probability that particular anticipated contracts would have been entered into." *Id*. (citations omitted). Powerweb did not even identify during discovery the prospective contracts with which NewEnergy allegedly interfered, let alone demonstrate a "reasonable probability" that Powerweb would have been awarded a contract with these utililites "but for" NewEnergy's alleged wrongful conduct. *Id.* at 45-46. ("Merely pointing to an existing business relationship or past dealings does not reach this level of probability.").

### D. "Get it done" is Insufficient to Defeat Summary Judgment on NewEnergy's Breach of Contract Claim.

Powerweb insists that there is a disputed issue of material fact regarding Powerweb's authorization to spend the $100,000, based solely on Mr. Budike's vague testimony that Mr. McGeown told him to "get it done." *See* PW Resp. at 25. Powerweb offers no other testimony, no document, nothing except (again) Mr. Budike's vague and self-serving statement. Even if this were sufficient, Powerweb still doesn't say that it performed the work or that it delivered it to NewEnergy. Thus, it still fails to dispute that it was in breach of its contract. For these, and the reasons set forth in NewEnergy's opposition to Powerweb's Motion for Summary Judgment, NewEnergy is entitled to judgment in its favor on the $100,000 advanced to Powerweb.

- 13 -

### III. CONCLUSION

Because Powerweb has failed to demonstrate a material issue of fact on NewEnergy's claim for the return of the $100,000, or on Powerweb's own cavalcade of counterclaims, judgment should be entered in favor of NewEnergy and against Powerweb.

        Wolf, Block, Schorr & Solis-Cohen LLP

        By:
                s/DL422
           David E. Landau, I.D. #43341
           Matthew A. White, I.D. #55812
           Zachary C. Glaser, I.D. #85979
           Jennifer C. O'Neill, I.D. #89755
1650 Arch Street, 22nd floor
Philadelphia, PA 19103-2097
(215) 977-2000

Dated: June 24, 2004