**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CONSTELLATION NEWENERGY, INC. : | |
| : | |
| Plaintiff, : | Civil Action No. 02-CV-2733 (HB) |
| : | |
| v. : | |
| : | |
| POWERWEB TECHNOLOGIES, INC., : | |
| A-VALEY ENGINEERS, INC. AND : | |
| LOTHAR E.S. BUDIKE, JR., : | |
| : | |
| Defendants. : | |

**PLAINTIFF CONSTELLATION NEWENERGY'S REQUESTS**
**FOR TRADE SECRET INFORMATION**

Pursuant to Federal Rules of Civil Procedure 26, 33 and 34, and the Local Rules of the

United States District for the Eastern District of Pennsylvania, plaintiff, Constellation

NewEnergy, Inc. ("NewEnergy"), directs defendant, Powerweb Technologies, Inc.

("Powerweb"), to respond to the following interrogatories and requests for production of

documents, as follows:

## <u>INSTRUCTIONS FOR ALL DISCOVERY REQUESTS</u>

A.      In the event you conclude that any instruction, definition, interrogatory or request

is ambiguous, state the word or phrase you deem ambiguous and state the construction chosen or

used in your response.

B.      The words "and" and "or" shall be construed conjunctively or disjunctively as

necessary to make the discovery request inclusive rather than exclusive.

C.      The words "each" and "every" shall be construed conjunctively or disjunctively

as necessary to make the discovery request inclusive rather than exclusive.

D.      The past tense shall be construed to include the present tense, and vice versa, to make the discovery request inclusive rather than exclusive.

E.      The singular shall be construed to include the plural, and vice versa, to make the discovery request inclusive rather than exclusive.

F.      These discovery requests are deemed to be continuing.  Should you obtain or locate information that would add to or change your responses to these interrogatories, you are directed to produce such additional or different information to the undersigned counsel for NewEnergy immediately upon your discovery or receipt of such information.

## INSTRUCTIONS FOR INTERROGATORIES

A.      Respond to each numbered interrogatory separately.

B.      If you object to answering any interrogatory, state any privilege asserted and identify the information withheld with reasonable particularity to enable NewEnergy and the Court to assess the validity of your objection.

C.      If you object to any portion of any interrogatory, you shall answer the portion of the interrogatory to which you do not object.

D.      The fact that your investigation is continuing or that discovery is not complete is not a valid excuse for your failure to provide answers that are as full and complete as possible as of the date of your answer.  Your omission of any name, fact, document, or other item of information from the answers shall be deemed a representation that such name, fact, document or item was not known or available to you, or anyone acting on your behalf, at the time of service of the answers.

E.      In response to an interrogatory instructing you to identify a person or entity,

provide the full name and last known address and telephone number of the person or entity.

F.     In response to an interrogatory instructing you to identify a document, provide a description of the document, including but not limited to its author(s), recipient(s), date of creation and subject matter.

## INSTRUCTIONS FOR REQUESTS FOR DOCUMENTS

A.     Respond to each numbered request separately.

B.     For each request, produce all nonidentical copies, including drafts and copies upon which notes have been made or upon which there is handwriting.

C.     If you object to producing some or all of the contents of any responsive document, state any privilege asserted and identify the document with reasonable particularity to enable NewEnergy and the Court to assess the validity of your objection.  The information should include the:

      1.     type of document;

      2.     general subject matter of the document;

      3.     date of the document;

      4.     author and all recipients of the document; and

      5.     relationship of the author to each recipient.

D.     If a requested document was, but is no longer in your possession or subject to your control, or is no longer in existence, state whether the document is:

      1.     missing or lost;

      2.     destroyed;

      3.     transferred to others; or

      4.     otherwise disposed of.

State the circumstances surrounding, and any authorization for, the latter three dispositions. Also, state the date or best approximate date of any such disposition and, if known, the author, subject matter, location and custodian of any such document.

## DEFINITIONS

For purposes of these requests, the following words have the meanings set forth below:

A.     "Concerning" means constituting, referring to, relating to, discussing, analyzing, comprising, embodying, recording, evidencing, affecting, or containing any information that pertains to the specified subject.

B.     "Document" and "documents" shall be given their broadest possible meaning under the Federal Rules of Civil Procedure and the Federal Rules of Evidence, whether or not in written or printed form, including but not limited to all originals and non-identical copies of any written, printed, typed, recorded or graphic matter, photographic matter, sound reproduction, tape, record or other device however produced or reproduced, and specifically includes, without limitation, letters, memoranda, e-mails, telegrams, handwritten notes, diaries, appointment books, telephone message notes, pamphlets, reports, records, working papers, agreements, charts, data sheets, computer discs, computer drives, computer tapes and any other means for storing or preserving computerized information in your possession, custody or control.

C.     "NewEnergy" means Constellation NewEnergy, Inc. and its predecessors, successors and affiliated companies, including but not limited to NewEnergy East, L.L.C. and AES NewEnergy, Inc., and of their respective officers, employees and agents.

D.     "Omni-Link" means the interactive information system for the telecommunications industry developed by Powerweb and marketed as Omni-Link.

E.     "Person" means any natural person and any legal entity.

F.     "You" and "your" refers to Powerweb Technologies, Inc. and its predecessors, successors and affiliated companies, including but not limited to A-Valey Engineers, Inc., and all of their respective officers, employees and agents.


## INTERROGATORIES

1.     Identify with specificity all of the trade secrets you claim to have disclosed to NewEnergy.




2.     Identify with specificity all of the confidential information you claim to have disclosed to NewEnergy.




3.     Identify with specificity all of the technical details and information about Omni-Link that you claim to have disclosed to NewEnergy.




4.     Identify with specificity all of the information that constitutes "Energy Technology," as that term is used in paragraph nos. 63-64, 83, 87-88 and 90 of your counterclaims.

5.    Identify with specificity all of the "contracts necessary to achieve a resale of electricity in the energy market" referenced in paragraph no. 68 of your counterclaims.

6.    Identify with specificity the "contracting and regulatory information" referenced in paragraph no. 69 of your counterclaims.

7.    Identify each person at Powerweb who communicated trade secrets or confidential information to NewEnergy.

8.    For each person identified in response to interrogatory no. 7, identify with specificity the trade secrets or confidential information that person communicated to NewEnergy.

9.    Identify each person at NewEnergy to whom Powerweb communicated trade secrets or confidential information.

10.    For each person identified in response to interrogatory no. 9, identify with specificity the trade secrets or confidential information communicated to NewEnergy.

11.    State each date upon which Powerweb communicated trade secrets or confidential information to NewEnergy.

12.    Identify each meeting at which Powerweb communicated trade secrets or confidential information to NewEnergy, and identify each person who participated in each meeting.

## REQUESTS FOR DOCUMENTS

1.    Produce all documents that identify the trade secrets you claim to have disclosed to NewEnergy.

2.    Produce all documents that identify the confidential information you claim to have disclosed to NewEnergy.

3.    Produce all documents that identify each aspect or component of "Energy Technology," as that term is used in paragraph nos. 63-64, 83, 87-88 and 90 of your counterclaims.

4.    Produce all documents that identify the "technical details of the Omni-Link System" and the "series of documents that described every aspect of the Omni-Link System" referenced in paragraph no. 65 of your counterclaims.

5.    Produce all documents that identify the "contracts necessary to achieve a resale of electricity in the energy market" referenced in paragraph no. 68 of your counterclaims.

6.    Produce all documents that identify the "contracting and regulatory information" referenced in paragraph no. 69 of your counterclaims.

7.    Produce all documents that Powerweb provided to NewEnergy during meetings between Powerweb and NewEnergy, including but not limited to the meetings referenced in paragraph no. 58 of your counterclaims.

8.    Produce all documents identified in your responses to NewEnergy's interrogatories.

Matthew A. White, Esquire
Joel M. Sweet, Esquire
Jennifer O'Neill, Esquire
WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA  19103
215-977-2000
215-977-2334 (fax)

Attorneys for Plaintiff, Constellation NewEnergy, Inc.

Dated:  November 18, 2002

## CERTIFICATE OF SERVICE

I, Joel M. Sweet, certify that on November 18, 2002, I caused a true and correct copy of Plaintiff Constellation NewEnergy's Requests for Trade Secret Information to be served by hand delivery upon:

> Rudolph Garcia, Esquire
> SAUL EWING LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA  19102-2186

_____
Joel M. Sweet

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.    :
           Plaintiff,    :
                                 :
           v.    :    No. 02-CV-2733 (HB)
                                 :
POWERWEB TECHNOLOGIES, INC., *et al.*,    :
           Defendants.    :

## ANSWERS AND OBJECTIONS BY POWERWEB TECHNOLOGIES, INC. TO REQUESTS BY CONSTELLATION NEW ENERGY, INC. FOR TRADE SECRET INFORMATION

Pursuant to Federal Rule of Civil Procedure 33(b) and 34(b), Powerweb, Inc., t/a Powerweb Technologies, incorrectly identified in this action as Powerweb Technologies, Inc. ("Powerweb"), hereby answers and objects to the requests for trade secret information served by Constellation NewEnergy, Inc. ("NewEnergy"), as follows:

### GENERAL OBJECTIONS

1.    All responses herein are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

        a.    All objections as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

        b.    The right to object on any ground to the use of any of the information provided in response to these requests in any subsequent proceeding or at the trial of this or any other action;

c.    The right to object on any ground at any time to a demand for further response to this or any other set of discovery requests or other discovery procedures involving or relating to the subject matter of these requests;

d.    The right to supplement and/or amend these responses based upon the discovery of additional information; and

e.    All privileges including attorney/client, attorney work-product and accountant/client privileges (accordingly, any inadvertent production of any privileged information shall not constitute a waiver of these privileges).

2.    Powerweb objects to these requests to the extent that they seek information beyond the scope of permissible discovery as provided by the Federal Rules of Civil Procedure.

3.    Powerweb objects to these requests to the extent that they seek or may be deemed to seek: (a) attorney work product; (b) privileged information, including but not limited to the attorney/client privilege; (c) irrelevant confidential proprietary information or trade secrets; (d) the mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research or legal theories of Powerweb's attorneys; or (e) the mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics of any representative of Powerweb.

4.    Powerweb objects to these requests to the extent that the information sought is not relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and to the extent that no applicable time period has been

defined for the requests, such that responses would be unduly burdensome, expensive, and oppressive.

5.    Powerweb objects to these requests to the extent that they are overly broad and any attempt to respond would be unduly burdensome, expensive and/or oppressive.

6.    Powerweb objects to these requests to the extent that they have been propounded for the sole purpose of causing annoyance or embarrassment.

7.    Powerweb objects to these requests to the extent that they are unreasonably cumulative, duplicative, or the responsive information is obtainable from other more convenient sources.

8.    Powerweb objects to these requests to the extent that they seek information from sources in the public domain and that are otherwise available to NewEnergy.

9.    Powerweb objects to these requests to the extent that they purport to seek information not within the custody or control of Powerweb.

10.    The syntax used in these responses is that of counsel for Powerweb, and not that of Powerweb itself.

11.    These responses represent the responses of an organizational defendant. Whenever practical, individuals known to have personal information respecting a response have been consulted. Despite careful and diligent inquiry, it is impossible to assert that all responses have been completely answered on the basis of all information held by the organization. It is possible that, upon further review and analysis, additional responsive information may become known to Powerweb.

12.    Powerweb reserves the right to supplement or modify these responses in the future.

13.    Powerweb has not completed its discovery or preparation for trial in this matter. Accordingly, these responses are made without prejudice to Powerweb's right to present additional information at trial based upon information later obtained or evaluated.

14.    Powerweb objects to producing any documents or answering any interrogatory that would disclose confidential business information or trade secrets unless and until an appropriate confidentiality order is entered by the Court.

Each of the foregoing General Objections is hereby incorporated into each of the following specific objections and responses.

## DEFINITIONS

As used in these responses:

1.    "Complaint" means the Second Amended Complaint filed by NewEnergy in this action.

2.    "Counterclaim" means the claims asserted by Powerweb against NewEnergy in the Answer, Affirmative Defenses and Counterclaims to Second Amended Complaint that has been filed in this action.

3.    "Omni-Link software" means the patented software internet platform developed by Powerweb as more fully described in the Counterclaim.

4.    "Omni-Link System" means the same as that term is defined in the Counterclaim.

-4-

5.    "Confidentiality Agreement" means the agreement attached as Exhibit A to the Counterclaim.

6.    "Energy Technology" means the technologies, inventions, and energy resale strategies collectively known as "Energy Technology" in the Confidentiality Agreement.

7.    "Relating to" means consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing, or bearing any logical or factual connection with the matter discussed.

## SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

Powerweb states the following specific responses to the individual requests that comprise NewEnergy's requests for trade secret information:

1.    Identify with specificity all of the trade secrets you claim to have disclosed to NewEnergy.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Powerweb further objects to this interrogatory to the extent it seeks legal conclusions regarding the information given to NewEnergy by Powerweb. Subject to and without waiving those objections, Powerweb responds as follows: Powerweb provided NewEnergy with detailed information relating to Powerweb's system for enabling large commercial customers to participate as sellers in deregulated wholesale energy markets, including, among other things, Powerweb's methods for monitoring energy usage, monitoring trading prices, identifying profitable times to sell, processing the transactions and use of the Internet to provide such services; the infrastructure needed to develop and deploy a

comprehensive platform to interpret load data, pricing information, and curtailment for end-use customers, including the monitoring equipment, the Omni-Link software, the contractual mechanisms needed to settle and process the transactions; non-public patent applications (docket nos. PWB-119c, PWB-117a and PWB-118c), diagrams, flow charts and other information regarding the Omni-Link System; all of the other Energy Technology; and customer information provided for joint marketing purposes. For further details, see the Counterclaim, the documents and information provided to NewEnergy prior to this litigation and the documents produced in this litigation. Moreover, it should be noted that NewEnergy agreed not to disclose or use *any* of the information Powerweb provided, whether it constituted trade secrets or not.

2.    Identify with specificity all of the confidential information you claim to have disclosed to NewEnergy.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: All of the information provided to NewEnergy by Powerweb relating in any way to "Energy Technology" was confidential, including but not limited to all of the information referred to in response to interrogatory 1 above.

3.    Identify with specificity all of the technical details and information about Omni Link that you claim to have disclosed to NewEnergy.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: See the responses to interrogatories 1 and 2 above.

-6-

4.     Identify with specificity all of the information that constitutes "Energy Technology," as that term is used in paragraph nos. 63-64, 83, 87-88 and 90 of your counterclaims.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Powerweb further objects to this interrogatory on the basis that "Energy Technology" is a contractual term defined by the Confidentiality Agreement. Subject to and without waiving those objections, Powerweb responds as follows: See the responses to interrogatories 1 and 2 above.

5.     Identify with specificity all of the "contracts necessary to achieve a resale of electricity in the energy market" referenced in paragraph no. 68 of your counterclaims.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: Powerweb will produce such contracts in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

6.     Identify with specificity the "contracting and regulatory information" referenced in paragraph no. 69 of your counterclaims.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: See the responses to interrogatories 1-5 above and the PJM regulations now publicly available at www.pjm.com.

7.    Identify each person at Powerweb who communicated trade secrets or confidential information to NewEnergy.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: Lothar Budike, Jr. and Andrew Bakey.

8.    For each person identified in response to interrogatory no. 7, identify with specificity the trade secrets or confidential information that person communicated to NewEnergy.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: Andrew Bakey provided NewEnergy with information regarding the ability to sell ALM credits, energy and capacity in deregulated wholesale marketplaces and the contractual mechanisms needed to settle and process such transactions; and Lothar Budike, Jr. provided NewEnergy with the other information identified in the responses to interrogatories 1 and 2 above.

9.    Identify each person at NewEnergy to whom Powerweb communicated trade secrets or confidential information.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: Kevin Santella, Kelly Speakes, Jim Curnyn, Dierdre Lord, David McGeown, Steve Levine, Brian Hayduk, Kirk Hampton, Peter Scarpelli and Andrew Singer received such information directly from Powerweb.

-8-

10.    For each person identified in response to interrogatory no. 9, identify with specificity the trade secrets or confidential information communicated to NewEnergy.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb responds as follows: Powerweb believes that each person identified in the response to interrogatory 9 above received or had access to all of the information identified in the responses to interrogatories 1 and 2 above.

11.    State each date upon which Powerweb communicated trade secrets or confidential information to NewEnergy.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Powerweb further objects to this interrogatory as unreasonably burdensome to the extent it seeks to illicit each and every date when Powerweb provided NewEnergy with trade secrets and confidential information. Subject to and without waiving those objections, Powerweb responds as follows: Powerweb gave such information to NewEnergy on a regular basis from October 1999 through March 2001, under the protection of the various agreements described in the Counterclaim. At times, communications between Powerweb and NewEnergy occurred on a daily basis several times a day. For further details, see the Counterclaim, the documents and information provided to NewEnergy prior to this litigation and the documents that are being produced in this litigation.

12.    Identify each meeting at which Powerweb communicated trade secrets or confidential information to NewEnergy, and identify each person who participated in each meeting.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Powerweb further objects to this interrogatory on the basis that the term "meeting" is undefined. Powerweb understands the term "meeting" to mean face to face communications between representatives of Powerweb and representatives of NewEnergy. Subject to and without waiving those objections, Powerweb responds as follows: Powerweb met with Kelly Speakes in or around July 1999 at NewEnergy's offices in New York, NY. Powerweb met with Jim Curnyn and David McGeown in or around August 1999 at NewEnergy's offices in New York, NY. Powerweb met with David McGeown in or around September 1999 at NewEnergy's offices in New York, NY. Powerweb met with David McGeown on more than one occasion in or around October 1999. In or around the fall of 1999, Powerweb met with David McGeown and Jim Goodman at a Bell Atlantic facility in Freehold, New Jersey. Powerweb met with Brian Hayduk and David McGeown and various other NewEnergy employees on multiple occasions in or around December 1999, January 2000, and November 2000. For further details, see the Counterclaim, the documents and information provided to NewEnergy prior to this litigation and the documents being produced in this litigation.

## SPECIFIC ANSWERS AND OBJECTIONS TO REQUESTS FOR DOCUMENTS

1.    Produce all documents that identify the trade secrets you claim to have disclosed to NewEnergy.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such

non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

    2.    Produce all documents that identify the confidential information you claim to have disclosed to NewEnergy.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

    3.    Produce all documents that identify each aspect or component of "Energy Technology," as that term is used in paragraph nos. 63-64, 83, 87-88 and 90 of your counterclaims.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

    4.    Produce all documents that identify the "technical details of the Omni-Link System" and the "series of documents that described every aspect of the Omni-Link System' referenced in paragraph no. 65 of your counterclaims.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

-11-



5.    Produce all documents that identify the "contracts necessary to achieve a resale of electricity in the energy market" referenced in paragraph no. 68 of your counterclaims.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

6.    Produce all documents that identify the "contracting and regulatory information" referenced in paragraph no. 69 of your counterclaims.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Powerweb further objects to this request on the basis that the regulations are now publicly available. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

7.    Produce all documents that Powerweb provided to NewEnergy during meetings between Powerweb and NewEnergy, including but not limited to the meetings referenced in paragraph no. 58 of your counterclaims.

**RESPONSE:**  Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.



8.    Produce all documents identified in your responses to NewEnergy's interrogatories.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving those objections, Powerweb will produce such non-privileged, relevant documents in its possession within a reasonable time after an appropriate confidentiality order is entered by the Court.

Rudolph Garcia, Esquire
Joseph F. O'Dea, Jr., Esquire
Nicholas J. Nastasi, Esquire
Atty. I.D. Nos. 25336, 48370, 82102
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7109; -1983
Attorneys for Powerweb, Inc.,
A-Valey Engineers, Inc. and
Lothar E.S. Budike, Jr.

Date:   December 18, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.　　　　:
　　　　　　　Plaintiff,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　　　　　　: 　No. 02-CV-2733 (HB)
　　　　　　　　　　　　　　　　　　　　　　　:
POWERWEB TECHNOLOGIES, INC., *et al.*, :
　　　　　　　Defendants.　　　　　　　　　　:

## VERIFICATION

Lothar E.S. Budike Jr., hereby avers under penalty of perjury, pursuant to 28

U.S.C. § 1746, that he is the President and Chief Executive Officer of Powerweb, Inc. and is

authorized to make this verification on its behalf; and that the facts set forth in the foregoing

answers to interrogatories are true and correct to the best of his knowledge or information and

belief.

Lothar E.S. Budike Jr.

Dated: December 18, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.          :
                    Plaintiff,          :
                                        :
            v.                          :    No. 02-CV-2733 (HB)
                                        :
POWERWEB TECHNOLOGIES, INC., *et al.*,  :
                    Defendants.         :

## CERTIFICATE OF SERVICE

I, Nicholas J. Nastasi, hereby certify that a true and correct copy of the foregoing answers and objections to requests for trade secret information was served today by hand delivery, upon the following counsel of record:

Joel M. Sweet, Esquire
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch St., 22nd Floor
Philadelphia, PA 19103-2097

_____
Nicholas J. Nastasi

Dated: December 18, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 02-CV-2733
EXPERT REPORT

*Prepared for*

Powerweb, Inc.

*Prepared by*

Peter Fox-Penner, Ph.D.

*The Brattle Group*
1133 20th Street, NW
Suite 800
Washington, DC 20046
202.955.5050 (voice)
202.955.5059 (fax)
www.brattle.com

April 2004

# I.    INTRODUCTION

## A.  QUALIFICATIONS

My name is Peter Fox-Penner.  I am a Principal and Chairman of *The Brattle Group*, an economic and management consulting firm with offices in Cambridge, MA, Washington, DC, San Francisco, CA and London, England.  I received a Ph.D. in Economics from the Graduate School of Business, University of Chicago, as well as an M.S. in Mechanical Engineering and a B.S. in Electrical Engineering from the University of Illinois.  I am an economist and manager with two decades of experience in government and consulting, primarily in the area of regulated utilities.  My statement of qualifications, including testimony I have given over the past four years, is attached as Exhibit A.

## B.  SCOPE OF REPORT

I have been asked by counsel for Powerweb, Inc. (Powerweb or PW) to estimate the damages arising from alleged breaches of agreements between Powerweb and NewEnergy (NE).[1]  These damages take the following two general forms:

    a.  The present value of the profits Powerweb would have earned or would earn but for the breaches of agreements alleged by Powerweb; and

    b.  The present value of the profits NewEnergy has earned or will earn stemming from the breaches of agreements alleged by Powerweb.

Each of these is a distinct measure of damages associated with Powerweb's counterclaim.[2]  For brevity, I refer to these two amounts as (a) the *PW lost profits* and (b) the *NE load management profits*, respectively.  I assume that NE is found liable for breaching the agreements, and that NE's relevant obligations under these agreements are in effect during the period October 11,

---

[1]   NewEnergy has undergone ownership changes during the period of interest.  NewEnergy Ventures was purchased by AES Corporation in 1999 and became AES NewEnergy.  In 2002, AES NewEnergy became Constellation NewEnergy.  I will refer to these organizations, as well as their subsidiaries and affiliates as NewEnergy (NE) throughout this report.

[2]   Defendants' Amended Answer, Affirmative Defenses and Counterclaims to Plaintiff's Second Amended Complaint.

*Lost Profits Report*

*POWERWEB TECHNOLOGIES, INC.*

**March 31, 2004**

# PAPPAS AND COMPANY

## CERTIFIED PUBLIC ACCOUNTANTS, LLC

206 WEST STATE STREET
LOWER LEVEL
MEDIA, PA 19063

TELEPHONE: 610-565-8050
TOLL FREE: 800-494-9335
FACSIMILE: 610-565-8049

Powerweb Technologies, Inc.
Media, Pennsylvania

We have been engaged to prepare a report of lost profits in connection with litigation between Powerweb Technologies, Inc. and Constellation NewEnergy Inc.

Our firm currently serves as Powerweb's independent Certified Public Accountants. We provide write up, tax and accounting services through the year. We were asked to take on this engagement at the request of Powerweb's Management. (See attached engagement letter (Tab A) and resume (Tab B) for the details.)

As for giving testimony or being published, I have testified once prior to this matter and I have no published materials.

## Overview

Our responsibility was to determine the dollar amount of lost profits from four areas:

    I.    Sales and installation of Omni-Link systems, including related equipment, to NewEnergy customers for both load and energy management.

    II.    Powerweb's contract with Baltimore Gas and Electric.

    III.    Installation of Omni-Link systems, including related equipment, for Verizon, Inc. (Verizon Inc. includes the former Bell Atlantic Companies and all current operating companies of Verizon Inc.)

    IV.    Contracts Powerweb would have obtained but for NewEnergy's conduct.

Our results are stated as gross profit margins (revenues less cost of goods sold) because the above situations would not have changed Powerweb's general and administrative costs. All monies discussed in this report are on a pre-tax basis.

## I - NewEnergy

We were engaged to determine Powerweb's lost profits in connection with the failure of NewEnergy to honor agreements it had with Powerweb, including a Non-Disclosure Agreement. The lost profits related to NewEnergy are derived from two sources, load management and energy management. Load management is the amount of gross profit margins Powerweb would have received if it were servicing NewEnergy's load management customers. Energy management is the amount of gross profit margin Powerweb would have received if it had the opportunity to sell its energy management services to all NewEnergy customers.

3. Conclusions
   a. Load management lost profits are $1,027,776.00
   b. Energy management lost profits are $315,000.00

# III - Verizon

Powerweb alleges that it would have been entitled to revenue from Verizon's load management activity but for NewEnergy's failure to properly protect its energy technology information. We determined the amount of lost profits associated with Verizon's load management activity.

1. Assumptions and background information
   a. That the revenue per meter is based on the proposal that NewEnergy prepared for Bell Atlantic (Verizon's name prior to it changing)(See Bell Atlantic Proposal).
   b. That Powerweb's costs used are the same costs that Powerweb incurred at that point in time and still incurs with its current contracts.
   c. The numbers of meters and locations (the penetration rates) were calculated and supplied to us by the Brattle Group.
   c. The period for which Powerweb would have been entitled to these profits was the period for which the non-disclosure obligations were in effect, October 1999 through October 2009. (See Non-Disclosure Agreement)
   d. That only the incremental increases in meters were considered new meters.

2. Methodology – See attached Verizon spreadsheets (Tab E)
   a. The number of meters were multiplied by $20,000 per meter to determine the income.
   b. Costs were derived from programming expense, new servers, communication costs, program maintenance and cost of new meters. Programming and server expenses were one time amounts, each were $20,000. Powerweb's current cost of communication is $39 per month per meter. Program maintenance on average takes two hours per month at a cost of $100 per hour. Powerweb's cost per new meter is $750. These numbers are used to determine monthly costs, which are totaled for annual expenses.
   c. Costs are subtracted from incomes, resulting in gross profit margins. We do not take into account any other costs such as general and administrative due to the fact that Powerweb had all these overhead expenses in place and that the increase in business would not have change those numbers.

3. Conclusions
   a. Lost profits associated with Verizon are $2,006,700.00

## IV - Lost Contracts

Powerweb alleges that NewEnergy's failure to maintain the confidentiality of Powerweb's energy technology information created competition before it would have arisen naturally. As a result of the premature competition, Powerweb lost 13 contracts. We calculated the lost profits of those contracts.

1. Assumptions and background information
    a. That one basic model would be representative of each of the 13 Utilities to which Powerweb submitted a bid.
    b. That there would have been a lack of competition and Powerweb would have been successful in all 13-bid processes.
    c. That the contract period was only three years, similar to all the current Powerweb contracts.
    d. That the penetration rates for these three years for load management meters is an average of the penetration numbers that the Brattle Group gave us.
    e. That the penetration rate for energy management customers is the same used in the BGE and NewEnergy models.
2. Methodology – See attached Basic Lost Contract spreadsheets (Tab F)
    b. Incomes were derived from a setup fee, license fee, per new meter fee and a hosting fee. The setup fee was a one-time charge of $240,000. The license fee was an annual charge of $175,000 per year per ISO. The new meter charge was $2,000 per meter. The monthly hosting fee per meter was $150. These amounts were used to determine a monthly income, which were totaled for annual incomes.
    c. Costs were derived from programming expense, new servers, communication costs, program maintenance and cost of new meters. Programming and server expenses were one time amounts, each were $20,000. Powerweb's current cost of communication is $39 per month per meter. Program maintenance on average takes two hours per month at a cost of $100 per hour. Powerweb's cost per new meter is $750. These numbers are used to determine monthly costs, which are totaled for annual expenses.
    d. Costs are subtracted from incomes, resulting in gross profit margins. We do not take into account any other costs such as general and administrative due to the fact that Powerweb had all these overhead expenses in place and that the increase in business would not have changed those numbers.

3. Conclusions
    a. Lost profits for the 13 contracts on load management is $26,839,397.00.
    b. Lost profits for the 13 contracts on energy management is $9,090,900.00.

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3

4    CONSTELLATION NEWENERGY, INC.,*

5          Plaintiffs                *

6    v.                              *   Case 02-CV-2733 (HB)

7    POWERWEB TECHNOLOGIES, INC.,   *

8    et al.,                         *

9          Defendants               *

10   *    *    *    *    *    *    *    *    *    *    *

11              Deposition of RUTH C. KISELEWICH

12                   Baltimore, Maryland

13              Friday, February 20, 2004

14                      11:21 a.m.

15   Job No.:  1-30382

16   Pages 1 - 242

17   Reported by:  Lynn M. Schindler

18

19

20

21

22

Page 192

1    BY MR. WHITE:

2        Q    I want to start with the termination of

3    Powerweb.   Did any part of your decision to terminate

4    Powerweb have to do in any way with any conversation

5    you had with Mr. Karp?

6            MS. GOODCHILD:   Objection to the form of the

7    question.

8            MR. WHITE:   What's the basis for your

9    objection?

10           MS. GOODCHILD:   Because I'm not sure it was

11    her decision, and I think she testified it wasn't

12    solely her decision to terminate Powerweb.

13    BY MR. WHITE:

14        Q    Okay.   Did any part of the discussion or

15    reasons behind terminating Powerweb have anything to do

16    whatsoever with any conversations you had with Mr.

17    Karp?

18        A    Absolutely not.

19        Q    Can you explain for the court why Powerweb

20    was terminated?

21        A    Powerweb was terminated, number one, as

22    indicated throughout my testimony here, for financial

1   reasons.    Number two, because of the issue of market

2   acceptance.    I testified earlier that we had only 11

3   customers, and related to the financial challenges we

4   had was needing to get approval of the Maryland Public

5   Service Commission.    So the termination had absolutely

6   nothing, and frankly I'm insulted by the insinuations

7   that it had absolutely nothing to do with NewEnergy or

8   conversations with Jordan Karp or any of that stuff.

9       Q    After Powerweb was terminated, did Mr. Budike

10  ever call you up and accuse you of terminating him

11  because of anything that NewEnergy did?

12           MS. GOODCHILD:    Objection to the form of the

13  question, as well as the characterization of accuse.

14           MR. WHITE:    You know what?    Listen to the

15  question.    Okay?    It's cross-examination.    You can

16  ask whatever questions you'd like.    There's nothing

17  foundational that's required.    Quit interrupting my

18  questions.    I'm trying to get my questions out.    I'm

19  going to get them out quicker if you'd stop

20  interrupting me and stop interrupting the witness.

21  I'll try it again.

22  BY MR. WHITE: