IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**O R D E R**

AND NOW, this        day of                    , 2004, it is hereby ORDERED that Plaintiff Constellation NewEnergy, Inc.'s Motion to Strike the Second Expert Report of Constantinos Pappas and Preclude Evidence (Doc. #90) is DENIED.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW BY POWERWEB, INC. IN
OPPOSITION TO MOTION BY CONSTELLATION NEWENERGY TO STRIKE
SECOND REPORT OF CONSTANTINOS PAPPAS AND PRECLUDE EVIDENCE**

Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:   July 6, 2004

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................1

II. FACTUAL BACKGROUND....................................................................................................1

III. ARGUMENT............................................................................................................................6

    A. Powerweb Complied with Its Discovery Obligations and the Draconian Sanction of Precluding Evidence Is Unwarranted. ...............................................................6

        1. Powerweb Fully Complied with the Initial Disclosure Requirements. .......................7

        2. NewEnergy Did Not Ask for Identification of the Contracting Entities...................8

        3. The Sanction of Precluding Evidence of the Lost Contracts Is Not Warranted. .......9

    B. NewEnergy Agreed to Permit the Supplemental Report...................................................11

IV. CONCLUSION......................................................................................................................13

## I. INTRODUCTION

Powerweb, Inc. ("Powerweb")[1] submits this memorandum in opposition to the motion of Constellation NewEnergy, Inc. ("NewEnergy") to preclude expert testimony by Constantine Gus Pappas, CPA.

There is no basis for precluding evidence regarding the contracts that Powerweb lost as a result of NewEnergy's wrongdoing. NewEnergy was on notice of Powerweb's claim for lost contracts from the outset of this case and Powerweb produced its documents concerning those contracts more than a year ago. It is not Powerweb's fault that NewEnergy neglected to ask for further information regarding the contracts in written discovery requests or during the two full days of deposition testimony by Powerweb's President. It would be an egregious miscarriage of justice to punish Powerweb for NewEnergy's own failure to request the discovery that it purportedly needs.

There also is no basis for striking Mr. Pappas' supplemental report, because the parties *agreed* to exchange supplemental reports and the only changes Mr. Pappas made were in response to the opposing experts' criticisms.

## II. FACTUAL BACKGROUND

The damages that NewEnergy asks this Court to preclude have been sought by Powerweb from the outset of this case. When Powerweb filed its counterclaims on August 21, 2002, it alleged that "NewEnergy has improperly shared some or all of the 'Energy Technology' information with numerous third-parties that have used the information to compete with Powerweb and the Omni-Link System."[2] That allegation was incorporated into each of

---

[1] Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."
[2] Answer, Affirmative Defenses, and Counterclaims (Doc. #14) at 17.

Powerweb's claims, which sought "at least $100,000,000" in damages.[3] Thus, NewEnergy has been on notice for almost *two years* that Powerweb is seeking the asserted damages for business lost to competitors as a result of NewEnergy's improper disclosures of confidential information.[4]

Powerweb repeated those same allegations when it answered NewEnergy's second amended complaint on December 16, 2002.[5] Moreover, on April 7, 2003, Powerweb amended its counterclaims to add RETX and AES CILCO as defendants. In addition to the previous allegations, the amended counterclaims provided more detail regarding the disclosures NewEnergy made to those companies and how the information disclosed was later used to compete with Powerweb.[6] The claims against RETX and AES CILCO were later dismissed on jurisdictional grounds, but the factual allegations remain as assertions against NewEnergy.

Thus, each successive version of the counterclaims put NewEnergy on notice that Powerweb sought substantial damages for lost contracts. Incredibly, however, NewEnergy never asked about those contracts in discovery.[7]

NewEnergy served Powerweb with numerous document requests and interrogatories, to which Powerweb appropriately responded. However, NewEnergy never asked Powerweb to identify the contracts that it lost. The closest it came was in its third set of interrogatories. NewEnergy asked there for the names of the competitors to whom confidential

---

[3] Id. at 25-26.

[4] In addition, Powerweb's initial disclosures notified NewEnergy on November 21, 2002 that Powerweb's damages include lost profits on the Bell Atlantic project "and many others." See Initial Disclosures by Powerweb Technologies, Inc., the pertinent portions of which are attached hereto as Exhibit A.

[5] Answer, Affirmative Defenses, and Counterclaims to Second Amended Complaint (Doc. #29) at 19 (¶132), 27.

[6] Defendants' Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Second Amended Complaint (Doc. #39) at 21 (¶140), 32-33.

[7] As explained in Section III.A.1 below, Powerweb had no obligation to volunteer such information in its initial disclosures.

information was disclosed, so Powerweb identified them in its response.[8] NewEnergy also asked Powerweb to state the categories and amounts of its damages, and to identify documents related to the damages.[9] In response, Powerweb stated, among other things, that it intended to offer expert testimony on damages and that the experts would be disclosed in accordance with Rule 26 and the Court's scheduling order.[10] NewEnergy did not ask for more specific responses or earlier disclosures. Moreover, Powerweb later produced its documents regarding the lost contracts in response to a separate request for sales proposals.[11]

As promised, and in accordance with this Court's scheduling order, Powerweb served NewEnergy with expert damages reports on April 1, 2004. One was authored by Peter Fox-Penner, Ph.D. and the other was authored by Constantinos Gus Pappas, CPA. Mr. Pappas' report calculated the lost profits that Powerweb would have earned from installations for NewEnergy's customers and Bell Atlantic, from an early contract termination by Baltimore Gas & Electric Company, and from the contracts that Powerweb lost to competitors due to NewEnergy's improper disclosures.[12] Dr. Fox-Penner's report calculated the lost profits stemming from NewEnergy's improper use of Powerweb's protected information and the present value of all of the lost profits, including those calculated by Mr. Pappas. Thus, although NewEnergy implies otherwise, both initial reports included damages for the lost contracts, as calculated by Mr. Pappas and present-valued by Dr. Fox-Penner.

---

[8]   See Answers and Objections by Powerweb Technologies, Inc. to Third Set of Interrogatories by Constellation NewEnergy, Inc., the pertinent portions of which are attached hereto as Exhibit B, at 14 (¶23-24).

[9]   Id. at 18-19 (¶34-35).

[10]  Id.

[11]  See Letter dated April 9, 2003, attached hereto as Exhibit C.

[12]  See Mr. Pappas' report, attached to NewEnergy's motion as Exhibit C.

On May 3, 2004, NewEnergy served three expert reports upon Powerweb, critiquing the reports by Mr. Pappas and Dr. Fox-Penner. One of NewEnergy's experts, Dr. Michael Rosenzweig, relied upon information that was previously unavailable to Powerweb's experts because NewEnergy had failed to provide it to Powerweb in discovery.[13] He also criticized Mr. Pappas for not specifically identifying the lost contracts, and for using an "EIM study" as the basis for his assumed penetration rates.[14]

After a lengthy delay in receiving NewEnergy's agreement to exchange the experts' workpapers, Powerweb served NewEnergy with four boxes of workpapers and a supplemental report by Dr. Fox-Penner on May 21, 2004.[15] Dr. Fox-Penner's supplemental report responded to the criticisms leveled by Dr. Rosenzweig and factored in the data not previously provided. Mr. Pappas also recalculated his damages figures based upon Dr. Rosenzweig's criticisms and the data first provided in Dr. Rosenzweig's report. Once again, Dr. Fox-Penner's supplemental report included *all* of the damages figures in order to reduce them to present value, including Mr. Pappas' revised amounts.[16] The total damages in Dr. Fox-Penner's supplemental report were approximately $20 million higher than in the earlier report, because of changes urged by NewEnergy's own expert, Dr. Rosenzweig.

---

[13] See Exhibit MBR-3 to Dr. Rosenzweig's Report, a copy of which is attached hereto as Exhibit D.

[14] See footnotes 21-22 below.

[15] Dr. Fox-Penner's May 21, 2004 Supplemental Report is attached hereto as Exhibit E.

[16] There was a labeling error in Dr. Fox-Penner's revised tables, which was later explained in Mr. Pappas's supplemental report and at Dr. Fox-Penner's deposition. (Certain of Mr. Pappas' revised amounts were inadvertently presented only in the version of Table 12 that assumed the previously undisclosed information that Dr. Rosenzweig received from NewEnergy was correct, instead of in both versions of that table.) NewEnergy appears to have misunderstood Dr. Fox-Penner's explanation or made some computation errors, because it claims that Powerweb is seeking more than $145 million in damages. On the contrary, the amount of Powerweb's damages has not changed since May 21, 2004, when Dr. Fox-Penner's supplemental report was served. The maximum amount is either $112 or $117 million, depending upon whether NewEnergy's representations in Dr. Rosenzweig's Exhibit MBR-3 are correct. See Exhibit F.

Following receipt of Dr. Fox-Penner's documents and supplemental report, NewEnergy's counsel alerted the Court to an impending discovery dispute related to experts.[17] Counsel for NewEnergy then conferred with counsel for Powerweb and agreed that Dr. Fox-Penner's deposition would be postponed, Mr. Pappas would submit a supplemental report explaining the changes in his calculations, and NewEnergy's experts would submit responsive supplemental reports.[18] Because Mr. Pappas' revised amounts were itemized and present-valued in Dr. Fox-Penner's supplemental report, NewEnergy already *knew* the increased amounts when it agreed to Mr. Pappas' submission of a supplemental report.[19] NewEnergy's counsel then advised the Court that the matter had been resolved and that supplemental expert reports were being exchanged.[20] NewEnergy received Mr. Pappas's supplemental report on May 27, 2004, within a week of having agreed to allow it and almost *ten weeks* before the scheduled trial pool date.

Both of the changes NewEnergy complains about were prompted by its own expert. Dr. Rosenzweig criticized Mr. Pappas for not listing the lost contracts,[21] so a list of them was included in the supplemental report. Yet NewEnergy now objects to the list being provided. Similarly, Dr. Rosenzweig criticized Mr. Pappas for using the EIM study's penetration rates,[22] so

---

[17]   See Letter dated May 24, 2004, acknowledging contacting the Court on May 21, attached hereto as Exhibit G.

[18]   See Letter dated May 24, 2004, attached hereto as Exhibit H.

[19]   Thus, NewEnergy is only feigning surprise, in an effort to unfairly eliminate a significant portion of Powerweb's damages.

[20]   See Letter dated May 24, 2004, attached hereto as Exhibit G.

[21]   On page 23 of his initial report, Dr. Rosenzweig said "It is nowhere stated, either in the report of Dr. Fox-Penner or in the analysis of Mr. Pappas, where and with whom these contracts would have been signed and there is therefore no economic way to assess whether Powerweb would have been successful in all 13 bidding processes." Because NewEnergy's expert complained about not knowing which contracts were lost, Mr. Pappas identified them in his supplemental report.

[22]   On page 24 of his initial report, Dr. Rosenzweig said:

Mr. Pappas used Powerweb's own penetration rates instead. NewEnergy now objects to that also, because it had the effect of *increasing* the projected damages.[23] Perhaps Dr. Rosenzweig should have left well enough alone on that point, but since he raised the issue, Mr. Pappas was entitled to respond.

In any event, all three of NewEnergy's experts have filed supplemental reports responding to the supplemental reports of Dr. Fox-Penner and Mr. Pappas.[24] In addition, both Dr. Fox-Penner and Mr. Pappas were deposed several weeks after service of their supplemental reports. Thus, the supplementations by Powerweb's experts have not caused any cognizable prejudice to NewEnergy.

### III.   ARGUMENT

#### A.   Powerweb Complied with Its Discovery Obligations and the Draconian Sanction of Precluding Evidence Is Unwarranted.

NewEnergy complains that the lost contracts should have been specifically identified sooner. However, that is not the type of information that must be voluntarily disclosed and it was never requested in discovery. Thus, there is no basis for any sanctions against Powerweb, let alone the extreme sanction of preclusion that NewEnergy requests.

---

> The analysis of the lost profits from equipment sold and serviced to the energy management customers is equally suspect. The calculations assume that the potential market is the 1000 largest customers in each <u>region</u>, and that, based on the EIM study, by the end of three years 49% of those customers, i.e., 504, would have availed themselves of the energy management products."

He then characterized that analysis as "nonsensical." To correct the perceived error, Mr. Pappas recalculated using the penetration rates that Powerweb actually experienced in its other contracts.

[23]   In an effort to have its cake and eat it too, NewEnergy is attempting to eliminate this increase while keeping all of the reductions in the supplemental reports.

[24]   Dr. Rosenzweig submitted a supplemental report dated June 11, 2004, Mr. Dovell submitted a supplemental report dated June 18, 2004, and Dr. Violette submitted a supplemental report dated June 30, 2004.

### 1. Powerweb Fully Complied with the Initial Disclosure Requirements.

In November 2002, Powerweb served NewEnergy with its initial disclosures pursuant to Rule 26(a)(1), identifying the persons and documents that Powerweb expected to use in support of its claims or defenses. Rule 26 provides, in pertinent part, that:

> [A] party must, without awaiting a discovery request, provide to other parties:
>
> (A)   the name, and if known, the address and telephone number of each individual likely to have discoverable information *that the disclosing party may use to support its claims or defenses*, unless solely for impeachment, identifying the subjects of the information;
>
> (B)   a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in possession, custody, or control of the party and *that the party may use to support its claims or defenses*, unless solely for impeachment.

Fed. R. Civ. P. 26(a)(1) (emphasis added).

In addition to the plain text of Rule 26, the comments to its 2000 Amendment make clear that the disclosure obligations are limited to the witnesses and documents that a party may use *to support* its case.[25] If the party does not intend to call a witness or use a document, then it should not be included in the Rule 26 disclosures.[26] Powerweb duly complied with its obligations and disclosed numerous individuals and documents that Powerweb then believed it might offer in support of its claims or defenses, including Powerweb's President, Lothar E.S. Budike, Jr.[27] Powerweb did not identify the potential customers that it lost to RETX and Silicon Energy because it does not intend to call them to support its claim for the lost contracts.

---

[25]   See Fed. R. Civ. P. 26, cmts. to 2000 Amendment.

[26]   Id.

[27]   Given that Powerweb is a small company, it is inconceivable that NewEnergy would not recognize that Mr. Budike had information concerning the lost contracts.

- 7 -

Powerweb will rely upon Mr. Budike for information regarding the contracts that were lost, not upon any undisclosed witnesses.

Moreover, initial disclosures need only be supplemented if the information disclosed is incomplete or incorrect in a material fashion and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[28] In response to document requests, Powerweb produced all of Powerweb's sales proposals, including those relating to the lost contracts. Powerweb also produced documents identifying Mr. Pappas as Powerweb's accountant. Thus, Powerweb's initial disclosures did not require any supplementation.

### 2. NewEnergy Did Not Ask for Identification of the Contracting Entities.

In January 2003, NewEnergy posed an interrogatory requesting that Powerweb state (a) the categories of damages and (b) the amount of damages for each category. NewEnergy is now trying to stretch the interrogatory into a request to specifically identify each lost contract. The interrogatory simply does not ask for that information. Indeed, NewEnergy has never issued a discovery request seeking identification of those lost prospective relationships. Moreover, the category of profits on lost contracts had already been disclosed in the counterclaims and the specific amount of those losses could not be determined until the experts completed their analysis. Thus, it was entirely appropriate for Powerweb to respond that the information would be provided with the expert disclosures. As promised, Powerweb subsequently served expert reports that identified the categories of damages and the amount of damages for each category, including the lost contracts.

---

[28] See Fed. R. Civ. P. 26(e)(1).

NewEnergy also seeks to twist an overly broad interrogatory asking Powerweb to identify each document that refers or relates to Powerweb's claim for damages into a request to identify the lost customers. As noted above, Powerweb *did* produce the documents related to the lost contracts.[29] It did not provide a list of the customers, because it was not asked for such a list. Moreover, Powerweb stated that it would present expert testimony regarding damages. Again, NewEnergy never took issue with that response during the period allowed for discovery.

The answer to an interrogatory need only be amended if it is incomplete or incorrect in a material respect and the additional or corrective information has not otherwise been made known to the other party.[30] Thus, Powerweb never had a duty to amend its interrogatory answers, because they were not materially incorrect or incomplete.

### 3. The Sanction of Precluding Evidence of the Lost Contracts Is Not Warranted.

If NewEnergy wanted to seek discovery from the lost customers, it should have asked who they were during the ample time allowed for such discovery. Its failure to do so was its own fault and provides no basis for punishing Powerweb.

The exclusion of evidence related to a significant portion of damages is an extreme sanction and requires more than a literal violation of Rule 26. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-93 (3d Cir 1994); see also Quinn v. Consolidated Freightways Corp., 283 F.3d 572, 576-77 (3d Cir. 2002). As demonstrated above, there has been no breach of disclosure or discovery obligations. Thus no sanctions are warranted. Nonetheless, even if there had been some slight inadequacy in Powerweb's discovery responses, it would not merit the

---

[29] In response to a request for marketing materials submitted to third parties, Powerweb provided electronic copies of the various proposals and submissions that were made to the lost contract entities. See Letter dated April 9, 2003, attached hereto as Exhibit C.

[30] See Fed. R. Civ. P. 26(e)(2).

draconian sanction of precluding all evidence related to approximately $63,000,000 of Powerweb's losses.

Before precluding evidence, a court must find that either the party revealed previously undisclosed evidence while trial was imminent or in progress or acted in bad faith, which is more than mere lack of diligence. See Stein v. Foamex Int'l, Inc., No. Civ.A. 00-2356, 2001 WL 936566 at *3 (E.D. Pa. Aug. 15, 2001) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-93 (3d Cir 1994) and In re TMI Litig. Cases Consol. II, 922 F. Supp. 997, 1004 (M.D. Pa. 1996)). Neither prerequisite can be found in this case. NewEnergy was on notice of the claim for lost contracts since the initial counterclaims were filed in 2002. The fact that Powerweb was claiming damages from lost contracts was disclosed in timely expert reports served on April 1, 2004. Indeed, NewEnergy's experts commented on the lost contracts in their expert reports served on May 3. The identities of the particular entities were provided on May 27, nearly ten weeks in advance of trial, before the supplemental reports by NewEnergy's experts, and before Powerweb's experts were deposed.[31]

Unlike cases where bad faith has been found, Powerweb has not failed to respond to discovery, promised to supplement incomplete answers, and ignored the Court's schedule. Powerweb has duly complied with its obligations. NewEnergy has suffered no prejudice at the hands of Powerweb—NewEnergy has been afforded ample time to permit its experts to respond and to review Mr. Pappas' supplemental report and workpapers in advance of his deposition. NewEnergy cannot demonstrate the type of delay or bad faith needed to justify the sanctions it seeks.

---

[31] It made no difference that the identities were not also listed in Mr. Pappas' initial report, because the discovery period ended before *any* expert reports were due. If NewEnergy wanted to seek discovery from the lost customers, it should have asked who they were during the ample time allowed for such discovery.

Moreover, NewEnergy's request to exclude all evidence of lost contracts is not the appropriate sanction for the infraction it claims. NewEnergy complains that Powerweb did not identify the names of the lost contract entities. Even if Powerweb had been required to do so, at most, NewEnergy would be entitled to prevent Powerweb from calling those entities at trial.[32] Under no circumstances should Powerweb be precluded from introducing evidence that *was* identified, such as Mr. Budike's testimony and the proposals produced in discovery. NewEnergy is clearly overreaching in asking that *all* evidence related to the lost contracts be precluded.

Finally, there is no basis for reopening discovery. NewEnergy merely seeks to go back and clean up its own discovery shortcomings. Mr. Budike will be the one to offer factual testimony regarding the lost contracts and NewEnergy deposed him on two separate occasions, in October 2003 and in January 2004. It was given ample opportunity to ask Mr. Budike questions about the lost contracts or the prospective contractual relations. Thus, there is no fairness issue militating in favor of reopening discovery.

### B. NewEnergy Agreed to Permit the Supplemental Report.

NewEnergy again seeks an extreme sanction in trying to exclude Mr. Pappas' entire supplemental report, notwithstanding the fact that it consented to the report and that it complains about only one segment of the report. Expert testimony beyond the scope of a report is admissible absent surprise or bad faith, and the exclusion of such testimony may be reversible error. See Bowersfield v. Suzuki Motor Corp., 151 F. Supp.2d 625, 631 (E.D. Pa. 2001) (citing Fritz v. Consolidated Rail Corp., Civ. A. No. 90-7530, 1992 WL 96285, at *3 (E.D. Pa. Apr. 23, 1992); see also DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1201-02 (3d Cir. 1978). There is neither surprise nor bad faith with respect to Mr. Pappas's supplemental report.

---

[32] See Fed. R. Civ. P. 37(c)(1).

NewEnergy agreed to allow Mr. Pappas to submit his supplemental report knowing the significant increase in damages that it would include. NewEnergy placed no conditions on that agreement. The Court should not now permit NewEnergy to change its mind.

Mr. Pappas issued a timely expert report setting forth calculations of Powerweb's lost profits resulting from lost installations of the Omni-Link System to NewEnergy customers for both load management ("LM") and energy management ("EM") services, the lost installation of the Omni-Link System at Bell Atlantic (now known as Verizon), and lost contracts with other customers.[33] His report calculated lost contract damages for both LM and EM services and assumed that the contracting entities, many of which were utilities, would have a market penetration experience similar to that of NewEnergy for LM and similar to the EIM study results for EM. In his responsive report, Dr. Rosenzweig criticized Mr. Pappas for those assumptions. In his supplemental report, Mr. Pappas responded by using Powerweb's own penetration rates under its existing contracts instead. That resulted in the omission of LM services and an increase in EM services, with a net positive change in the amount of lost profits.

Aside from the parties agreement, Rule 26(e) permits the supplementation of reports so long as such supplementation is done no later than when pre-trial disclosures are due. See Fed. R. Civ. P. 26(e)(1). Powerweb's pretrial disclosures are due on July 15 and Mr. Pappas' supplemental report was served May 27. Moreover, Mr. Pappas was not deposed until July 1. Thus, Mr. Pappas' supplemental report did not violate Rule 26, and there is no basis for the imposition of sanctions.

The consensual submission of Mr. Pappas' supplemental report is not comparable to the situation in Stein v. Foamex, No. Civ. A. 00-2356, 2001 WL 936566 (E.D. Pa. Aug. 15,

---

[33] See Mr. Pappas' initial report, attached to NewEnergy's motion as Exhibit C.

2001), cited as support by NewEnergy. In Stein, the expert served a report opining that one agent caused environmental damage. See id. at *2. The expert was then deposed regarding the original report. See id. Less than thirty days before the case was placed in the trial pool, the expert submitted an affidavit in conjunction with a response to a summary judgment motion. In the affidavit, he opined that a different agent, not mentioned in his report, was the cause of the environmental damage. See id. Moreover, his new opinion was not based on anything that he had not already considered while preparing his original expert report. See id.

Mr. Pappas's supplemental report is a proper supplementation in response to facts and criticisms leveled by NewEnergy's experts. It was done in a timely manner, with the agreement of counsel and prior to Mr. Pappas' deposition. Moreover, NewEnergy has submitted supplemental reports from each of its own experts responding to Mr. Pappas' supplemental report and Dr. Fox-Penner's supplemental report. Thus, NewEnergy cannot demonstrate that the extreme sanction of precluding Mr. Pappas' supplemental report is warranted. See Reilly Foam Corp. v. Rubbermaid Corp., 206 F. Supp.2d 643, 660 (E.D. Pa. 2002) (finding that exclusion of revised economic report too drastic a sanction where other party had sufficient time to prepare a report addressing supplemental report).

## IV.  CONCLUSION

For the foregoing reasons, Powerweb respectfully submits that NewEnergy's motion to strike and preclude evidence should be denied.

- 14 -

                    Respectfully submitted,

                    RG574

                    Rudolph Garcia, Esquire
                    Kara H. Goodchild, Esquire
                    Kristin L. Calabrese, Esquire
                    SAUL EWING LLP
                    1500 Market Street, 38th Floor
                    Philadelphia, PA 19102
                    (215) 972-1961; -7187; -7533
                    Attorneys for Powerweb, Inc.

Date:   July 6, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing memorandum was filed electronically today and is available for viewing and downloading from the ECF system. The memorandum was served upon counsel for Constellation NewEnergy, Inc. by notice of electronic filing, addressed to:

      David E. Landau, Esquire
      Wolf, Block, Schorr and Solis-Cohen, LLP
      1650 Arch St., 22nd Floor
      Philadelphia, PA 19102
      dlandau@wolfblock.com


                                          RG574
                              Rudolph Garcia, Esquire

Date:   July 6, 2004