IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## INITIAL DISCLOSURES BY POWERWEB TECHNOLOGIES, INC.

In accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure, Powerweb Technologies, Inc. ("Powerweb") submits the following initial disclosures to Constellation NewEnergy, Inc. ("NewEnergy"):

**A.    Individuals Likely to Have Discoverable Information**

| | Witness | Subjects of Information |
|---|---|---|
| 1. | Martin Anderson c/o counsel for Powerweb | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 2. | Andrew Bakey c/o counsel for Powerweb | Business dealings and communications between Powerweb and New Energy. |
| 3. | Dan Baker c/o counsel for NewEnergy | Business dealings and communications between Bell Atlantic and NewEnergy, and the Bell Atlantic project. |
| 4. | Michael Barford c/o counsel for Powerweb | Technical information relating to the software and network platforms of the Omni-Link System. |
| 5. | Joe Bonner c/o counsel for Powerweb | Business dealings and communications between Powerweb and NewEnergy. |

EXHIBIT A

|  | Witness | Subjects of Information |
|---|---|---|
| 6. | Lothar Budike, Jr.<br>c/o his counsel | Business dealings and communications between Powerweb and NewEnergy, NewEnergy's improper disclosure and use of information it received from Powerweb, and Powerweb's counterclaim in general. |
| 7. | A-Valey Engineers, Inc.<br>c/o its counsel | The engineering work, field audits, and studies performed for Powerweb and NewEnergy relating to the Bell Atlantic project. |
| 8. | Jim Curnyn<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 9. | David A. DePerro<br>Government Sales Manager<br>Cutler-Hammer<br>Suite 100<br>955 Rockside Woods Blvd.<br>Independence OH  44131 | Business dealings and communications between Powerweb and NewEnergy. |
| 10. | George Drosdowich, Esq.<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 11. | Jim Goodman<br>Manager – Real Estate<br>Bell Atlantic Corp.<br>216 Morris Avenue<br>Spring Lake NJ  07762 | NewEnergy's business dealings with Bell Atlantic, and the Bell Atlantic project. |
| 12. | Kirk Hampton<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |

| | Witness | Subjects of Information |
|---|---|---|
| 13. | Jon Harkness<br>c/o counsel for Powerweb | The factual allegations contained in Powerweb's counterclaim against NewEnergy. |
| 14. | George Harris<br>c/o counsel for Powerweb | Technical information relating to the software and network platforms of the Omni-Link System. |
| 15. | F. Huang<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 16. | Brian Hayduk<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 17. | James P. Hopkins<br>Bell Atlantic Corp.<br>216 Morris Avenue<br>Spring Lake NJ  07762 | NewEnergy's business dealings with Bell Atlantic, and the Bell Atlantic project. |
| 18. | Darcelle Lahr<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 19. | David Lahr<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 20. | Paul Langbein<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 21. | Steve Levine<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |

| Witness | Subjects of Information |
|---|---|
| 22. Diedra Lord<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 23. Jeremy Metz<br>Bell Atlantic Corp.<br>216 Morris Avenue<br>Spring Lake NJ  07762 | NewEnergy's business dealings with Bell Atlantic, and the Bell Atlantic project. |
| 24. Keith Mistry<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 25. David McGeown, PE<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 26. David McLaughlin<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 27. Robert Morgan<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 28. Sean Mullen<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |

| Witness | Subjects of Information |
|---------|------------------------|
| 29. R. Palmer<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 30. Kevin Santella<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 31. Mr. Peter Scarpelli<br>Vice President of Strategy<br>& Business Development<br>RETX, Inc.<br>Plaza 400, Suite 180<br>5883 Glenridge Drive<br>Atlanta, GA 30328-5339 | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 32. Doug Short<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 33. Andrew Singer<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy, and NewEnergy's improper disclosure and use of information it received from Powerweb. |
| 34. Kelly Speakes<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 35. Stu Temple<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 36. Aaron Thomas<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 37. Derik Viner<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |
| 38. E. Wasilewski<br>c/o counsel for NewEnergy | Business dealings and communications between Powerweb and NewEnergy. |

B.    **Supporting Documents in Powerweb's Possession**

      1.     Communications between Powerweb and Bell Atlantic.

      2.     Communications between Bell Atlantic and NewEnergy.

      3.     Communications between Powerweb and NewEnergy.

      4.     Communications between Powerweb and AES Cilco.

      5.     Communications between NewEnergy and AES Cilco.

      6.     Confidentiality Agreement executed by NewEnergy in favor of Powerweb.

      7.     Letter Agreement signed by Powerweb and NewEnergy.

      8.     Joint-Venture Agreement signed by Powerweb and NewEnergy.

      9.     Joint-Marketing Agreement signed by Powerweb and NewEnergy.

      10.    Profit Distribution Agreement signed by Powerweb and NewEnergy.

      11.    Letter of intent signed by Powerweb and NewEnergy.

      12.    Internal memoranda and email by NewEnergy regarding Powerweb, the Omni-Link System, Energy Technology information and/or capacity resale.

      13.    Documents and information that Powerweb provided to NewEnergy.

      14.    Presentations created by NewEnergy on the benefits of capacity resale and electric curtailment.

      15.    Correspondence between A-Valey Engineers and Powerweb regarding the work described in the amended complaint.

      16.    Press release issued by Powerweb detailing the strategic alliance between Powerweb and NewEnergy.

      17.    Promotional materials generated by NewEnergy detailing its capacity resale projects.

      18.    Patents and related documents regarding the Omni-Link System.

      19.    Copies of the Omni-Link software and related documents.

The documents listed above are in the possession of Powerweb and its counsel.

**C.    Computation of Damages**

Powerweb's damages include expenses related to the Bell Atlantic project and lost profits on that project and many others, the full extent of which has not yet been determined.

**D.    Existence and Contents of Any Insurance Agreements**

NewEnergy has not yet disclosed whether it has a policy of insurance that may cover Powerweb's counterclaim. Powerweb is not aware of any insurance policy that would apply to NewEnergy's claims against Powerweb.

**E.    Supplementation**

Powerweb reserves the right to supplement these disclosures.

Rudolph Garcia, Esquire
Joseph F. O'Dea, Jr., Esquire
Nicholas J. Nastasi, Esquire
Atty. I.D. Nos. 25336, 48370, 82102
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-1961; -7109; -1983
Attorneys for Powerweb Technologies, Inc.

Dated: November 21, 2002

- 7 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,    :
          Plaintiff,        :
                        :
        v.              :  No. 02-CV-2733 (HB)
                        :
POWERWEB TECHNOLOGIES, INC., *et*    :
*al.*,                        :
          Defendants.        :

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing disclosures was served today upon counsel for Constellation NewEnergy, Inc. by first-class mail, postage prepaid, addressed as follows:

> Joel M. Sweet, Esquire
> Wolf, Block, Schorr and Solis-Cohen LLP
> 1650 Arch Street, 22nd Floor
> Philadelphia, PA 19102-2097

Rudolph Garcia, Esquire
Joseph F. O'Dea, Jr., Esquire
Nicholas J. Nastasi, Esquire
Atty. I.D. Nos. 25336, 48370, 82102
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7109; -1983
Attorneys for Powerweb Technologies, Inc.

Dated: November 21, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.    :
         Plaintiff,    :
                         :
         v.    :    No. 02-CV-2733 (HB)
                         :
POWERWEB TECHNOLOGIES, INC., *et al.*,    :
         Defendants.    :

### ANSWERS AND OBJECTIONS BY POWERWEB TECHNOLOGIES, INC. TO THIRD SET OF INTERROGATORIES BY CONSTELLATION NEWENERGY, INC.

Pursuant to Federal Rule of Civil Procedure 33(b), Powerweb Technologies, Inc. ("Powerweb") hereby answers and objects to the third set of interrogatories served by Constellation NewEnergy, Inc. ("NewEnergy"), as follows:

### GENERAL OBJECTIONS

1.    All responses herein are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

    a.    All objections as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

    b.    The right to object to the use of any of the information and/or documents provided herein in any subsequent proceedings, or the trial of this or any other action on any ground;

    c.    The right to object on any ground at any time to a demand for further response to this or any other set of interrogatories or other discovery procedures involving or relating to the subject matter of these interrogatories;

721373.1 2/26/03

## EXHIBIT B

23.    Identify each company that competes with you and the Omni-Link System and state the name of each company's competing product.

RESPONSE: Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: Powerweb is currently aware of products similar to the Omni-Link System being offered by RETX and NewEnergy. There are various other companies that offer products that could be utilized to compete with the Omni-Link System in combination with other services and equipment. Such products include those offered by Silicon Energy, ABB Energy Interactive, Plurimi, Invensys, Sixth Dimension, Enerwise, Elusions, Engage Networks.

24.    Identify each non-party to whom you allege NewEnergy disclosed your trade secrets or otherwise confidential information.

RESPONSE: Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: Upon information and belief, NewEnergy caused confidential information to be disclosed to AES CILCO (n/k/a CILCO), Silicon Energy and RETX. NewEnergy also caused the confidential information to be disclosed to others through its development and use of a similar product that enabled NewEnergy to offer its customers retail interruptible contracts, retail hourly price contracts, and retail firm contracts that have interruptible provisions.

25.    Identify each person with information concerning NewEnergy's alleged disclosure to non-parties of your purported trade secrets and/or confidential information.

RESPONSE: Powerweb incorporates here all of the "General Objections" set forth above. Powerweb further objects to this interrogatory on the basis that it is unreasonably

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: At trial, Powerweb will offer expert testimony as to the measure of damages to which Powerweb is entitled as a result of NewEnergy's outrageous, fraudulent and deceptive conduct. Powerweb's experts will be disclosed in this litigation in accordance with the Court's First Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure.

34.    State each separate category of damages you claim and the amount of damages for each category.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: At trial, Powerweb will offer expert testimony as to the measure of damages to which Powerweb is entitled as a result of NewEnergy's outrageous, fraudulent and deceptive conduct. Powerweb's experts will be disclosed in this litigation in accordance with the Court's First Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure.

35.    Identify each document that refer (sic) or relate (sic) to your claim for damages.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: At trial, Powerweb will offer expert testimony as to the measure of damages to which Powerweb is entitled as a result of NewEnergy's outrageous, fraudulent and deceptive conduct. Powerweb's experts will be disclosed in this litigation in accordance with the Court's First Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure. By way of further response, Powerweb is gathering documents from NewEnergy and non-parties in the discovery

721373.1 2/26/03                                  -18-

process that will enable it to offer expert testimony on the measure of damages to which Powerweb is entitled as a result of NewEnergy's wrongdoing. Powerweb will comply with all applicable rules of discovery to ensure that NewEnergy promptly receives copies of all documents relating to the damages suffered by Powerweb.

36.    Identify the respective email accounts and Internet service providers used by Lothar Budike, Jr. and/or Andrew Bakey during the time period 1998 to the present.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: pweb1@aol.com, lbudike@2powerweb.com; abakey@2powerweb.com; abakey@EPEX.cc; abakey@prodigy.net

37.    Identify all expert witnesses whom you intend to call on your behalf at trial.

**RESPONSE:** Powerweb incorporates here all of the "General Objections" set forth above. Subject to and without waiving these objections, Powerweb responds as follows: Powerweb has not yet determined who will be offering expert testimony at the trial of this matter. Powerweb's experts will be disclosed in this litigation in accordance with the Court's First Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure.

COPY

**SAUL EWING** LLP
ATTORNEYS AT LAW

KARA H. GOODCHILD
Phone:  (215) 972-7187
Fax:  (215) 972-1825
kgoodchild@saul.com
www.saul.com

April 9, 2003

**Via Hand Delivery**
Joel M. Sweet, Esquire
Wolf Block Schorr and Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA  19102

Re:    **AES Newenergy, Inc. v. Powerweb Technologies, Inc.**
**Civil Action No. 02-CV-2733**

Dear Joel:

Enclosed please find the CD bates labeled PW002290 and the confidentiality designations for the files contained on the disk.

Very truly yours,

Kara H. Goodchild

KHG/cb
Enclosures
bcc:    Rudolph Garcia, Esquire (w/o encl.)
Nicholas J. Nastasi, Esquire (w/o encl.)
Justin Moriconi (w/encl.)

# EXHIBIT C

Centre Square West ♦ 1500 Market Street, 38th Floor ♦ Philadelphia, PA 19102-2186
Phone: (215) 972-7777 ♦ Fax: (215) 972-7725

729702.1 4/9/03  BALTIMORE    CHESTERBROOK    HARRISBURG    NEW YORK    PHILADELPHIA    PRINCETON    WILMINGTON
A DELAWARE LIMITED LIABILITY PARTNERSHIP

CONTAINS CONFIDENTIAL MATERIAL –
SUBJECT TO CONFIDENTIALITY STIPULATION

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 02-CV-2733 (HB) |
| | ) | |
| v. | ) | |
| | ) | |
| POWERWEB TECHNOLOGIES, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## EXPERT REPORT OF DR. MICHAEL B. ROSENZWEIG

### I. INTRODUCTION AND SUMMARY

#### A. Qualifications

My name is Dr. Michael B. Rosenzweig and I am a senior vice president and cohead of the US energy practice of NERA, Inc., a leading international microeconomics consulting firm. NERA has been in business for over 40 years specializing in the economic analysis of issues in the areas of antitrust, securities, infrastructure industries and intellectual property. I have more than 25 years of experience in analyzing issues related to electric power. I have worked at the United States Department of Energy and served as the technical advisor to one of the Commissioners of the US Federal Energy Regulatory Commission. My primary assignment at the Commission was the development of bulk power markets on an experimental basis. This work served as a precursor to the current markets for power in the US. During my career, I have testified on power sector related issues before state and federal regulatory agencies, arbitral panels and the US Congress. I also served as an arbitrator in a transmission dispute between two electric utilities. My detailed resume including testimony given within the last four years is attached at Exhibit MBR-1.

EXHIBIT D

CONTAINS CONFIDENTIAL MATERIAL –
SUBJECT TO CONFIDENTIALITY STIPULATION

## EXHIBIT MBR-3

### DATA RELIED UPON PROVIDED BY NEWENERGY

1. NewEnergy LM customers in New England in 2002 was 1.

2. NewEnergy LM profits in California in the years 2002-2004 were 0.

3. Number of LM customers in New England in 2004 is 4.

4. In New England the split between Class 1 and Class 2 customers is 50% - 50% in 2004.

5. Number of LM meters per customer in New England is 1.

6. NewEnergy's margin in NYISO EDRP was approximately 11% in 2001.

7. In California NewEnergy had 36 LM customers enrolled in the EDRP in 2000 and 0 after.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 02-CV-2733

SUPPLEMENTAL REPORT

*Prepared for*

Powerweb, Inc.

*Prepared by*

Peter Fox-Penner, Ph.D.

———————————————

*The Brattle Group*
1133 20th Street, NW
Suite 800
Washington, DC 20046
202.955.5050 (voice)
202.955-5059 (fax)
www.brattle.com

May 21, 2004

EXHIBIT E

**Supplemental Expert Report of Dr. Peter Fox-Penner**

1. I am the same Peter Fox-Penner who filed an expert report in this proceeding dated April, 2004. In this original report,[1] I provided estimates for two measures of damages, Powerweb's (PW's) Lost Profits and NewEnergy's (NE) Load Management (LM) Profits.

2. I have been asked by counsel for Powerweb to update my estimate of these two measures of damages based on the most recent information available to me.

3. In my original report, I explain that my calculations of both damage measures use an overall process shown in Figure 1 and described within my original report. My method centers on four curtailment revenue calculations, one for each region of the U.S. covered by a Regional Transmission Operator. The four regions are PJM, New York, New England, and California.

4. My damage estimates in this supplemental report are based on methods, data, models, calculations, and assumptions that are identical to those described in my original report with the exception of changes discussed in this supplemental report.

5. I have created two distinct sets of damage calculations in this supplemental report. The first set of damages, which I call "Revised Without NewEnergy Representations," incorporate the following changes.

6. First, I assume that the rate of "participation" in economic LM programs in New England was 17%, consistent with Goldman, Heffner, and Barbose, "Customer Load Participation in Wholesale Markets: Summer 2001 Results, Lessons Learned, and Best Practices." Second, I use recently released estimates of the equilibrium cost of constructing new power plant capacity in New England and PJM. These estimates are $160 per MW-day in PJM and $80 per kW-year in New England. Third, I base my projection of Verizon's revenues from its participation in the LIPA LM program on actual 2003 revenues of $22,000 rather than 2002 revenues of $144,400.

7. To estimate NE's LM profits and PW's lost profits, I must deduct NE's costs of providing LM services from the curtailment revenues I estimate in the four regions. I

have altered my estimate of the costs born by NewEnergy as follows. First, I assume that each customer's meter costs a constant $2500 installed, and that this cost is deducted from the gross receipts NewEnergy receives from each ISO prior to NewEnergy taking its share of the net receipts. I assume NewEnergy similarly deducts a $150/meter-month charge for all in-place LM meters before taking its share. Prior to NewEnergy dividing its net LM receipts with Powerweb, I assume NewEnergy pays to PW a one-time $240,000 fee and a $175,000 per ISO per year fee, and that it deducts these costs prior to dividing the remaining proceeds with Powerweb.[2]

8. I also assume that NewEnergy incurs a cost of administering LM programs of 2% of the gross LM receipts, after deducting per-account costs, and I deduct these costs from NE LM profits.

9. As in my original report, I have provided my estimate of customers and meters to Mr. Pappas for the purpose of his revising his original estimates of PW's lost profits from system sales. Mr. Pappas has passed back his annual revised estimates of these PW profits for inclusion in my summary tables, as in my original report.

10. My resulting conclusion for this "Revised Without NewEnergy Representations" scenario is that Powerweb's Total Lost Profits are $76,637,901, NE's LM profits are $4,702,278, and that the total damages are $81,340,179 if both measures of damage apply.

11. Exhibit MBR-3 of Dr. Rosenzweig's report contains several representations concerning data or assumptions used in my calculations. In an exhibit he labels 'Data Relied Upon Provided by NewEnergy," he represents that:

- The number of NewEnergy LM customers in New England in 2002 was 1.

- NewEnergy LM profits in California in the years 2002-2004 were 0.

- Number of LM customers in New England in 2004 is 4.

- In New England the split between Class 1 and Class 2 customers is 50% - 50% in 2004.

- Number of LM meters per customer in New England is 1.

---

[1]  I refer to this report as my April report or my original report, equivalently.
[2]  In years when New Energy does not earn positive profits I assume no profits or losses are shared with Powerweb.

- NewEnergy's margin in NYISO EDRP was approximately 11% in 2001.
- In California NewEnergy had 36 LM customers enrolled in the EDRP in 2000 and 0 after.

I refer to these collectively as the "MBR-3 representations."

12. My second set of damage estimates incorporate all of the changes in the "Revised Without NewEnergy Representations" scenario plus all changes in my calculations that would result from the MBR-3 representations if each and every such representation was proven correct. I refer to this second set of numbers as "Revised Including *All* NewEnergy Representations."

13. I find that accepting all the MBR-3 representations causes me to conclude that NewEnergy would not have found LM profitable under its agreement with PW in New England or California after the year 2000. I therefore conclude that NewEnergy would not have pursued LM in these two regions in this scenario and that, as a result, neither it nor Powerweb incurred costs or earned profits other than year 2000 California. This includes the additional profits that would come in the form of increased commodity margins or added customer retention.

14. I have also provided my estimate of customers and meters in this scenario to Mr. Pappas for the purpose of his revising his original estimates of PW's lost profits from system sales for this scenario. Mr. Pappas has passed back his annual revised estimates of these PW profits in this scenario for inclusion in my summary tables, as in my original report.

15. My resulting conclusion is that PW's Total Lost Profits in the "Revised Including All NewEnergy Representations" scenario are $108,220,197, NE's LM profits are $3,463,576, and that the total damages are $111,683,773 if both measures of damage apply.

16. If any portion, but not all, of the MBR-3 representations is found to be accurate, my damage estimates would vary between the levels presented in the two scenarios herein, as would result from the insertion of the established portions of the MBR-3 representation into my models and calculational framework.

17. Attached to this report are copies of all tables from my original report that must be revised to reflect my supplemental findings. Some of these revised tables differ by scenarios, and are labeled accordingly, while others are common to both scenarios.

Revised Table 3
Key Parameters for Capacity Price Forecasts

| Region | Year in Which Capacity is Balanced | Cost of New Capacity Resource ($/kW-year) | Source |
|---|---|---|---|
| PJM | 2008 | $58.40 (*) | PJM *Fundamentals of Unforced Capacity* April 2003 p. 94   2003 N.E.R.C. *Long Term Reliability Assessment* December 2003 p. 32 |
| New York | 2015 | NYC: $159 LI: $139 ROS: $85 | New York ISO 2003 *Load and Capacity Data* p.60 and New York ISO ICAP *Manual* Rev. Nov 2003 p. 5-9 |
| New England | 2012 | $80 ($2004) | Compliance Filing of ISO New England Inc.; Devon Power LLC, et al., Docket No. ER03-563, March 2004 p. 14 |

(*) In Installed Terms

REVISED TABLE 7

SUMMARY OF VERIZON LOAD MANAGEMENT REVENUES

| Nominal Dollars | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| NYC Energy | $0 | $87,950 | $179,800 | $346,332 | $353,308 | $360,424 | $367,684 | $375,091 | $382,646 | $390,354 |
| NYISO - Capacity | $0 | $1,113,050 | $402,350 | $424,400 | $464,219 | $508,096 | $556,472 | $609,840 | $668,747 | $733,806 |
| LIPA | $0 | $230,000 | $144,400 | $22,000 | $22,443 | $22,895 | $23,356 | $23,827 | $24,307 | $24,796 |
| NYPA | $0 | $50,000 | $54,000 | $100,000 | $102,014 | $104,069 | $106,165 | $108,304 | $110,485 | $112,711 |
| Con Ed | $0 | $0 | $14,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL REVENUES | $0 | $1,481,000 | $794,550 | $892,732 | $941,984 | $995,485 | $1,053,678 | $1,117,061 | $1,186,185 | $1,261,667 |

REVISED TABLE 4
"REVISED WITHOUT NEWENERGY REPRESENTATIONS"
SUMMARY OF N.E. LOAD MANAGEMENT REVENUES BY REGION

| Nominal Dollars | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK REGION** | | | | | | | | | | |
| Special Case Resource | $0 | $195,285 | $2,714,667 | $3,420,593 | $4,026,278 | $4,667,202 | $5,346,343 | $6,065,537 | $6,826,699 | $7,631,830 |
| Energ Dem Resp | $0 | $14,260 | $135,718 | $26,381 | $27,307 | $28,216 | $29,155 | $30,125 | $31,128 | $32,165 |
| Both EDR & SCR | $0 | $1,086,689 | $1,147,283 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL REVENUES | $0 | $1,296,234 | $3,997,667 | $3,446,974 | $4,053,584 | $4,695,418 | $5,375,498 | $6,095,662 | $6,857,828 | $7,663,995 |
| **PJM REGION** | | | | | | | | | | |
| ALM Program | $0 | $509,988 | $501,916 | $195,067 | $274,561 | $1,453,325 | $2,459,911 | $3,533,994 | $4,679,039 | $6,195,117 |
| Economic Response Load Program | $0 | $0 | $206,847 | $130,934 | $236,726 | $464,834 | $490,496 | $517,578 | $546,157 | $576,317 |
| Emergency Response Load Program | $0 | $0 | $6,375 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL REVENUES | $0 | $509,988 | $715,137 | $326,000 | $511,288 | $1,918,159 | $2,950,408 | $4,051,572 | $5,225,196 | $6,771,434 |
| **NEPOOL REGION** | | | | | | | | | | |
| CLASS 1 Demand Response | $0 | $0 | $413,035 | $387,188 | $874,570 | $1,120,860 | $1,382,649 | $1,660,702 | $1,955,817 | $2,268,826 |
| CLASS 2 Price Response | $0 | $0 | $1,530 | $3,240 | $5,560 | $5,746 | $5,938 | $6,137 | $6,342 | $6,554 |
| TOTAL REVENUES | $0 | $0 | $414,565 | $390,428 | $880,130 | $1,126,606 | $1,388,588 | $1,666,839 | $1,962,159 | $2,275,380 |

REVISED TABLE 5
"REVISED WITHOUT NEWENERGY REPRESENTATIONS"
SUMMARY OF CALIFORNIA N.E. LOAD MANAGEMENT REVENUES

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| Nominal Dollars | | | | | | | | | | |
| Emerg. Dem. Resp. Prog. | 2,724,839 | 271,962 | 841,284 | 1,613,446 | 2,020,937 | 2,281,205 | 2,747,105 | 2,981,277 | 2,981,277 | 2,981,277 |
| TOTAL REVENUES | $2,724,839 | $271,962 | $841,284 | $1,613,446 | $2,020,937 | $2,281,205 | $2,747,105 | $2,981,277 | $2,981,277 | $2,981,277 |

REVISED TABLE 10
"REVISED WITHOUT NEWENERGY REPRESENTATIONS"
NE LM PROFITS BEFORE SPLIT AND POWERWEB LOST PROFITS

| Nominal Dollars | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK REGION** | | | | | | | | | | |
| Special Case Resource | $0 | $195,285 | $2,714,667 | $3,420,593 | $4,026,278 | $4,667,202 | $5,346,343 | $6,065,537 | $6,826,699 | $7,631,830 |
| Emerg Dem Resp | $0 | $14,260 | $135,718 | $26,381 | $27,307 | $28,216 | $29,155 | $30,125 | $31,128 | $32,165 |
| Both EDR & SCR | $0 | $1,086,689 | $1,147,283 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $0 | $1,296,234 | $3,997,667 | $3,446,974 | $4,053,584 | $4,695,418 | $5,375,498 | $6,095,662 | $6,857,828 | $7,663,995 |
| NE LM PROFITS BEFORE SPLIT | ($60,000) | $7,966 | $521,138 | $405,510 | $500,081 | $598,122 | $701,227 | $807,171 | $922,684 | $1,044,541 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $0 | $3,983 | $260,569 | $202,755 | $250,040 | $299,061 | $350,613 | $403,586 | $461,342 | $522,270 |
| **PJM REGION** | | | | | | | | | | |
| ALM Program | $0 | $509,988 | $501,916 | $195,067 | $274,561 | $1,453,325 | $2,459,911 | $3,533,994 | $4,679,039 | $6,195,117 |
| Economic Response Lead Program | $0 | $0 | $206,847 | $130,934 | $236,726 | $464,334 | $490,496 | $517,578 | $546,157 | $576,317 |
| Emergency Response Lead Program | $0 | $0 | $6,375 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $0 | $509,988 | $715,137 | $326,000 | $511,288 | $1,918,159 | $2,950,408 | $4,051,572 | $5,225,196 | $6,771,434 |
| NE LM PROFITS BEFORE SPLIT | ($60,000) | ($7,403) | $26,093 | ($595,356) | ($549,946) | $247,227 | $453,272 | $666,805 | $896,267 | $1,194,837 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $0 | $0 | $13,047 | $0 | $0 | $123,614 | $226,636 | $333,403 | $448,133 | $597,418 |
| **NEPOOL REGION** | | | | | | | | | | |
| CLASS 1 Demand Response | $0 | $0 | $413,035 | $387,188 | $874,570 | $1,120,860 | $1,382,649 | $1,660,702 | $1,955,817 | $2,268,826 |
| CLASS 2 Price Response | $0 | $0 | $1,530 | $3,240 | $5,560 | $5,746 | $5,938 | $6,137 | $6,342 | $6,554 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $0 | $0 | $414,565 | $390,428 | $880,130 | $1,126,606 | $1,388,588 | $1,666,839 | $1,962,159 | $2,275,380 |
| NE LM PROFITS BEFORE SPLIT | ($60,000) | $0 | ($578,402) | ($599,575) | $21,812 | $113,269 | $188,704 | $268,922 | $354,158 | $445,922 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $0 | $0 | $0 | $0 | $10,906 | $56,634 | $94,352 | $134,461 | $177,079 | $222,961 |
| **CALIFORNIA REGION** | | | | | | | | | | |
| Emerg. Dem. Resp. Prog. | $2,724,839 | $271,962 | $841,284 | $1,613,446 | $2,020,937 | $2,281,205 | $2,747,105 | $2,981,277 | $2,981,277 | $2,981,277 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $2,724,839 | $271,962 | $841,284 | $1,613,446 | $2,020,937 | $2,281,205 | $2,747,105 | $2,981,277 | $2,981,277 | $2,981,277 |
| NE LM PROFITS BEFORE SPLIT | $132,623 | ($114,823) | ($537,761) | $115,358 | $236,683 | $307,017 | $392,379 | $464,024 | $484,570 | $484,570 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $66,312 | $0 | $0 | $57,679 | $118,342 | $153,508 | $196,190 | $232,012 | $242,285 | $242,285 |

Revised Table 11
"Revised Without NewEnergy Representations"
Annual Powerweb Lost Profits
System Sales and Maintenance

Estimated by Mr. Pappas

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **NewEnergy** | | | | | | | | | | |
| Lead Management Customers | $1,922,841 | $1,418,895 | $1,447,610 | $1,608,321 | $1,549,089 | $1,582,503 | $1,656,088 | $1,708,695 | $1,712,613 | $1,714,601 |
| Energy Management Customers | $425,100 | $1,209,900 | $1,994,700 | $2,354,400 | $2,354,400 | $2,354,400 | $2,354,400 | $2,354,400 | $2,354,400 | $2,354,400 |
| | | | | | | | | | | |
| **Verizon** | $0 | $1,012,520 | $288,504 | $128,668 | $96,168 | $96,168 | $96,168 | $96,168 | $96,168 | $96,168 |
| | | | | | | | | | | |
| **BGE Contract** | | | | | | | | | | |
| Lead Management Customers | | | $432,780 | $594,996 | | | | | | |
| Energy Management Customers | | | $91,900 | $233,100 | | | | | | |
| | | | | | | | | | | |
| **Lost Contract** | | | | | | | | | | |
| Lead Management Customers | | | $12,136,683.00 | $7,070,635.00 | $7,632,079.00 | | | | | |
| Energy Management Customers | | | $1,064,700.00 | $3,030,300.00 | $4,995,000.00 | | | | | |

Source: Mr. Constantino Gus Pappas.

REVISED TABLE 12
"REVISED WITHOUT NEWENERGY REPRESENTATIONS"
TOTAL PRESENT VALUE OF ALTERNATIVE DAMAGE MEASURES

| CONCEPT | POWERWEB LOST PROFITS | NEWENERGY LM PROFITS AFTER SPLIT | BOTH DAMAGE MEASURES APPLY |
|---|---|---|---|
| **Curtailment Revenues** | **$7,231,781** | **$4,702,278** | **$11,934,059** |
| New York | $2,363,987 | $2,298,348 | $4,662,334 |
| PJM | $1,366,781 | $1,147,384 | $2,514,164 |
| New England | $550,067 | $303,748 | $853,815 |
| California | $1,110,032 | $952,799 | $2,063,620 |
| | | | |
| Verizon New York | $1,840,125 | | $1,840,125 |
| | | | |
| **Sales and Service of PowerWeb's systems** | **$29,875,453** | | **$29,875,453** |
| Load Management Customers | $13,679,312 | | $13,679,312 |
| Energy Management Customers | $16,196,141 | | $16,196,141 |
| | | | |
| **Verizon Load Management Systems** | **$1,888,710** | | **$1,888,710** |
| | | | |
| **BGE Contract** | **$1,359,920** | | **$1,359,920** |
| BGE Load Management Contract | $1,041,392 | | $1,041,392 |
| BGE Energy Management Contract | $318,529 | | $318,529 |
| | | | |
| **Lost Contracts** | **$36,282,037** | | **$36,282,037** |
| Load Management Customers | $27,145,265 | | $27,145,265 |
| Energy Management Customers | $9,136,772 | | $9,136,772 |
| **Total NPV for PowerWeb's Lost Profits** | **$76,637,901** | **$4,702,278** | **$81,340,179** |

REVISED TABLE 4
"REVISED INCLUDING ALL NEW/ENERGY REPRESENTATIONS"
SUMMARY OF N.E. LOAD MANAGEMENT REVENUES BY REGION

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Nominal Dollars** | | | | | | | | | | |
| **NEW YORK REGION** | | | | | | | | | | |
| Special Case Resource | $0 | $195,285 | $2,714,667 | $3,420,593 | $4,026,278 | $4,667,202 | $5,346,343 | $6,065,537 | $6,826,699 | $7,631,830 |
| Emerg Dem Resp | $0 | $14,260 | $135,718 | $26,381 | $27,307 | $28,216 | $29,155 | $30,125 | $31,128 | $32,165 |
| Bush EDR & SCR | $0 | $1,086,689 | $1,147,283 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL REVENUES | $0 | $1,296,234 | $3,997,667 | $3,446,974 | $4,053,584 | $4,695,418 | $5,375,498 | $6,095,662 | $6,857,828 | $7,663,995 |
| | | | | | | | | | | |
| **PJM REGION** | | | | | | | | | | |
| ALM Program | $0 | $509,988 | $501,916 | $195,067 | $274,561 | $1,453,325 | $2,459,911 | $3,533,994 | $4,679,039 | $6,195,117 |
| Economic Response Load Program | $0 | $0 | $206,847 | $130,934 | $236,726 | $464,834 | $490,496 | $517,578 | $546,157 | $576,317 |
| Emergency Response Load Program | $0 | $0 | $6,375 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL REVENUES | $0 | $509,988 | $715,137 | $326,000 | $511,288 | $1,918,159 | $2,950,408 | $4,051,572 | $5,225,196 | $6,771,434 |
| | | | | | | | | | | |
| **NEPOOL REGION** | | | | | | | | | | |
| CLASS 1 Demand Response | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| CLASS 2 Price Response | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| TOTAL REVENUES | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

REVISED TABLE 5
"REVISED INCLUDING ALL NEWENERGY REPRESSENTATIONS"
SUMMARY OF CALIFORNIA N.E. LOAD MANAGMENT REVENUES

|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| Nominal Dollars |  |  |  |  |  |  |  |  |  |  |
| Emerg. Dem. Resp. Prog. | 2,724,839 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL REVENUES | $2,724,839 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

REVISED TABLE 10
"REVISED INCLUDING ALL NEWENERGY REPRESENTATIONS"
NE LM PROFITS BEFORE SPLIT AND POWERWEB LOST PROFITS

| Nominal Dollars | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK REGION** | | | | | | | | | | |
| Special Case Resource | $0 | $195,285 | $2,714,667 | $3,420,593 | $4,026,278 | $4,667,202 | $5,346,343 | $6,065,537 | $6,826,699 | $7,631,830 |
| Emerg Dem Resp | $0 | $14,260 | $135,718 | $26,381 | $27,307 | $28,216 | $29,155 | $30,125 | $31,128 | $32,165 |
| Both EDR & SCR | $0 | $1,086,689 | $1,147,283 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $0 | $1,296,234 | $3,997,667 | $3,446,974 | $4,053,584 | $4,695,418 | $5,375,498 | $6,095,662 | $6,857,828 | $7,663,995 |
| NE LM PROFITS BEFORE SPLIT | ($50,000) | $7,966 | $521,138 | $405,510 | $500,081 | $598,122 | $701,227 | $807,171 | $922,684 | $1,044,541 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $0 | $3,983 | $260,569 | $202,755 | $250,040 | $299,061 | $350,613 | $403,586 | $461,342 | $522,270 |
| **PJM REGION** | | | | | | | | | | |
| ALM Program | $0 | $509,988 | $501,916 | $195,067 | $274,561 | $1,453,325 | $2,459,911 | $3,533,994 | $4,679,039 | $6,195,117 |
| Economic Response Load Program | $0 | $0 | $206,847 | $130,934 | $236,726 | $464,834 | $490,496 | $517,578 | $546,157 | $576,317 |
| Emergency Response Load Program | $0 | $0 | $6,375 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $0 | $509,988 | $715,137 | $326,000 | $511,288 | $1,918,159 | $2,950,408 | $4,051,572 | $5,225,196 | $6,771,434 |
| NE LM PROFITS BEFORE SPLIT | ($50,000) | ($7,403) | $26,093 | ($95,156) | ($549,946) | $247,227 | $453,272 | $666,805 | $896,267 | $1,194,837 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $0 | $0 | $13,047 | $0 | $0 | $123,614 | $226,636 | $333,403 | $448,133 | $597,418 |
| **NEPOOL REGION** | | | | | | | | | | |
| CLASS 1 Demand Response | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| CLASS 2 Price Response | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| TOTAL LM GROSS RECEIPTS FROM ISO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| NE LM PROFITS BEFORE SPLIT | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| **CALIFORNIA REGION** | | | | | | | | | | |
| Emerg. Dem. Resp. Prog. | $2,724,839 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL LM GROSS RECEIPTS FROM ISO | $2,724,839 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| NE LM PROFITS BEFORE SPLIT | $112,623 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| PWS LOST PROFITS FROM CURTAILMENT REVENUES SPLIT | $56,312 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Revised Table 11
"Revised Including All NewEnergy Representations"
Annual Powerweb Lost Profits
System Sales and Maintenance

Estimated by Mr. Pappas

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **NewEnergy** | | | | | | | | | | |
| Load Management Customers | $1,922,841 | $1,393,254 | $1,282,947 | $1,235,994 | $1,065,917 | $1,086,013 | $1,089,140 | $1,095,105 | $1,103,792 | $1,111,784 |
| Energy Management Customers | $1,553,400 | $1,466,100 | $3,519,000 | $3,519,000 | $3,519,000 | $3,519,000 | $3,519,000 | $3,519,000 | $3,519,000 | $3,519,000 |
| **Verizon** | | $1,012,530 | $288,504 | $128,668 | $96,168 | $96,168 | $96,168 | $96,168 | $96,168 | $96,168 |
| **BGE Contract** | | | | | | | | | | |
| Load Management Customers | | | $432,780 | $594,996 | | | | | | |
| Energy Management Customers | | | $81,900 | $333,100 | | | | | | |
| **Lost Contracts** | | | | | | | | | | |
| Load Management Customers | | | $0 | $0 | $0 | | | | | |
| Energy Management Customers | | | $18,919,305 | $20,801,718 | $22,899,131 | | | | | |

Source: Mr. Constantino Gus Pappas.

REVISED TABLE 12
"REVISED INCLUDING ALL NEWENERGY REPRESENTATIONS"
TOTAL PRESENT VALUE OF ALTERNATIVE DAMAGE MEASURES

| CONCEPT | POWERWEB LOST PROFITS | NEWENERGY LM PROFITS AFTER SPLIT | BOTH DAMAGE MEASURES APPLY |
|---|---|---|---|
| Curtailment Revenues | $5,632,497 | $3,463,576 | $9,096,073 |
| New York | $2,365,987 | $2,274,468 | $4,640,455 |
| PJM | $1,366,781 | $1,125,504 | $2,492,285 |
| New England | N/A | N/A | N/A |
| California | $61,604 | $61,604 | $123,208 |
| | | | |
| Verizon New York | $1,840,125 | | $1,840,125 |
| | | | |
| Sales and Service of PowerWeb's systems | $36,164,853 | | $36,164,853 |
| Load Management Customers | $10,760,452 | | $10,760,452 |
| Energy Management Customers | $25,404,401 | | $25,404,401 |
| | | | |
| Verizon Load Management Systems | $1,888,710 | | $1,888,710 |
| | | | |
| BGE Contract | $1,359,920 | | $1,359,920 |
| BGE Load Management Contract | $1,041,392 | | $1,041,392 |
| BGE Energy Management Contract | $318,529 | | $318,529 |
| | | | |
| Lost Contracts | $63,174,217 | | $63,174,217 |
| Load Management Customers | $0 | | $0 |
| Energy Management Customers | $63,174,217 | | $63,174,217 |
| | | | |
| Total NPV for PowerWeb's Lost Profits | $108,220,197 | $3,463,576 | $111,683,773 |

## SUMMARY OF POWERWEB DAMAGES REPORTS

| | INITIAL REPORTS | SUPPLEMENT W/O MBR-3 | SUPPLEMENT W/ MBR-3 |
|---|---|---|---|
| Fox-Penner Projections[*] | | | |
| NewEnergy New York Curtailment | $6,403,578 | $4,662,334 | $4,640,455 |
| NewEnergy PJM Curtailment | 4,339,767 | 2,514,164 | 2,492,285 |
| NewEnergy New England Curtailment | 2,511,168 | 853,815 | - |
| NewEnergy California Curtailment | 5,411,010 | 2,063,620 | 123,208 |
| Bell Atlantic Curtailment | 2,294,334 | 1,840,125 | 1,840,125 |
| | $20,959,858 | $11,934,059 | $9,096,073 |
| | | | |
| Pappas Calculations[*] | | | |
| NewEnergy Installations | $30,662,007 | $39,083,713 | $36,164,853 |
| Bell Atlantic Installations | 1,888,710 | 1,888,710 | 1,888,710 |
| BGE Contract | 1,359,920 | 1,359,920 | 1,359,920 |
| Other Lost Contracts | 36,282,037 | 63,174,217 | 63,174,217 |
| | $70,192,675 | $105,506,560 | $102,587,700 |
| | | | |
| Total Damages | $91,152,533 | $117,440,619 | $111,683,773 |

---

[*] All amounts were reduced to present value, totaled and rounded in Dr. Fox-Penner's reports.

EXHIBIT F

Case 2:02-cv-02733-HB    Document 94-2    Filed 07/06/2004    Page 34 of 35
Received 05/24/2004 11:44AM in 01:16 on line [6] for 145 WORKSRV2 printed B00F3B2E on 05/24/2004  11:45AM  * Pg 3/3
05/24/2004 11:54 FAX                                                                                    ☒003/003

# WolfBlock

1650 Arch Street, 22nd Floor, Philadelphia, Pennsylvania 19103-2097
Tel: (215) 977-2000 ■ Fax: (215) 977-2740 ■ www.WolfBlock.com

Matthew A. White
Direct Dial: (215) 977-2269
Direct Fax: (215) 405-3869
E-mail:    mwhite@wolfblock.com

May 24, 2004

## VIA HAND DELIVERY

Hon. Harvey Bartle, III
United States District Court
for the Eastern District of Pennsylvania
601 Market Street
Room 16614
Philadelphia, PA 19106

Re:    Constellation NewEnergy, Inc. v. Powerweb Technologies, et al.,
       U.S.D.C. E.D. Pa., Civil Action No. 02-CV-2733 (HB).

Dear Judge Bartle:

On Friday, May 21, 2004, I contacted chambers to alert Your Honor to a pending dispute concerning expert discovery in this case. I am pleased to report that counsel have resolved this issue.

The resolution requires some expert disclosures (supplemental reports) and expert depositions taking place after the current deadlines. However, we do not believe that this discovery will impact the deadlines for dispositive motions, submission of the pretrial memoranda, or trial.

We thank Your Honor for being willing to entertain our application on such short notice.

Respectfully,

Matthew A. White
For WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP

MAW:rm
cc:    Rudolph Garcia, Esquire
       David E. Landau, Esquire

DSB:969351.1/AES003-158567

Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE
WolfBlock Government Relations: Harrisburg, PA and Washington, DC
Wolf, Block, Schorr and Solis-Cohen LLP, a Pennsylvania Limited Liability Partnership

EXHIBIT G



# WolfBlock

1650 Arch Street, 22nd Floor, Philadelphia, Pennsylvania 19103-2097
Tel: (215) 977-2000 ■ Fax: (215) 977-2740 ■ www.WolfBlock.com

Matthew A. White
Direct Dial: (215) 977-2269
Direct Fax: (215) 405-3869
E-mail:   mwhite@wolfblock.com

May 24, 2004

**VIA TELECOPY AND REGULAR MAIL**

Rudolph Garcia, Esquire
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102-2186

Re: **Constellation NewEnergy, Inc. v. Powerweb Technologies, et al.,**
**U.S.D.C. E.D. Pa., Civil Action No. 02-CV-2733 (HB).**

Dear Rudy:

I'm writing to confirm our agreements on Friday, May 21, 2004 concerning expert discovery.

In light of the materials produced on Friday, including Dr. Fox-Penner's supplemental report and the additional materials he relied upon, you have agreed to produce him for a deposition on Friday, June 4, 2004 in our offices.

We will produce any supplemental report by Dr. Rosenzweig during the week of June 7, and will produce him for a deposition during the week of June 14 (we will get you dates promptly).

We await Mr. Pappas' supplemental report and will separately discuss with you the timing of that deposition.  (Obviously, we anticipate this report within the next day or so).

Dr. Violette's deposition will proceed as scheduled.

Very truly yours,

Matthew A. White
For WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP

MAW:rm

DSB:969356.1/AES003-158567

Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE
WolfBlock Government Relations: Harrisburg, PA and Washington, DC
Wolf, Block, Schorr and Solis-Cohen LLP, a Pennsylvania Limited Liability Partnership

EXHIBIT  H