IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-CV-2733 (HB) |
| | : | |
| v. | : | |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CONSTELLATION NEWENERGY, INC.'S MOTION TO STRIKE THE SECOND EXPERT REPORT OF CONSTANTINOS PAPPAS AND PRECLUDE EVIDENCE**

New Energy's Motion addresses the inequity of Powerweb's ethereal damages claim by which its "expert" disclosed, by way of an unsanctioned, "supplemental" report, the purported factual underpinnings for a quantum of damages that ballooned from $9 million to $63 million. The "slightly less than 700% increase" (as testified to by another of Powerweb's experts), is premised upon a list of 13 specific contracts or potential contracts whose existence Powerweb never provided to NewEnergy during discovery. The focus of Powerweb's response is to blame NewEnergy for NewEnergy's supposed failure to uncover this factual predicate in discovery. According to Powerweb: "it is not Powerweb's fault that NewEnergy neglected to ask for further information regarding the contracts" during the deposition of Powerweb's president and 30(b)(6) designee, Lothar Budike.[1]

Rhetorically, we must ask: "If this factual predicate were so clear, how did Powerweb's expert (who, as luck would have it, happens to be Powerweb's regular outside accountant and "Chief Financial Advisor") miss it, causing him to "supplement" his original report with an

---
[1] Memorandum of Law by Powerweb, Inc. in Opposition to Motion by Constellation NewEnergy to Strike Second Report of Constantinos Pappas and Preclude Evidence ("Powerweb Memorandum") at 1.

increase to this portion of damages by 700%? That question answers itself, but we reply here to set the record straight: NewEnergy <u>did</u> ask and, like Powerweb's own expert, was kept in the dark about the truth.

### A. Powerweb's 30(b)(6) Designee Failed to Identify the Alleged Lost Contracts.

Not satisfied with Powerweb's non-response to written discovery, NewEnergy availed itself of Rule 30(b)(6) to get to the bottom of Powerweb's murky damage claims. Powerweb was on notice that its designee would be questioned about NewEnergy's alleged disclosures to unnamed third parties, as follows:

> 9. The "Energy Technology" information that "NewEnergy has improperly shared some or all of . . . with numerous third parties that have used the information to compete with Powerweb and the Omni-Link System," as set forth and referred to in paragraph 140 of Powerweb's amended counterclaims.[2]
>
> 12. "Energy Technology" information and other confidential and proprietary information about Powerweb's reserve capacity sales business and the Omni-Link System technology improperly used and disclosed to third parties without Powerweb's prior written approval as set forth and referred to in paragraphs 165, 187 and 198 of Powerweb's amended counterclaims.

Powerweb 30(b)(6) Notice, ¶¶ 9, 12, attached as Exhibit B.

During the Powerweb 30(b)(6) deposition, Mr. Budike was specifically asked about prospective contracts which Powerweb claims it lost because of the actions of NewEnergy. (Powerweb Dep. at 689:8 - 690:5).[3] In response, Mr. Budike testified, "No, I can't name them off the top of my head. I'd have to look at the sales pipeline chart, look at the dates." (*Id.* at 690:13-16). This answer was never supplemented and is binding on Powerweb. *Black Horse*

---

[2] This refers to one of the two paragraphs in Powerweb's Counterclaims which Powerweb contends put NewEnergy on notice of its claim for the lost contracts. *See* Powerweb's Memorandum, fn. 6.

[3] Relevant portions of the Powerweb deposition are attached as Exhibit A.

*Lane Assoc. v. United States Land Resources*, 228 F. 3d 275, 304 (3d Cir. 2000) (affirming grant of sanctions by trial court for failure to produce a prepared designee and holding that "producing an unprepared witness is tantamount to a failure to appear").

Mr. Pappas supplemental report now includes $63 million in damages attributable to 13 specific contracts which Powerweb claims it lost due to the actions of NewEnergy. Ironically, the sole source of Mr. Pappas' information on this subject is conversations Mr. Pappas had with Mr. Budike:

> **Q.** Why do you think that Powerweb would have gotten, had a relationship with, any of those 13 customers?
>
> **A.** From discussions with Mr. Budike;that out of those 13, that they were the finalists in requests for bids for each of those utilities.
>
> **Q.** Did you see any documents or correspondence between any of those companies and Powerweb that indicated they were even considering doing business with Powerweb?
>
> **A.** No.
>
> **Q.** Did you see one piece of paper that indicated that any of those companies even knew who Powerweb was?
>
> **A.** No.
>
> **Q.** You were just taking Mr. Budike's word on that one, too?
>
> **A.** Yes, I did.

Papas Dep., 236:18 - 237:12, attached as Exhibit C.

Permitting Powerweb to hide this information in the face of repeated efforts to obtain it during discovery and in the face of Rule 26(a)'s required self-disclosure of facts and witnesses in

support of its claims, including damages, and then to allow its expert to increase the relevant portion of damages by 700% based upon those hidden facts, is to sanction trial by ambush.

### B. Powerweb's Document Production Never Revealed the Identities of the Previously Unnamed Utilities.

Another misleading argument made in an effort to blame the victim is that Powerweb "produced its documents concerning those contracts more than a year ago" on a disk labeled PW002290. Powerweb Memorandum at 1, 3. Powerweb begrudgingly admits that this production was not in response to a request for documents related to its damage claim, but rather to a request seeking sales proposals, -- *Id.* at 3, hardly the same as contracts. This CD did not put NewEnergy on notice of Powerweb's specific list of lost contracts for two reasons: (1) this CD was never referred to in response to any interrogatory regarding damages; and (2) NewEnergy could not have gleaned Mr. Pappas' list of lost contracts from a review of the materials on this disk. Only two of the numerous hopeful contract proposals on the disk labeled PW002290 were for utilities on Mr. Pappas' list of lost contracts, (Con Ed and Connectiv). Powerweb also produced dozens of PowerPoint presentations, but only three related to utilities on Mr. Pappas' list (Con Ed, Connective and SCE). The 10 other utility companies on Mr. Pappas' list were mentioned only as sales leads, and categorized as "hot," "warm," "cold," etc. They were among literally hundreds of other prospective customers on dozens of pipeline reports over several years. This hardly tells NewEnergy what Mr. Pappas' second report did: "here are the 13 contacts for which we claim damages."

Now, it's too late to go and talk to any of these companies to find out if what Mr. Budike told Mr. Pappas has any validity at all; that is, was Powerweb even in the running for these contracts (irrespective of any action by NewEnergy) or was this simply another pipe dream of Mr. Budike's? Given the dearth of any documentary support behind Mr. Pappas' opinions, the

latter seems likely, but the discovery process compels that NewEnergy be permitted to cross-examine Mr. Budike's statements to his expert by testing the source. Unlike Mr. Pappas, we should do more than simply take Mr. Budike's self-interested word for a 700% increase in lost profits damages.

At the end of the day, NewEnergy asked, but didn't receive. There was no indication in any of the documents produced by Powerweb, any of it initial disclosures, interrogatory answers or deposition answers which told NewEnergy that there were 13 specific utilities around the country which would have given Powerweb sufficient business to generate millions of dollars in lost profits but for NewEnergy's alleged conduct.

Accordingly, expert opinions founded upon this belated factual production should be stricken. In the alternative, NewEnergy should be permitted the opportunity to inquire from some of these companies the truth – did they have any intention of doing any business with Powerweb? That is, quite literally, the $64 million question.

                                        Respectfully submitted,

                                        WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP

                                        /s/ Matthew A. White
                                        David E. Landau
                                        Matthew A. White
                                        Zachary C. Glaser
                                        Jennifer C. O'Neill
                                        1650 Arch Street, 22nd Floor
                                        Philadelphia, Pennsylvania 19102-2097
                                        (215) 977-2000

                                        *Attorneys for Plaintiff,*
                                        *Constellation NewEnergy, Inc.*

Dated: July 7, 2004

## CERTIFICATE OF SERVICE

I certify that on July 8, 2004, I caused a true and correct copy of the foregoing Reply Memorandum Of Law In Support Of Plaintiff Constellation NewEnergy, Inc.'s Motion to Strike the Second Expert Report Of Constantinos Pappas and Preclude Evidence and exhibits to be served electronically upon:

>Kara Goodchild, Esquire
>SAUL EWING LLP
>Centre Square West
>1500 Market Street, 38th Floor
>Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.

          __/s/ Zachary C. Glaser_____
          Zachary C. Glaser