IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSTELLATION NEWENERGY, INC., : | |
| : | |
| Plaintiff, : | Civil Action No. 02-CV-2733 (HB) |
| : | |
| v. : | |
| : | |
| POWERWEB TECHNOLOGIES, INC., : | |
| : | |
| Defendant. : | |

## **PLAINTIFF CONSTELLATION NEWENERGY, INC.'S PRETRIAL MEMORANDUM**

Pursuant to Local Rule of Civil Procedure 16.1(c) and the Court's Second Scheduling Order, plaintiff Constellation NewEnergy, Inc. ("NewEnergy") submits its Pretrial Memorandum.

**I.      NATURE OF THE ACTION AND BASIS OF JURISDICTION**

NewEnergy's Second Amended Complaint seeks damages against Powerweb Technologies, Inc. ("Powerweb") for breach of contract, or alternatively, unjust enrichment in the amount of $100,000 plus interest.  Powerweb's Counterclaims to NewEnergy's Second Amended Complaint seek damages against NewEnergy and these counterclaims will be addressed in a separate pretrial memorandum.[1]

---

[1]      Counts II and III of the Second Amended Complaint for breach of the duty of good faith and fair dealing and fraudulent misrepresentation have been voluntarily dismissed by NewEnergy.  As a result, defendants Lothar E.S. Budike, Jr. and A-Valey Engineers were voluntarily dismissed from the case.  By Order dated July 8, 2004, the Court granted Powerweb's Motion for Summary Judgment with respect to NewEnergy's claim for an accounting (Count IV of the Second Amended Complaint) and denied summary judgment on NewEnergy's other claims.

The Second Amended Complaint alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that it is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

II.  STATEMENT OF FACTS

Based on the Court's Second Scheduling Order, NewEnergy submits its Statement of Facts as it pertains to its claims against Powerweb. NewEnergy's Counter Statement of Facts will be included in its Pretrial Memorandum With Respect to Powerweb's Counterclaims.

A.  THE PARTIES

NewEnergy is a non-regulated energy supplier operating in several energy markets, including New York, the Mid-Atlantic (New Jersey, Pennsylvania, Maryland and Delaware), California, New England and others. In addition to supplying electricity to customers with retail choice, NewEnergy sought out and invested in additional services to lower their customers' energy costs and compete for customers who had traditionally purchased energy from regulated utilities.

Powerweb is a small technology company in Media, Pennsylvania. Powerweb was originally an engineering firm focused on energy efficiency systems and demand side control systems. Powerweb eventually shifted its focus to its one main product, Omni-Link, and the energy information market. "Omni-Link," Powerweb's registered brand name, has described many iterations of technologies which Powerweb has developed and attempted to market over the years. By the Summer of 1999, the Omni-Link Efficiency System purportedly consisted of a patented hardware and software system for energy monitoring and control. In addition to Omni-Link, Powerweb also presented NewEnergy with an idea which Powerweb had previously pitched to Bell Atlantic. Powerweb wanted NewEnergy to help it to convince Bell Atlantic to

use Bell Atlantic's electrical generation assets to sell excess capacity back on the local electricity grid, the Pennsylvania, New Jersey, Maryland Interconnection ("PJM").

### B. POWERWEB MARKETS OMNI-LINK

In July, 1999, Powerweb wrote to David McGeown, director of energy services for NewEnergy East, describing Powerweb's effort to market its product to Bell Atlantic and enclosing marketing materials regarding Omni-Link. Powerweb provided these marketing brochures, descriptions and demonstration CDs to Bell Atlantic and to NewEnergy.

### C. THE EXCLUSIVE AGREEMENT FOR BELL ATLANTIC

NewEnergy and Powerweb executed the Exclusive Agreement for Bell Atlantic ("Bell Atlantic Agreement") on January 7, 2000. The scope of the technology at issue and the proposed transaction were limited -- "This system is specifically designed for capacity sales under the Active Load Management Program ("ALM") of the Pennsylvania Jersey Maryland Interconnect ("PJM"), and to enable a customer to execute energy savings programs." The transaction was clearly delineated to apply only to Bell Atlantic:

> The Parties hereby enter into to [sic.] this exclusive agreement to develop projects for Bell Atlantic [and all current, future, direct or indirect subsidiaries and affiliates] by utilizing the Omni-Link technology to exploit opportunities and create revenues through the sale of electrical capacity and other energy savings programs by the operation of the Bell Atlantic standby generators.

The only commercial limitation placed on NewEnergy was its promise not to pursue a certain program (Active Load Management), within a certain geographic region (the PJM), for a specific industry ("agrees not to independently pursue this opportunity in the telecommunications industry, specifically, Bell Atlantic."). The term of the agreement was for one year.

NewEnergy agreed to fund project development costs of up to $100,000.00 for Powerweb to create a detailed project implementation plan and a schedule and investment analysis of an

Omni-Link application for Bell Atlantic, but no work product was ever delivered by Powerweb pursuant to this agreement. Moreover, NewEnergy retained sole approval for the expenditure of such funds and only ever approved the expenditure of $5,000 for Powerweb to deliver opinions regarding regulations governing the operation of on-site generators. Again, no work product was ever delivered.

### D.  THE BELL ATLANTIC PROPOSAL

The effort to market Powerweb's products and services to Bell Atlantic was unsuccessful, and no agreement with Bell Atlantic was ever signed. Jim Goodman, Powerweb's principal contact at Bell Atlantic in New Jersey, and a member of Bell Atlantic's Team Energy, testified that Bell Atlantic declined to go forward because their back-up generators were only permitted to run in emergencies and not for curtailment. Jeremy Metz, who was designated by Verizon[2] to testify on its behalf, concurred. No witness or document contradicted this testimony.

The $100,000.00 which NewEnergy provided for the creation of a project implementation plan, schedule and investment analysis is still being held by Powerweb.

George Drosdowich, a NewEnergy attorney, ultimately sent a letter to Powerweb on March 1, 2002, demanding that Powerweb refund the $100,000. Finally, with no response forthcoming, on May 7, 2002, NewEnergy filed this suit against Powerweb for breach of contract.

### III.  SIGNIFICANT LEGAL ISSUES

Pursuant to the Court's Second Scheduling Order, NewEnergy identifies the following significant legal issues asserted against Powerweb:

---

[2]     Verizon is the successor to Bell Atlantic.

A.   **BREACH OF CONTRACT (COUNT I)**

Whether NewEnergy can recover on its breach of contract claim because Powerweb failed to perform under the Exclusive Agreement with Bell Atlantic by failing to deliver the opinions, plan, schedule and analysis for which this money was designated. *See Barnes v. McKellar*, 434 Pa. Super. 597, 608, 644 A.2d 770, 775 (1994); *The Mountbatten Sur. Co., Inc. v. Brunswick Ins. Ag'y*, No. Civ.A. 00-CV-1255, 2001 WL 34371699, at *15 (E.D. Pa. Nov. 13, 2001).

B.   **UNJUST ENRICHMENT (COUNT V)**

As an alternative to breach of contract, whether NewEnergy conferred a benefit on Powerweb in the amount of $100,000, whether Powerweb appreciated such benefit, and whether Powerweb's acceptance and retention of such benefits even after Bell Atlantic declined to move forward with the project makes it inequitable for Powerweb to retain the benefit without payment of value. *See Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995).

IV.   **ITEMS OF MONETARY DAMAGE**

NewEnergy seeks damages in the amount of $100,000 plus interest and costs.

V.   **NEWENERGY'S WITNESS LIST**

NewEnergy anticipates calling the following witnesses to testify in its case-in-chief on its claims. NewEnergy's witness list for its defense against Powerweb's counterclaims will be set forth in its Pretrial Memorandum With Respect to Powerweb's Counterclaims due to the Court on July 26, 2004. NewEnergy may revise this list in light of the witnesses Powerweb intends to call.

1.   David McGeown
     3 Kathleen Place
     Bridgewater, NJ 08807

2. Brian Hayduk
   Constellation NewEnergy, Inc.
   551 Fifth Avenue, Suite 400
   New York, NY 10176

3. Lothar E.S. Budike, Jr.*
   Powerweb
   415 East Baltimore Pike
   Media, PA 19063

4. Constantinos Pappas* (as a fact witness)
   Pappas & Company
   206 West State Street
   Lower Level
   Media, PA 19063

5. All witnesses listed by Powerweb.

*For these witnesses, NewEnergy may also designate portions of their deposition testimony for inclusion at trial.

## VI. NEWENERGY'S EXHIBIT LIST

NewEnergy's exhibit list for its case-in-chief is attached as Exhibit A.  NewEnergy's exhibit list for its defense against Powerweb's counterclaims will be set forth in its Pretrial Memorandum With Respect to Powerweb's Counterclaims due to the Court on July 26, 2004. NewEnergy may revise or supplement its exhibit list in light of the exhibit list submitted by Powerweb.

## VII. ESTIMATE OF TRIAL DURATION

NewEnergy expects that the trial on all claims and counterclaims will take 7 to 10 days.

## VIII. SPECIAL COMMENTS

### A. Objections to Admissibility (Other than Relevance)

None at this time.  NewEnergy reserves the right to assert objections to Powerweb's exhibits and witnesses.

**B.     Objections to Expert Qualifications**

NewEnergy incorporates its Pretrial Memorandum With Respect to Powerweb's Counterclaims and Motion *in Limine* to be filed on or before July 26, 2004 pursuant to paragraph 9(b) of the Court's Second Scheduling Order.

**C.     Motions *in Limine***

NewEnergy incorporates its Pretrial Memorandum With Respect to Powerweb's Counterclaims and Motions *in Limine* to be filed on or before July 26, 2004 pursuant to paragraph 9(b) of the Court's Second Scheduling Order.

Respectfully submitted,

_____s/DL422_____
David E. Landau, I.D. #43341
Matthew A. White, I.D. #55812
Zachary C. Glaser, I.D. #85979
Jennifer C. O'Neill, I.D. #89755

Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street,  22nd floor
Philadelphia, PA 19103-2097
(215) 977-2000

Dated:  July 15, 2004

## CERTIFICATE OF SERVICE

I certify that on July 15, 2004, I caused a true and correct copy of Plaintiff Constellation NewEnergy, Inc.'s Pretrial Memorandum to be served electronically upon:

>Kara Goodchild, Esquire
>SAUL EWING LLP
>Centre Square West
>1500 Market Street, 38th Floor
>Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.

>_____s/JO416_____
>Jennifer C. O'Neill