IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,  :
        Plaintiff,  :
           :
     v.      :    No. 02-CV-2733 (HB)
           :
POWERWEB TECHNOLOGIES, INC.,  :
       Defendant.  :

# O R D E R

   AND NOW, this  day of    , 2004, it is hereby ORDERED

that the Motion in Limine by Powerweb, Inc. to Preclude Testimony by Dr. Rosenzweig is

GRANTED. Dr. Rosenzweig will not be permitted to testify at the trial of this action, because his

proffered testimony does not meet the minimum standards for reliability required by Rule 702 of the

Federal Rules of Evidence.

        BY THE COURT:


           _____
                     J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,    :
                    Plaintiff,    :
                             :
              v.          :         No. 02-CV-2733 (HB)
                             :
POWERWEB TECHNOLOGIES, INC.,    :
                  Defendant.    :

## MOTION IN LIMINE BY POWERWEB, INC.
## TO PRECLUDE TESTIMONY BY DR. ROSENZWEIG

Powerweb, Inc.[1] hereby moves the Court for an Order precluding Constellation NewEnergy, Inc. from offering testimony by Dr. Michael B. Rosenzweig at trial, for the reasons set forth in the accompanying memorandum of law.

                                                                kc571
                                           Rudolph Garcia, Esquire
                                           Kara H. Goodchild, Esquire
                                           Kristin L. Calabrese, Esquire
                                           SAUL EWING LLP
                                           Centre Square West
                                           1500 Market Street, 38th Floor
                                           Philadelphia, PA 19102
                                           (215) 972-1961; -7187; -7533
                                           Attorneys for Powerweb, Inc.

Date:  July 15, 2004

---

[1]      Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,    :
                Plaintiff,    :
                    :
          v.    :    No. 02-CV-2733 (HB)
                    :
POWERWEB TECHNOLOGIES, INC.,    :
              Defendant.    :

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE BY POWERWEB, INC.
TO PRECLUDE TESTIMONY BY DR. ROSENZWEIG**

Powerweb, Inc. ("Powerweb")[1] submits this memorandum in support of its motion to preclude Constellation NewEnergy, Inc. ("NewEnergy") from offering testimony by Michael B. Rosenzweig, Ph.D. as an expert witness on damages.

Dr. Rosenzweig has prepared reports[2] criticizing the reports of Powerweb's damages experts. However, Dr. Rosenzweig does little more than attack the credibility of Powerweb's witnesses and argue that NewEnergy's evidence is stronger than Powerweb's, neither of which are proper subjects for expert testimony. To the extent that he does express any expert-like opinions, they are based on a skewed sampling of the evidence selected for him by NewEnergy's counsel and untested representations by NewEnergy that conflict with the information it provided to Powerweb in discovery. In essence, Dr. Rosenzweig is attempting to argue NewEnergy's case under the guise of expert testimony. For these and the other reasons discussed below, Dr. Rosenzweig's proposed testimony should be precluded.

---

[1]     Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

[2]     All citations to supporting materials are to Powerweb's appendix, in the form of A[tab] at [page]. <u>See</u> Dr. Rosenzweig's initial and supplemental reports (A1 and A2, respectively).

## I.    BACKGROUND

In 1996, the electricity markets in various regions across the United States began to be deregulated, opening the door to competition and new methods for reducing energy costs. Because electricity cannot be stored, all generated power must be consumed instantaneously. That makes balancing supply and demand a constant challenge and causes electricity prices to be extremely volatile. During high demand periods, the wholesale price of electricity can increase by as much as 1,000%. Powerweb designed a system that enables large commercial customers to profit from that fluctuation by cutting back their consumption or using their own emergency generators when prices are at their highest ("Omni-Link system").

NewEnergy agreed to enter into a series of joint ventures with Powerweb to license the Omni-Link system, first to Bell Atlantic Corporation ("Bell Atlantic"),[3] and then to other customers. Accordingly, Powerweb disclosed the details of its system to NewEnergy under a written agreement ("Confidentiality Agreement") that prohibited NewEnergy from unilaterally using or disclosing the information that Powerweb provided. NewEnergy then abandoned Powerweb, used the information to develop competing products and services of its own, and carelessly disclosed important aspects of the information to others who then used it to also become competitors of Powerweb.

NewEnergy commenced this action to seek a return of $100,000 that it paid for the initial Bell Atlantic project. Powerweb answered the Complaint, explaining why NewEnergy is not entitled to any repayment. In addition, Powerweb filed its counterclaims against NewEnergy for lost profits over the ten-year period covered by the Confidentiality Agreement. NewEnergy then retaliated by inducing Baltimore Gas & Electric Company ("BG&E") to

---

[3]    Bell Atlantic is now known as Verizon. However, for convenience and clarity, it will be referred to in this memorandum as Bell Atlantic even after it changed its name to Verizon.

terminate a three-year contract with Powerweb. Recovery for that interference also has been sought by amending the counterclaims.

## II.    ARGUMENT

### A.    Legal Standards for the Admission of Expert Testimony

The trial court has a duty to ensure that all expert testimony is relevant and reliable. See Kumho Tire Co.,  v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593 (1993). In order for a court to permit expert testimony, it must meet the minimum standards of Federal Rule of Evidence 702. Kent v. Howell Elec. Motors, No. Civ. A. 96-7221, 1999 WL 517106, at *2 (E.D. Pa. July 20, 1999). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[4]

Thus, if expert testimony will assist the trier of fact, its admissibility turns on (1) whether the expert is qualified by knowledge, skill, experience, training or education; (2) whether the expert's testimony is based on sufficient facts or data; (3) whether the expert's testimony is the product of reliable principles and methods; and (4) whether the expert has reliably applied the principles and methods to the facts. See Daubert, 509 U.S. at 592-93; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994), cert. denied sub nom. Gen. Elec. Co. v. Ingram, 513 U.S. 1190 (1995). The party offering the expert has the burden of proving admissibility under Rule 702 by a preponderance of proof. Daubert, 509 U.S. at 593

---

[4]      Fed. R. Evid. 702.

n.10. The decision to admit expert testimony is in the discretion of the trial court. <u>Total</u>
<u>Containment, Inc. v. Dayco Prods., Inc.</u>, No. Civ. A. 1997-CV-6013, 2001 WL 1167506, at *3
(E.D. Pa. Sept. 6, 2001).

   In addition to reliability, Rule 702 requires that expert testimony have the
requisite "fit" or relevance to assist the trier of fact. <u>See</u> <u>In re Paoli R.R.</u>, 35 F.3d at 742-43. In
the context of expert testimony, relevance is less expansive than it is generally under the Federal
Rules of Civil Procedure. <u>See</u> <u>Kent</u>, 1999 WL 517106, at *4. In order to meet the fit requirement,
the testimony must "connect the witness's conclusions, based on a reliable methodology, to an
issue presented in the case." <u>Id</u>. "Expert testimony which does not relate to any issue in the case
is not relevant, and ergo, non-helpful." <u>Daubert</u>, 509 U.S. at 591 (citing <u>United States v.</u>
<u>Downing</u>, 753 F.2d 1224, 1242 (3d Cir. 1985)).

   Under these standards, the Court should exercise its discretion to exclude Dr.
Rosenzweig's opinions, because they do not meet the threshold requirements of Rule 702.

  **B.**   **Dr. Rosenzweig's Opinions Will Not Assist the Trier of Fact.**

   Section I of Dr. Rosenzweig's initial report merely introduced the points asserted
more fully in Sections II, III and IV.[5] Thus, that section need not be separately addressed.

   In Section II of his initial report, Dr. Rosenzweig contends that the alleged
damages do not flow from breach of the agreements between Powerweb and NewEnergy.[6] To
reach that conclusion, he assumes that NewEnergy did not use any of the "Energy Technology
Information" protected by the parties' Confidentiality Agreement.[7] In other words, he *assumes*
that there was no breach. If that were so, there would be no need to consider damages and his

---

[5]  <u>See</u> Rosenzweig Dep. (A3) at 44:22-45:4.

[6]  <u>See</u> A1 at 2-3.

[7]  <u>See</u>  A1 at 4.

opinions would be of no assistance whatsoever to the jury. On the other hand, if the jury decides

that NewEnergy *did* use Powerweb's Energy Technology Information, there would be no basis

for Dr. Rosenzweig's opinion that the damages did not flow from that breach. Thus, Dr.

Rosenzweig's opinion depends entirely upon whose interpretation of the contract is accepted and

whose version of the facts is believed. Either way, his opinion would provide no assistance to the

trier of fact. Accordingly, the proposed testimony summarized in Section II should not be

allowed.

       In Sections III and IV of his initial report, Dr. Rosenzweig attacks the opinions of

Powerweb's experts. However, many of the criticisms were cleared up by the subsequent

production of workpapers and supplemental reports.[8] Those that remain are contentions that the

opinions of Powerweb's experts are unreliable for a variety of reasons. Essentially, Dr.

Rosenzweig contends that Powerweb's experts do not pass muster under Rule 702. But that is an

issue for the Court, not the jury.[9]

       Rule 702 requires that expert opinions "assist the trier of fact to understand the

evidence." Fed. R. Evid. 702; see also Bracy v. Waste Management of Pa., Inc., No. Civ. A. 99-

1189, 2001 WL 880313, at *2 (E.D. Pa. Apr. 17, 2001). Thus, Dr. Rosenzweig's opinions will

not assist the trier of fact and should therefore be excluded.

### C.    Dr. Rosenzweig's Opinions Are Unreliable

       Rule 702 requires that an expert's opinion be based upon a methodology or

technique that is reliable. Fed. R. Evid. 702. This requirement is satisfied when the proposed

---

[8]    See A2 at 2 ("Dr. Fox-Penner has corrected a number of the problems that I identified in my original report and his work papers address a number of others.").

[9]    To the extent that any of the issues raised regarding the methodology, assumptions or reasoning of Powerweb's experts might also go to the weight of their opinions, those points are fair-game for cross-examination and argument by NewEnergy at trial. It would not assist the jury for Dr. Rosenzweig to make those same arguments in the guise of expert testimony.

testimony is based upon "good grounds," meaning that the expert's opinion is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003) (citing Daubert, 509 U.S. at 590). In determining whether expert testimony is based on good grounds, the third circuit, expanding on Daubert, has outlined these factors to be considered as guideposts:

    (1)    whether a method consists of a testable hypothesis;

    (2)    whether the method has been subjected to peer review;

    (3)    the known or potential rate of error;

    (4)    the existence and maintenance or standards controlling the technique's operation;

    (5)    whether the method is generally accepted;

    (6)    the relationship of the technique to methods which have been established to be reliable;

    (7)    the qualifications of the expert witness testifying based on the methodology; and

    (8)    the non-judicial uses to which the method has been put.

In re Paoli, 35 F.3d at 742 n.8.[10]

    To determine whether an expert's testimony is reliable, the court must also "examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) (internal quotations omitted), cert denied, 532 U.S. 921 (2001). "A court may conclude that there is simply too great a gap between the data and the opinion proffered." Id.

---

[10]    These factors were originally developed to test the reliability of scientific methodologies and "do not so readily and easily apply in the context of testing the reliability of opinions concerning the characterization of complicated business transactions." Protocomm Corp. v. Novell Advanced Servs., Inc., 171 F. Supp. 2d 473, 477 (E.D. Pa. 2001). For this reason, the trial court has "considerable leeway" in deciding the indicia of reliability in a particular case. Elcock v. Kmart Corp., 233 F.3d 734, 745-46 (3d Cir. 2000) (quoting Kumho Tire, 526 U.S. at 152).

(internal quotations omitted). Moreover, expert testimony that is based on assumptions unsupported by the record is properly excluded. See Evans v. Mathis Funeral Home, Inc., 996 F.2d 266, 268 (11th Cir. 1993); Shaw v. Strackhouse, 920 F.2d 1135, 1149 (3d Cir. 1990); Rayburn v. Bell Helicopter Textron, Inc., No. Civ. A. 94-CV-1818, 2000 WL 782081, at *2 (E.D. Pa. Apr. 14, 2000).

Dr. Rosenzweig's criticisms of Powerweb's expert reports are based almost exclusively upon untested data provided to him by NewEnergy and its counsel. However, Dr. Rosenzweig was not provided with documents in support of this data and failed to request other data pertinent to his analysis. Furthermore, Dr. Rosenzweig's opinions lack reliance upon any testable methodology and are based upon assumptions unsupported by the record. For these reasons, Dr. Rosenzweig's opinions do not meet the reliability standards of Rule 702.

### 1.    Dr. Rosenzweig Is Not Qualified to State Certain of His Opinions.

Dr. Rosenzweig admits that he is no more qualified than the average person to discern what the parties to a contract intended,[11] yet he purports to do precisely that.[12] The scope of the parties' agreements is one of the most hotly contested issues in this case. Powerweb reads them broadly, but NewEnergy reads them narrowly. Powerweb's experts estimate the damages that will be recoverable if Powerweb prevails on that issue. Dr. Rosenzweig criticizes those estimates as "inappropriate" by opining that NewEnergy's narrower interpretation is correct.[13]

---

[11]    See A3 at 8:7-14.

[12]    This opinion also should be excluded because opinions addressing matters equally within the competence of the jury to understand are inadmissible. See McGowan v. Cooper Indus., Inc., 863 F.2d 1266 (6th Cir. 1988) (excluding expert testimony because it was not helpful to the jury); see also In re Diet Drugs, No. MDL 1203, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001) ("[T]estimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury.")

[13]    See A1 at 6 (purporting to interpret the intended scope of the contracts).

That is a liability opinion regarding the parties' contractual intent, not a criticism of the damages analysis. Dr. Rosenzweig is simply not qualified to render such an opinion.

Similarly, Dr. Rosenzweig admits that he is not an expert in software development, internet communications or metering technology.[14] Nevertheless, he opines that NewEnergy's WebJoules product does not include any components of Powerweb's protected Omni-Link system.[15] He is clearly not qualified to render that opinion.

If he is allowed to testify at all, Dr. Rosenzweig's opinions should be limited to economics and mathematics, and his opinions regarding liability issues should be excluded.

## 2. Dr. Rosenzweig's Opinions Are Not Based Upon Sufficient Facts or Data.

Dr. Rosenzweig was not provided with the information necessary to render a reliable opinion regarding Powerweb's damages. He reviewed only a skewed portion of the pertinent deposition transcripts and documents, selected by NewEnergy's counsel.[16] He then asked for additional documents, but never received them.[17] He also asked to speak to an employee of NewEnergy who was the purported source of important information, but the employee never called.[18] He even admits that he was only looking for anything that might help him contradict the assumptions or conclusions of Powerweb's experts.[19] That one-sided sampling of the facts is an insufficient basis for a reliable opinion. See Mause v. Global Household Brands, Inc., No. Civ. A. 01-4313, 2003 WL 22416000, at *4-*5 (E.D. Pa. Oct. 20, 2003)

---

[14]     See A3 at 6:19-7:6.

[15]     See A3 at 50:17-51:2.

[16]     See A3 at 32:10-15, 39:20-21.

[17]     See, e.g., A3 at 76:21-77:7, 154:17-155:2.

[18]     See A3 at 179:18-180:4.

[19]     See A3 at 147:6-24.

(finding an expert's conclusions unreliable where they were based only on the plaintiff's testimony, and the expert did nothing to test the plaintiff's assertion).

For example, Dr. Rosenzweig criticizes Dr. Fox-Penner's estimate of NewEnergy's load management ("LM") business in the PJM.[20] However, his disagreement with that estimate is based solely on untested representations by NewEnergy.[21] Dr. Rosenzweig asked NewEnergy for documents to verify the representations, but he never received them.[22]

Dr. Rosenzweig also relies heavily upon a number of other untested representations by NewEnergy, which he lists in Exhibit MBR-3 to his initial report. That information was not provided to Powerweb in response to its discovery requests[23] and is therefore not a valid basis for critiquing the reports of Powerweb's experts. Furthermore, Dr. Rosenzweig did not receive any of the written documentation he requested from NewEnergy to support the representations contained in his Exhibit MBR-3.[24]

Moreover, Dr. Rosenzweig concedes that his Exhibit MBR-3 only includes data that contradicts Dr. Fox-Penner's estimates.[25] Despite repeated requests, NewEnergy did not produce the information needed for a precise calculation of damages.[26] As a result, Dr Fox-Penner was forced to use estimates for the undisclosed numbers. NewEnergy then gave the missing numbers to Dr. Rosenzweig if they were lower that the estimates, but not if it they were

---

[20]     See A1 at 10.

[21]     See A3 at 76:5-15.

[22]     See A3 at 76:21-77:7.

[23]     See Motion in Limine by Powerweb, Inc. to Preclude Evidence and Testimony Regarding NewEnergy's Post Discovery Representations to Dr. Michael Rosenzweig, Ph.D.

[24]     See A3 at 154:17-155:2.

[25]     See A3 at 147:6-148:5.

[26]     See Motion in Limine by Powerweb, Inc. to Preclude Evidence and Testimony Regarding NewEnergy's Post Discovery Representations to Dr. Michael Rosenzweig, Ph.D.

higher. Thus, Dr. Rosenzweig was unable to determine whether the estimated amounts were reasonable in the aggregate.

With no supporting documentation, there is no way to verify either the accuracy of the information provided or the scope of the information that was not provided by NewEnergy. Ultimately, there was no check on NewEnergy's ability to provide Dr. Rosenzweig with only the data most favorable to its position. Because no supporting documentation was provided and Dr. Rosenzweig did nothing to test or verify the accuracy of NewEnergy's representations, his opinions are unreliable. See Mause, 2003 WL 22416000, at *4-*5.

Dr. Rosenzweig also relies upon additional unsubstantiated data in his supplemental report. For example, Dr. Rosenzweig criticizes Dr. Fox-Penner's 2004 damage projections by comparing them with purported "actual data" that Dr. Rosenzweig received from NewEnergy by telephone.[27] Once again, Dr. Rosenzweig received no documentation supporting that purported data and did nothing to test its accuracy.[28] Opinions based on such untested representations by NewEnergy do not meet the standards of Rule 702 and should be excluded. See id.

In addition to not receiving information that he did request, Dr. Rosenzweig failed to even ask NewEnergy for other key information, such as whether NewEnergy has any commodity customers in California[29] and NewEnergy's weighted average cost of capital.[30] Dr. Rosenzweig cannot reliably form opinions criticizing Powerweb's experts on those issues when he did not even try to obtain the information necessary to determine whether their estimates were

---

[27]    See A2 at 4-5.

[28]    See A3 at 168:25-169:7, 172:7-24.

[29]    See A3 at 94:23-95:20.

[30]    See A3 at 101:7-19.

correct. Without such evidence, there is no basis for a fair analysis of Dr. Rosenzweig's unsupported opinions.

### 3. Dr. Rosenzweig's Opinions Are Not Based on any Methodology.

Dr. Rosenzweig's conclusions do not flow from *any* methodology. He glibly claims that his opinions have been developed using "standard economic principles and procedures."[31] However, he fails to articulate any clear method of calculating Powerweb's damages in contrast to the methods employed by Powerweb's experts. Indeed, while Dr. Rosenzweig attempts to critique the methods and reasoning of Powerweb's experts, he does not posit an alternate method or follow such a method to its logical conclusion. Without the advancement of an articulated methodology on the part of Dr. Rosenzweig, it is impossible for a jury to test the reliability of his opinions. Dr. Rosenzweig's unsubstantiated views are nothing more than untested hypotheses that do not meet the standard of Rule 702. See Mause, 2003 WL 22416000, at *2 (finding that where an expert provided no methodology for his opinions, his conclusion was no more than "subjective belief or unsupported speculation"). Therefore, Dr. Rosenzweig's testimony as to these opinions should be excluded.

### 4. Dr. Rosenzweig's Opinions Are Based on Assumptions That Are Not Supported by the Record.

Dr. Rosenzweig's opinions make assumptions that are contrary to the record in this case. For example, in arguing that Powerweb's damages do not properly flow from NewEnergy's breach of its agreements, Dr. Rosenzweig assumes that NewEnergy's WebJoules software does not include any of the features of Powerweb's protected Omni-Link software. That

---

[31]    See A1 at 3.

is wholly at odds with the record.[32] Dr. Rosenzweig also assumes that as soon as load management concepts reached the public domain, companies could immediately use them to sell products and services.[33] While Dr. Rosenzweig retreated from this position slightly when pressed at his deposition, he also admitted that he did not do any study to determine how much time companies would need to develop a load management program similar to Powerweb's once they learned of the concept.[34] Without any facts to support his view, this criticism of Powerweb's damages is simply an expression of Dr. Rosenzweig's personal, not expert, opinion, and does not meet the standards of Rule 702.

Another biased assumption of Dr. Rosenzweig is his stated opinion that Powerweb's contract with BG&E was terminated because it was not profitable.[35] In forming this opinion, Dr. Rosenzweig ignores the testimony of Powerweb's President on this issue, which explained that the BG&E terminated the contract due to interference by NewEnergy.[36] When pressed at his deposition, Dr. Rosenzweig stated that he did review Mr. Budike's testimony but did not rely on this testimony "for obvious reasons."[37] Dr. Rosenzweig later stated that he had no data to support Powerweb's position,[38] ignoring his own reliance on numerous unsubstantiated opinions of NewEnergy.

---

[32]   Mr. Budike testified that numerous Omni-Link features were added to WebJoules. See Budike Dep. (A4) at 571:9-572:1; Declaration of Lothar E.S. Budike, Jr. (A5) at 2 (¶7), 5 (¶9). Indeed, Mr. Mistry admits adding them to WebJoules while working for NewEnergy. See, e.g., Mistry Dep. (A6) at 49:19-49:23, 55:20-55:22, 66:16-67:2, 83:22-84:5, 111:23-112:6, 117:9-117:12, 131:5-131:12, 137:15-138:13.

[33]   See A3 at 52:10-22.

[34]   See A3 at 54:11-15.

[35]   See A3 at 35:7-11, 197:8-15.

[36]   See A4 at 693:9-694:20.

[37]   See A3 at 36:9-10.

[38]   See A3 at 198:16-22.

Dr. Rosenzweig also criticizes the lost profits calculations of Powerweb's experts regarding Bell Atlantic's LM activity.[39] Dr. Rosenzweig's critique relies upon data attached as exhibits to the deposition of one of Bell Atlantic's representatives.[40] However, that data only details Bell Atlantic's LM activity in NYISO programs; it does not include Bell Atlantic's LM activity in NYPA and LIPA programs. Dr. Rosenzweig's reliance on partial data paints an incomplete and incorrect picture of Bell Atlantic's LM activity. For all of these reasons, Dr. Rosenzweig's opinions are unreliable as expert testimony.

## III.    CONCLUSION

For the foregoing reasons, the Court should exclude all of the purported expert testimony of Dr. Rosenzweig, or in the alternative, hold a <u>Daubert</u> hearing to determine whether any limited aspects of it might be admissible.

Respectfully submitted,


kc571

Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:   July 15, 2004

---

[39]    <u>See</u> A1 at 22.

[40]    <u>See</u> A1 at 22.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,   :
               Plaintiff,   :
                         :
          v.            :          No. 02-CV-2733 (HB)
                         :
POWERWEB TECHNOLOGIES, INC.,   :
               Defendant.   :

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing proposed Order, motion and memorandum were filed electronically today and are available for viewing and downloading from the ECF system. They were served upon counsel for Constellation NewEnergy, Inc. by notice of electronic filing, addressed to:

David E. Landau, Esquire
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch St., 22nd Floor
Philadelphia, PA 19102
dlandau@wolfblock.com

_____kc571_____
Kristin L. Calabrese, Esquire

Date:  July 15, 2004