IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

## **O R D E R**

AND NOW, this          day of                              , 2004, it is hereby ORDERED

that the Motion in Limine by Powerweb, Inc. to Preclude Testimony by Dr. Violette is

GRANTED. Dr. Violette will not be permitted to testify at the trial of this action on the issues of

Energy Technology or whether NewEnergy breached its agreements, because his proffered

testimony does not meet the minimum standards for expert testimony required by Rule 702 of the

Federal Rules of Evidence.

BY THE COURT:

_____

J.

814352.2 7/15/04

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,            :
                Plaintiff,            :
                                  :
                v.            :            No. 02-CV-2733 (HB)
                                    :
POWERWEB TECHNOLOGIES, INC.,            :
                Defendant.            :

**MOTION IN LIMINE BY POWERWEB, INC.
TO PRECLUDE TESTIMONY BY DR. VIOLETTE**

Powerweb, Inc.[1] hereby moves the Court for an Order precluding Constellation NewEnergy, Inc. from offering testimony at trial by Dr. Daniel M. Violette on the definition of Energy Technology, the scope of the Confidentiality Agreement or whether NewEnergy breached its agreements, for the reasons set forth in the accompanying memorandum of law.

              kc571
Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:    July 15, 2004

---

[1]    Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

814352.2 7/15/04

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,            :
                 Plaintiff,            :
                                   :
                 v.            :            No. 02-CV-2733 (HB)
                                   :
POWERWEB TECHNOLOGIES, INC.,            :
                Defendant.            :

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE BY POWERWEB, INC.
TO PRECLUDE TESTIMONY BY DR. VIOLETTE**

      Powerweb, Inc. ("Powerweb")[1] submits this memorandum in support of its motion to preclude Constellation NewEnergy, Inc. ("NewEnergy") from offering certain testimony by Daniel M. Violette, Ph.D. as an expert witness.

      Dr. Violette has prepared reports[2] in which he purports to examine the reports prepared by Dr. Peter Fox-Penner and Mr. Constantinos Gus Pappas, C.P.A. and to analyze the foundational assumptions in those reports.[3] However, Dr. Violette's reports lodge criticisms at Dr. Fox-Penner on several issues on which Dr. Fox-Penner did not opine. Furthermore, Dr. Violette makes legal conclusions that are outside the scope of his expertise, regarding those same issues. Dr. Violette's testimony should be excluded on these topics.

## I.    BACKGROUND

      In 1996, the electricity markets in various regions across the United States began to be deregulated, opening the door to competition and new methods of reducing energy costs. Because electricity cannot be stored, all generated power must be consumed instantaneously.

---

[1]     Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

[2]     All citations to supporting materials are to Powerweb's appendix, in the form of A [tab] at [page]. See Dr. Violette's initial and supplemental reports (A1 and A2).

[3]     See A1 at 3.

This makes balancing supply and demand a constant challenge and causes electricity prices to be extremely volatile. During high demand periods, the wholesale price of electricity can fluctuate by as much as 1,000%. Powerweb designed a system that enables large commercial customers to profit from this fluctuation by using their own emergency generators when prices are at their highest. Powerweb christened the system it created the "Omni-Link system."

NewEnergy agreed to enter into a series of joint ventures with Powerweb to license the Omni-Link system, first to Bell Atlantic Corporation, and then to other customers. Accordingly, Powerweb disclosed the details of its system to NewEnergy under a written agreement ("Confidentiality Agreement") that prohibited NewEnergy from unilaterally using or disclosing any of the information that Powerweb provided. NewEnergy then abandoned Powerweb, used the information to develop competing products and services of its own, and carelessly disclosed the information to others who also used it to become competitors of Powerweb. NewEnergy further interfered with Powerweb's existing customer contract with Baltimore Gas & Electric Co. ("BG&E"), precipitating the end of this relationship.

NewEnergy's anticompetitive conduct has resulted in serious economic injury to Powerweb by preventing Powerweb from reaping the full benefit of its development of the Omni-Link system and its contractual agreements to market and employ this system. As a result, Powerweb seeks to recover the present value of both the profits that Powerweb would have earned and the profits that NewEnergy has earned as a result of NewEnergy's breach of contract, unauthorized use and disclosure of Powerweb's confidential information, and interference with Powerweb's relationship with BG&E.

## II.    THE TESTIMONY OF DR. VIOLETTE MUST BE EXCLUDED

The trial court has a duty to ensure that all expert testimony is relevant and reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593 (1993). In order for a court to permit expert testimony, it must meet the minimum standards of Federal Rule of Evidence 702. Kent v. Howell Elec. Motors, No. Civ. A. 96-7221, 1999 WL 517106, at *2 (E.D. Pa. July 20, 1999).

The party offering the expert has the burden of proving admissibility under Rule 702 by a preponderance of proof. Daubert, 509 U.S. at 593 n.10.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, if expert testimony will assist the trier of fact, its admissibility turns on (1) whether the expert is qualified by knowledge, skill, experience, training or education; (2) whether the expert's testimony is based on sufficient facts or data; (3) whether the expert's testimony is the product of reliable principles and methods; and (4) whether the expert has reliably applied the principles and methods to the facts. See Daubert, 509 U.S. at 592-93; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994), cert. denied sub nom. Gen. Elec. Co. v. Ingram, 513 U.S. 1190 (1995).

The first factor requires that a witness possess "specialized expertise" to issue an expert opinion. Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003); see also Fed. R. Evid. 702. In general, courts interpret this requirement liberally, allowing a broad range of knowledge, skills and training to qualify an expert. Calhoun, 350 F.3d at 321. (citing In re Paoli, 35 F.3d at 741). However, an expert who is generally qualified may lack qualifications to testify

outside of his area of expertise. <u>Id</u>. at 322. A court abuses its discretion where it permits an expert to testify to matters outside of his knowledge, skill, experience, training or education. <u>See, e.g.</u>, <u>Aloe Coal Co. v. Clark Equip. Co.</u>, 816 F.2d 110, 114 (3d Cir.) (holding court abused its discretion in allowing tractor sales representative to testify to cause of tractor fire where witness had no experience in designing construction machinery, no knowledge or experience in determining the cause of equipment fire, and no training as a mechanic), <u>cert</u>. <u>denied</u>, 484 U.S. 853 (1987).

Rule 702 further requires that an expert's opinion be based upon a methodology or technique that is reliable. Fed. R. Evid. 702. This requirement is satisfied when the proposed testimony is based upon "good grounds," meaning that the expert's opinion is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" <u>Calhoun</u>, 350 F.3d at 321 (citing <u>Daubert</u>, 509 U.S. at 590). Lastly, Rule 702 requires that expert testimony have the requisite "fit" or relevance to assist the trier of fact in understanding the evidence. <u>See</u> <u>Kent</u>, 1999 WL 517106, at *4 (stating relevance in this context has not been found to be as expansive as under the Federal Rules of Civil Procedure). In order to meet the fit requirement, the testimony must "connect the witness's conclusions, based on a reliable methodology, to an issue presented in the case." <u>Id.</u>

Certain of Dr. Violette's opinions fail to meet the standards necessary for admissibility under Rule 702. Specifically, Dr. Violette purports to criticize Dr. Fox-Penner's definition of Energy Technology and his assumption that NewEnergy breached its agreements with Powerweb.[4] This testimony is not helpful to the trier of fact, because Dr. Fox-Penner does not actually opine on either of those issues. Furthermore, Dr. Violette does not meet the

---

[4]    <u>See</u> A1 at 3.

minimum qualifications necessary to testify to all the opinions he proffers. Dr. Violette makes

legal conclusions regarding the definition of Energy Technology, the scope of the Confidentiality

Agreement[5] and whether NewEnergy breached its agreements, all of which are outside the scope

of his expertise. Such testimony does not meet the standards of Rule 702 and should be excluded.

**A.    Definition of Energy Technology and Scope of Confidentiality Agreement**

Dr. Violette's report concludes that "Dr. Fox-Penner's definition of Energy

Technology used in his estimation of economic damages is overly broad."[6] However, Dr. Fox-

Penner does not opine on the definition of Energy Technology. Dr. Violette's critique of Dr.

Fox-Penner's report on this basis consequently does not satisfy the "fit" requirement, because

Dr. Fox-Penner's opinion on the definition of Energy Technology is not an issue in this case. Dr.

Violette's criticism of Dr. Fox-Penner's report in this regard is confusing, rather than helpful to

the trier of fact, and should be excluded.

Dr. Violette further concludes both that Powerweb's protected "Energy

Technology" includes only the technology initially provided to NewEnergy for purposes of a due

diligence review and that the Confidentiality Agreement executed by the parties pertains only to

the technology in its initial form.[7] Dr. Violette reaches these conclusions through an examination

of Powerweb's contracts with NewEnergy. Specifically, Dr. Violette concludes, through analysis

of the Confidentiality Agreement, that: (1) the Confidentiality Agreement is predicated upon the

execution of the Letter of Intent and Marketing Agreements;[8] (2) the Energy Technology

referred to in the Confidentiality Agreement was the technology as it existed between the dates

---

[5]    Dr. Violette refers to this as the Non-Disclosure Agreement in his report.

[6]    See A1 at 3.

[7]    See A1 at 7-8.

[8]    See Deposition of Dr. Violette (A3) at 165:14-166:8.

of the Confidentiality Agreement and the Letter of Intent;[9] and (3) the disclosure of additional

technology after the signing of the Letter of Intent would have required a new Confidentiality

Agreement.[10]

Dr. Violette has a PhD in economics and is a principal with an economic research

and consulting firm.[11] He has been involved professionally in the energy industry.[12] However, he

does not have a law degree, nor has he drafted any energy curtailment software contracts. Dr.

Violette is not qualified to interpret such contracts or to form legal opinions regarding the scope

of the contracts between Powerweb and NewEnergy, the definitions of contractual terms or the

parties' intent in entering into the contracts. As such, the Court should exclude Dr. Violette's

conclusions regarding the definition of Energy Technology and the scope of the Confidentiality

Agreement, both of which involve legal analysis and contractual interpretation that is beyond the

scope of Dr. Violette's expertise.

Even if Dr. Violette's testimony could overcome those hurdles, his definition of

Energy Technology as only that technology provided to NewEnergy in 1999 for the purpose of

conducting a due diligence review is contrary to the record. Dr. Violette admits that the

Confidentiality Agreement under which Powerweb provided information regarding its Energy

Technology has a term of ten years,[13] which is much longer than the due diligence period to

which Dr. Violette claims the Confidentiality Agreement extends. Nowhere does the

Confidentiality Agreement state that it applies only to technology disclosed during the due

diligence period, and Dr. Violette admits that he does not know whether the Confidentiality

---

[9]     See A3 at 165:14-166:15, 167:3-168:18.

[10]    See A3 at 172:4-173:2.

[11]    See A1 at Attachment A.

[12]    See A1 at Attachment A.

[13]    See A3 at 166:16-20.

Agreement was incorporated into later agreements.[14] Dr. Violette further admits that he was only asked to evaluate the information disclosed by Powerweb from October 1999 through January 2000 for the purpose of determining what constituted Powerweb's Energy Technology.[15] Dr. Violette's opinions regarding the definition of Energy Technology and the scope of the Confidentiality Agreement are without any support other than his own interpretation of contracts, which exceeds the scope of his qualifications. Therefore, Dr. Violette should not be permitted to testify as to the definition of Energy Technology or the scope of the Confidentiality Agreement.

### B.    NewEnergy's Breach of the Agreements

Dr. Violette further purports to critique "[t]he assumption made by Dr. Fox-Penner that 'NE has used the Energy Technology Information and disclosed Energy Technology Information to other parties.'"[16] Again, Dr. Fox-Penner does not opine on those issues. Dr. Fox-Penner was hired to testify regarding damages, not liability. As such, he estimates the damages to which Powerweb will be entitled *if* NewEnergy is found to have improperly used and disclosed Powerweb's Energy Technology Information. Because Dr. Fox-Penner does not state an opinion as to the underlying liability issues, Dr. Violette's critique of Dr. Fox-Penner's damages calculations on this basis is not helpful to the trier of fact and therefore not proper expert testimony.

Indeed, it would be inappropriate for Dr. Fox-Penner to opine on whether NewEnergy breached its agreements with Powerweb, because that would be a legal conclusion not within the scope of his qualifications as an expert. The same is true for Dr. Violette. While Dr. Violette may opine, as he does, on the energy technology market and scope of competition

---

14    See A3 at 168:21-169:5.

15    See A3 at 173:3-16.

16    See A1 at 3.

within the market, he is not qualified to express the legal conclusion that NewEnergy did not breach its agreements with Powerweb. Dr. Violette does express such a conclusion several times in his report.[17] Furthermore, to the extent that Dr. Violette's opinions regarding breach result from his interpretation of the term Energy Technology, which is defined by the contract, or from his interpretation of other aspects of the Confidentiality Agreement, they similarly surpass his qualifications. Again, where Dr. Violette forms legal conclusions regarding the agreements at issue in this case and the definitions included therein, his testimony does not meet the standard of Rule 702 and should be excluded.

On the issue of breach, Dr. Violette further concludes that NewEnergy did not use Powerweb's Energy Technology in the development of its own curtailment software, WebJoules.[18] Dr. Violette is not an expert in software development and is therefore not qualified to render that opinion. In addition, Dr. Violette admits that he did not view Powerweb's Omni-Link software or NewEnergy's WebJoules software in forming his opinions regarding NewEnergy's use of Powerweb's Energy Technology.[19] Dr. Violette further admits that he does not know what the capabilities of NewEnergy's software were prior to Powerweb's disclosure of its Energy Technology Information to NewEnergy.[20] Without performing a comprehensive analysis of Omni-Link and WebJoules, Dr. Violette has no reliable basis for the opinion that WebJoules does not rely in part upon Powerweb's technology.

---

[17]    See e.g., A1 at 17, 24.

[18]    See A1 at 16-17.

[19]    See A3 at 97:18-98:9.

[20]    See A3 at 186:12-23.

## III.    CONCLUSION

For the foregoing reasons, the Court should exclude the purported expert testimony of Dr. Violette regarding the definition of Energy Technology, the scope of the Confidentiality Agreement and whether NewEnergy breached its agreements with Powerweb, or in the alternative, hold a <u>Daubert</u> hearing to determine its admissibility.

Respectfully submitted,


kc571

Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:    July 15, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,          :
                Plaintiff,          :
                                  :
                v.          :          No. 02-CV-2733 (HB)
                                  :
POWERWEB TECHNOLOGIES, INC.,          :
                Defendant.          :

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing proposed Order,

motion and memorandum were filed electronically today and are available for viewing and

downloading from the ECF system. They were served upon counsel for Constellation

NewEnergy, Inc. by notice of electronic filing, addressed to:

David E. Landau, Esquire
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch St., 22nd Floor
Philadelphia, PA 19102
dlandau@wolfblock.com


                                        kc571
                              Kristin L. Calabrese, Esquire

Date:   July 15, 2004

814352.2 7/15/04