IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**O R D E R**

AND NOW, this          day of              , 2004, it is hereby ORDERED that the Motion in Limine by Powerweb, Inc. to Preclude Evidence and Testimony regarding NewEnergy's Post Discovery Representations to Michael Rosenzweig, Ph.D. is GRANTED.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**MOTION BY POWERWEB, INC. TO PRECLUDE
EVIDENCE AND TESTIMONY REGARDING NEWENERGY'S POST
DISCOVERY REPRESENTATIONS TO MICHAEL ROSENZWEIG, PH.D.**

Powerweb, Inc.[1] hereby moves the Court for an Order to preclude the NewEnergy witnesses from offering evidence and testimony related to representations made by NewEnergy to its expert, Dr. Rosenzweig, regarding customer, meter, megawatt and margin information, for the reasons set forth in the accompanying memorandum of law.

                                                                                   KC571
                                              Rudolph Garcia, Esquire
                                              Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:   July 15, 2004

---

[1] Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

814695.3 7/15/04

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY POWERWEB, INC. TO PRECLUDE
EVIDENCE AND TESTIMONY REGARDING NEWENERGY'S POST
DISCOVERY REPRESENTATIONS TO MICHAEL ROSENZWEIG, PH.D.**

Powerweb, Inc. ("Powerweb")[1] submits this memorandum in support of its motion to preclude Constellation NewEnergy, Inc. ("NewEnergy") from offering evidence and testimony regarding post discovery representations made to Dr. Rosenzweig.

Powerweb made repeated efforts through document requests and deposition inquiries to discover specific information concerning NewEnergy's customers and profits related to its curtailment programs. NewEnergy professed to have provided the information Powerweb was seeking through documents produced during the final month of discovery.

To Powerweb's surprise, new information concerning NewEnergy's curtailment customers and revenues was revealed by one of NewEnergy's experts, Michael Rosenzweig, Ph.D., in his report served on May 3, 2004, two months after the close of discovery.[2] Exhibit MBR-3 to Dr. Rosenzweig's report contains specific representations by NewEnergy concerning NewEnergy's load management profits and customers in New England, California, and New

---

[1] Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

[2] All citations to supporting materials are to Powerweb's appendix, in the form of A[tab] at [page]. See Exhibit MBR-3, (A1).

York. The source of this information was not documents produced to Powerweb, but a conversation between the expert and an unidentified NewEnergy employee.

Powerweb was surprised again on June 11, 2004, when Dr. Rosenzweig cited in his supplemental report additional information previously not provided to Powerweb.[3] This time, Dr. Rosenzweig cited two NewEnergy employees, Amy Richard and Deirdre Lord, as the sources for the information. At his deposition on June 25, 2004, Dr. Rosenzweig revealed the name of yet another NewEnergy source for information used in his supplemental report, Barton Moses.[4]

Since this information was provided months after the discovery deadline, and Ms. Richard and Mr. Moses were never identified by NewEnergy as persons with knowledge of discoverable information, Powerweb did not have an opportunity to provide complete information to its own experts, let alone to test the veracity or completeness of the representations made to Dr. Rosenzweig.[5] Accordingly, Powerweb seeks to preclude any testimony or evidence regarding NewEnergy's post-discovery representations to Dr. Rosenzweig.

## I.   BACKGROUND

In 1996, the electricity markets in various regions across the United States began to be deregulated, opening the door to competition and new methods for reducing energy costs. Because electricity cannot be stored, all generated power must be consumed instantaneously. That makes balancing supply and demand a constant challenge and causes electricity prices to be

---

[3]  See Rosenzweig Supplemental Report (A2) at 5.

[4]  At his deposition Dr. Rosenzweig explained that although Deirdre Lord passed along the changed megawatt figure, the data came from the AT&T account representative, Barton Moses. See Deposition of Michael B. Rosenzweig, Ph.D. ("Rosenzweig Dep.") (A2) at 173-82)

[5]  Powerweb deposed Ms. Lord on January 8, 2004, prior to NewEnergy's production of any of the requested documents relating to margin information.

extremely volatile. During high demand periods, the wholesale price of electricity can increase by as much as 1,000%. Powerweb designed a system that enables large commercial customers to profit from that fluctuation by cutting back their consumption or using their own emergency generators when prices are at their highest ("Omni-Link system").

NewEnergy agreed to enter into a series of joint ventures with Powerweb to license the Omni-Link system, first to Bell Atlantic Corporation ("Bell Atlantic"),[6] and then to other customers. Accordingly, Powerweb disclosed the details of its system to NewEnergy under a written agreement ("Confidentiality Agreement") that prohibited NewEnergy from unilaterally using or disclosing the information that Powerweb provided. NewEnergy then abandoned Powerweb, used the information to develop competing products and services of its own, and carelessly disclosed important aspects of the information to others who then used it to also become competitors of Powerweb.

NewEnergy commenced this action to seek a return of $100,000 that it paid for the initial Bell Atlantic project. Powerweb answered the Complaint, explaining why NewEnergy is not entitled to any repayment. In addition, Powerweb filed its counterclaims against NewEnergy for lost profits over the ten-year period covered by the Confidentiality Agreement. NewEnergy then retaliated by inducing Baltimore Gas & Electric Company ("BG&E") to terminate a three-year contract with Powerweb. Recovery for that interference also has been sought by amending the counterclaims.

---

[6] Bell Atlantic is now known as Verizon. However, for convenience and clarity, it will be referred to in this memorandum as Bell Atlantic even after it changed its name to Verizon.

**A.     Powerweb is Unfairly Prejudiced by NewEnergy's Post Discovery Representations.**

Powerweb issued extensive document requests seeking information relating to NewEnergy's customers, number of meters, and profits or revenues derived from load management activities.[7] NewEnergy responded and objected to Powerweb's requests and indicated it would produce documents, including those relating to the meters installed at customers and revenues or profits from any sale of capacity or energy.[8] With the discovery deadline approaching, and having received scant information, Powerweb issued a notice of deposition pursuant to Rule 30(b)(6) seeking testimony regarding detailed customer and load management data.[9] NewEnergy objected to the notice because there was not a single individual in the company who had the requested knowledge for all NewEnergy regions; testimony regarding each region would have to come from a different witness, and many of the potential designees had already been deposed. NewEnergy also pointed to documents recently produced, indicating that the information Powerweb sought could be ascertained from the documents. The parties worked to arrive at a compromise, and NewEnergy represented it would "endeavor to provide [Powerweb] with all of the relevant information you have requested."[10]

Despite NewEnergy's representations that Powerweb would receive the requested information, Powerweb was not provided, through documents or otherwise, with specific or complete information regarding customers, meters, megawatts, and margins for all NewEnergy regions. As a result, Powerweb's experts were forced to distill what information they could from

---

[7]     See, e.g., Defendants' Second Set of Requests for Production Directed to Constellation NewEnergy, Inc. at Nos. 1, 2, 5, 6, 8, 10, 13, 14, 23, 24, and 29 (A4).

[8]     See NE's responses to Defendants' Second Set of Requests for Production Directed to Constellation NewEnergy, Inc. (A5) at 14-15.

[9]     See Notice of Deposition of Plaintiff Constellation NewEnergy (A6).

[10]    March 12, 2004 Letter from Zachary Glaser, Esquire (A7).

the documents and the limited information known to deponents and use it to make informed estimates and projections. Although NewEnergy did not provide Powerweb with complete detailed customer, meter, megawatt, and margin information, it represented some of that information to its own expert, Dr. Rosenzweig. Dr. Rosenzweig then unfairly used the information to criticize Powerweb's damage calculations.

Powerweb was not able to depose the NewEnergy employees cited by Dr. Rosenzweig as sources for the post discovery representations regarding that information. Deirdre Lord was deposed on January 8, 2004—prior to the production of any customer, meter or profit margin information. NewEnergy was unwilling to reproduce Ms. Lord following the production of that information. Moreover, at her deposition Ms. Lord was unable to provide any detailed information.[11]

Rule 26 requires a party to disclose the identity of "each individual *likely to have discoverable information that the disclosing party may use to support its claims or defenses*" and to supplement those disclosures to rectify any omissions or errors. Fed. R. Civ. P. 26(a)(1)(A) (emphasis added), 26(e)(1). Powerweb, however, learned of Amy Richard and Barton Moses and the fact they have pertinent information only through Dr. Rosenzweig's supplemental report and deposition. These individuals were omitted from NewEnergy's initial disclosures and any supplement thereto.[12] As they were not identified until months after the close of discovery, Powerweb had no opportunity to depose them to discover the information provided to Dr. Rosenzweig for itself.

---

[11] See Deposition of Deirdre Lord ("Lord Dep.") (A8) at 48:10-22).

[12] See Amended Disclosures of Constellation NewEnergy and Supplement to Constellation NewEnergy's Initial Disclosures (A9).

NewEnergy was certainly aware of the identity of each of these witnesses and the fact that they possessed discoverable information. Given that these witnesses provided data to NewEnergy's expert, they possess information likely to be used to support NewEnergy's defenses.

A party who fails to disclose information required by Rule 26(a) is not permitted to introduce the testimony of such witness or such evidence at trial. See Fed. R. Civ. P. 37(c)(1). Before excluding a witness or evidence, a court must consider:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

See In re TMI Litig., 193 F.3d 613, 619 (3d Cir 1999), cert. denied, 530 U.S. 1225 (2000).

The consideration of those factors weighs in favor of precluding the testimony of Ms. Richard, Mr. Moses and the portion of Dr. Rosenzweig's testimony based on the data not provided to Powerweb. Powerweb was duly surprised at the facts purportedly known by Ms. Richard and Mr. Moses, because Powerweb was led to believe other witnesses were knowledgeable regarding New England and California.[13] Powerweb had no way of discerning the involvement of either Ms. Richard or Mr. Moses. Thus, Powerweb did not have an opportunity to discover the detailed information, test its veracity, or provide it to Powerweb's damages experts.

Moreover, the prejudice related to the information provided to Dr. Rosenzweig cannot be cured. The representations and the sources for the representations were not disclosed until after Powerweb's damage experts, using the data available to them at the time, issued their

---

[13] See, e.g., Lord Dep. (A8) at 40:5-9.

reports. As we are presently on the eve of trial, there is simply no time to conduct two depositions and repeat the expert report process. Testimony relating to the post discovery representations to Dr. Rosenzweig should be precluded.

Similarly, the admission of any documents reflecting the information provided in the representations is unduly prejudicial to Powerweb. Accordingly, any documentary evidence of the data supplied to Dr. Rosenzweig that was not previously supplied to Powerweb is also properly excluded.

### B. Deirdre Lord Does Not Have Personal Knowledge of the Information Provided to Dr. Rosenzweig.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; see also Coyle v. Kristjan Palusalu Maritime Co., 83 F. Supp. 2d 535 (E.D. Pa. 2000) aff'd, 254 F.3d 1077 (3d Cir. 2000) (Table). Personal knowledge "must be an impression derived from [the witness'] own senses. And this impression must be gauged by the geographic proximity of the witness to the event, the length of time involved, and the existence of proper conditions for the exercise of powers of observation and perception." Joy Mfg. Co. v. Sola Basic Indus., Inc., 697 F.2d 104, 111 (3d Cir. 1982) (quoting United States v. Barber, 442 F.2d 517, 526 (3d Cir.), cert denied, 404 U.S. 846, and cert. denied, 404 U.S. 958 (1971)). If, however, the evidence of personal knowledge is "'so scanty as to forfeit the 'guarantees of trustworthiness' which form the hallmark of all exceptions to the hearsay rule,'" then the witness' testimony on that subject must be excluded. Coyle, 83 F. Supp. 2d at 543 (quoting Miller v. Keating, 754 F.2d 507 (3d Cir. 1985)). Ms. Lord did not have personal knowledge of the facts she reportedly gave to Dr. Rosenzweig, thus she is not competent to testify to those facts at trial.

Dr. Rosenzweig identified Deirdre Lord as the source of the information contained in Exhibit MBR-3, which includes the number of NewEnergy's load management customers in California and New England as well as other details about the programs in those regions.[14] Indeed, Ms. Lord was Dr. Rosenzweig's only source of information regarding California.[15]

Deirdre Lord is the leader for the New York / New Jersey region of NewEnergy, and as such her knowledge base is limited to New York and New Jersey.[16] Detailed information about California and New England is not within the scope of Ms. Lord's responsibilities at NewEnergy. Ms. Lord herself disavows knowledge of NewEnergy's California load management customers:

> Q. And do you know how many customers participated?
> A. No, I don't.[17]
>
> *   *   *
>
> Q. Do you know any details about those California programs?
> A. No.[18]

Dr. Rosenzweig confirms that the information he received regarding California was not the product of Ms. Lord's personal knowledge, but rather was given to her by someone

---

[14] Rosenzweig Dep. (A3) at 159:23-160:11. Rosenzweig could not recall if Ms. Lord relayed information regarding New England or if he spoke to Ms. Richard directly. See Rosenzweig Dep. (A3) at 143:6-21.

[15] Rosenzweig Dep. (A3) at 159:23-160:11.

[16] See Deposition of Deirdre Lord ("Lord Dep.") (A8) at 14:7-15:12.

[17] Lord Dep. (A8) at 39:23-25.

[18] Lord Dep. (A8) at 40:10-12

else with access to NewEnergy's financial records for California.[19] Thus, Ms. Lord cannot testify to any information regarding California or New England.

Even with respect to the data concerning New York, Ms. Lord does not have first hand knowledge. Dr. Rosenzweig identifies the source of his information about New York as Ms. Lord, *or someone who had access to documents*.[20] Again, Ms. Lord did not have first hand knowledge of the information, but only relayed information retrieved from documents, which were not produced to Powerweb.[21] Similarly, in the supplemental report, Ms. Lord is cited as the source for the actual amount of megawatts NewEnergy has in the NYISO Special Case Resources Program. At deposition, however, Dr. Rosenzweig revealed that Ms. Lord was merely a conduit for the information—the person with actual knowledge is Barton Moses.[22] At her own deposition, Ms. Lord testified that she did not even have an estimate of the number of megawatts that NewEnergy customers would have participated in the NYISO programs for 2004.[23] Ms. Lord is not competent to offer testimony regarding the information she provided to Dr. Rosenzweig.

## II.   CONCLUSION

For the foregoing reasons, the court should preclude evidence and testimony regarding the post discovery representations made to Dr. Rosenzweig.

---

[19] See Rosenzweig Dep. (A3) at 155:3-156:3.

[20] See Rosenzweig Dep. (A3) at 161:3-5.

[21] In November 2003, Powerweb requested the production of documents related to the revenue and/or profits derived from load curtailment. In its response, NewEnergy agreed only to provide documents pertaining to the PJM. See NewEnergy's Response to Powerweb's Second Set of Requests for Production of Documents, attached hereto as Exhibit ___, at 4-5. NewEnergy later represented that it agreed to produce the requested documents from all regions. Documents regarding the profit margin for the 2001 NYISO EDRP program, however, were not produced.

[22] See Rosenzweig Dep. (A3) at 173-182.

[23] See Lord Dep. (A8) at 148:10-22.

Respectfully submitted,

kc571

Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date: July 15, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that true and correct copies of the foregoing proposed order, motion and memorandum were filed electronically today and are available for viewing and downloading from the ECF System. They were served upon counsel for Constellation NewEnergy, Inc. by notice of electronic filing to:

>David E. Landau, Esquire
>Wolf, Block, Schorr and Solis-Cohen, LLP
>1650 Arch St., 22nd Floor
>Philadelphia, PA 19102
>dlandau@wolfblock.com

                    _kc571_
                    Kristin L. Calabrese

Date: July 15, 2004