IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

# **O R D E R**

AND NOW, this _____ day of _____ 2004, it is hereby ORDERED that the Motion in Limine by Powerweb, Inc. to Preclude Evidence and Testimony Related to Documents Produced After the Close of Discovery is GRANTED. McGeown 001-02 and any testimony related thereto shall be precluded from introduction at trial.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**MOTION IN LIMINE BY POWERWEB, INC. TO
PRECLUDE EVIDENCE AND TESTIMONY RELATED TO
DOCUMENTS PRODUCED AFTER THE CLOSE OF DISCOVERY**

Defendant Powerweb, Inc.[1] hereby moves this Court for an Order to preclude evidence and testimony related to a purported April 12, 1999 letter from Harry Davitian (McGeown 001 - 02), for the reasons set forth in the accompanying memorandum of law.

                                        kc571
Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:  July 15, 2004

---

[1] Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE
BY POWERWEB, INC. TO PRECLUDE EVIDENCE AND TESTIMONY
<u>RELATED TO DOCUMENTS PRODUCED AFTER THE CLOSE OF DISCOVERY</u>**

Powerweb, Inc. ("Powerweb")[1] submits this memorandum in support of its motion to preclude Constellation NewEnergy, Inc. ("NewEnergy") from offering into evidence a document produced by David McGeown ("McGeown 001-02")[2] after the close of discovery and any testimony related thereto.

On March 3, 2004, three days after the close of discovery, NewEnergy produced to Powerweb a document purporting to be a letter dated April 29, 1999 describing a capacity resale program ostensibly similar to the program Powerweb brought to NewEnergy in the Fall of 1999.[3] The document was purportedly found by David McGeown on an old home computer.[4] Although produced by Mr. McGeown, the document is neither from Mr. McGeown nor to Mr. McGeown. Indeed, the document is from a person whose name does not appear on a single other document in this case and who was unknown to Powerweb prior to March 3, 2004. The document is to a third party who was similarly unknown to Powerweb. Further, there is no

---

[1]   Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

[2]   A copy of this document is attached hereto as Exhibit A.

[3]   <u>See</u> Exh. A.

[4]   Letter dated March 3, 2004 from Jennifer O'Neill to Kara Goodchild, attached as Exhibit B.

indication on the face of the document regarding how or why it came to be in Mr. McGeown's possession, let alone on his home computer.

As the document was produced after the deposition of Mr. McGeown and after the close of discovery, Powerweb has been denied an opportunity to conduct any discovery with respect to the document. Nonetheless, NewEnergy has used the document as factual support for one of its expert's opinions[5] and for its motion for summary judgment.[6] The document and any testimony or evidence relating thereto is unfairly prejudicial to Powerweb and should be excluded from the evidence presented at trial.

**I.    BACKGROUND**

In 1996, the electricity markets in various regions across the United States began to be deregulated, opening the door to competition and new methods for reducing energy costs. Because electricity cannot be stored, all generated power must be consumed instantaneously. That makes balancing supply and demand a constant challenge and causes electricity prices to be extremely volatile. During high demand periods, the wholesale price of electricity can increase by as much as 1,000%. Powerweb designed a system that enables large commercial customers to profit from that fluctuation by cutting back their consumption or using their own emergency generators when prices are at their highest ("Omni-Link system").

NewEnergy agreed to enter into a series of joint ventures with Powerweb to license the Omni-Link system, first to Bell Atlantic Corporation ("Bell Atlantic"),[7] and then to other customers. Accordingly, Powerweb disclosed the details of its system to NewEnergy under

---

[5]    See Report of Daniel Violette, Ph.D. at 14, the pertinent portion of Violette's report is attached hereto as Exhibit C.

[6]    See Declaration of David McGeown filed in support of NewEnergy's Motion for Summary Judgment at ¶4, the pertinent portion attached as Exhibit D.

a written agreement ("Confidentiality Agreement") that prohibited NewEnergy from unilaterally using or disclosing the information that Powerweb provided. NewEnergy then abandoned Powerweb, used the information to develop competing products and services of its own, and carelessly disclosed important aspects of the information to others who then used it to also become competitors of Powerweb.

NewEnergy commenced this action to seek a return of $100,000 that it paid for the initial Bell Atlantic project. Powerweb answered the Complaint, explaining why NewEnergy is not entitled to any repayment. In addition, Powerweb filed its counterclaims against NewEnergy for lost profits over the ten-year period covered by the Confidentiality Agreement. NewEnergy then retaliated by inducing Baltimore Gas & Electric Company ("BG&E") to terminate a three-year contract with Powerweb. Recovery for that interference also has been sought by amending the counterclaims.

## II.    ARGUMENT

### A.    The Admission of McGeown 001-02 and any Related Testimony is Unfairly Prejudicial to Powerweb.

McGeown 001-02 should have been produced during discovery, and NewEnergy has not offered a compelling justification as to why the document did not appear until after discovery closed. On November 6, 2002, Powerweb issued document requests seeking, among other things:

> 54.    All documents generated by, received by, kept by, or maintained by Dave McGowen [sic] relating in any way to Powerweb, the Omni-Link System, and or any of the issues raised in this lawsuit.[8]

---

[7]    Bell Atlantic is now known as Verizon. However, for convenience and clarity, it will be referred to in this memorandum as Bell Atlantic even after it changed its name to Verizon.

[8]    Constellation NewEnergy's responses to Powerweb's First Set of Request for Production of Documents at 38, the pertinent portions of which are attached hereto as Exhibit E.

NewEnergy responded that it would produce:

> ... responsive, non-privileged documents generated by received by, kept by, or maintained by David McGeown relating to: (1) Powerweb; (2) Omni-Link; (3) Active Load Management; or (4) Summer Active Load Management and Volunteer Load Curtailment Programs on the Pennsylvania-Jersey-Maryland Interconnection ["PJM"][9]

McGeown was deposed over a year later, on February 26, 2004, three days before the close of discovery, after numerous scheduling delays.[10] During the deposition, McGeown was questioned as to whether he had in his possession, including on computer, any additional documents:

> Q.  Do you have any files, documents, data on computers relating to any of the subjects we've discussed today?
>
> A.  Only insofar as there was some copies of the e-mail traffic that -- or these documents that had floated around last week from counsel.
>
> Q.  In other words, they provided documents to you?
>
> A.  That's correct.
>
> Q.  Other than things they've given you, did you have anything of your own?
>
> A.  No.[11]

Later in the deposition McGeown amended his response and recalled that he had old computers that "may have some of this old First Class e-mail on it [sic]" and agreed to produce anything he found.[12] Almost a week later, McGeown produced, not "old First Class e-mail," but an unsigned letter from Harry Davitian dated April 29, 1999. No explanation or additional information accompanied the letter.

---

[9]   Id.

[10]  Notably, Powerweb made repeated requests for a date for Mr. McGeown's deposition since October 2003. Powerweb accepted the first date offered by NewEnergy, February 26, 2004. See, e.g., correspondence attached as Exhibit F.

[11]  Deposition of David McGeown ("McGeown Dep.") at 215:4-15, attached as Exhibit G.

[12]  McGeown Dep. at 222:17-18, 223:7-9.

During his deposition, McGeown was questioned regarding his responsibilities when he joined NewEnergy in approximately March 1999. McGeown testified that he had the responsibility for helping put together and run the energy services portfolio for the East Coast of NewEnergy.[13] The energy services portfolio did not exist at the time, but as it developed it included products and services that augmented the sale of electricity; including "reducing energy consumption, lending money -- arranging for loans for energy efficiency projects, anything that could reduce a client's energy operating costs."[14] McGeown was questioned and testified at length as to whether NewEnergy had engaged in capacity sales. According to McGeown, NewEnergy had not sold capacity prior to meeting Powerweb.[15]

Months after the production of the April 29, 1999 letter and McGeown's deposition, McGeown submitted a declaration in support of NewEnergy's summary judgment motion. Seemingly in contradiction to his deposition testimony, McGeown proclaimed that the letter was given to him an "an example of the types of projects NewEnergy was pursuing."[16] The discovery deadline having passed and trial looming, Powerweb is without the opportunity to obtain a full explanation of the letter from McGeown in advance of trial, and accordingly is prejudiced by the shift in testimony. Consequently, McGeown, or any other witness, should be precluded from testifying regarding the April 29, 1999 letter or alleged projects NewEnergy was pursuing at that time, and the Letter should be excluded from evidence.

Federal Rule of Civil Procedure 37 provides for automatic exclusion where the party has, without substantial justification, failed to disclose the identity or persons with relevant

---

[13]   McGeown Dep. at 21:22-22:1.

[14]   McGeown Dep. at 22:2-9.

[15]   McGeown Dep. at 70:6-71:4.

[16]   McGeown Declaration at ¶4.

information or the existence of documents in a timely fashion. In excluding evidence, the Court must consider:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

In re TMI Litig., 193 F.3d 613, 619 (3d Cir. 1999), cert. denied, 530 U.S. 1225 (2000).

Here, all four factors weigh in favor of precluding McGeown 001-02 and any testimony related thereto. Numerous NewEnergy witnesses, including McGeown, have testified that they were unaware of any capacity sales by the east region of NewEnergy prior its relationship with Powerweb.[17] In his May 28, 2004 Declaration, McGeown states that he was told McGeown 001-02 represents the kind of projects NewEnergy was pursuing.[18] Powerweb has not had the opportunity to test Mr. McGeown's statement in that regard, either through his deposition or through the deposition of the alleged author of the letter or the alleged recipient. Indeed, Powerweb was unaware of either the author or the recipient until the production of McGeown 001-02 in March. Powerweb is unduly prejudiced by evidence and testimony related to McGeown 001-02, and such evidence and testimony should be excluded.

### B. McGeown 001-02 is Inadmissible Hearsay.

McGeown 001-02 is an unsigned letter purporting to describe an offer regarding the sale of capacity from emergency generators made by a Harry Davitian. This letter, intended as evidence that NewEnergy was pursuing capacity sales projects in 1999, constitutes textbook

---

[17] See, e.g., McGeown Dep. at 70:6-71:4; Deposition of Steven Levine at 135: 19-136:4, attached as Exhibit H; Deposition of Deirdre Lord at 38:9 –39:8, attached as Exhibit I.

[18] See Declaration of David McGeown at ¶4.

hearsay under Federal Rule of Evidence 801 and should be excluded under Federal Rule of Evidence 802.

Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As the Third Circuit has explained:

> It is well settled that evidence is inadmissible hearsay if its probative value depends on the truth of any assertion of fact it contains or on the credibility of someone not available for contemporaneous cross-examination, and if it does not fall within one of the exceptions to the hearsay rule.

United States v. Reynolds, 715 F.2d 99, 101 (3d Cir. 1983). The probative value of the April 29, 1999 letter depends entirely upon the credibility of two out of court declarants and upon the truth of the assertion contained in the document that NewEnergy had a long-term interest in purchasing capacity from the New Water Street Corporation in 1999. As it is only offered for its truth, the letter does not fall under any exceptions to the general hearsay rule.

When a statement is used for the truth it asserts, the availability of the declarant is critical because "his credibility determines the reliability of the inferential journey one necessarily takes from the declarant's utterance to the ultimate fact it is alleged to reflect." Id. The unsigned April 29, 1999 letter produced by McGeown was purportedly written by a Harry Davitian of NewEnergy Ventures to an Edward Kulik, Jr. at The New Water Street Corporation.[19] Frank Magnani, identified as a Plant Manager, is copied on the letter.[20] Neither McGeown nor any other individual identified by NewEnergy during discovery is referenced in the document. Testimony regarding this document by anyone other than the individuals identified therein consequently constitutes inadmissible hearsay.

---

[19]    See Exh. A.

Furthermore, NewEnergy has used this document in its motion for summary judgment and in one of its expert's opinions for the purpose of showing that NewEnergy was pursuing capacity programs in 1999. Thus, NewEnergy seeks to use this document for its purported "truth," namely, that NewEnergy had an interest in purchasing capacity from The New Water Street Corporation during this time period. Because this document is being offered for its truth, it cannot come in under any exception to the hearsay rule.

Not only does the letter itself constitute inadmissible hearsay, McGeown's statement in his declaration that the letter is "an example of the type of projects NewEnergy Ventures was pursuing" constitutes hearsay as well.[21] McGeown was not the person who made this statement. Instead, as McGeown's declaration states in full: "I was given the document by NewEnergy Ventures as an example of the type of projects NewEnergy Ventures was pursuing and that I should help to develop."[22] McGeown does not name the individual who made this statement, but it is clear from his declaration that it was not him. McGeown has further not claimed to have had any involvement in the referenced transaction. Indeed, his deposition testimony suggests that he had no knowledge of any such capacity programs being pursued or developed by NewEnergy in 1999.[23] On this basis, McGeown's testimony that the letter is "an example of the type of projects NewEnergy Ventures was pursuing" in 1999 is inadmissible hearsay that should be precluded at trial.

---

[20]   Id.

[21]   McGeown Declaration at ¶4.

[22]   Id.

[23]   McGeown Dep. at 70:6-71:4.

## III. CONCLUSION

For the foregoing reasons, the Court should exclude any evidence and testimony regarding McGeown 001-02.

Respectfully submitted,

kc571

Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:   July 15, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

      I hereby certify that true and correct copies of the foregoing proposed Order, motion and memorandum were filed electronically today and are available for viewing and downloading from the ECF system. They were served upon counsel for Constellation NewEnergy, Inc. by notice of electronic filing, addressed to:

>David E. Landau, Esquire
>Wolf, Block, Schorr and Solis-Cohen, LLP
>1650 Arch St., 22nd Floor
>Philadelphia, PA 19102
>dlandau@wolfblock.com

                                                                    kc571
                                                  Kristin L. Calabrese, Esquire

Date: July 15, 2004