IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,    :
              Plaintiff,    :
                        :
          v.           :          No. 02-CV-2733 (HB)
                        :
POWERWEB TECHNOLOGIES, INC.,    :
              Defendant.    :

## PROPOSED JURY INSTRUCTIONS BY POWERWEB, INC.

        Powerweb, Inc. ("Powerweb")[1] proposes that the attached instructions be given to the jury at the trial of this action. Powerweb also requests leave to revise and/or supplement its proposed instructions in response to any instructions proposed by Constellation NewEnergy ("NewEnergy"), or as may otherwise be necessary upon conclusion of the evidence.

_____RG574_____
Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:  July 26, 2004

---

[1]      Powerweb was incorrectly named in this action as "Powerweb Technologies, Inc."

# TABLE OF CONTENTS

Page

GENERAL TRIAL INSTRUCTIONS ..............................................................................1
  1.  Province of Court and Jury .........................................................................1
  2.  Burden of Proof - Preponderance of the Evidence ......................................2
  3.  Consider Each Count and Its Elements Separately ......................................3
  4.  Circumstantial Evidence.............................................................................4
  5.  Credibility of Witnesses .............................................................................5
  6.  Number of Witnesses .................................................................................7
  7.  Expert Testimony - Credibility...................................................................8
  8.  Conflicting Expert Testimony ....................................................................9
  9.  Evidence Generally ..................................................................................10
  10.  Stipulated Facts ........................................................................................11
  11.  "Persons" - Defined .................................................................................12
  12.  Liability of Corporations - Scope of authority .........................................13
  13.  Corporations - Imputed Knowledge .........................................................14

BREACH OF CONTRACTS ........................................................................................15
  14.  Elements of Cause of Action ....................................................................15
  15.  NewEnergy's Breach of Contract Claim ..................................................16
  16.  NewEnergy's Breach of Contract Claim - Directed Verdict.......................17
  17.  NewEnergy's Breach of Contract Claim - Interpretation of Contract Provision
      Regarding the $100,000 Payment (in the Alternative)...............................18
  18.  NewEnergy's Breach of Contract Claim – Authorization for and Expenditure of
      the $100,000 Payment (in the Alternative)................................................19
  19.  NewEnergy's Breach of Contract Claim – Immediate Duty and Conditions
      Precedent .................................................................................................20
  20.  Powerweb's Breach of Contract Claim .....................................................21
  21.  Powerweb's Breach of Contract Claim – Reverse Engineering...................22
  22.  Powerweb's Breach of Contract Claim - Duty of Good Faith ....................23
  23.  Powerweb's Breach of Contract Claim - Duty of Fair Dealing ..................24
  24.  Powerweb's Breach of Contract Claim - Directed Verdict........................25

UNJUST ENRICHMENT ............................................................................................26
  25.  Introduction .............................................................................................26
  26.  No Unjust Enrichment Where Contract Governs.......................................27
  27.  Elements of Cause of Action ....................................................................28
  28.  Retention of Benefit Required...................................................................29
  29.  Enrichment Must be Unjust.......................................................................30

BREACH OF FIDUCIARY DUTIES ...........................................................................31
  30.  General ....................................................................................................31
  31.  Elements of Cause of Action ....................................................................32
  32.  Directed Verdict ......................................................................................33

FRAUDULENT MISREPRESENTATIONS...................................................................34
  33.  Elements ..................................................................................................34
  34.  What Constitutes a Fraudulent Misrepresentation .....................................35

35. Definition of Material Fact ....................................................................36
36. Reliance ...............................................................................................37
37. Directed Verdict ...................................................................................38

MISAPPROPRIATION OF TRADE SECRETS ..............................................39
38. Elements ...............................................................................................39
39. Trade Secrets Defined ..........................................................................41
40. Reasonable Measures to Protect Secrecy ...........................................43
41. Competitive Advantage ........................................................................44
42. Acquisition by NewEnergy ...................................................................45
43. Wrongful Use or Disclosure .................................................................46
44. Reverse Engineering ............................................................................47
45. Directed Verdict ...................................................................................48

TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT .................49
46. General .................................................................................................49
47. Interference Must Be Intentional ........................................................50
48. Interference Must Be Actual ................................................................51
49. Determining Propriety of Conduct .......................................................52
50. Directed Verdict ...................................................................................53

TORTIOUS INTERFERENCE WITH EXISTING CONTRACT ........................54
51. General .................................................................................................54
52. Elements of Claim ................................................................................55
53. Interference Must Be Actual ................................................................56
54. Determining Propriety of Conduct .......................................................57
55. Directed Verdict ...................................................................................58

UNFAIR COMPETITION ...............................................................................59
56. Definition .............................................................................................59
57. Elements ...............................................................................................60
58. Unfair Competition Is a Question of Fact ...........................................62
59. Directed Verdict ...................................................................................63

DAMAGES ...................................................................................................64
60. Burden of Proof Regarding Damages ..................................................64
61. Factual Cause .......................................................................................65
62. Powerweb's Compensatory Damages (Lost Profits) ............................66
63. Powerweb's Future Profits ...................................................................67
64. Breach of Contract ...............................................................................68
65. Unjust Enrichment ...............................................................................69
66. Breach of Fiduciary Duty .....................................................................70
67. Fraudulent Misrepresentation .............................................................71
68. Misappropriation of Trade Secrets ......................................................72
69. Misappropriation of Trade Secrets - Powerweb's Lost Profits ...........73
70. Misappropriation of Trade Secrets - NewEnergy's Benefit.................74
71. Misappropriation of Trade Secrets - Royalties....................................75
72. Misappropriation of Trade Secrets - Time Period for Damages ..........76
73. Tortious Interference with Contractual Relations ...............................77

74.  Unfair Competition...................................................................................................78

75.  Punitive Damages - Tort Claims ...............................................................................79

76.  Punitive Damages – Amount of Award......................................................................80

# GENERAL TRIAL INSTRUCTIONS

### 1.       Province of Court and Jury

Now that you have heard the evidence and the arguments of the attorneys, it becomes my duty to instruct you as to the law applicable in this case. Upon the conclusion of my instructions, you will retire to consider your verdict. You must determine the facts from all the testimony that you have heard and the other evidence which has been received during this trial. You are the sole judges of the facts. No one, not even the Court, may infringe upon this responsibility. You may entirely disregard any comments I may make as to my recollection of the evidence during the trial if your recollection of the evidence is different than mine. Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of this case.

On the other hand, and with equal emphasis, I instruct you that you must accept the rules of law as I will give them to you and apply that law to the facts you have found. You are not to be concerned with the wisdom of any rule of law and you are not to single out one instruction alone as stating the law, but you must consider the instructions as a whole.

You must perform your duties as jurors without bias or prejudice to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, following the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

See 3 Edward J. Devitt et al., Federal Jury Practice and Instructions (Civil) §§ 11.03 and 71.01 (4th ed. 1987 & Supp. 1999).

**2.      Burden of Proof - Preponderance of the Evidence**

In a civil case such as this one, NewEnergy has the burden of proving each of the elements of its claims against Powerweb, and Powerweb has the burden of proving each of the elements of its counterclaims against NewEnergy, by a fair preponderance of the evidence. The evidence establishes a contention by a fair preponderance of the evidence if you are persuaded that it is more probably accurate and true than not.

A fair preponderance of the credible evidence means nothing more than the fair weight of the evidence. You will weigh the testimony and evidence in favor of and against each party's contentions, and if in your minds you feel that the fair weight of the evidence leans towards one party's contentions, then it has satisfied its burden and you will find for that party and against the other party.

Pennsylvania Suggested Standard Civil Jury Instructions § 1.42 (2003).

**3.      Consider Each Count and Its Elements Separately**

Each of the counts in the Complaint is a separate claim for relief and each of the counts is composed of specific elements. Every element of a count or claim for relief must be proven by the party making that claim by a preponderance of the evidence. If you find that the party making the claim has proven each element of a claim for relief by a preponderance of the evidence, you must find that that party is entitled to damages, in an amount which you, the jury, will determine separately. As each claim for relief is separate and distinct, you should consider each count and the evidence pertaining to it separately. The fact that you may find that the party making the claim has satisfied, or failed to satisfy, the burden of proof with respect to one claim for relief should not control or influence your verdict on any other count.

3 Edward J. Devitt et al., Federal Jury Practice and Instructions (Civil) § 71.05 (4th ed. 1987 & Supp. 1999).

**4.      Circumstantial Evidence**

In attempting to prove a case, the parties may rely on either direct evidence or circumstantial evidence. Therefore, in this case you must consider both of these types of evidence.

Circumstantial evidence is proper and admissible evidence which consists of acts and circumstances surrounding a transaction from which the jury may infer other connected facts which reasonably follow according to the common experiences of mankind. For example, assume that you wanted evidence that it had rained. Direct evidence of this fact would be the testimony of someone who had actually seen the rain fall. Circumstantial evidence, on the other hand, would be the testimony of someone who had not seen rain fall, but who, upon going outside, saw people carrying wet umbrellas and saw wet streets, pavements and cars.

I would emphasize that you may equally consider both direct and circumstantial evidence in determining whether a party has satisfied its burden of proof.

3 Edward J. Devitt et al., <u>Federal Jury Practice and Instructions (Civil)</u> § 72.03 (4th ed. 1987 & Supp. 1999). <u>Pennsylvania Suggested Standard Civil Jury Instructions</u> § 1.49 (2003).

**5.    Credibility of Witnesses**

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while on the stand. Consider the witness's ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider, also, any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

You may, in short, accept or reject the testimony of any witness in whole or in part.

3 Edward J. Devitt et al, <u>Federal Jury Practice and Instructions (Civil)</u> § 73.01 (4th ed. 1987 & Supp. 2000); <u>see also</u> <u>Pennsylvania Suggested Standard Civil Jury Instructions</u> § 1.44 (2003).

**6.        Number of Witnesses**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

O'Malley et al., <u>Federal Jury Practice and Instructions</u> § 104.54 (5th ed. 2000).

**7.        Expert Testimony - Credibility**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession or calling, may state their opinions as to relevant and material matters in which they profess to be expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely. You are not bound by an expert's opinion merely because he is an expert; you may accept or reject it, as in the case of other witnesses.

3 Edward J. Devitt et al., Federal Jury Practice and Instructions (Civil) § 72.08 (4th ed. 1987 & Supp. 1999); Pennsylvania Suggested Standard Civil Jury Instructions § 5.30 (2003).

**8.      Conflicting Expert Testimony**

In resolving any conflict that may exist in the testimony of expert witnesses, you are entitled to weigh the opinion of one expert against that of another. In doing this, you should consider the relative qualifications and reliability of the expert witnesses, as well as the reasons for each opinion and the facts and other matters upon which it was based.

Pennsylvania Suggested Standard Civil Jury Instructions § 5.33 (2003).

9.        **Evidence Generally**

Statements and arguments of counsel are not evidence in the case. Unless I instruct you otherwise, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated; and all facts and events of which I have taken judicial notice.

Counsel for the parties have made objections during the course of the trial, and I have made rulings on those objections. You must not consider testimony or exhibits to which I have sustained an objection, or which I have ordered stricken from the record. Bear in mind that the attorneys have a duty to object to evidence which they believe is inadmissible for whatever reason and that such objections should not be held against their clients.

None of my rulings should be regarded as an indication of my opinion as to what your findings should be. You should not take any questions I may ask witnesses as any indication of my opinion as to how you should determine the issues of fact. Any opinion which you think I may have as to the facts would not be at all important, for you and you alone are the sole finders of the facts.

Pennsylvania Suggested Standard Civil Jury Instructions § 1.00; 3 Edward J. Devitt et al., Federal Jury Practice and Instructions (Civil) § 71.08 (4th ed. 1987 & Supp. 2000).

**10.    Stipulated Facts**

When a fact is stipulated to by counsel on both sides, then the law deems that the fact is true for the purposes of the case, and you should accept that fact as established for your purposes.

3 Edward J. Devitt et al., Federal Jury Practice and Instructions (Civil) § 71.08 (4th Ed. 1987 & Supp. 1999).

**11.    "Persons" - Defined**

The word "person" includes not only every individual, but also every corporation, partnership and every other association or organization, of any kind.

15 U.S.C.A. §§ 7, 12; O'Malley, et al. <u>Federal Jury Practice and Instructions</u>, § 150.60 (5th ed. 2000).

## 12.    Liability of Corporations - Scope of authority

Under the law, a corporation is considered to be a person. However, it can only act through its employees, agents, officers and directors. Therefore, a corporation is legally responsible for any act done by one of its officers, directors, employees or agents within the scope of his or her authority. Thus, if you find that any of NewEnergy's employees or officers committed any of the acts claimed by Powerweb and were acting within the scope of their authority, NewEnergy is responsible under the law for those acts as if they were done by the corporation itself.

See West, Ninth Circuit Manual of Model Jury Instructions (2001).

13.     **Corporations - Imputed Knowledge**

Because corporations can only act through their officers, directors, agents and employees, a fact known by its officers, directors, agents or employees is deemed to be known by the corporation. Thus, if you find that an officer or employee of NewEnergy knew of any relevant fact, then you must presume that NewEnergy, as a corporate entity, had such knowledge.

See West, Ninth Circuit Manual of Model Jury Instructions (2001).

## **BREACH OF CONTRACTS**

**14.    Elements of Cause of Action**

Both NewEnergy and Powerweb have asserted causes of action for breach of contract. In order for either party to prove that the other party breached a contract, the party claiming the breach must establish the following:

(1)    The existence of a contract;

(2)    Breach of a duty imposed by the contract; and

(3)    Resultant damages.

In this case, the parties agree that the Confidentiality Agreement, the Bell Atlantic Agreement and the Joint Marketing Agreement are valid and binding contracts. The parties dispute, however, whether the contracts were breached and what the resulting damages were. I will now instruct you on the law regarding breach of contract.

Corestates Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

**15.      NewEnergy's Breach of Contract Claim**

In this case, NewEnergy claims that Powerweb breached the Bell Atlantic Agreement by refusing to return the $100,000 that NewEnergy paid to Powerweb when the parties entered into the agreement.

You may not find for NewEnergy on its breach of contract claim if you conclude that the Bell Atlantic Agreement did not require Powerweb to return the money to NewEnergy.

See Pennsylvania Suggested Standard Civil Jury Instructions, § 15.06 (2003).

**16.    NewEnergy's Breach of Contract Claim - Directed Verdict**

   In this case, the Bell Atlantic Agreement does not require Powerweb to return the $100,000. Therefore, I am directing a verdict in favor of Powerweb on NewEnergy's claim for breach of contract. You are instructed not to award NewEnergy any damages on its breach of contract claim.

17.    **NewEnergy's Breach of Contract Claim - Interpretation of Contract Provision Regarding the $100,000 Payment (in the Alternative)**

The parties have attached different interpretations to the following clause of the Bell Atlantic Agreement:

> [NewEnergy] agrees to fund project development costs of up to One Hundred Thousand Dollars (100,000.00) for Powerweb to create a detailed project implementation plan, schedule and investment analysis of an Omni-Link application for Bell Atlantic. [NewEnergy] will deposit the funds with Powerweb within ten (10) business days after execution of this agreement. Allocation and use of the funds will be subject to the sole approval of [NewEnergy] in advance. If Bell Atlantic does not proceed with the project unused funds will be allocated to joint development of other opportunities. These development funds will be repaid from the first project payments made by Bell Atlantic to either [Powerweb] or to [NewEnergy]. The specific form of repayments will be determined and agreed upon with both parties before the final contract negotiations with Bell Atlantic.

Ordinarily, contract interpretation is a function for the court. However, I have determined that an ambiguity exists regarding what was to happen if no project payments were ever received from Bell Atlantic or other customers. That means that the parties intent on that point is an issue of fact that you must decide.

Powerweb alleges that the contract did not require it to return any unused funds. If you find that NewEnergy signed the contract knowing that Powerweb did not agree to return the funds in the event that no project payments were received, then you must find in favor of Powerweb on NewEnergy's claim for breach of contract.

18.     **NewEnergy's Breach of Contract Claim – Authorization for and Expenditure of the $100,000 Payment (in the Alternative)**

If you find that both parties intended any unused funds to be returned to NewEnergy in the event that no project payments were received, then you must determine whether Powerweb was authorized to and did use the funds for project development purposes. If you find that some portion of the funds was not authorized to be spent or was not actually spent, you may find in favor of NewEnergy and award that amount for its breach of contract claim. Otherwise, you must find in favor of Powerweb on this claim.

See Pennsylvania Suggested Standard Civil Jury Instructions, § 15.01 (2003).

**19.    NewEnergy's Breach of Contract Claim – Immediate Duty and Conditions Precedent**

NewEnergy also claims that Powerweb failed to create a project implementation plan in accordance with the Bell Atlantic Agreement. However, only non-performance of an immediate duty constitutes a breach. If you find that Powerweb's duty to create a project implementation plan was conditioned upon the occurrence of some other event, and that event had not occurred by the time the term of the Bell Atlantic Agreement ended, you must find for Powerweb on this claim.

Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 139 (Pa. 1999); Barnes v. McKellar, 644 A.2d 770, 775 (Pa. Super. Ct. 1994).

**20.    Powerweb's Breach of Contract Claim**

Powerweb claims that NewEnergy breached the Confidentiality Agreement, the Bell Atlantic Agreement and the Joint Marketing Agreement by: (1) disclosing Powerweb's Energy Technology Information to others without Powerweb's consent; and (2) using Powerweb's Energy Technology Information itself to create and sell competing software and services.

You must find in favor of Powerweb on this claim if you find that: (1) NewEnergy's contracts with Powerweb imposed a duty on NewEnergy not to <u>disclose</u> Powerweb's Energy Technology Information to others without Powerweb's consent; (2) NewEnergy disclosed any portion of Powerweb's Energy Technology Information to even one other person without Powerweb's consent; and (3) Powerweb was harmed by that disclosure.

You must also find for Powerweb on this claim if you find that: (1) NewEnergy's contracts with Powerweb imposed a duty on NewEnergy not to <u>use</u> Powerweb's Energy Technology Information without Powerweb's consent; (2) NewEnergy used any portion of Powerweb's Energy Technology Information without Powerweb's consent; and (3) Powerweb was harmed by that use.

<u>See</u> <u>Pennsylvania Suggested Standard Civil Jury Instructions</u>, § 15.06 (2003).

**21.    Powerweb's Breach of Contract Claim – Reverse Engineering**

Powerweb contends that NewEnergy violated the Confidentiality Agreement by reverse engineering Powerweb's Omni-Link software. Reverse engineering means that NewEnergy studied or analyzed Powerweb's Omni-Link software in order to learn details of its design, construction and operation to enable NewEnergy to produce its own software using those details. You may find that software has been reverse engineered where the record shows that NewEnergy spent time analyzing Powerweb's Omni-Link software and where extensive similarities exist between Powerweb's Omni-Link software and NewEnergy's competing software.

See Bowers v. Baystate Technologies, Inc., 320 F.3d 1317, 1326-27 (Fed. Cir. 2003).

## 22.     Powerweb's Breach of Contract Claim - Duty of Good Faith

NewEnergy had a duty to perform each of its obligations under its contracts with Powerweb in good faith, including the duties not to use and to protect the confidentiality of Powerweb's Energy Technology Information. If you find that NewEnergy did not perform its obligations in good faith, you must find that NewEnergy breached its contracts with Powerweb.

See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000); Philadelphia Plaza-Phase II v. Bank of America Nat'l Trust & Sav. Assoc., No. 02-3745, 2002 WL 1472337, at *2-*4 (Pa. Co. Pl. June 21, 2002); Restatement 2d Contracts § 205 (2004).

**23.      Powerweb's Breach of Contract Claim - Duty of Fair Dealing**

NewEnergy had a duty to deal fairly with Powerweb under each of its contracts by not depriving Powerweb of the intended benefits of the contracts. Powerweb claims that it disclosed confidential information to NewEnergy in order to receive the benefit of increased business for Powerweb. If you find that NewEnergy did not intend to provide any business to Powerweb, you must find that NewEnergy breached its duty to deal fairly with Powerweb.

See Restatement 2d Contracts § 205 (2004); Philadelphia Plaza-Phase II v. Bank of America Nat'l Trust & Sav. Assoc., No. 02-3745, 2002 WL 1472337, at *2-*4 (Pa. Co. Pl. June 21, 2002).

**24.      Powerweb's Breach of Contract Claim - Directed Verdict**

In this case, Powerweb has established a cause of action for breach of contract as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on this claim. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## UNJUST ENRICHMENT

**25.    Introduction**

NewEnergy has also made a claim that Powerweb has been unjustly enriched by its retention of the $100,000 given to Powerweb by NewEnergy under the Bell Atlantic Agreement. The instructions I am about to give you relate only to the claims for conduct surrounding the unjust enrichment claim, and you are not to use these instructions in consideration of any other part of the case.

**26.    No Unjust Enrichment Where Contract Governs**

A claim for unjust enrichment cannot be maintained if the relationship between the parties is based on an express agreement. Therefore, if you find that the Bell Atlantic Agreement governs the subject of NewEnergy's $100,000 payment to Powerweb, you may not find for NewEnergy on its claim for unjust enrichment.

Birchwood Lakes Community Assn., Inc. v. Comis, 442, A.2d 304, 309 (Pa. Super. Ct. 1982).

## 27.    Elements of Cause of Action

If you find that the Bell Atlantic Agreement does <u>not</u> cover the subject of NewEnergy's payment of $100,000 to Powerweb, you must decide whether NewEnergy has proven its claim for unjust enrichment by a preponderance of the evidence. To meet its burden of proof on this claim, NewEnergy must prove all of the following:

(1)    NewEnergy conferred a benefit on Powerweb;

(2)    Powerweb appreciated the benefit conferred; and

(3)    Powerweb accepted and retained this benefit under circumstances where it would be inequitable to retain the benefit without payment of value.

<u>Ameripro Search, Inc. v. Fleming Steel Co.</u>, 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

**28.    Retention of Benefit Required**

If you find that Powerweb has not retained the $100,000 given to it by NewEnergy, you must find for Powerweb on this claim. If you find that Powerweb has retained the $100,000, you must next determine whether the retention of this money is unjust.

See Ameripro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

29.    **Enrichment Must be Unjust**

The doctrine of unjust enrichment does not apply simply because Powerweb may have benefited as the result of the actions of NewEnergy. If you find that Powerweb's retention of money was justified, you must find for Powerweb on this claim. If you find that Powerweb retained the money without proper justification, you may find for NewEnergy on this claim.

See Ameripro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

## BREACH OF FIDUCIARY DUTIES

**30.     General**

Powerweb claims that NewEnergy owed a fiduciary duty to Powerweb under its agreements and that certain conduct of NewEnergy breached this fiduciary duty. The instructions I am about to give you relate only to the claim for breach of fiduciary duty, and you are not to use these instructions in consideration of any other part of this case.

A party to a confidential relationship owes a fiduciary duty to the party providing confidential information. A joint venturer also owes a fiduciary duty to his partner in the joint venture. Thus, the Confidentiality Agreement, the Bell Atlantic Agreement and the Joint Marketing Agreement all imposed fiduciary duties upon NewEnergy to act toward Powerweb with the utmost good faith and with scrupulous honesty. Therefore, you must consider whether NewEnergy breached this duty.

Owens v. Mazzei, 847 A.2d 700, 709 (Pa. Super. Ct. 2004); Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 105 (3d Cir. 2001); Snellbaker v. Herrmann, 462 A.2d 713, 718 (Pa. Super. Ct. 1983).

**31.    Elements of Cause of Action**

   To receive an award of damages on its breach of fiduciary duty claim, Powerweb must prove the following by a preponderance of the evidence:

   (1)  NewEnergy failed to act in good faith and with scrupulous honesty in all matters involving its joint venture relationship with Powerweb;

   (2)  Powerweb suffered injury; and

   (3)  NewEnergy's failure to act in good faith and with scrupulous honesty was a real factor in bringing about Powerweb's injuries.

See Pennsylvania Suggested Standard Civil Jury Instructions, § 4.16 (2003).

### 32.    Directed Verdict

In this case, Powerweb has established a cause of action for breach of fiduciary duty as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on the claim for breach of fiduciary duty. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## FRAUDULENT MISREPRESENTATIONS

**33.    Elements**

Powerweb has also made a claim that NewEnergy made certain fraudulent misrepresentations that induced Powerweb to enter into contracts and to disclose information regarding Powerweb's Omni-Link System. The instructions I am about to give you relate only to the claim for fraudulent misrepresentation, and you are not to use these instructions in consideration of any other part of this case.

In order to establish that NewEnergy made fraudulent misrepresentations, Powerweb must prove the following:

(1)    NewEnergy made a misrepresentation to Powerweb;

(2)    The misrepresentation was fraudulent;

(3)    The misrepresentation was of a material fact;

(4)    NewEnergy intended that Powerweb rely on its misrepresentation;

(5)    Powerweb did rely on NewEnergy's misrepresentation; and

(6)    Powerweb's reliance on NewEnergy's misrepresentation resulted in harm to Powerweb.

Pennsylvania Suggested Standard Civil Jury Instructions, § 13.14 (2003).

**34.     What Constitutes a Fraudulent Misrepresentation**

To determine whether Powerweb has proven its claim for fraudulent misrepresentation, you must first consider whether NewEnergy or any of its representatives made any fraudulent misrepresentations to Powerweb. A misrepresentation is any assertion by words or conduct that is not in accordance with the facts. A misrepresentation by NewEnergy was fraudulent if when NewEnergy made the misrepresentation, it (a) knew that it was untrue, (b) did not believe it was true or was indifferent as to whether it was true, or (c) by reason of special circumstance had a duty to know whether it was true.

Pennsylvania Suggested Standard Civil Jury Instructions, § 13.16 (2003).

**35.    Definition of Material Fact**

If you determine that NewEnergy made a fraudulent misrepresentation to Powerweb, you must then consider whether the misrepresentation involved a material fact. A fact is material if it is one that would be of importance to a reasonable person in Powerweb's position in determining a choice of action. A material fact need not be the sole or even a substantial factor in inducing or influencing that person's decision. A fact is also material if NewEnergy knew that the Powerweb was likely to regard the fact as important even though a reasonable person would not regard it as important.

Pennsylvania Suggested Standard Civil Jury Instructions, § 13.16 (2003).

### 36.     Reliance

Powerweb must also show that it relied on the misrepresentation by NewEnergy. "Reliance" means that Powerweb would not have acted as it did unless it considered the misrepresentation to be true.

Pennsylvania Suggested Standard Civil Jury Instructions, § 13.16 (2003).

**37.    Directed Verdict**

In this case, Powerweb has established a cause of action for fraudulent misrepresentation as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on the claim for fraudulent misrepresentation. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## MISAPPROPRIATION OF TRADE SECRETS

**38.    Elements**

Powerweb has also made a claim that certain conduct of NewEnergy constituted misappropriation of trade secrets. The instruction I am about to give you relates only to the claim for misappropriation of trade secrets, and you are not to use this instruction in consideration of any other part of this case.

In order to establish a trade secret violation, Powerweb has the burden of proving by a preponderance of the evidence that:

(1)    trade secrets existed in which Powerweb had ownership rights when NewEnergy committed the acts complained of by Powerweb;

(2)    NewEnergy acquired those secrets either through improper means, or through Powerweb's disclosure of the trade secret to NewEnergy in a confidential relationship, or under other circumstances in which NewEnergy owed a duty not to use or disclose the trade secret;

(3)    NewEnergy used the secret information without Powerweb's permission; and

(4)    Powerweb suffered harm as a direct and proximate result of NewEnergy's use or disclosure of Powerweb's trade secret, or NewEnergy gained from such use or disclosure.

Only wrongful use of secret information disclosed in confidence gives rise to liability. To find NewEnergy liable for misappropriation of trade secrets, you must find by the preponderance of the evidence that Powerweb had specific, identifiable trade secrets that were

acquired by NewEnergy as a result of a confidential relationship and that NewEnergy used these

secrets without Powerweb's permission.


O'Malley, et al., <u>Federal Jury Practice and Instructions</u>, § 127.10 (5th ed. 2000); American Bar
Association, <u>Model Jury Instructions: Business Torts Litigation</u>, § 8.01 p. 366 (3d ed. 1996).

### 39.    Trade Secrets Defined

Before you consider NewEnergy's actions, you must find that Powerweb possessed a trade secret. Broadly speaking, a trade secret may consist of any formula, pattern, device, program, method, technique, process, or compilation of information, including a customer list. However, to prove that particular information is entitled to special protection as a "trade secret," Powerweb must show:

(1)     that the information at issue is indeed secret;

(2)     that Powerweb has taken reasonable measures to protect the secrecy of the information; and

(3)     that the information is sufficiently valuable so that it confers a competitive advantage on Powerweb over its business rivals.

I will explain each of these essential elements of a trade secret more specifically in the following instructions.

In determining whether Powerweb has proven by a preponderance of the evidence that Powerweb possessed specific, identifiable trade secrets, you may consider the following factors:

(1)     the extent to which information was known outside of Powerweb's business;

(2)     the extent to which it was known by employees and others involved in Powerweb's business;

(3)     the extent of measures taken by Powerweb to guard the secrecy of the information;

(4)     the value of the information to Powerweb and its competitors;

     (5)      the amount of effort or money expended in developing the information;

     (6)      the ease or difficulty with which the information could be properly

          acquired or duplicated by others.

O'Malley, et al., <u>Federal Jury Practice and Instructions</u>, § 127.11 (5TH ed. 2000). American Bar Association, <u>Model Jury Instructions: Business Torts Litigation</u> § 8.03 (3d ed. 1996); <u>Pennfield Precision, Inc. v. EF Precision, Inc.</u>, No. Civ. A. No. 00-280, 2000 WL 120138 (E.D. Pa. Aug. 15, 2000); <u>SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1244, 1256 (3d Cir. 1985).

**40.      Reasonable Measures to Protect Secrecy**

Powerweb must prove that it took reasonable measures to protect the secrecy of information for the information to be accorded trade secret protection. There are no absolute requirements that define what measures are "reasonable" in a given situation. That depends on the circumstances of each case, but factors you may wish to consider in evaluating whether "reasonable" measures were taken here could include the following:

(1)      whether Powerweb made it a practice to apprise its employees or others involved with its business that information is a trade secret and/or that it needed to be kept confidential;

(2)      whether Powerweb required employees or others involved in its business or with its business to sign confidentiality agreements or covenants not to compete regarding the information;

(3)      whether Powerweb restricted access to the information on a "need to know basis"; or

(4)      whether Powerweb generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

American Bar Association, Model Jury Instructions: Business Torts Litigation, § 8.03[2] (3d ed. 1996).

## 41.    Competitive Advantage

A trade secret must be valuable either to Powerweb or to its business rivals in the sense that, as long as it is secret, the information provides Powerweb with an actual or potential competitive business advantage over its rivals. To help you determine whether Powerweb enjoyed, or was likely to enjoy, such a competitive advantage, you may consider such things as

> (1)    the degree to which the information was generally known or readily ascertainable by others;
>
> (2)    the extent to which Powerweb used or uses the information in its business;
>
> (3)    whether profits or increased efficiency enjoyed by Powerweb's business are due to the information;
>
> (4)    what gain or benefits NewEnergy's business obtained from the information; and
>
> (5)    the ease or difficulty or acquiring or duplicating the information through independent development, research of publicly available information, or taking apart and analyzing a product properly acquired to learn its secrets (a process called "reverse engineering").

American Bar Association, Model Jury Instructions: Business Torts Litigation, § 8.03[3] (3d ed. 1996).

## 42.   Acquisition by NewEnergy

You must determine whether NewEnergy acquired the trade secret under circumstances that impose a duty owed by NewEnergy to Powerweb. NewEnergy would have a duty to Powerweb if NewEnergy acquired the information (a) by using improper means; (b) through a confidential relationship with Powerweb, or (c) under other circumstances in which the law imposes a duty on NewEnergy regarding use of the information.

American Bar Association, <u>Model Jury Instructions: Business Torts Litigation</u>, § 8.04 (3d ed. 1996).

**43.    Wrongful Use or Disclosure**

You must determine whether NewEnergy wrongfully used or wrongfully disclosed the trade secret in question.

If NewEnergy originally acquired information through a confidential relationship, it may not disclose such information in any way that goes beyond the scope of authorization it received from Powerweb regarding use and disclosure. That is, a person receiving trade secret information in confidence may use or disclose the information only in strict accordance with the understanding under which the information was given to the person. Any other use or disclosure is wrongful.

American Bar Association, <u>Model Jury Instructions: Business Torts Litigation</u>, § 8.05 (3d ed. 1996).

**44.      Reverse Engineering**

Reverse engineering of a product subject to trade secret protection is not permissible where the product is disclosed in the context of a confidential relationship. Reverse engineering is only permissible where the product could have been properly acquired by others (as when the product is publicly sold).

In this case, if you find that Powerweb disclosed its Omni-Link technology to NewEnergy in confidence, you must find that the reverse engineering of Powerweb's technology by NewEnergy is a misappropriation of trade secrets.

Learning Curve Toys, Inc. v. Playwood Toys, Inc., 342 F.3d 714, 730 (7th Cir. 2003).

45.    **Directed Verdict**

In this case, Powerweb has established a cause of action for misappropriation of trade secrets as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on the claim for misappropriation of trade secrets. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT

**46.    General**

Powerweb claims that certain conduct of NewEnergy interfered with Powerweb's prospective sales of its product to Bell Atlantic. The instruction I am about to give you relates only to conduct surrounding the tortious interference claim, and you are not to use these instructions in consideration of any other part of this case.

In order to recover on a claim for tortious interference with prospective contractual relations, Powerweb must prove by a preponderance of the evidence the following:

(1)    Powerweb had a prospective contractual relationship with someone other than NewEnergy;

(2)    NewEnergy intentionally acted to prevent this relationship from occurring;

(3)    NewEnergy was not privileged to act in the manner that it did; and

(4)    NewEnergy's action resulted in actual harm to Powerweb.


Glenn v. Point Park College, 272 A.2d 895, 898 (Pa. 1971); Geyer v. Steinbronn, 506 A.2d 901, 910 (Pa. Super. Ct. 1986).

**47.    Interference Must Be Intentional**

To be liable for intentional interference, NewEnergy need not have intended to harm Powerweb. However, NewEnergy must have intended to interfere with Powerweb's prospective contractual relation.

Geyer v. Steinbronn, 506 A.2d 901, 910 (Pa. Super. Ct. 1986).

**48.    Interference Must Be Actual**

An actual interference with a prospective contract must be the result of the NewEnergy's conduct. Thus, in order to find for Powerweb on this claim of interference, you must find that the interference claimed in the case, loss of prospective contracts between Powerweb and other businesses, was the result of NewEnergy's conduct. If the loss of these contracts would have occurred from other causes in the absence of NewEnergy's conduct, you must find for NewEnergy on this claim.

See Villanova, <u>Pennsylvania Proposed Points for Jury Instruction – Civil,</u> 282; <u>Restatement (Second) of Torts</u> § 766 (1965).

**49.    Determining Propriety of Conduct**

Powerweb's must also show that the conduct of NewEnergy was improper. It is up to you to determine whether the conduct of NewEnergy was improper. In order to determine whether NewEnergy's conduct was improper you should consider the following factors:

(1)    The nature of NewEnergy's conduct;

(2)    NewEnergy's motive;

(3)    The interest of Powerweb with which NewEnergy's conduct allegedly interferes;

(4)    The interest of NewEnergy which it sought to advance by its conduct;

(5)    The social interest in protecting the freedom of action of NewEnergy and the contractual interests of Powerweb;

(6)    The proximity or remoteness of NewEnergy's conduct of the interference; and

(7)    The relationship between the parties.

See Restatement (Second) of Torts § 767 (1965); Villanova, Pennsylvania Proposed Points for Jury Instruction – Civil, 283

**50.    Directed Verdict**

In this case, Powerweb has established a cause of action for tortious interference with prospective contractual relations as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on the claim for tortious interference with prospective contractual relations. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## **TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**

**51.    General**

Powerweb has also made a claim that certain conduct of NewEnergy constitutes an improper interference with Powerweb's contract with Baltimore Gas & Electric Company. The instruction I am about to give you relates only to the claims for conduct relating to the tortious interference claim, and you are not to use these instructions in consideration of any other part of this case.

Pennsylvania recognizes a cause of action for intentional interference with contractual relations, thereby adopting the following definition of the Restatement (Second) of Torts:

> On who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the financial loss resulting to the other from the failure of the third person to perform the contract.

Essential to a right of recovery under this section is the existence of a contractual and/or business relationship between Powerweb and a "third person" other than NewEnergy.

Villanova, Pennsylvania Proposed Points for Jury Instruction – Civil, 285; Restatement (Second) of Torts § 766 (1965); Glazer v. Chandler, 414 Pa. 304, 200 A.2d 416 (1964); Rutherford v. Presbyterian-University Hospital, 417 Pa. Super. 316, 612 A.2d 500 (1992).

**52.    Elements of Claim**

In order to recover on a claim of tortious interference with contractual relations, Powerweb must prove by a preponderance of the evidence the following:

(1)    that NewEnergy intentionally and improperly interfered with Powerweb's contractual relationship with Baltimore Gas & Electric Company;

(2)    that the act was not privileged; and

(3)    that Powerweb was harmed by the act.

See Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A.2d 471 (1960); Restatement (Second) of Torts, § 766B (1965).

53.    **Interference Must Be Actual**

An actual interference with contract must be the result of the NewEnergy's conduct. Thus, in order to find for Powerweb on this claim of interference, you must find that the interference claimed in the case, termination of Powerweb's contract with Baltimore Gas & Electric Company, was the result of NewEnergy's conduct. If the termination of the contract would have occurred from other causes in the absence of NewEnergy's conduct, you must find for NewEnergy on this claim.

See Villanova, Pennsylvania Proposed Points for Jury Instruction – Civil, 282; Restatement (Second) of Torts § 766 (1965).

**54.    Determining Propriety of Conduct**

It is an essential element of Powerweb's claim to prove that the conduct of NewEnergy was improper. It is up to you to determine whether the conduct of NewEnergy was improper. In order to determine whether NewEnergy's conduct was improper you should consider the following factors:

(1)    The nature of NewEnergy's conduct;

(2)    NewEnergy's motive;

(3)    The interest of Powerweb with which NewEnergy's conduct allegedly interfered;

(4)    The interest of NewEnergy which it sought to advance by its conduct;

(5)    The social interest in protecting the freedom of action of NewEnergy and the contractual interests of Powerweb;

(6)    The proximity or remoteness of NewEnergy's conduct of the interference; and

(7)    The relationship between the parties.


See Restatement (Second) of Torts § 767 (1965); Villanova, Pennsylvania Proposed Points for Jury Instruction – Civil, 283

## 55.    **Directed Verdict**

In this case, Powerweb has established a cause of action for tortious interference with contractual relations as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on the claim for tortious interference with contractual relations. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## UNFAIR COMPETITION

### 56.    Definition

Those in business need to be assured that competitors will not be permitted to engage in conduct that falls below the minimum standard of fair dealing. Thus, the doctrine of unfair competition provides the legal basis for business competitors to insist on fair play in the market in which they are involved.

Testing Systems Inc. v. Magnaflux Corp., 251 F. Supp. 286 (E.D. Pa. 1966); Philadelphia Dairy Products, Inc. v. Quaker City Ice Cream Co., 159 A. 3 (Pa. 1932)

## 57.    Elements

Powerweb has also made a claim against NewEnergy for unfair competition. The instruction I am about to give you relates to the claims of conduct surrounding the unfair competition claim, and you are not to use this instruction in consideration of any other part of this action.

The purpose of the law of unfair competition is the identification and redress of business practices that hinder rather than promote the efficient operation of the market. It is not possible to identify all the circumstances that may give rise to liability for unfair competition. In general, an act or practice is unfair if it substantially interferes with the ability of others to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law.

For purposes of this case, NewEnergy may be liable for unfair competition if you find that NewEnergy's acts or practices:

(1)    interfered with the commercial relations of Powerweb; or

(2)    diverted business from Powerweb by means of fraudulent misrepresentations or through the wrongful use of confidential information.

As a general matter, if a competitor interferes with the commercial relations of another by means of fraudulent misrepresentations, tortious interference with prospective or existing contractual relations, or misappropriation of trade secrets, the conduct also constitutes unfair competition. In addition, if an entity engages in acts that interfere with the commercial relations of another, it may also be subject to liability for unfair competition, even if the conduct of that entity is not actionable under the rules relating to those specific acts.

See Restatement (Third) of Unfair Competition, § 1 (1995); Lakeview Ambulance and Medical Svs., Inc. v. Gold Cross Ambulance & Med. Svs., Inc., No. 1994-1226, 1995 WL 842000, *1 (Pa. Com. Pl. 1995).

**58.    Unfair Competition Is a Question of Fact**

What constitutes unfair competition as opposed to fair competition is predicated in the balance to be struck between the public's interest in free competition and the protectable interests of the business person and the purchaser. The question of unfairness in competition is primarily a question of fact.

Summary of Pa. Jurisprudence, Commercial Law, § 18:3 (1994); <u>Pennsylvania Butch Co. v. Pennsylvania Amish Co.</u>, 68 D&C 2d 379 (1974).

**59.    Directed Verdict**

        In this case, Powerweb has established a cause of action for unfair competition as a matter of law. Therefore, I am directing a verdict in favor of Powerweb on the claim for unfair competition. You are instructed to proceed to the instructions on damages for this claim, and to make a determination as to the amount of damages, if any, that Powerweb should be awarded.

## DAMAGES

**60.    Burden of Proof Regarding Damages**

In addition to proving liability, the party claiming damages has the burden of proving by a preponderance of the evidence each and every item of damage for which he claims compensation.

Thus, if you find that the party claiming damages has not proven by a preponderance of the evidence any of its damages, you cannot award damages to that party on that claim.

Menardo v. Philadelphia Transp. Co., 376, Pa. 497 103 A.2d 681 (1954); Frisch v. Texas Co., 363 Pa. 619, 70 A.2d 290 (1950); Gordon v. Trovato, 234 Pa. Super. 279, 338 A.2d 653, 654 (1975).

**61.    Factual Cause**

NewEnergy is legally responsible for the damages suffered by Powerweb only if its conduct was a factual cause of those damages.

In order for NewEnergy's conduct to be a factual cause, that conduct must have been a real factor in bringing about the damages in question.

If the damages in question would have been sustained by Powerweb even if NewEnergy had not been negligent or acted wrongfully, then NewEnergy's conduct would not be a real factor in causing Powerweb's damages. On the other hand, NewEnergy's negligence of misconduct was a factual cause in causing Powerweb's damages if those damages would not have been sustained had NewEnergy not acted as it did.

Pennsylvania Suggested Standard Civil Jury Instructions, § 4.18 (2003).

**62.    Powerweb's Compensatory Damages (Lost Profits)**

If you should find, from a preponderance of the evidence in the case, that Powerweb is entitled to a verdict, the law provides that Powerweb is entitled to be fairly compensated for all damages, if any, to Powerweb's business or property, which were proximately caused by the conduct of NewEnergy. In arriving at the amount of the award, you should include any damages suffered by Powerweb because of lost profits; that is to say, profits which Powerweb would have made, but for the unlawful conduct of NewEnergy.

If you should find, from a preponderance of the evidence in the case, that damage to Powerweb's business or property, such as lost profits, was proximately caused by NewEnergy's wrongful conduct, then the fact that the precise amount of Powerweb's damages may be difficult to ascertain should not affect Powerweb's recovery, particularly if NewEnergy's wrongdoing caused the difficulty in determining the precise amount.

On the other hand, Powerweb is not to be awarded purely speculative damages. An allowance for lost profits may be included in the damages awarded only when there is some reasonable basis in the evidence for determining that Powerweb has in fact suffered a loss of profits, even though the amount of such loss is difficult to ascertain.

In arriving at the amount of any lost profits sustained by Powerweb, you are entitled to consider any past earnings of Powerweb in the business in question, as well as any other evidence in the case bearing upon the issue.

See O'Malley, et al, Federal Jury Practice and Instructions, § 150.90 (5th ed. 2000).

**63.     Powerweb's Future Profits**

If because of NewEnergy's wrongful conduct, Powerweb was unable to earn net profits in the future, then lost future profits should be included in Powerweb's damages.

Future profits mean net profits. Future profits are determined by subtracting the costs and expenses of a business from its gross revenue. The fact that a party's business may have been new or unestablished is not fatal to the element of damages constituting lost future profits. You are instructed that you may consider, in determining whether or not any part of Powerweb's damages constitute future net profits, the uncertainty which makes the success of a new business problematic, the experience of Powerweb's officers in the business, the competition which Powerweb would have had absent NewEnergy's wrongdoing and the general market conditions.

See O'Malley, et al, Federal Jury Practice and Instructions, § 150.91 (5th ed. 2000).

64.    **Breach of Contract**

Where one party to a contract breaches that contract, the other party may recover for those injuries that have been proved with reasonable certainty. Generally, the measure of damages is the sum that will compensate the non-breaching party for the loss sustained.

On NewEnergy's breach of contract claim, if you find that Powerweb breached the Bell Atlantic Agreement and that NewEnergy suffered harm as a result of the breach, you must then decide, based on the evidence NewEnergy has presented, what amount of money will compensate NewEnergy for those injuries that were a direct and foreseeable result of the breach.

On Powerweb's breach of contract claims, if you find that NewEnergy breached the Confidentiality Agreement, the Bell Atlantic Agreement, or the Joint Marketing Agreement, you must then decide, based on the evidence Powerweb has presented, what amount of money will compensate Powerweb for those injuries that were a direct and foreseeable result of the breach.

Pennsylvania Suggested Standard Civil Jury Instructions, § 15.26 (2003).

**65.    Unjust Enrichment**

If you find that Powerweb has been unjustly enriched, Powerweb is required to restore NewEnergy to the position it was in prior to the unjust enrichment by paying to NewEnergy the value of the benefit conferred.

Ameripro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

**66.     Breach of Fiduciary Duty**

       If you find that NewEnergy breached a fiduciary duty to Powerweb, Powerweb is entitled to be fairly and adequately compensated for all financial losses it suffered as a result of NewEnergy's conduct.

See <u>Pennsylvania Suggested Standard Civil Jury Instructions</u>, § 4.19 (2003).

67.    **Fraudulent Misrepresentation**

If you find that NewEnergy made fraudulent misrepresentations of material fact to Powerweb upon which Powerweb relied to its detriment, you must then determine the amount of damages, if any, that Powerweb is entitled to receive.

You may award an amount that you feel fairly compensates Powerweb for the monetary loss it suffered due to NewEnergy's fraudulent misrepresentations. You may consider, in awarding such actual damages, the difference between the value of the information Powerweb gave and the value Powerweb received at the time of the transaction, and all other monetary loss suffered as a consequence of the misrepresentation, including the additional expenses and losses incurred as a result of the misrepresentation and the profit Powerweb has shown that it would have made.

See Pennsylvania Suggested Standard Civil Jury Instructions, § 13.17 (2003).

**68.    Misappropriation of Trade Secrets**

If you should find by the preponderance of the evidence presented that NewEnergy has misappropriated Powerweb's trade secrets, you must then determine the amount of damages, if any, that Powerweb is entitled to receive.

You may only award an amount that would fairly compensate Powerweb for damages proximately caused by NewEnergy's improper use or disclosure of trade secrets. You may consider, in awarding such actual damages, the cost NewEnergy would have incurred in acquiring the same information or trade secrets through its own experimentation or through other lawful means, or you may consider the actual view of what has been appropriated or the reasonable royalty as of the time of the misappropriation.

O'Malley, et al., <u>Federal Jury Practice and Instructions</u>, § 127.14 (5TH ed. 2000).

**69.    Misappropriation of Trade Secrets - Powerweb's Lost Profits**

          Powerweb claims that it has lost profits as a result of NewEnergy's improper use or disclosure of trade secrets. If you find that Powerweb would have realized profits from employing trade secrets in its business that it has lost due to the wrongful conduct of NewEnergy, then you may measure damages by the amount of such lost profits for the particular periods of time that I will cover with you in a moment.

American Bar Association, <u>Model Jury Instructions: Business Torts Litigation</u>, § 8.06[1] (3d ed. 1996).

**70.    Misappropriation of Trade Secrets - NewEnergy's Benefit**

You may also consider what benefit NewEnergy has gained from misuse of Powerweb's trade secrets. Regardless of whether you find that Powerweb itself suffered losses, if you find that NewEnergy benefited from using a trade secret belonging to Powerweb, then you may award the monetary value that you attribute to those benefits as a measure of Powerweb's damages.

Powerweb is entitled to recover the greater of (1) Powerweb's own lost profits, or (2) NewEnergy's gained profits.

These are, however, alternative approaches to damages, not cumulative measures of damages. Therefore, you may award damages based on only one of these alternative approaches; that is, Powerweb's lost profits *or* NewEnergy's gained benefits, but you may not award *both* types of damages for the same loss.

American Bar Association, Model Jury Instructions: Business Torts Litigation, § 8.06[2] (3d ed. 1996).

## 71.    Misappropriation of Trade Secrets - Royalties

There is a third way to measure damages, which you may use if you find that Powerweb has been or will likely be damaged but you cannot fairly determine Powerweb's losses or NewEnergy's gains. In that event, you may measure damages by assessing a reasonable royalty.

Some of the factors you may consider in determining the amount of the reasonable royalty include such things as

(1)    the price that past purchasers or licensees have paid for use of the trade secret;

(2)    the total value of the secret to Powerweb, including its development costs, if any;

(3)    the uses for the information that NewEnergy had in mind; and

(4)    the time and effort that would have been required before NewEnergy or another competitor could have acquired or likely acquired the same or equivalent information through proper means.

American Bar Association, Model Jury Instructions: Business Torts Litigation, § 8.06[3] (3d ed. 1996).

**72.    Misappropriation of Trade Secrets - Time Period for Damages**

Powerweb would be entitled to damages running only for as long as (1) you find that its trade secret would be entitled to protection, plus (2) an additional period, if any, that you find that the trade secret afforded NewEnergy a competitive advantage, such as providing NewEnergy a head start in its business.

American Bar Association, <u>Model Jury Instructions: Business Torts Litigation</u>, § 8.06 [4] (3d ed. 1996).

**73.     Tortious Interference with Contractual Relations**

Should you find NewEnergy liable for tortious interference with Powerweb's existing or prospective contractual relations, Powerweb is entitled to be fairly and adequately compensated for:

    (1)    the pecuniary loss of the benefits of the contractual relation suffered by Powerweb;

    (2)    all other pecuniary losses suffered by Powerweb as a result of NewEnergy's acts; and

    (3)    the harm to Powerweb's reputation suffered by Powerweb as a result of NewEnergy's acts.

See Pennsylvania Bar Institute, Pennsylvania Suggested Standard Civil Jury Instructions, § 13.19 (2003); Restatement (Second) of Torts, § 774A (Tent. Draft No. 14, 1969).

**74.    Unfair Competition**

If you find that NewEnergy is liable to Powerweb for unfair competition, then Powerweb is entitled to be fairly compensated for the harm, if any, caused to Powerweb's business by NewEnergy's Unfair Competition. If you find NewEnergy liable, Powerweb is entitled to:

    (1)    loss resulting to Powerweb from sales or other revenues lost because of NewEnergy's conduct;

    (2)    loss resulting from sales made by Powerweb at prices that have been reasonably reduced because of NewEnergy's conduct; and

    (3)    harm to the market reputation of Powerweb's goods, services or business.

See Restatement (Third) of Unfair Competition, § 36 (1995).

**75.    Punitive Damages - Tort Claims**

If you should find from the preponderance of the evidence that Powerweb is entitled to a verdict for actual or compensatory damages for <u>breach of fiduciary duty, fraudulent misrepresentation, misappropriation of trade secrets, tortious interference with prospective contractual relations, tortious interference with existing contractual relations or unfair competition</u>, you may consider whether an award of punitive damages should also be made. If you find that the acts of NewEnergy were willful, wanton, and maliciously done, then you may add to the amount of actual damages such amount as you shall agree is proper. The purpose of punitive damages is not to compensate Powerweb, but rather to punish NewEnergy and to deter NewEnergy and others from committing such acts in the future.

An act is willfully done if done voluntarily and intentionally and with the specific intent to commit such an act. An act is wantonly done if done in careless disregard of, or indifference to, the right of the injured party.

An act is maliciously done, if prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

O'Malley, et al., <u>Federal Jury Practice and Instructions</u>, § 127.15 (5th ed. 2000).

**76.    Punitive Damages – Amount of Award**

If you decide that Powerweb is entitled to an award of punitive damages, you must determine the amount of such damages to award. In doing so, you may consider any or all of the following factors:

(1)    The character of NewEnergy's actions;

(2)    The nature and extent of the harm to Powerweb that NewEnergy caused or intended to cause (in this regard you may include Powerweb's trouble and expense in seeking to protect its interests in this lawsuit); and

(3)    The wealth of NewEnergy insofar as it is relevant in fixing an amount that would be sufficient to adequately punish NewEnergy, and deter it and others from like conduct in the future.

The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages, and it is not necessary that you award compensatory damages to Powerweb in order to assess punitive damages against NewEnergy as long as you find in favor of Powerweb and against NewEnergy on the question of liability.

See Pennsylvania Suggested Standard Civil Jury Instructions, § 14.02 (2003).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.,    :
               Powerweb,    :
                                :
           v.             :        No. 02-CV-2733 (HB)
                                :
POWERWEB TECHNOLOGIES, INC.,    :
               NewEnergy.    :

### CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing pretrial memorandum was filed electronically today and is available for viewing and downloading from the ECF system. The memorandum was served upon counsel for Constellation NewEnergy, Inc. by notice of electronic filing, addressed to:

> David E. Landau, Esquire
> Wolf, Block, Schorr and Solis-Cohen, LLP
> 1650 Arch St., 22nd Floor
> Philadelphia, PA 19102
> dlandau@wolfblock.com

                                               _____RG574_____
                                          Rudolph Garcia, Esquire

Dated: July 26, 2004