**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CONSTELLATION NEWENERGY, INC.,  :
                                        :
              Plaintiff,          :       Civil Action No. 02-CV-2733 (HB)
                                          :
      v.                        :
                                          :
POWERWEB TECHNOLOGIES, INC.,    :
                                          :
           Defendant.        :

**CONSTELLATION NEWENERGY, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO POWERWEB, INC.'S MOTION TO BIFURCATE THE ISSUES OF
LIABILITY AND DAMAGES FOR PURPOSES OF TRIAL**

On the eve of trial, Powerweb, Inc. ("Powerweb"), in its role as counterclaim plaintiff, has moved to bifurcate the issue of liability and damages. This is a curious twist; a motion to bifurcate usually is made by a defendant early in a case to avoid the unnecessary expense of damage discovery and expert reports. Constellation NewEnergy Inc. ("NewEnergy") will not speculate on what tactical advantage Powerweb seeks to gain with its motion. The motion should be denied because it would extend the length of the trial, create significant hardship for NewEnergy's witnesses, and unnecessarily confuse the jury.

**I.**     **Factual Background**

Powerweb's counterclaims focus on misappropriation of trade secrets, breach of a confidentiality agreement and tortious interference with contractual relations. As set forth more fully in NewEnergy's Pretrial Memorandum, in October 1999, NewEnergy and Powerweb entered into a Non-Disclosure Agreement for the limited purpose of performing due diligence so that NewEnergy could decide whether it wished to pursue an arrangement with Powerweb to distribute Powerweb's Omnilink energy and efficiency and control system to Bell Atlantic. Three NewEnergy employees conducted a brief due diligence to look at what Powerweb termed

its "Energy Technology."  The alleged "Energy Technology" consisted of hardware, software and capacity credit programs, none of which was unique to the industry.

In January 2000, NewEnergy and Powerweb entered into a two-page "agreement" for Bell Atlantic (hereinafter the "Bell Atlantic Agreement"), which was the parties contract concerning a single potential transaction involving Bell Atlantic.  It concerned only a system for active load management on the Pennsylvania-New Jersey-Maryland Interconnection ("PJM").  By its terms, the contract expired after one year.  The transaction with Bell Atlantic did not go forward because Bell Atlantic decided it did not wish to purchase the OmniLink System.

Powerweb has alleged that NewEnergy breached the Non-Disclosure Agreement by (1) disclosing Powerweb's confidential "Energy Technology" to third parties who in turn allegedly used it to develop competing products, (2) using the "Energy Technology" itself, and (3) failing to market other Powerweb's products to NewEnergy's customers (a concept which is not a subject matter of any the contract at issue in this case).  NewEnergy denies all of these claims, on the grounds, *inter alia*, that there was nothing secret or confidential about Powerweb's "Energy Technology," that NewEnergy never used Powerweb's "Energy Technology", that NewEnergy independently developed its own products in the load management area and that other competitors' products were independently developed.

Powerweb has also brought tort claims arising from the identical facts, including a misappropriation of trade secrets claim.  NewEnergy denies liability for those claims as well.  Finally, Powerweb has brought a claim with respect to Powerweb's contract with Baltimore Gas and Electric Company.  Powerweb alleges that after this case began, NewEnergy interfered with Powerweb's contract with Baltimore Gas and Electric, resulting in the termination of its contract.  NewEnergy denies this claim.

Based on these claims, Powerweb is seeking approximately $117 million in damages. Powerweb is not seeking damages merely for profits that NewEnergy may have made itself for allegedly using Powerweb's "Energy Technology." Rather, Powerweb has created a host of speculative damages asserting that, for example, it is entitled to damages for the lost opportunity of cross-marketing an entirely different product -- energy management services -- to eleven other companies. Similarly, it seeks damages for the lost opportunity to market energy management services to NewEnergy's customers as well as the lost opportunity of selling the OmniLink System to NewEnergy's customers. Because the evidence on liability and damages overlaps, bifurcation serves no purpose here.

## II.    Argument

Although Rule 42(b) of the Federal Rules of Civil Procedure permits the Court, in its discretion, to sever claims, bifurcation is the exception rather than the rule. See *Sprinturf, Inc. and Hank Julicher v. Southwest Recreational Industries, Inc. and Villanova University*, No. 01-CV-7158, 2004 U.S. Dist. LEXIS 785, at *2 (Jan. 20, 2004) (denying motion to bifurcate). "The party seeking bifurcation has the burden of demonstrating that judicial economy would be promoted and that no party would be prejudiced by separate trials." *Id*. Where there is a substantial overlap in liability and damages evidence and witnesses, courts have denied motions to bifurcate. *See id.*; *Middleton N.J.M.T.M., Inc. v. Swisher International, Inc.*, No. 03-CV-3908, 2004 U.S. Dist. LEXIS 6694, at *3 (Apr. 8, 2004) (denying motion to bifurcate).

Powerweb has failed to meet its burden. In its memorandum, Powerweb summarily concludes that it would be more efficient to bifurcate. It provides no analysis on the impact of bifurcation on the presentation of the evidence. Further, Powerweb does not explain how bifurication would work with the claims and counterclaims. If the bifurcation motion is coupled with Powerweb's motion to be treated as plaintiff, the bizarre result would be as follows: (1)

Powerweb presents its liability case on its counterclaim, (2) NewEnergy presents its liability case on Powerweb's counterclaim and NewEnergy's liability and damage case on its claims (3) Powerweb presents its case on NewEnergy's claims on liability and damages and then, if necessary, (4) Powerweb presents its case on damages.  By the end of this process, the witnesses will not know whether they are coming or going and neither will the jury.

There are at least five NewEnergy witnesses that would have to testify twice under Powerweb's proposal.  David McGeown, a third party, has knowledge of the contract negotiations and the early stages of NewEnergy's review of some of the "Energy Technology." He also had discussions with Bell Atlantic with respect to the sale of the OmniLink System. Under Powerweb's proposal, he would testify in the liability phase on issues such as the scope of the contract, the intent of the parties, and his understanding of the terms the Non-Disclosure Agreement.  He also will testify whether any "Energy Technology" was ever shown to others outside of NewEnergy East and under what circumstances.  After he completes that testimony, he will have to appear again to testify in the damage phase, specifically with respect to the foreseeability of Powerweb's alleged lost opportunities at the time the contract was entered into. Mr. McGeown, however, is not an employee of or consultant to NewEnergy.  He has his own business and lives in northern New Jersey.  He has agreed to testify at this trial for NewEnergy, but Powerweb's proposal would place an undue hardship on Mr. McGeown to appear on multiple occasions.

Similarly, Jeremy Metz of Verizon (formerly Bell Atlantic) will testify in the liability phase concerning Verizon's knowledge of Powerweb in 1999 and 2000.  Under Powerweb's proposal, he would then have to return to testify in the damage phase that Verizon's activities in the load management area today bear no relationship to the original contract in this action and

that Verizon independently contracted with a competitor of Powerweb to provide load management to Verizon. Mr. Metz will be traveling from New York for this trial.

Peter Scarpelli, who works for RETX, one of Powerweb's competitors, will also be testifying for NewEnergy at this trial. Powerweb has accused Mr. Scarpelli of stealing Powerweb's allegedly secret technology when he worked for CILCO, an affiliate of AES NewEnergy. Powerweb alleges he took Powerweb's "Energy Technology" to his new employer, RETX. Powerweb then alleges Mr. Scarpelli caused RETX to develop a competing product and compete with Powerweb. In the liability phase, Mr. Scarpelli's testimony will be relevant to his relationship with CILCO and NewEnergy at the time the contracts were entered into. He also will testify that he reviewed no proprietary information, but at most, he was sent Powerweb's marketing materials. In addition to this liability testimony, Mr. Scarpelli's testimony will also be necessary in the damages phase on the issue of the $63 million damages since Powerweb's contracts since Powerweb alleges RETX should not have been awarded most of those contracts. Mr. Scarpelli will be traveling from Atlanta to testify at this trial.

One of NewEnergy's expert's, Dan Violette, will provide testimony relevant to both liability and damages. Mr. Violette's expert testimony will concern Powerweb assertion that the "Energy Technology" was confidential, secret, and unique in the industry. Mr. Violette will opine that it was not. Mr. Violette will also opine on damages. For example, he will offer opinions that Powerweb operated in a crowded field with numerous competitors such that its damage assertions on the lost contracts have no support in industry data.

A final example of potential duplicative testimony under Powerweb's proposal is Ruth Kiselewich, who is the corporate representative for Baltimore Gas and Electric. Ms. Kiselewich will testify on liability that NewEnergy never suggested Baltimore Gas and Electric terminate its

contract with Powerweb because of this litigation. She will also testify on damages that Baltimore Gas and Electric's contract with Powerweb was limited in time and scope. Further, with respect to damages, one of Powerweb's experts, Constantinos Pappas, used an internal BG&E study as a basis for his projections of customer usage for other companies. Ms. Kiselewich will testify about Mr. Pappas's inappropriate use of BG&E's internal study. Ms. Kiselewich will be traveling from Baltimore for her testimony.

These are just five of the witnesses where duplicative testimony would actually occur under Powerweb's proposal. There are others where there is a significant possibility for overlap. Not only will duplicative testimony increase the time and expense to the length of this trial, inconvenience the witnesses, it will also confuse the jury with potentially overlapping testimony. Powerweb's proposal, therefore, has no legitimate basis for its bifurcation motion other than to serve some unknown tactical purpose of Powerweb. Accordingly, Powerweb's motion should be denied.

Respectfully submitted,

WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP

  /s/    David E. Landau
David E. Landau
Matthew A. White
Zachary C. Glaser
Jennifer C. O'Neill
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania 19102-2097
(215) 977-2000

*Attorneys for Plaintiff,*
*Constellation NewEnergy, Inc.*

Dated: July 28, 2004

## CERTIFICATE OF SERVICE

I certify that on July 28, 2004, I caused a true and correct copy of the foregoing Reply Memorandum Of Law In Support Of Plaintiff Constellation NewEnergy, Inc.'s Motion to Strike the Second Expert Report of Constantinos Pappas and Preclude Evidence and exhibits to be served electronically upon:

> Kara Goodchild, Esquire
> SAUL EWING LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.

> __/s/ Zachary C. Glaser_____
> Zachary C. Glaser