**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CONSTELLATION NEWENERGY, INC.,   :
                            :

            Plaintiff,   :   Civil Action No. 02-CV-2733 (HB)

                            :

    v.   :

                            :

POWERWEB TECHNOLOGIES, INC.,   :

                            :

            Defendant.   :

---

## ORDER

      **AND NOW**, this _____ day of _____, 2004, it is hereby

**ORDERED** that Powerweb's Motion In Limine to Preclude Expert Testimony by Michael

Rosenzweig, Ph.D. is **DENIED** in its entirety.


                                  **BY THE COURT:**


                                  _____

                                  **Hon. Harvey Bartle, III, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

CONSTELLATION NEWENERGY, INC.,    :
                                  :
                Plaintiff,        :        Civil Action No. 02-CV-2733 (HB)
                                  :
        v.                        :
                                  :
POWERWEB TECHNOLOGIES, INC.,      :
                                  :
                Defendant.        :

_____


## RESPONSE BY PLAINTIFF, CONSTELLATION NEWENERGY, INC.
## TO MOTION IN LIMINE BY POWERWEB, INC.
## TO PRECLUDE EXPERT TESTIMONY
## BY MICHAEL ROSENZWEIG, PH.D.

Plaintiff, Constellation NewEnergy, hereby responds to Defendant, Powerweb, Inc.'s

above-captioned motion.   For the reasons set forth in the accompanying memorandum of law,

this Motion should be denied.


                                    _____

                                    David E. Landau
                                    Matthew A. White
                                    Zachary C. Glaser
                                    Jennifer C. O'Neill
                                    WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
                                    1650 Arch Street, 22nd Floor
                                    Philadelphia, Pennsylvania 19102-2097
                                    (215) 977-2000

                                    *Attorneys for Plaintiff,*
                                    *Constellation NewEnergy, Inc.*

Dated:  July 29, 2004


DSB:977576.1/AES003-158567

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CONSTELLATION NEWENERGY, INC.,    :
                                  :
          Plaintiff,    :    Civil Action No. 02-CV-2733 (HB)
                                  :
   v.                           :
                                  :
POWERWEB TECHNOLOGIES, INC.,      :
                                  :
          Defendant.    :

---

**CONSTELLATION NEWENERGY'S MEMORANDUM OF LAW
IN RESPONSE TO POWERWEB, INC.'S MOTION <u>IN LIMINE</u>
TO PRECLUDE EXPERT TESTIMONY
<u>BY MICHAEL ROSENZWEIG, PH.D.</u>**

Powerweb challenges the reliability of NewEnergy's expert, Michael Rosenzweig, Ph.D.

One of the most telling facts in Powerweb's motion is its concession that it was

Dr. Rosenzweig's criticisms, in part, that caused both of Powerweb's experts to revise,

supplement, and "clear up" their original opinions.   Powerweb Motion at 5.   Thus, even

Powerweb's experts found Dr. Rosenzweig literally reliable -- in fact, they actually relied on

him.   This Court can do the same.

**I.    BACKGROUND**

While Powerweb doesn't challenge Dr. Rosenzweig's qualifications to render expert

opinions under <u>Daubert,</u> a review of his background is necessary to put into context the criticism

that Powerweb's lawyers -- not Powerweb's experts -- have made of Dr. Rosenzweig.

Dr. Rosenzweig earned a B.S. in Mathematics, an MBA in Operations Research, and a

Ph.D. in Applied Mathematics from the University of Maryland.   Powerweb Ap. Ex. 1 (Ex.

MBR-1).   Dr. Rosenzweig has over 25 years of national and international experience as an

economist in the energy industry.  Id.   Among other engagements, he has assisted utilities in

gaining regulatory approval for their new energy programs; he has performed market penetration

analyses (the gist of Fox-Penner's submitted work); he has developed models and forecasting

tools for numerous aspects of the energy industry; he has provided expert testimony for

international arbitrations dealing with energy disputes; he has testified before the Federal Energy

Regulatory Commission at least ten times and before various state Public Utility Commissions

over five times.  Id.

Dr. Rosenzweig has published scores of articles and reports concerning the economics of

energy, including, "Electric Utility Competition:   A Strategic Economic Perspective."   He has

also been asked to speak at major meetings and symposia in the energy industry and has

presented over thirty such talks.

Perhaps the best evidence of the thoughtfulness and reliability of Dr. Rosenzweig's

opinions is his Expert Report.   His 25-page report is a forceful and well-reasoned critique of the

slip-shod approach taken by Powerweb's experts.   It is no wonder that Powerweb wishes he

couldn't testify.   Not one of Powerweb's criticisms of Dr. Rosenzweig, however, justifies

precluding his opinions under Daubert.

II.    **ARGUMENT**

A.    **Legal Standards for the Admission of Expert Testimony.**

NewEnergy agrees with Powerweb that this Court's analysis should be governed by

Daubert, Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), and Judge Becker's numerous

Third Circuit opinions, including In re Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994).

NewEnergy has cited these very cases in its motions in limine to preclude Powerweb's experts,

Peter Fox-Penner, Ph.D., and Constantinos "Gus" Pappas, C.P.A.

As noted, Powerweb does not challenge Dr. Rosenzweig's qualifications.    Thus, its

challenge rests primarily on the "reliability" and "fit" prongs of the Rule 702 analysis.  See In re

Paoli, 35 F.3d at 742 n. 8; Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000).

### B.    Dr. Rosenzweig's Opinions Will Assist the Finder of Fact.

Powerweb's first salvo, however, Powerweb Brief at 4-5, is an effort to show that

Dr. Rosenzweig's testimony would not assist the finder of fact.   See Fed. R. Evid. 702.   If a

Ph.D. in Applied Mathematics with twenty-five years of experience in the economics of the

energy industry could be of no assistance to the fact-finder in understanding Powerweb's

damages, then Powerweb needs no expert for the same proposition.

The main difference here is that over $110 million of Powerweb's $117 million of

damages is the work product of Mr. Pappas, who is decidedly not an economist and who has no

experience in the energy industry or with calculating lost profits.[1]   Powerweb's experts purport

to assist the fact finder by offering "expert" opinions.   By definition, these must be opinions

about "scientific, technical, or other specialized knowledge."   Fed. R. Evid. 702.   If the

substance of Powerweb's experts' opinions satisfies this, then so too must NewEnergy's experts'

critique of this "scientific, technical, or specialized knowledge."

A review of Dr. Rosenzweig's Report demonstrates this point beyond cavil.   A few

examples suffice.    To critique some of the assumptions underscoring Dr. Fox-Penner's work,

Dr. Rosenzweig relies on economics and industry-specific technical knowledge:

> Those prices in capacity (ICAP) markets will move from the
> current depressed prices "smoothly" to the equilibrium price (the
> cost of a new peaker) by the dates indicated for each region when
> supply will equal demand.   In fact, it is well known that prices in
> ICAP markets are "bipolar."   That is, whenever there is a surplus,
> prices are at or near 0 and they only recover to the equilibrium

---

[1]    NewEnergy has covered these points in detail in its Motion In Limine to Preclude the
Expert Testimony of Mr. Pappas.

price (or, alternatively, to the penalty imposed for failing to control adequate resources) when there is no more surplus.   This can be seen from data taken from the NEISO for the years 1998 to 2003 presented in Exhibit MBR-4 and from the NEISO filing at the FERC discussing the phenomenon.

Rosenzweig Report at 12 (footnote omitted).

This is typical of Dr. Rosenzweig's analysis.   It is obviously technical, as it is rebutting Dr. Fox-Penner's technical assumptions.   It will assist the jury because, if the jury is permitted to hear technical analyses from Dr. Fox-Penner, then they should be permitted to hear why Dr. Fox-Penner is wrong.

## C.    Dr. Rosenzweig's Opinions Are Reliable

### 1.    Dr. Rosenzweig is qualified To Provide an Industry Framework In Which to View the Parties' Contract.

While NewEnergy believes that the parties' contracts are unambiguous, there are clearly some terms that might have industry meaning.   For example, an industry expert's testimony on what constitutes "ALM on the PJM" could be helpful to the fact finder to understand how those words are used in the industry.   See, e.g., Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London, 93 F.3d 529, 537 (9th Cir. 1996) (permitting expert testimony on industry custom and usage regarding insurance contract claims).   Similarly, a person with industry experience can give technical advice on the possibility, as Powerweb asserts, that these contracts were novel or unique transaction structures.   For example, Dr. Rosenzweig relies upon his knowledge and industry experience to opine that ALM, and the contracts required to engage in it, were well-known in 1999 and 2000; he stated his bases for so holding; and he was subject to an all-day deposition on his report.   To put Powerweb's claims into the context of the industry's economic expectations is complex and technical, but it is warranted to expose Powerweb's $117 million damages for what they are.

### 2.    Dr. Rosenzweig Reviewed Thousands of Pages of Testimony and Documents And Was Free to Ask Questions.

Powerweb challenges Dr. Rosenzweig's "reliability" because it claims Dr. Rosenzweig relied on "only a skewed portion of the pertinent deposition transcript and documents." Powerweb Brief at 8.   This seems to be a criticism that he asked too little.   In the very next sentence Powerweb criticizes Dr. Rosenzweig from independently interviewing NewEnergy employees -- that is, he asked too much.

While Powerweb can certainly cross-examine Dr. Rosenzweig, it cannot seriously contend that he reviewed some thin sliver of the record.   Dr. Rosenzweig's report lists several key depositions, thousands of pages of documents, and numerous sources beyond the record in this case that he reviewed.[2]

Powerweb strays seriously from the truth when it claims that Dr. Rosenzweig looked only for information that would contradict Powerweb.   A review of the cited deposition transcript reveals the truth -- Dr. Rosenzweig asked NewEnergy employees for factual disagreements they had with certain of Dr. Fox-Penner's assumptions.   He did not close his eyes to "bad"

---

[2]     Powerweb seems to think that because Dr. Rosenzweig relied upon interviews with NewEnergy employees, this is "untested" data and, hence, unreliable.   First, simply getting a memo does not make something more or less reliable.   Second, Powerweb does not assert, because it cannot, that interviews are somehow off-limits to experts. Mr. Pappas and Dr. Fox-Penner both did this.   Interviews with the business people could obviously be helpful to an expert.   Dr. Fox-Penner admitted as much:

> Q.  What did you do to assess whether those figures, fees, were reasonable?

> A.  I accepted the representations of Mr. Budike and Mr. Pappas that the -- that these fees would have been charged in the absence of the breach, or the but-for world.   And I made no further assessment of whether, in fact, they would or would not have been charged under these agreements.

Fox-Penner Dep. at 95:9-17.

information; in fact, he acknowledged that NewEnergy told him instances in which Dr. Fox-

Penner's assumptions were both correct and incorrect:

> Q.    Was Dr. Fox-Penner's estimate consistent with what they told you?
>
> A.    I don't recall precisely, but I would have -- I think that's a fair surmise.   I just don't recall, but I suspect that that was the case.
>
> Q.    Do you know if his estimate was lower than the actual number?
>
> A.    I don't.
>
> Q.    Well, was your method to just note the information they gave you that was more favorable to NewEnergy than his estimate?
>
> MR. LANDAU:   Objection to the question.
>
> A.    What we asked them to do was to look at the information that was contained in the Fox-Penner and -- report, and tell us if it was correct.   These are the things that they noted were not correct.

Rosenzweig Dep. 146:16-147:11 (emphasis added).

Further, for Powerweb to criticize Dr. Rosenzweig for reviewing thousands of pages of

documents and deposition transcripts is twisted.   Mr. Pappas relied on a sum total of six

documents and a conversation with Lou Budike in conjuring up his $111 million of damages.   It

is Mr. Pappas, who is Powerweb's outside accountant with no relevant experience whatsoever,

who is unreliable (and unqualified) for Daubert purposes, not Dr. Rosenzweig.

### 3.    Dr. Rosenzweig's Opinions Flow From the Same Methodology as Dr. Fox-Penner's.

Dr. Rosenzweig did cite the general economic principles in support of his critiques of

Dr. Fox-Penner.   As noted in Powerweb's Motion (p.5), Dr. Fox-Penner apparently agreed with

some of these as he changed his report to accommodate these criticisms.

More to the point, if Powerweb thought the methodology was insufficient, it could have cross-examined Dr. Rosenzweig in his deposition.   Notably absent from Powerweb's motion is some question that went unanswered due to the lack of a purported methodology.   Moreover, Dr. Rosenzweig is not required to come up with an alternative method -- he can certainly critique the assumptions and execution of Powerweb's experts without undertaking the difficult (and perhaps professionally impossible)  task of devining some method to calculate millions of dollars in lost profits for a company that's done nothing but lose money since its inception.

### 4.      <u>Dr. Rosenzweig Is Not Required To Take Every Fact Into Account.</u>

Powerweb's final criticism is that Dr. Rosenzweig's opinions might be based on facts that could be disputed at trial.   That does not make the opinion "unreliable," it merely makes it susceptible to cross-examination.   <u>Daubert</u> does not require that Powerweb agree with Dr. Rosenzweig or with all the facts that Dr. Rosenzweig relies upon. It simply requires that Dr. Rosenzweig's opinions be "reliable" and "helpful."   By any standard, Dr. Rosenzweig meets this test.

### III.    Conclusion

For all of the reasons above, Constellation NewEnergy requests that Powerweb's Motion <u>In Limine</u> to Preclude the Testimony of Dr. Rosenzweig be denied in its entirety.

Respectfully submitted,

_____

David E. Landau
Matthew A. White
Zachary C. Glaser
Jennifer C. O'Neill
WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania 19102-2097
(215) 977-2000
*Attorneys for Plaintiff, Constellation NewEnergy, Inc.*

Dated:  July 29, 2004

DSB:977576.1/AES003-158567                  - 7-

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2004, I caused a true and correct copy of the foregoing Response

By Plaintiff, Constellation Newenergy, Inc. To Motion <u>in</u> <u>Limine</u> To Preclude Expert Testimony

by Michael Rosenzweig, Ph.D., to be served electronically upon:

        Kara Goodchild, Esquire
        SAUL EWING LLP
        Centre Square West
        1500 Market Street, 38th Floor
        Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.  The

exhibits have been served via first class mail.

            _____
            Zachary C. Glaser

Dated:   July 29, 2004

DSB:977576.1/AES003-158567