**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

CONSTELLATION NEWENERGY, INC.,   :
                                 :
            Plaintiff,           :        Civil Action No. 02-CV-2733 (HB)
                                 :
      v.                         :
                                 :
POWERWEB TECHNOLOGIES, INC.,     :
                                 :
            Defendant.           :

_____


## <u>ORDER</u>

     **AND NOW**, this _____ day of _____, 2004, it is hereby **ORDERED** that

_Powerweb's Motion To Preclude Evidence And Testimony Regarding NewEnergy's Post-_

_Discovery Representations To Michael Rosenzweig, Ph.D._  is **DENIED** in its entirety.


                                  _____

                                                  , **J.**

DSB:977539.1/AES003-158567

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CONSTELLATION NEWENERGY, INC.,  :
                               :
           Plaintiff,        :      Civil Action No. 02-CV-2733 (HB)
                               :
      v.                    :
                               :
POWERWEB TECHNOLOGIES, INC.,  :
                               :
           Defendant.     :

---

**PLAINTIFF, CONSTELLATION NEWENERGY INC.'S RESPONSE TO
POWERWEB'S MOTION TO PRECLUDE EVIDENCE AND TESTIMONY
REGARDING NEWENERGY'S POST-DISCOVERY REPRESENTATIONS
TO MICHAEL ROSENZWEIG, PH.D.**

Plaintiff, Constellation NewEnergy, hereby responds to Defendant, Powerweb, Inc.'s

above-captioned motion.   For the reasons set forth in the accompanying memorandum of law,

this Motion should be denied.

                                                  _____

                                                  David E. Landau
                                                  Matthew A. White
                                                  Zachary C. Glaser
                                                  Jennifer C. O'Neill
                                                  WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
                                                  1650 Arch Street, 22nd Floor
                                                  Philadelphia, Pennsylvania 19102-2097
                                                  (215) 977-2000

                                                  *Attorneys for Plaintiff,*
                                                  *Constellation NewEnergy, Inc.*

Dated:  July 29, 2004

DSB:977539.1/AES003-158567

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-CV-2733 (HB) |
| | : | |
| v. | : | |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF, CONSTELLATION NEWENERGY INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO POWERWEB'S MOTION TO PRECLUDE EVIDENCE AND TESTIMONY REGARDING NEWENERGY'S POST-DISCOVERY REPRESENTATIONS TO MICHAEL ROSENZWEIG, PH.D.**

Defendant, Powerweb Technologies, Inc. ("Powerweb"), has moved to preclude evidence and testimony based upon information provided by NewEnergy employees to NewEnergy's expert, Michael Rosenzweig, Ph.D. The information Dr. Rosenzweig requested from NewEnergy was to rebut specific issues raised, for the first time, by Powerweb's experts. As will be shown, Powerweb was satisfied with NewEnergy's discovery responses and certainly never took formal steps to complain.

This entire issue has arisen now because Dr. Rosenzweig criticized Powerweb's expert, Peter Fox‑Penner, Ph.D., for making certain assumptions without checking these assumptions against available facts. Dr. Rosenzweig obtained the actual facts Dr. Fox‑Penner could have done had he (or Powerweb's counsel) asked. Thus, Dr. Rosenzweig has factual support for his conclusion that some of Dr. Fox‑Penner's assumptions are invalid. Powerweb also attempts to exclude the testimony of NewEnergy employee Deirdre Lord, as it relates to the information provided to Dr. Rosenzweig, because she allegedly lacks personal knowledge of the information.

DSB:977539.1/AES003-158567

This is a strange proposition:  Dr. Rosenzweig is certainly entitled to rely on inadmissible

information, provided it's of the type relied upon by experts in the field.   Fed. R. Evid. 703.

Moreover, if Deirdre Lord, or any witness, tries to testify on matters about which she is not

competent, then she can be cross-examined on her purported lack of knowledge.   No broad

preclusion is warranted.   More to the point, however, Ms. Lord should be permitted to testify

because the matters are within her knowledge.

Powerweb's motion should be denied in its entirety.

## I.    FACTUAL BACKGROUND

NewEnergy incorporates herein by reference the counter-statement of facts contained in

its Pretrial Memorandum concerning Powerweb's counterclaims.   NewEnergy also adds the

following information relevant to this response:  Deirdre Lord is a senior NewEnergy employee

in NewEnergy's New York City office.   Amy Richard is a NewEnergy employee in the New

England office, in Boston.   Both of these employees provided information to Dr. Rosenzweig as

he prepared NewEnergy's expert report in response to Powerweb's experts' reports.   The

information was culled from a variety of sources, both internal and external, and given to Dr.

Rosenzweig during telephone conversations; no documents were provided to Dr. Rosenzweig.

## II.   ARGUMENT

### A.    The Facts Relied Upon By Dr. Rosenzweig Do Not Prejudice Powerweb.

What Powerweb is really concerned about is a critique Dr. Rosenzweig levies at

Powerweb's expert, Peter Fox-Penner, Ph.D.   Dr. Fox-Penner made certain unsupported

assumptions, rather than rely upon actual facts.   NewEnergy cannot be responsible for

anticipating the needs of Powerweb's experts and serving up work product for them.   If

Powerweb's experts really needed certain information, such as actual meter counts, profit

margins, and the like, then they should have asked for such items specifically.   If NewEnergy's

responses were improper, then Powerweb could have moved to compel.   Powerweb concedes,

however, that it reached a compromise with NewEnergy on this point.   Powerweb Motion at 4.

Powerweb apparently wishes to renegotiate the bargain.

As it turns out, while Powerweb's lawyers reached a compromise on the discovery

matter, Powerweb's expert, Dr. Fox-Penner, had "dozens and dozens" of questions that went

unanswered.   He even asked Powerweb's lawyers to follow-up, which they failed to do, until

now:

> Q.    Did you want to ask NewEnergy what its actual number of
> meters per customer was?
>
> A.    **I wanted to ask NewEnergy dozens and dozens of
> questions.**   And certainly had I been able to ask
> NewEnergy questions myself, I would have asked that and
> many, many more data questions.
>
> \*   \*   \*
>
> Q.    Sir, I am really trying to find out if there is information that
> you think you need that you didn't get, and I would like to
> know what it is.
>
> A.    Well, I recall having discussions with Mr. Garcia that
> indicated that he had asked for quantitative information that
> you could provide that would enable a calculation of the
> form that I was making.   And indeed, he did provide me
> with several box fulls of documents, and we reviewed them
> and relied on them to produce this.   **When I noted to him
> that there were gaps in the information, which I did
> repeatedly, he told me that everything that I was talking
> about had been requested from you and that nothing
> more was available; and, therefore, I worked with the
> information that I had.**

Fox Penner Dep. 129:4-103; 131:8-132:3 (emphasis added).

If Dr. Fox-Penner was in the dark, then it was incumbent upon Powerweb and its lawyers

to do something about it.   Powerweb never filed a motion to compel and did nothing to raise this

as an issue until this motion was filed.   NewEnergy should not be criticized because Powerweb

failed to ask for information its expert needed.

In any event, this is all a bit of a tempest in a teacup.   According to Dr. Fox-Penner, the

fact that he didn't have all of the information about which Powerweb complains did <u>not</u> impact

his opinions.   He says he built-in conservative assumptions to account for the lack of data and

said this is commonplace for economists.

> Q.      Nonetheless, you were comfortable enough that you could
>          prepare your report and produce the report that you
>          produced, correct?
>
> A.      **Yes; because where I had gaps in the -- in information, I**
>          **was careful to make assumptions that I thought were**
>          **conservative and, thus, would understate the damages**
>          **relative to a calculation in which I had all the**
>          **information.**   And as I alluded in an earlier answer, that's
>          my intended approach to any calculation of this nature, any
>          calculation I do as a consultant; and that is to seek to be
>          conservative where there are gaps in information.   No
>          economist I have ever known has ever been given a
>          completely perfect or complete data set with which to
>          work.   So we're always working with data that's imperfect.
>          We are always having to fill in gaps, some sort of gap.
>          And we are taught in this particular line of our profession
>          to approach those gaps by making assumptions and doing
>          analysis that is conservative.

Fox-Penner Dep. 134:19-135:19 (emphasis added).

Thus, according to Powerweb's own expert, the purported lack of actual information did

not prejudice his ability to opine on the matters in his report.

Specifically, Powerweb cries foul because Dr. Rosenzweig's information came from two

NewEnergy employees allegedly unfamiliar to Powerweb (Amy Richard and Barton Moses[1])

---

[1]      Dr. Rosenzweig mistakenly identified Barton Moses as NewEnergy's AT&T client
         manager.  In fact, Richard Card is NewEnergy's AT&T client manager, and Barton
         Moses is a customer of NewEnergy's which participated in the Special Case Resources

and from one already deposed (Deirdre Lord).    Powerweb also complains that it "was led to

believe other witnesses were knowledgeable regarding New England and California."  Powerweb

Motion at 6.  Rather than cite to actual allegedly misleading discovery responses by NewEnergy

to support this argument (and none exists), Powerweb only cites to the deposition of Ms. Lord.[2]

Powerweb Motion at n.13.   Ms. Lord identified two knowledgeable employees in California,

Andrew Singer and Aaron Thomas.  Powerweb opted not to depose Mr. Thomas and did depose

Mr. Singer.  Despite Powerweb's misleading citation to Ms. Lord's testimony, Powerweb simply

did not ask Ms. Lord to identify knowledgeable employees in New England.

        Contrary to Powerweb's argument, Rule 26(a) is inapplicable in this situation.  Absent

the need to rebut the expert assumptions underlying Powerweb's inflated damages figures,

NewEnergy would not have required the employees' assistance.   NewEnergy cannot be charged

with having to anticipate Powerweb's experts' thought processes.   Such clairvoyance is not

required by the Rules.

        Finally, Powerweb's cries of prejudice are misplaced.   Powerweb's expert made

assumptions to fill "gaps" in the record.   Dr. Rosenzweig went to NewEnergy to find out

whether Dr. Fox-Penner's assumptions were in line with the actual facts.   It turns out that

---

        Program.  Richard Card was disclosed to Powerweb pursuant to Rule 26(a), although
        Powerweb opted not to depose him.  Even assuming Barton Moses was NewEnergy's
        account representative for AT&T who provided some megawatt data to Ms. Lord,
        Powerweb is overreaching.  If this is the type of highly specific information that
        Powerweb thinks qualifies under Rule 26(a), then NewEnergy would have had to identify
        every single employee in the corporation as someone with potentially discoverable
        knowledge.   This would undercut the purpose of Rule 26(a).

[2]     Interestingly, Powerweb argues that Ms. Lord's testimony should be excluded because
        she is without personal knowledge of facts outside New York and New Jersey, yet
        somewhat inconsistently it relies solely on her testimony for information about California
        and New England.

Dr. Fox-Penner was incorrect.   The only prejudice here would be if Dr. Fox-Penner were permitted to testify based on inaccurate assumptions.   The truth may be prejudicial to Powerweb's case, but that speaks more about Powerweb's case and its experts' diligence than it does to anything else.

> **B.      Dr. Rosenzweig is Entitled To Rely on A Corporate Representative's Gathering Of Business Information.**

It is unclear whether Powerweb is challenging Dr. Rosenzweig's ability to rely on potentially inadmissible hearsay (i.e., statements from Ms. Lord based on conversations she had with others in her business) or about Ms. Lord's ability to testify at trial about matters that may (or may not) be within her personal knowledge.

To the extent the challenge is directed to Dr. Rosenzweig, Fed. R. Evid. 703 addresses the concern.   Dr. Rosenzweig can rely on hearsay, or other inadmissible evidence, if of the type relied upon by experts in the field.   Powerweb cannot seriously challenge the proposition that an expert can rely upon even inadmissible information, if of the type relied upon by experts in the field.   Fed. R. Evid. 703.   Powerweb's expert, Dr. Fox-Penner, certainly relied upon oral statements and interviews in forming his opinions:

> Q. What did you do to assess whether those figures, fees, were reasonable?
>
> A. I accepted the representations of Mr. Budike and Mr. Pappas that the -- that these fees would have been charged in the absence of the breach, or the but-for world. And I made no further assessment of whether, in fact, they would or would not have been charged under these agreements.

Fox-Penner Dep. at 95:9-17.

As far as Ms. Lord's potential testimony at trial, we agree with the general principle that Federal Rule of Evidence 602 requires a witness to have personal knowledge in order to testify at

trial.  The fact that Ms. Lord gained knowledge from third parties, however, is not dispositive.

*See Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989).  As the court

stated in *Agfa-Gevaert,* "[k]nowledge acquired through others may still be personal knowledge

within the meaning of Fed.R. Evid. 602 . . . ."  *Id.*

Ms. Lord is the region leader for New York and New Jersey, and NewEnergy region

leaders often interact with employees in other offices.  In providing information to Dr.

Rosenzweig, Ms. Lord did exactly that.  She spoke with various NewEnergy employees to find

the specific information that Dr. Rosenzweig sought to rebut Powerweb's own expert reports.

Powerweb protests that "Ms. Lord was merely a conduit for the information," but Ms. Lord,

having educated herself through other employees, is perfectly competent as a corporative

representative and region leader to testify to these facts at trial.  Powerweb is not prejudiced by

this.  The fact that the information is based on knowledge gleaned from others in the company

goes to the weight of the evidence, and Powerweb will have the opportunity to cross-examine her

on these issues.  Accordingly, exclusion of Ms. Lord's testimony, to the extent Powerweb's

motion seeks such relief, would be an inappropriate remedy.

## III.    CONCLUSION

For all of the reasons set forth above, NewEnergy respectfully requests that Powerweb's

Motion To Preclude Evidence And Testimony Regarding NewEnergy's Post-Discovery

Representations To Michael Rosenzweig, Ph.D. be denied in its entirety.


                                     For WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP

                                         s/DL422
                                     David E. Landau, I.D. #43341
                                     Matthew A. White, I.D. #55812
                                     Zachary C. Glaser, I.D. #85979
                                     Jennifer C. O'Neill, I.D. #89755
                                     1650 Arch Street, 22nd floor
                                     Philadelphia, Pennsylvania 19103-2097
                                     (215) 977-2000
                                     *Attorneys for Plaintiff,*
                                     *Constellation NewEnergy, Inc.*


Dated: July 29, 2004

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 29, 2004, I caused a true and correct copy of *Constellation*

*NewEnergy, Inc.'s Response To Powerweb's Motion To Preclude Evidence And Testimony*

*Regarding Newenergy's Post-Discovery Representations To Michael Rosenzweig, Ph.D.* to be

served electronically upon:


> Kara Goodchild, Esquire
> SAUL EWING LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA  19102-2186


The document is available for viewing and downloading from the ECF system.


_____

Jennifer C. O'Neill

DSB:977539.1/AES003-158567