**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CONSTELLATION NEWENERGY, INC., :
:
        Plaintiff, :    Civil Action No. 02-CV-2733 (HB)
:
v. :
:
POWERWEB TECHNOLOGIES, INC., :
:
        Defendant. :

---

# ORDER

**AND NOW**, this \_\_\_\_ day of _____, 2004, it is hereby **ORDERED** that the Motion *In Limine* by Powerweb, Inc. to Preclude Testimony by Daniel M. Violette, Ph.D. is **DENIED** in its entirety.

                                                      **BY THE COURT:**

                                                      _____
                                                      **Hon. Harvey Bartle, III, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSTELLATION NEWENERGY, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> POWERWEB TECHNOLOGIES, INC., : <br> : <br> Defendant. : | Civil Action No. 02-CV-2733 (HB) |

**CONSTELLATION NEWENERGY INC.'S RESPONSE TO MOTION *IN LIMINE* BY POWERWEB, INC. TO PRECLUDE TESTIMONY BY DANIEL M. VIOLETTE, Ph.D.**

Plaintiff, Constellation NewEnergy, hereby responds to Defendant, Powerweb, Inc.'s above-captioned motion. For the reasons set forth in the accompanying memorandum of law, this Motion should be denied.

David E. Landau
Matthew A. White
Zachary C. Glaser
Jennifer C. O'Neill
WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania 19102-2097
(215) 977-2000

*Attorneys for Plaintiff,*
*Constellation NewEnergy, Inc.*

Dated: July 29, 2004

DSB:977594.1/AES003-158567

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-CV-2733 (HB) |
| | : | |
| v. | : | |
| | : | |
| POWERWEB TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN RESPONSE TO MOTION *IN LIMINE* BY POWERWEB, INC. TO PRECLUDE TESTIMONY BY DANIEL M. VIOLETTE, Ph.D.**

One might expect that Powerweb would have proffered the testimony of a liability expert to opine about Powerweb's alleged trade secrets, its so-called "Energy Technology," and its self-proclaimed status as an industry leader. Remarkably, no such testimony will be offered in support of Powerweb's counterclaims. On the other hand, NewEnergy has engaged Dr. Daniel Violette, a liability expert with impeccable credentials and specialized experience working with regulations, business practices, and technologies relevant to the issues in this case. Dr. Violette has considered voluminous materials produced in discovery and extensive deposition testimony and had conducted industry-wide research into technologies, products and programs similar to those at issue in this case. At trial, Dr. Violette will testify about the functionalities of technologies offered by Powerweb, NewEnergy, and many other supplementary products offered by Powerweb's competitors at various times. Since Dr. Violette is the only liability expert who has been proffered in this case, he will be in a unique position to assist the jury in comprehending the sophisticated technologies which are at issue in this case. Though Powerweb's desire to avoid this uncontested expert testimony is certainly understandable, Dr.

Violette's opinions rely on specialized knowledge and experience in the electricity industry and are proper subjects of expert testimony under Rule 702.

## I. BACKGROUND:

### A. Dr. Violette's Qualifications

Dr. Daniel Violette has a Ph.D. in economics and specialized training and education in econometrics and industrial organization. Violette Report at 1; attachment A, attached hereto as Exhibit A. Through his work as an industry consultant across North America and internationally, Dr. Violette has developed, reviewed and evaluated load management, demand response and curtailment programs which have been offered around the country since before the inception of retail electric choice. *Id.* For example, Dr. Violette has consulted with Florida Power Corporation's load management program and Consolidated Edison's real-time pricing program. Dr. Violette is currently evaluating the New York State Energy Research and Development Authority's (NYSERDA) peak load programs and enabling technologies. *Id.*

In addition to his work with load management, Dr. Violette has also consulted with utilities on demand-side resource programs and has relevant knowledge of the energy management industry in which Powerweb started prior to its decision to enter the energy supply sector. *Id.* Furthermore, Dr. Violette's involvement in and leadership of several key professional organizations provided him access to extensive resources and technologies. *Id.*

In October, 1999, the same month in which Powerweb and NewEnergy signed the non-disclosure agreement at issue in this case, Dr. Violette and his colleagues founded the Peak Load Management Alliance (PMLA), comprised of metering companies, software companies, consulting firms, energy suppliers and industry organizations. *Id.* at 2. Through his work with the PMLA, Dr. Violette has authored several authoritative papers addressing subjects at issue in this case such as capacity programs and load curtailment. *Id.* Dr. Violette has also served three

terms as the president of the Association of Energy Service Providers (AESP), supporting professional development in energy services fields, including load management, distributed generation, price-responsive programs and energy efficiency. *Id.*

Dr. Violette has also worked closely with representatives of the different regional electric grids at issue in this case. Dr. Violette has also testified before public utility commissions in New Jersey and Texas.

### B. Materials Considered Dr. Violette's Research

In preparation to prepare his expert reports, Dr. Violette has considered boxes of pleadings, deposition transcripts and documents produced in this case, and voluminous reports regarding the energy services industry. Exhibit B to his report is a 28 page list of the documents which were relied upon. In addition to the due diligence materials which he reviewed, numerous documents regarding the specifications and functionalities of products offered by Powerweb, NewEnergy and Energy Tracking, and correspondence between many of the key witnesses expected to testify at trial, Dr. Violette reviewed at least 15 deposition transcripts of present and former Powerweb and NewEnergy employees, third parties and experts.[1]

Dr. Violette has supplemented his extensive knowledge of the energy services industry with an industry-wide survey of supplemental technologies and the development of products by several of Powerweb's competitors. *Id.* at 4, exhibit B. In addition, Dr. Violette has conducted numerous telephone interviews with industry professionals and potential third-party witnesses, who have provided insights into Powerweb's technology and the realities of the energy services industry. *Id.* at 11; Supplemental Report of Daniel Violette, fn 2; fn 6, attached as Exhibit B. Based on the extensive documents which he reviewed about the companies and technologies at

---

[1] By contrast, Dr. Fox-Penner reviewed three transcripts. Mr. Pappas did not review any depositions transcripts.

issue in the case, therefore, Dr. Violette in the only expert witness who will testify at trial who is capable of placing these technologies into the context of the industry.

### C.   Dr. Violette's Expert Reports

Dr. Violette has provided two expert reports in this case.  His initial report provides an overview of the energy services industry, which supplements the background section in Dr. Fox-Penner's initial report.  The focus of Dr. Violette's report was to evaluate three key foundational assumptions upon which Poweweb's damage claims are based, including the definition of Powerweb's "Energy Technology,"  Powerweb's various liability theories related to the non-disclosure agreements, and Mr. Pappas' assumption that "but-for" RETX and Silicon Energy, Powerweb would have been awarded each contract for which it bid.

Dr. Violette will provide the following uncontested opinion testimony at trial:

1. Powerweb's alleged trade secrets and "Energy Technology" were in the public domain;

2. NewEnergy did not use Powerweb's Energy Technology" in either the creation of its energy information software or its participation in energy programs offered by various electricity grids around the country; and

3. Powerweb had numerous competitors in its industry which offered supplementary products and services.[2]

Perhaps the most significant portion of Dr. Violette's testimony is on Powerweb's so-called "Energy Technology."  Because Powerweb has consistently dodged numerous requests by NewEnergy (prior to and during this litigation) to define the scope of this term, Dr. Violette will be able to assist the jury in distinguishing between the technologies which are at issue in this case and those which are not.  Based on the premise that the only technologies at issue in this

---

[2] Report of Daniel Mf. Violette, Ph.D., pp. 14-24, attached as Exhibit A.  Dr. Violette's Supplemental Report is attached to Powerweb's brief as Exhibit A2, however, Powerweb does not refer to the supplement report in its brief and no arguments are presented that portions of the supplemental brief should be excluded.

case can be technologies which Powerweb had when it exchanged information with NewEnergy, Dr. Violette's analysis is divided into technology which Powerweb had during the due diligence period (October 1999 to January 2000) and the few specific instances when Powerweb provided additional materials to NewEnergy after that time. *Id.* at 7-13. This analysis will be critical to the jury in its assessment of Powerweb's alleged secrets.

Dr. Violette's supplemental report responds to several clarifications made in the supplemental reports of Mr. Pappas and Dr. Fox-Penner. Dr. Violette primarily evaluates Mr. Pappas' assumption that there would have been no costs associated with over $63 million in sales of "energy management services" to 11 utilities around the country, Mr. Pappas' use of a customer study prepared for Baltimore Gas & Electric in 2001, and certain unfounded and inaccurate statements regarding the energy services industry which were contained in Mr. Budike's June 15, 2004, declaration.

**II.    ARGUMENT:**

The legal standards for Court's analysis are set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and Judge Becker's numerous Third Circuit opinions, including *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994). Noticeably absent from Powerweb's brief is a single citation to case in which a liability expert has been precluded from testifying because he or she criticized liability assumptions of opposing damage experts merely assumed. Powerweb's dogged arguments on this point are both unsupported and irrelevant. Powerweb has also leveled amorphous criticisms of alleged legal conclusions and a created a straw-man argument about software. Both of these arguments are irrelevant.

### A. As a Liability Expert, Dr. Violette is Permitted to Critique Foundation Assumptions Relied Upon by Adverse Damage Experts.

Powerweb's motion to preclude certain portions of Dr. Violette's testimony criticizes Dr. Violette for attacking the foundational liability assumptions which Powerweb's experts have accepted as true. It is undisputed that Powerweb's damage experts did not opine on the liability assumptions critiqued in Dr. Violette's reports. At Powerweb's direction, Dr. Fox-Penner and Mr. Pappas merely accepted Powerweb's liability assumptions as true. The point of Dr. Violette's testimony is not to criticize their calculations, but rather to suggest that to the extent that these foundational assumptions are proven to be false, any damage calculations based upon them would be fatally flawed. Powerweb has cited no case law to support its conclusory argument that Dr. Violette is not permitted to analyze and opine on opposing expert's assumptions.

### B. Dr. Violette Does Not Make Impermissible Legal Conclusions.

Dr. Violette was hired by Constellation NewEnergy to review the Powerweb technology at issue in this case and to compare it to technology used by NewEnergy and by other companies in the industry. Dr. Violette considered the definition of "Energy Technology" in the Non-Disclosure Agreement (the "NDA") compared to the information which Powerweb made available to NewEnergy.

Contrary to Powerweb's representations, Dr. Violette was not asked to render an opinion as to whether technology disclosed after diligence would be covered by the NDA, but rather to "treat the due diligence disclosures separate from disclosures made after the due diligence period." Exhibit A at 8. Powerweb's assertion that Dr. Violette did not consider information after due diligence ignores the section of Dr. Violette's report entitled, "Post Due Diligence Period Disclosures." *Id*. at 12. While Dr. Violette's evaluation of the technologies which might

be protected by the NDA necessarily required him to discuss its materials terms, Dr. Violette has not made legal conclusions or offered legal analysis. Employing his skill, training and experience in the industry, Dr. Violette examined the definition of "Energy Technology" in the NDA within the context of Powerweb's industry. This analysis is not only admissible, but it will be extremely helpful to the jury.

Next, Powerweb suggests that Dr. Violette is not qualified to opine as to the ultimate issue in this case -- whether NewEnergy breached the NDA. This argument is similarly misplaced. First, Dr. Violette is attacking the factual and technological underpinnings of the alleged violations of the NDA which have been suggested by Powerweb. This is not legal analysis -- it is expert analysis of liability theories. Whether the technology at issue was unique or widespread is relevant to a trade secrets claim and alleged damages flowing therefrom. Since there is a public domain exception in the NDA, this analysis will also be critical in evaluating Powerweb's breach of contract claims.

Second, pursuant to Fed. R. Evid. 704, an expert opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Accordingly, Powerweb's motion should be denied.

### C.  Dr. Violette Considered Sufficient Facts and Data to Provide Reliable Testimony

Powerweb has argued that Dr. Violette is not qualified to offer expert opinions about the differences between WebJoules and Omni-Link because Dr. Violette has not viewed the software. This argument is irrelevant for two reasons.

First, the only software which was exchanged in this case was to permit access to Omni-Link and WebJoules websites as they appeared on the internet in March 2004. The parties never exchanged functioning websites as they appeared during relevant periods in this case. As Dr.

Violette correctly points out, the technology as it exists today is irrelevant to an analysis of whether NewEnergy improperly used or disclosed information which Powerweb provided in either the fall of 1999 or some time between January 2000 and January 2001 (the last exchange of information between Powerweb and NewEnergy). Since Powerweb has not produced any examples of functioning Omni-Link software from that time period, this criticism is meritless.

Second, Dr. Violette's evaluation considered the functionality of various products in the industry, not their graphics or source code. Source code is not at issue in this case. As Mr. Budike pointed out in his deposition when he discussed the technology provided to NewEnergy in due diligence: "[w]e did not provide them code, because code is kind of useless. It's kind of -- code is code." Powerweb Dep., 213:13-15, attached as Exhibit C. As indicated in his list of materials relied upon and discussed in both of his reports, Dr. Violette has reviewed numerous demonstrations, depositions, correspondence, marketing materials and other documents describing the functions of the software at issue. Exhibit A at 9-10 and exhibit b; Exhibit B, ¶ 12. Accordingly, Powerweb's motion should be denied.

### III. CONCLUSION:

For all of the foregoing reasons, Constellation NewEnergy respectfully requests that the Court deny Powerweb's motion to preclude Mr. Dovell from testifying at trial.

> Respectfully submitted,
>
> WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
>
> _____
> David E. Landau
> Matthew A. White
> Zachary C. Glaser
> Jennifer C. O'Neill
> 1650 Arch Street, 22nd Floor
> Philadelphia, Pennsylvania 19103-2097
> (215) 977-2000
> *Attorneys for Plaintiff,*
> *Constellation NewEnergy, Inc.*

Dated: July 29, 2004

## CERTIFICATE OF SERVICE

I certify that on July 29, 2004, I caused a true and correct copy of the foregoing Memorandum of Law in Response to Powerweb's Motion *in Limine* to Preclude Testimony by Raymond F. Dovell, CPA, to be served electronically upon:

> Kara Goodchild, Esquire
> SAUL EWING LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.  The exhibits have been served via first class mail.

>   __/s/ Zachary C. Glaser___
>         Zachary C. Glaser