```
 1   IN THE UNITED STATES DISTRICT COURT
 2   FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 3   ------------------------------------------x
 4   CONSTELLATION NEWENERGY, INC.,
 5                             Plaintiff,
 6                                     Civil Action No.
              -against-                02-CV-2733
 7
     POWERWEB TECHNOLOGIES, INC., et al.,
 8
                              Defendants.
 9
     ------------------------------------------x
10
                           March 4, 2004
11                         10:00 a.m.
12
13              "CONFIDENTIAL"
14
15       Deposition of JEREMY METZ, taken by
16   Defendants, pursuant to Subpoena, at the
17   offices of Wolf, Block, Schorr & Solis-Cohen,
18   LLP, 250 Park Avenue, New York, New York,
19   before Phyliss Salimbene, a Registered
20   Professional Reporter and Notary Public within
21   and for the State of New York.
22
23
24                    **EXHIBIT E**
25
```

```
 1   A P P E A R A N C E S:
 2        WOLF, BLOCK, SCHORR & SOLIS-COHEN, LLP
          Attorneys for Plaintiff
 3             1650 Arch Street, 22nd Floor
                Philadelphia, Pennsylvania 19103
 4
          BY:   DAVID E. LANDAU, ESQ.
 5              JENNIFER C. O'NEILL, ESQ.
 6
 7        SAUL EWING, LLP
          Attorneys for Defendants
 8             Centre Square West
               1500 Market Street
 9             Philadelphia, Pennsylvania 19102
10        BY:   KARA H. GOODCHILD, ESQ.
11
12        BERNADETTE MIRAGLIOTTA, ESQ.
          Senior Litigation Counsel
13        Attorney for Verizon and the Witness
                1095 Avenue of the Americas
14              New York, New York 10036
15
16
17
18
19
20
21
22
23
24
25
```

Page 62

1  JEREMY METZ - CONFIDENTIAL
2  confidentiality agreement?
3      A.  No.
4      Q.  Did you ever enter into a
5  confidentiality agreement on behalf of TRG or
6  any Verizon entity with Constellation
7  NewEnergy?
8      A.  No.
9      Q.  Just so we're clear: Going back
10 to when it was Bell Atlantic, were there any
11 discussions between A.E.S. NewEnergy and TRG
12 or TRG acting on behalf of Bell Atlantic
13 regarding confidentiality agreements?
14     A.  Not to my, not to my recollection,
15 no.
16     Q.  Were there any discussions between
17 A.E.S. NewEnergy and TRG acting on behalf of
18 Bell Atlantic during 1999 to early 2000
19 regarding non-disclosure of materials?
20     A.  No.
21         MS. GOODCHILD: Want to give me a
22 minute, I think I'm done?
23         MS. MIRAGLIOTTA: Okay.
24         MS. GOODCHILD: That's it.  Thank
25 you very much, Mr. Metz.

Page 63

1  JEREMY METZ - CONFIDENTIAL
2         THE WITNESS: You're welcome.
3         (Recess taken.)
4         BY MS. GOODCHILD:
5      Q.  Mr. Metz, if you could look at
6  Exhibits 2 through 5 for me, and you already
7  testified that you recognize all of these
8  documents.  Are these documents prepared in
9  the regular course of your business?
10     A.  Yes, they are.
11     Q.  Are they maintained in the regular
12 course of your business?
13     A.  Yes, they are.
14     Q.  And is the information that is
15 reflected in them, not redacted, true and
16 correct, to the best of your knowledge?
17     A.  Yes.
18         MR. LANDAU: Can I just ask a
19 follow-up?
20         MS. GOODCHILD: Sure.
21         EXAMINATION BY MR. LANDAU:
22     Q.  Those documents, there are
23 redactions on those documents?
24     A.  Yes.
25     Q.  And the documents are not marked

Page 64

1  JEREMY METZ - CONFIDENTIAL
2  as to what has been redacted; in other words,
3  the fields, we don't know how many fields have
4  been redacted from looking at those documents,
5  correct?
6      A.  Yes.
7      Q.  And you don't know what the data,
8  those descriptions of the data in those
9  documents would be, is that right?
10     A.  Yes.
11     Q.  As those documents are maintained
12 on your computer, there is other data in the
13 computer in those fields, isn't that right?
14         MS. MIRAGLIOTTA: With respect to
15 2, 3 and 4.
16     A.  These may not all be in my
17 computer; they may have been printed out and I
18 have copies of these documents in my files,
19 and so, as far as the answer to my computer,
20 not necessarily.
21     Q.  Okay.
22     A.  But to the general question, are
23 there other fields, yes.
24     Q.  The documents, let's do them one
25 at a time, start with Metz 2:

Page 65

1  JEREMY METZ - CONFIDENTIAL
2         Is that a document is a copy, a
3  redacted copy of a hard copy or is it
4  something that's been printed out and a
5  different report out of your Excel database?
6      A.  I think that this is from an
7  attachment to a Lotus Notes.
8      Q.  And it was printed directly like
9  that onto the form that we see it; do you
10 understand my question?
11         MS. MIRAGLIOTTA: Can I interpose
12 and go off the record for a second?
13         MR. LANDAU: Sure.
14         (Discussion held off the record.)
15     Q.  Based on our off-the-record
16 discussion, let me just ask you a couple of
17 follow-up questions:
18         Did you physically produce that
19 document that's Metz 2, you, personally?
20     A.  No.
21     Q.  Who did?
22     A.  Electrotech.
23     Q.  Do you know who at Electrotech did
24 it?
25     A.  Yes.

Page 66

JEREMY METZ - CONFIDENTIAL
1
2  Q. Who was that?
3  A. Craig Gruber.
4  Q. Do you know what Mr. Gruber did to
5  produce that document; do you know what
6  database he looked at; do you know what's in
7  his computer or any of those things?
8  A. No.
9  Q. You just simply asked him to
10 produce certain information and he gave it to
11 you?
12 A. These are documents that he would
13 sent to me in the regular course of business;
14 and I have copies of all of these at different
15 times. I don't necessarily keep all of them.
16     And so when the request came and
17 we worked out our agreement, he produced them
18 for me.
19 Q. And these were not from the --
20 A. From the same file that all the
21 documents were produced from; we did not
22 create a new file just for this purpose.
23 Q. Where is the data maintained, on
24 whose computer, was it a Verizon computer or
25 was it an Electrotech computer?

Page 67

JEREMY METZ - CONFIDENTIAL
1
2  A. An Electrotech computer.
3     MS. MIRAGLIOTTA: With respect to
4  Metz Exhibit 2.
5     THE WITNESS: Right.
6     MR. LANDAU: 2.
7     MS. MIRAGLIOTTA: Okay. I'm just
8  going to confer with the witness.
9     (Witness and counsel confer.)
10 Q. You gave him certain fields that
11 you know to be in that database and you asked
12 him to print out a report, is that how this
13 was done? Why don't you tell me how it was
14 done.
15 A. Yes, basically, yes.
16 Q. You asked him for certain fields
17 and print it out?
18 A. Basically, we said leave off those
19 fields.
20    MS. GOODCHILD: Just so we're
21 clear, when you say "those fields," just be
22 clear on the record what "those fields" are.
23    THE WITNESS: Fields relating to
24 the environmental permits for each of the
25 facilities, for example.

Page 68

JEREMY METZ - CONFIDENTIAL
1
2  Q. Let's go to Metz 3. Can you get
3  Metz 3?
4     MS. MIRAGLIOTTA: Oh, I'm sorry.
5  A. Okay.
6  Q. Where did this document come from?
7  A. Same as Metz 2.
8  Q. Are there any fields that were
9  omitted from Metz 3?
10 A. Same as Metz 2.
11 Q. How about Metz 4?
12 A. Metz 4, I believe, is from me.
13 Q. Is this something you printed
14 especially for this production --
15 A. No.
16 Q. -- or is it something that's a
17 photocopy of something that's in your file?
18 A. This is a photocopy of something
19 that's in my file.
20 Q. Has anything been redacted from
21 this?
22 A. Same additional fields.
23 Q. Do you still have the data in your
24 database as it's reflected on here?
25 A. Yes.

Page 69

JEREMY METZ - CONFIDENTIAL
1
2  Q. So if someone wanted to, they
3  could go back and re-create this out of your
4  database?
5  A. Yes.
6  Q. How about Metz 5?
7  A. Same as Metz 4: This is my
8  document with some fields below redacted, but
9  those were redacted by hand.
10    MS. MIRAGLIOTTA: I will represent
11 I redacted those by hand.
12    MR. LANDAU: Counsel redacted
13 those, okay.
14 Q. Is the data here still maintained
15 on a computer?
16 A. Yes.
17    MR. LANDAU: That's all I have on
18 the documents.
19    MS. GOODCHILD: Again, for the
20 record, counsel for TRG is willing to produce
21 the full documents with the redactions shown,
22 if we request, is that correct?
23    MS. MIRAGLIOTTA: I will produce
24 them redacted, in redacted form, yes, if you
25 want them.

18 (Pages 66 to 69)

Page 70

1    JEREMY METZ - CONFIDENTIAL
2         MS. GOODCHILD: Meaning, that they
3    would show that they were additional columns
4    and that they were redacted.
5         MS. MIRAGLIOTTA: Showing the
6    columns but just stating that they're
7    redacted.
8         MS. GOODCHILD: Okay.
9         EXAMINATION BY MS. O'NEILL:
10       Q.  Mr. Metz, in relation to TRG's
11   agreement with NewEnergy and Electrotech, did
12   TRG use any software products in its
13   participation of the New York ISO EDRP or SCRP
14   programs?
15       MS. MIRAGLIOTTA: Could I have that
16   question read back, I'm sorry.
17       MS. GOODCHILD: And I'm going to
18   object to the form.
19       (Requested portion of record
20   read.)
21       MS. MIRAGLIOTTA: Objection to
22   form.
23       A.  Verizon did not, but in order to
24   fulfill the obligations here, Electrotech
25   would have had to.

Page 71

1    JEREMY METZ - CONFIDENTIAL
2         Q.  Do you know what software products
3    Electrotech would have used?
4         A.  Electrotech has their own software
5    product for measurement and metering.
6         Q.  Do you know who created the
7    product that Electrotech uses?
8         A.  Electrotech's parent, to the best
9    of my knowledge, Drantz/BMI, which is a
10   power-quality manufacturing company and
11   power-quality consulting firm.
12       Q.  Was that true for 2002?
13       A.  Yes.
14       Q.  And 2003?
15       A.  Yes.
16       Q.  You also testified that TRG has
17   participated in the Long Island Power
18   Authority and New York Power Authority
19   curtailment programs --
20       A.  Yes.
21       Q.  -- is that correct?
22       MS. MIRAGLIOTTA: I'm sorry, I'm
23   just going to ask you to wait.
24       Q.  Did TRG use any outside vendors or
25   consultants in order to participate in the

Page 72

1    JEREMY METZ - CONFIDENTIAL
2    Long Island Power Authority or the New York
3    Power Authority programs?
4         A.  No.
5         Q.  Are you familiar with the product
6    called "Omni-Link"?
7         A.  Yes.
8         Q.  Can you tell me when you first
9    learned of Omni-Link?
10       A.  Omni-Link's president, Lother
11   Budike, came to a meeting with me, I believe
12   in 2000, brought in by a Verizon or at the
13   time Bell Atlantic employee when I had
14   expressed an interest in moving forward with
15   some of the curtailment programs, and the
16   meeting was in my office, I do not recall
17   when.
18       Q.  Who was that Bell Atlantic
19   employee?
20       A.  Jim Goodman.
21       Q.  What was your relationship to
22   Mr. Goodman within the company?
23       A.  We have a --
24       MS. GOODCHILD: Objection to the
25   form. Sorry.

Page 73

1    JEREMY METZ - CONFIDENTIAL
2         A.  We have a group called "Team
3    Energy" made up of representatives from the
4    Real Estate Group that I, in part, helped
5    create that group and I support that group.
6    And Jim was a member of that group responsible
7    for energy-efficiency improvements and
8    building energy-efficient standards for the
9    Bell Atlantic mid-Atlantic region.
10       Q.  Did Mr. Goodman report to you?
11       A.  No.
12       Q.  Was anyone else in attendance at
13   the meeting that you testified to with
14   Mr. Goodman and Mr. Budike?
15       MS. GOODCHILD: Objection to form.
16       A.  I actually don't recall.
17       Q.  Do you recall who initiated the
18   meeting?
19       A.  I think it was Jim Goodman who
20   knew of this product from knowledge of
21   PowerWeb and their, I guess, sister company,
22   A-Valey, who he worked with.
23       Q.  You testified it was in 2000 but
24   you couldn't remember, frankly, when.
25       Do you know if it was early 2000?