IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

CONSTELLATION NEWENERGY, INC.,   :
                                 :
           Plaintiff,            :         Civil Action No. 02-CV-2733 (HB)
                                 :
   v.                            :
                                 :
POWERWEB, INC.,                  :
                                 :
           Defendant.            :
_____

**CONSTELLATION NEWENERGY INC.'S TRIAL MEMORANDUM
REGARDING PAROL EVIDENCE**

Constellation NewEnergy, Inc. ("NewEnergy"), submits this trial memorandum regarding parol evidence issues that may arise at trial. The terms of the contracts at issue are unambiguous. The Court should not permit parol evidence to alter their plain meaning.

**I.   FACTUAL BACKGROUND**

There are two contracts at issue in this case: the Non-Disclosure Agreement (the "NDA") and the Exclusive Agreement for Bell Atlantic (the "Bell Atlantic Agreement"). Agreements attached as Exhibits A and B respectively. Both agreements were primarily drafted by Powerweb, Inc.'s ("Powerweb") principal, Lothar Budike, Jr. The Bell Atlantic Agreement incorporates the NDA in an integration clause which states that the two agreements represent the "entire agreement" between Powerweb and NewEnergy. See Bell Atlantic Agreement, ¶ 13. There are five provisions of these contracts that NewEnergy anticipates may be the subject of attempts by Powerweb to alter their plain meaning through parol evidence.

A. **Definition of Energy Technology.**

The NDA clearly defines Energy Technology as (1) a "number of energy sensing and energy reduction inventions …"; (2) "patented integration translation software (Omnilink)"; and (3) "custom 'stand by generation' capacity credit programs" developed by Powerweb which utilize these technologies to "sell back capacity on the open market as well as leverage energy procurement in deregulated energy territories." See NDA, recital clauses 1-3. The three categories which comprise "Energy Technology" are unambiguous. NewEnergy anticipates, based on the deposition testimony of Mr. Budike, the CEO of Powerweb, that Powerweb will try to expand the scope of "Energy Technology" beyond the very limited definition set forth in the NDA.

B. **Confidential Information.**

The NDA covers only "Energy Technology" information which was actually invented or developed by Powerweb and not already in the "public domain, or common knowledge." NDA, ¶ 2. NewEnergy expects that Powerweb will try to expand this definition of confidentiality to include information and technology which is not Powerweb's "Energy Technology" but rather information which was independently developed by either NewEnergy or others or common knowledge in the energy industry.

C. **Use of Energy Technology.**

The confidentiality provision in the NDA applies to both disclosure and use of Powerweb's "Energy Technology." NDA, ¶ 1. Confidentiality does not apply "to information already in the public domain, or common knowledge." NDA, ¶ 2. NewEnergy anticipates that Powerweb will seek to use parol evidence to apply the use provision to information beyond the scope of "Energy Technology" and information which was in the public domain.

### D. Joint Venture

Powerweb's pretrial memorandum characterizes the relationship between NewEnergy and Powerweb as a series of joint ventures. There are only two contracts at issue, however, neither of which on its face is a joint venture or suggests any other contractual arrangements other than an arrangement for Bell Atlantic. NewEnergy anticipates that Powerweb will introduce parol evidence to expand the scope of these two narrow contracts and to manufacture an oral joint-venture agreement whereby NewEnergy and Powerweb would be partners for ten years in the load management business. For example, it is anticipated that Mr. Budike will testify that the contract was really the first step in a $500,000 joint venture agreement.

### E. The Concept of ALM on the PJM.

The Bell Atlantic Agreement contains the following language:

> NEE[1] acknowledges that PWT brought the concept of reserve capacity sales (the active load management program) on the PJM to NEE and agrees not to independently pursue this opportunity to tell the communications industry, specifically Bell Atlantic.

This unambiguous clause states only that NewEnergy would not pursue the concept of ALM on the PJM for Bell Atlantic. The contract had a one year term. NewEnergy anticipates Powerweb will try to expand the scope of this clause with parol evidence to assert that NewEnergy agreed not to participate in any reserve capacity sales anywhere in the United States for ten years.

## II. ARGUMENT

Under Pennsylvania law, the fundamental rule of contract interpretation is to understand the intent of the parties and give effect to that intent. <u>Murphy v. Duquesne Univ. of the Holy Ghost</u>, 777 A.2d 418, 429 (Pa. 2001). It is "firmly settled that the intent of the parties to a

---

[1] NewEnergy East ("NEE") was a division of AES NewEnergy.

written contract is contained in the writing itself." Duquesne Light Co. v. Westinghouse Electric Corp., 66 F.2d 604, 613 (3d Cir. 1995) (internal quotations and citations omitted); Murphy, 777 A.2d at 429.

The normal rule in contract interpretation is that parol evidence is not admissible to vary, alter, or contradict a written agreement. See Bohler-Uddeholm America, Inc., v. Ellwood Group, 247 F.3d 79, 92-93 (3d Cir. 2001). The reasoning behind the rule forbidding parol evidence is that a written agreement merges and integrates all of the negotiations of the parties made prior to or contemporaneously with the execution of the contract, especially when there is an integration clause. Hampden Real Estate, Inc. v. Metropolitan Management Group, No. Civ.A. 02-1160, 2003 WL 23206072, at *5 (E.D. Pa. Dec. 30, 2003). Pennsylvania, however, in certain circumstances allows exceptions to the rule barring parol evidence; the most relevant exception is when the term of a contract is deemed ambiguous. See Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148 (3d Cir. 1994); Murphy, 777 A.2d at 429.

Determining whether the words of an agreement are ambiguous is a question of law for the court to decide. Unique Tech. v. Micro-Stamping Corp., No. Civ.A. 02-6679, 2004 WL 350731, at *7 (E.D. Pa. Feb. 25, 2004); Murphy, 777 A.2d at 430; Greater Nanticoke Area School Dist. v. Greater Nanticoke Area Educ. Ass'n, 760 A.2d 1214, 1217-18 (Pa. Cmwlth. Ct. 2000) ('If the court finds the language to be clear and unambiguous, it does not submit the issue to the jury, but itself decides the question of the parties' intent based exclusively upon the terms of the agreement."). Once the determination is made that a contact is unambiguous, the plain meaning of the agreement must be enforced. Murphy, 777 A.2d at 430 ("When a writing is clear and unequivocal, its meaning must be determined by its contents alone." (internal quotations and citations omitted)). On the other hand, if a court deems that an agreement is ambiguous, it is for

the jury to resolve the ambiguities and find the parties intent.  Pelesh v. Polyphas Corp., No. Civ.A. 95-1355, 1997 WL 364477, at *4 (E.D. Pa. June 23, 1997).

As part of a determination of ambiguity, the court should examine the contract as a whole and may consider the words of the contract, the alternative meanings suggested by the parties, and the nature of the objective evidence to be offered in support of the meaning.  Unique Tech., 2004 WL 350731, at *7.  It is important to note though, that a contract only contains an ambiguity if it is *reasonably* susceptible of different constructions and is capable of being understood in more than one sense.  Murphy, 777 A.2d at 430 (emphasis added).  A court should not accept an interpretation that is absurd.  See Bohler-Uddeholm, 247 F.3d at 96.

Here, there is no ambiguity in either contract, and parol evidence should not be permitted.

### A.     The Term "Energy Technology" is Clearly Defined and Unambiguous

The term "Energy Technology" as used in the NDA is clearly defined and unambiguous. The contract "defines" the term by stating "all of these *above mentioned technologies, inventions, and energy resale strategies* are collectively known as "Energy Technology" (emphasis added).  NDA, recital clause 4.  The "above mentioned technologies, inventions, and energy resale strategies" are identified in three preceding recital clauses and describe the three components of the Omni-Link® System: hardware, software, and energy resale strategies.

The first "whereas" clause defines the hardware component of "Energy Technology" as "[A] number of energy sensing and energy reduction inventions comprised of gas sensing technologies, electronic metering devises, electricity control devices, and electricity consumption devices …" which "Powerweb Technologies is the legal owner of…."  NDA, recital clause 1. There can be no ambiguity regarding which devices are included within the term "Energy

Technology" owned at the time of the execution of the contact because Powerweb listed them in this clause.

The second "whereas" clause defines the software aspects of Energy Technologies: "Powerweb Technologies is also the legal owner of a patented integrated translation software system (Omni-Link®) ...." NDA, recital clause 2. This provision is also quite clear – this part of Energy Technologies consists of a software system, called Omni-Link® for which Powerweb holds the patent. Other software applications were not within the scope of "Energy Technology."

The third "whereas" clause deals with an "energy resale strategy": "Powerweb is also the *developer* of custom "stand-by generation" capacity credit programs which utilize the above mentioned technologies …" (emphasis added). NDA, recital clause 3. This clause clearly limits the definition of "Energy Technology" to programs that had been developed by Powerweb by date the contract was executed, October 11, 1999.

Accordingly, "Energy Technologies" is clearly comprised of three components: hardware *owned by* Powerweb, a software system named Omni-Link® *patented by* Powerweb, and a energy resale strategies *developed by* Powerweb.

Powerweb, however, is likely to offer parol evidence to expand vastly the scope of "Energy Technology." Powerweb is likely to offer parol evidence to include hardware devices not listed in the definition of "Energy Technology," software which was not patented or existing at the time the agreement was executed, and energy resale strategies that Powerweb did not develop. For example, Powerweb is expected to argue that the definition of "Energy Technology" includes all curtailment programs or capacity resale programs offered by the PJM or any regional electricity grid which existed at the time or were created later.

Because the definition of "Energy Technology" is defined in the agreement, and that definition is unambiguous, the Court as a matter of law should interpret "Energy Technology" as those specific designated items owned, patented or developed by Powerweb (as listed in the first three "whereas" clauses of the non-closure agreement). Powerweb should not be allowed to present parol evidence in an attempt to recast "Energy Technology" as a catch-all phrase meaning something very different that the plain words of the contract..

### B. The Term "Confidentiality" is Not Ambiguous; Parol Evidence Should Not Be Allowed

Powerweb alleges that the confidential information that the NDA protects is all information, whether or not independently developed by NewEnergy, and whether or not in the public domain. A recasting of the concept of confidentiality as including concepts in the public domain is an unreasonable construction of the contract. The very words "confidential" and "public" are opposites of one another. There is no reasonable interpretation of the concept of confidentiality that would included non-confidential material already in the public domain, thus a court should find the concept unambiguous and not capable of being understood in more than one sense. See Murphy, 777 A.2d at 430. Because the concept of confidential material cannot reasonably be interpreted in the manner in which Powerweb may suggest, this court should find that it is not ambiguous as a matter of law. Parol evidence, therefore, should not be admitted to alter its meaning.

### C. The Term "Use" is Not Ambiguous.

Powerweb claims that NewEnergy has violated the NDA by "using" its "Energy Technology." Powerweb's theory of recovery is based upon an expansive reading of NewEnergy's confidentiality obligations which goes far beyond the legal meaning that has been given by the courts. Not only will Powerweb offer an expanded meaning of "Energy

Technology," it will contend that the word "use" means more than NewEnergy's actual use of Powerweb's expanded version "Energy Technology" and extends to NewEnergy's use of any similar hardware, software or energy capacity credit programs by NewEnergy, even if they were independently developed by NewEnergy or by another company.  In addition, Powerweb applies the "public domain" exception to NewEnergy's confidentiality obligations to disclosure but not to the use provision.  In other words, through parol evidence, Powerweb will attempt to alter the terms of contracts and contend that NewEnergy could not use Powerweb's so-called "Energy Technology" for ten years, even if it was already in the public domain.  Essentially, Powerweb would transform the NDA into a ten-year non-compete.  The court should not accept Powerweb's absurd interpretation of the nondisclosure agreement.  See Bohler-Uddeholm, 247 F.3d at 96.

The term "use" in a trade secret and confidential information cases has been the recent subject of decision by the United States Court of Appeals for the Third Circuit.  In Moore v. Kulicke & Soffa Indus., 318 F.3d 561, 567 (3d Cir. 2003), the Third Circuit held that to establish "use" a plaintiff must show that the defendant did not independently develop the technology.  In the NDA in this case, the word "use" has the same legal meaning as the use requirement in a misappropriation of trade secrets claim.  To establish a breach of the NDA, Powerweb must prove that NewEnergy "used" Powerweb's "Energy Technology."[2]  NewEnergy cannot have breached the NDA if NewEnergy independently developed its own product and had not used Powerweb's. Id.  ("[I]f there is proof that the defendant independently developed a technique that resembles the trade secret, then the defendant did not 'use' the trade secret.")  Because NewEnergy will present evidence of independent development, the burden will remain on

---

[2] The first question, of course, will be whether Powerweb can prove that it had energy technology at when the NDA was signed.

Powerweb to show that NewEnergy did not independently develop its own load management products.

As an evidentiary matter, Powerweb should not be permitted to submit parol evidence to any statements as to what the term "use" may or may not have meant the time the parties negotiated the contract. Further, the jury should be instructed on the requirement of disproving independent development as set forth in the Kulicke & Soffa decision.

### D. Powerweb Should Not Be Permitted to Submit Parol Evidence of a Purported Oral Joint Agreement

NewEnergy anticipates that Powerweb will claim that the NDA and the Bell Atlantic Agreement were the first steps in a series of agreements creating a nation-wide joint venture. In addition, Powerweb is expected to assert that the "joint-venture" agreement was for $500,000. Powerweb cannot "construct a myth" about an oral joint-venture agreement in the face of two integrated contracts. See Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982) ("[Resorting] to the plain meaning of language hinders parties dissatisfied with the ir agreement from creating a myth as to the true meaning of the agreement though subsequently exposed extrinsic evidence.")

It is clear from the face of the Bell Atlantic Agreement that the parties agreed that NewEnergy would "fund project development" in the amount of $100,000. Powerweb does not assert that there was a latent ambiguity in the contract, e.g. that the "$100,000" was in fact a typo. Rather, Powerweb claims that the parties' intent was that this was the first step in a $500,000 relationship. Such testimony would directly contravene the Pennsylvania parol evidence rule, as the contract unambiguously illustrates that it was the parties' intent that NewEnergy was only to fund $100,000. See Duquesne Light, 66 F.2d at 613 (holding that absent ambiguous language, intent of the parties is garnered from the words of the agreement). In addition, the parties agreed to an integration clause that stated the two agreements were the

"entire agreement between the Parties." Powerweb may not introduce extrinsic evidence which varies the terms of the fully integrated agreement absent an ambiguity clear from the language of the contract.

Neither of the two contracts at issue address any other relationship other than the effort to market Powerweb's products to Bell Atlantic. Although the parties did sign an additional agreement regarding certain marketing opportunities, that agreement is not at issue in this case. Powerweb should not be permitted to present evidence of the additional agreement or oral statements to expand the scope of the Bell Atlantic Agreement to other potential business relationships with NewEnergy.

### E.    ALM on the PJM

The Bell Atlantic Agreement was for the marketing of a specific product for active load management on the PJM only to the telecommunications industry, specifically Bell Atlantic (hence the name of the agreement). There was no contract between the parties to market that product or any other products to the PJM or to market that product to other entities in other areas of the country. Powerweb will attempt to introduce evidence that the Bell Atlantic Agreement was merely a first step in a larger business relationship between NewEnergy and Powerweb to market active load management and other energy products all over the country. This type of parol evidence should not be admitted to expand the scope of the Bell Atlantic Agreement.

### III. CONCLUSION

For all of the forgoing reasons, this Court should not allow the introduction of parol evidence to alter the plain meaning of unambiguous terms in the contracts between Powerweb and NewEnergy.

                                                  Wolf, Block, Schorr & Solis-Cohen LLP

                                                  By:_____s/DL422_____
                                                        David E. Landau, I.D. #43341
                                                        Matthew A. White, I.D. #55812
                                                        Zachary C. Glaser, I.D. #85979
                                                        1650 Arch Street, 22nd floor
                                                        Philadelphia, PA 19103-2097

Dated:  August 6, 2004                                (215) 977-2000

**CERTIFICATE OF SERVICE**

I certify that on August 6, 2004, I caused a true and correct copy of Constellation NewEnergy, Inc.'s Bench Memorandum Regarding Parol Evidence to be served electronically upon:

>Kara Goodchild, Esquire
>SAUL EWING LLP
>Centre Square West
>1500 Market Street, 38th Floor
>Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.

s/ Zachary C. Glaser