IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB, INC., | : | |
| Defendant. | : | |

**O R D E R**

AND NOW, this        day of                  , 2004, it is hereby ORDERED that Constellation NewEnergy, Inc.'s Motion in Limine to Exclude the Expert Testimony of Dr. Peter Fox-Penner is DENIED.

BY THE COURT:

_____
J.

817410.1 8/6/04

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW BY POWERWEB, INC.
IN OPPOSITION TO MOTION IN LIMINE BY CONSTELLATION
NEWENERGY, INC. TO EXCLUDE EXPERT TESTIMONY OF PETER FOX-PENNER**

Powerweb, Inc. ("Powerweb") submits this memorandum in opposition to the motion in limine of Constellation NewEnergy, Inc. ("NewEnergy") to exclude the expert testimony of Dr. Peter Fox-Penner. In its motion, NewEnergy challenges only issues on which Dr. Fox-Penner does not opine. Dr. Fox-Penner will not testify regarding liability or the validity of the damages calculations of Powerweb's other expert, and the opinions Dr. Fox-Penner does provide are in no way lessened by the limited scope of his testimony. Because NewEnergy offers no evidence that Dr. Fox-Penner's methodology or damage calculations fall short of the standards for expert testimony set forth in Federal Rule of Evidence 702 and further fails to show how the probative value of Dr. Fox-Penner's testimony is outweighed by the danger of prejudice under Federal Rule of Evidence 403, NewEnergy's motion should be denied.

**I.   BACKGROUND**

   **A.   Relevant Facts**

In 1996, the electricity markets in various regions across the United States began to be deregulated, opening the door to competition and new methods of reducing energy costs. Because electricity cannot be stored, all generated power must be consumed instantaneously.

817410.1 8/6/04

This makes balancing supply and demand a constant challenge and causes electricity prices to be extremely volatile. During high demand periods, the wholesale price of electricity can fluctuate by as much as 1,000%. Powerweb designed a system that enables large commercial customers to profit from this fluctuation by using their own emergency generators when prices are at their highest. Powerweb christened the system it created the "Omni-Link system."

NewEnergy agreed to enter into a series of joint ventures with Powerweb to license the Omni-Link system, first to Bell Atlantic Corporation, and then to other customers. Accordingly, Powerweb disclosed the details of its system to NewEnergy under a written agreement ("Confidentiality Agreement") that prohibited NewEnergy from unilaterally using or disclosing any of the information that Powerweb provided. NewEnergy then abandoned Powerweb, used the information to develop competing products and services of its own, and carelessly disclosed the information to others who also used it to become competitors of Powerweb. NewEnergy further interfered with Powerweb's existing customer contract with Baltimore Gas & Electric Co. ("BG&E"), precipitating the end of this relationship.

NewEnergy's wrongful conduct has resulted in serious economic injury to Powerweb by preventing Powerweb from reaping the full benefit of its development of the Omni-Link system and its contractual agreements to market and employ this system. As a result, Powerweb seeks to recover the present value of both the profits that Powerweb would have earned and the profits that NewEnergy has earned as a result of NewEnergy's breach of contract, unauthorized use and disclosure of Powerweb's confidential information, and interference with Powerweb's relationship with BG&E.

B.  **Dr. Fox-Penner's Damages Calculations**

Powerweb has retained two experts to perform different aspects of Powerweb's damages calculations. Dr. Fox-Penner, who is one of these experts, has issued a report and supplemental report[1] that estimate the present value of the load management profits NewEnergy has earned or will earn stemming from the breaches of the agreements alleged by Powerweb.[2] Dr. Fox-Penner performs these damages calculations by examining data from the U.S. Energy Information Administration, the New England, New York, California and Pennsylvania, Maryland New Jersey (PJM) Independent Systems Operators (ISOs), and NewEnergy load management contracts produced in discovery.[3] From this data, Dr. Fox-Penner creates a series of models that total the NewEnergy customers enrolled in ISO-sponsored load management programs in these regions and forecast the future NewEnergy load management customers and number of customer meters in the same regions through 2009.[4] Dr. Fox-Penner similarly calculates the load management profits of Verizon in New York arising from NewEnergy's failure to protect Powerweb's Energy Technology from disclosure to Verizon.[5]

In making his damages calculations, Dr. Fox-Penner does not opine on issues of liability, which include the scope of the contracts at issue in this case and whether these contracts

---

[1] See Dr. Fox-Penner's initial and supplemental reports, which are attached to NewEnergy's motion to exclude Dr. Fox-Penner's testimony at Exhibits A and C, respectively.

[2] Constantinos Pappas, Powerweb's other expert, estimates the annual profits Powerweb would have earned from sales of metering equipment and monthly services contracts with NewEnergy's load management customers, as well as Powerweb's lost profits from the tortious interference of NewEnergy with Powerweb's contract with BG&E and additional contracts that Powerweb lost to competitors due to NewEnergy's breach of the agreements. Mr. Pappas' damage calculations are discussed in greater detail in Powerweb's memorandum in opposition to NewEnergy's motion to exclude Mr. Pappas' testimony. Dr. Fox-Penner did, however, present value the damages estimated by Mr. Pappas and display the present value of all of Powerweb's damages in his reports.

[3] See Fox-Penner Initial Report at 6.

[4] See Fox-Penner Initial Report at 6.

[5] See Fox-Penner Initial Report at 7-8.

were, in fact, breached by NewEnergy.[6] Instead, Dr. Fox-Penner presents the damages that are due to Powerweb *if* Powerweb's claims regarding NewEnergy's breach of the agreements are found to be true.

Sections II-IV of Dr. Fox-Penner's report discuss Dr. Fox-Penner's methodology and calculations in detail.[7] In Section V of the report, Dr. Fox-Penner combines his own calculations regarding NewEnergy's load management profits with Mr. Pappas' calculations regarding Powerweb's lost profits to calculate the total present-day value of Powerweb's damages.[8] Dr. Fox-Penner does not seek to opine on Mr. Pappas' numbers, nor does he present them as his own,[9] as NewEnergy alleges. Dr. Fox-Penner simply presents all of Powerweb's damages calculations in one table (Table 12) and adjusts them for present value in an effort to help the jury understand the totality of Powerweb's damages claim.[10] Table 12 shows Dr. Fox-Penner's calculations, Mr. Pappas' calculations and the combined totals of these calculations, if a jury accepts both Powerweb's lost profits and NewEnergy's load management profits as appropriate measures of damages.[11] In this way, while Dr. Fox-Penner and Mr. Pappas have each performed calculations regarding separate aspects of Powerweb's damages according to each expert's own area of expertise, the jury may be presented with one aggregate total of

---

[6] Powerweb will produce separate witnesses at trial to make its case on the issue of liability. That Powerweb did not ask Dr. Fox-Penner to opine on liability does not imply either that Dr. Fox-Penner's damages calculations are unreliable or that Powerweb cannot prove its case on liability, as NewEnergy's motion insinuates.

[7] See Fox-Penner Initial Report at 2-29.

[8] See Fox-Penner Initial Report at 30-43.

[9] See, e.g., Deposition of Dr. Peter Fox-Penner, the relevant portions of which are attached hereto as Exhibit 1, at 75:19-76:22, 82:19-83:2, 90:10-19. 91:23-92:7, 138:3-13.

[10] See Fox-Penner Supplemental Report at Revised Table 12. For the sake of consistency, all references to this table are to the same version NewEnergy includes in its motion, which is on the last page of Dr. Fox-Penner's Supplemental Report.

[11] See id.

Powerweb's damages. It is up to the jury to decide the amount of weight it will attach to the calculations of each expert.

There is no legal basis for NewEnergy's objection to Powerweb's team approach to presenting the issues of liability and damages or NewEnergy's suggestion that an expert must testify at trial to all issues regarding liability and damages, or not testify at all.

**II.    THE TESTIMONY OF DR. FOX-PENNER IS BASED UPON "GOOD GROUNDS."**

The Federal Rules of Evidence embody a strong preference for admitting any evidence with the potential for assisting the trier of fact. Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997). In accordance with this preference, Federal Rule of Evidence 702, which governs the admissibility of expert testimony, adopts a liberal policy of admissibility. Id. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[12]

Thus, if expert testimony will assist the trier of fact, its admissibility turns on (1) whether the expert is qualified by knowledge, skill, experience, training or education; (2) whether the expert's testimony is based on sufficient facts or data; (3) whether the expert's testimony is the product of reliable principles and methods; and (4) whether the expert has reliably applied the principles and methods to the facts. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d

---

[12]    Fed. R. Evid. 702.

Cir. 1994), cert. denied sub nom. Gen. Elec. Co. v. Ingram, 513 U.S. 1190 (1995). These requirements are often referred to as qualifications, reliability and fit. Paoli, 35 F.3d at 741-43.

In its motion to exclude the expert testimony of Dr. Fox-Penner, NewEnergy challenges only the reliability of Dr. Fox-Penner's opinions. An expert's testimony is reliable when the expert has "good grounds" for his or her belief. Paoli, 35 F.3d at 742; Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). This means that the expert's testimony is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." Paoli, 35 F.3d at 742; Schneider, 320 F.3d at 404. However, Daubert does not require that an expert opinion have the best foundation, but only that it be based on valid reasoning and reliable methodology. Paoli, 35 F.3d at 744; Kannankeril, 128 F.3d at 806. "The reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." Paoli, 35 F.3d at 744. As the Third Circuit has noted: "Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined." Kannankeril, 128 F.3d at 806.

Dr. Fox-Penner's opinions are based upon sufficient facts and data and reliable methods. NewEnergy's motion does not truly challenge this. Instead, NewEnergy's motion attempts to criticize (1) Powerweb's interpretation of its agreements with NewEnergy, and (2) the lost profits calculations of Powerweb's other expert, Constantinos Pappas, CPA. As Dr. Fox-Penner does not opine on either of these issues, NewEnergy's arguments are misplaced and provide no basis for excluding Dr. Fox-Penner's testimony at trial.

**A.    The Reliability of Dr. Fox-Penner's Calculations Regarding NewEnergy's Load Management Profits Is Not Challenged by the Parties' Differing Interpretations of the Contracts.**

The scope of the agreements between Powerweb and NewEnergy upon which much of this lawsuit is premised is one of the most contested issues in this case. Powerweb interprets the agreements broadly, and NewEnergy interprets them narrowly. Dr. Fox-Penner's reliance on Powerweb's interpretation of these agreements for purposes of making his damages calculations does not render Dr. Fox-Penner's opinions unreliable. As the Third Circuit has noted in admitting expert testimony that relied, in part, on the plaintiff's account of the facts: "Rule 702 does not require that experts have personal experience with the object of the litigation in which they testify, nor does it require that experts eschew reliance on a plaintiff's account of factual events that the experts themselves did not observe." Tormenia v. First Investors Realty Co., Inc., 251 F.3d 128, 135 (3d Cir. 2000).[13]

Secondly, Dr. Fox-Penner will testify as an expert on damages, not liability. As such, Dr. Fox-Penner calculates what Powerweb's damages would be *if* Powerweb's interpretation of the agreements is correct. Dr. Fox-Penner does not opine on the issue of contract interpretation because this is not within his area of expertise.[14] Therefore, claiming that Dr. Fox-Penner's damages calculations, which *are* within his expertise, are unreliable because they are based upon the contract interpretation of another is incongruous. If it is determined that Powerweb's interpretation of the agreements is incorrect, the jury will be free to adjust the

---

[13]   Indeed, Powerweb's interpretation of the agreements at issue is well-grounded in the record, including the language of the agreements. Therefore, the connection between these agreements and Powerweb's damages is not without factual basis, as NewEnergy claims. Powerweb's interpretation will be proven at trial.

[14]   See Fox-Penner Dep. at 104:13-14. NewEnergy has already attempted a similar attack at Dr. Fox-Penner's report on the basis of contract interpretation through the expert report of Dr. Daniel Violette. The fact that Dr. Violette similarly lacks the expertise necessary to interpret contracts is a subject of Powerweb's motion in limine to preclude testimony of Dr. Violette.

weight it gives to Dr. Fox-Penner's calculations accordingly, but reliance upon Powerweb's interpretation of the facts should not affect the admissibility of Dr. Fox-Penner's testimony. See Main Street Mortgage, Inc. v. Main Street Bancorp, Inc., 158 F. Supp. 2d 510, 517 (E.D. Pa. 2001) (finding testimony of damages expert whose lost profits calculations rested on the assumption that a jury would conclude that all subject mortgage loans were a result of trademark infringement admissible).

In determining whether expert opinions and conclusions are based upon "good grounds," "[t]he focus is on the reliability of the methodology as opposed to the merits of the conclusions drawn." Paoli, 35 F.3d at 742; Main Street Mortgage, 158 F. Supp. 2d at 514. NewEnergy makes no challenge to Dr. Fox-Penner's methodology. Instead, NewEnergy seeks an opportunity to challenge Powerweb's version of the facts in the guise of a Daubert motion. This should not be allowed.

### B. Dr. Fox-Penner's "Table 12" Is Reliable.

NewEnergy next attempts to discredit Dr. Fox-Penner's opinions as unreliable because Dr. Fox-Penner includes a table in his report in which he presents the present-values of both Dr. Fox-Penner's own calculations of NewEnergy's load management profits and Mr. Pappas' calculations of Powerweb's lost profits from the lost sales of metering equipment and monthly services contracts, the tortious interference of NewEnergy with Powerweb's contract with Baltimore Gas & Electric, and additional contracts that Powerweb lost to competitors due to NewEnergy's breach of the agreements.[15] NewEnergy does not criticize Dr. Fox-Penner's methodology or present valuing. Instead, NewEnergy claims that because Dr. Fox-Penner

---

[15] See Fox-Penner Initial Report at 42, Fox-Penner Supplemental Report at Revised Table 12.

"cannot vouch for the accuracy or integrity of any of the calculations performed by Mr. Pappas," he should not be allowed to include these calculations in his table.[16]

The connection between this argument and a claim that Dr. Fox-Penner's testimony will be unreliable is tenuous at best. NewEnergy cites to no case law in support of this argument. Dr. Fox-Penner makes clear in both his report and his deposition testimony that Mr. Pappas has computed Powerweb's lost profits on the sales of metering equipment and monthly service contracts based on Dr. Fox-Penner's data and projections regarding NewEnergy's load management customers, and not the other way around.[17] Dr. Fox-Penner does not opine on the accuracy of Mr. Pappas' calculations;[18] in Table 12 he simply performs a present-day discounting of all of Powerweb's claimed damages. It is up to the jury to accept or reject the underlying damage calculations of both Dr. Fox-Penner and Mr. Pappas, each of whom will testify at trial.

### III. THE TESTIMONY OF DR. FOX-PENNER WILL NOT MISLEAD THE JURY

In Sections B and C of its motion, NewEnergy further contends that all testimony by Dr. Fox-Penner should be excluded under Federal Rule of Evidence 403 because it would confuse or mislead the jury. It should be noted up front that the Third Circuit has found that Rule 403 "is rarely appropriate as a basis of pre-trial exclusion, because a judge cannot ascertain potential relevance until that judge has a virtual surrogate for a trial record." Paoli, 35 F.3d at 747. Rule 403 requires the court to balance the probative value and need for an item of evidence against the harm likely to result from its admission. Fed. R. Evid. 403. A party seeking to

---

[16] NE Motion to Exclude Testimony at 9.

[17] See, e.g., Fox-Penner Initial Report at 7, 39, 40, 42; Fox-Penner Dep. at 82:19-83:2, 92:19-93:10, 138:3-13.

[18] See, e.g., Fox-Penner Dep. at 138:3-13.

exclude evidence under Rule 403 faces a fairly high standard, as there is a presumption of helpfulness in performing this balancing test. Paoli, 35 F.3d at 746. Notice and the opportunity of the opposing party to present its own experts is also relevant in determining whether to exclude evidence under this rule. Id. Because Dr. Fox-Penner's testimony regarding Powerweb's damages has high probative value and little, if any harm will result from its admission, and because NewEnergy has the opportunity to present its own experts to critique Dr. Fox-Penner's testimony, Dr. Fox-Penner should be permitted to testify as an expert regarding Powerweb's damages at trial.

In Section B, NewEnergy contends that Table 12, in addition to being unreliable, is misleading because it combines the damages totals of Dr. Fox-Penner and Mr. Pappas in one table.[19] In point of fact, Table 12 is meant to assist the jury by including all of Powerweb's claimed damages on one chart. Dr. Fox-Penner does not take credit for Mr. Pappas' damage calculations by including them in Table 12. Rather, Dr. Fox-Penner clearly explains in his report and deposition testimony which damages calculations are performed by Mr. Pappas and which are performed by Dr. Fox-Penner.[20] Therefore, there is little chance that a jury would be confused as to who performed which calculations. If any version of Table 12 is used at trial, and the Court finds the inclusion of the damages calculations of Dr. Fox-Penner and Mr. Pappas on one chart to be confusing, it may instruct the jury as to which calculations were performed by Dr. Fox-Penner and which were performed by Mr. Pappas. There is no reason to exclude all testimony of Dr. Fox-Penner on this basis.

---

[19] See NE Motion to Exclude Testimony at 9.

[20] See, e.g., Fox-Penner Initial Report at 7, 39, 40, 42; Fox-Penner Dep. at 75:19-76:22, 90:10-19, 91:23-92:7.

NewEnergy further argues that Table 12 is misleading because in the third column of this table, Dr. Fox-Penner adds the totals of Powerweb's lost profits and NewEnergy's load management profits to show Powerweb's total damages if both damage measures apply.[21] Again, the key word here is "if." Dr. Fox-Penner does not opine on whether both damages measures apply; this is a question for the jury. If the jury finds that only one measure of damages applies, it would only look to column 1 or column 2 of Table 12. This should be self-explanatory, but any possible confusion could be remedied by an instruction to the jury to this effect.

Despite NewEnergy's mention of Rule 403, Section C of NewEnergy's motion appears to be nothing more than a rehashing of the same arguments that NewEnergy couches as reliability arguments in the previous sections of its motion. NewEnergy claims, without explanation, that Dr. Fox-Penner's lost profit calculations are "unconnected to the facts at issue in this case and would confuse the real issues in this case."[22] This assertion is untenable, as how Powerweb calculates its damages is certainly a "real" issue in determining the amount of money to which Powerweb is entitled. Indeed, the probative value of Dr. Fox-Penner's calculations is extremely high in assisting the jury's understanding of Powerweb's damages. To the extent that NewEnergy's attack on this point goes to liability, again, Dr. Fox-Penner does not opine on this issue. Powerweb will present other witnesses at trial on liability, and a subverted attack on Powerweb's liability claims is not appropriate in this motion.

NewEnergy further claims that "permitting Dr. Fox-Penner to present Mr. Pappas' work as his own would be extremely misleading, the prejudice of which will far outweigh any possible probative value of this proffered testimony."[23] As discussed above, Dr. Fox-Penner does

---

[21] See Fox-Penner Initial Report at 42; Fox-Penner Supplemental Report at Revised Table 12.
[22] NE Motion to Exclude Testimony at 11.
[23] NE Motion to Exclude Testimony at 11.

not present the work of Mr. Pappas as his own. There is no deception here, nor is there anything inappropriate about presenting all damages calculations in separate sections on one chart, rather than using a separate chart for each section of information.[24] There is little danger that Dr. Fox-Penner's testimony regarding his own present-value calculations will mislead the jury. Furthermore, any minor confusion is certainly outweighed by the high probative value of Dr. Fox-Penner's calculations. For these reasons, NewEnergy's Rule 403 challenge should be denied as well.

## IV.  CONCLUSION

For the foregoing reasons, NewEnergy's motion to exclude the expert reports and testimony of Dr. Peter Fox-Penner should be denied in its entirety.

Respectfully submitted,

RG574

Rudolph Garcia, Esquire
Kara H. Goodchild, Esquire
Kristin L. Calabrese, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1961; -7187; -7533
Attorneys for Powerweb, Inc.

Date:  August 6, 2004

---

[24]  As Dr. Fox-Penner explained at his deposition:

> [I]t is not at all unusual in the course of [the Brattle Group's] assignments to work as part of a team of experts and to have our work combined with the work of other experts.
>
> In this case I think I have been extremely clear about how that work has been combined. And the idea of combining the work of several experts in a legal proceeding, I would say, is quite common.

Fox-Penner Dep. at 137:14-23.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-2733 (HB) |
| | : | |
| POWERWEB, INC., | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing proposed Order and memorandum were filed electronically today and are available for viewing and downloading from the ECF system. They were served upon counsel for Constellation NewEnergy, Inc. by notice of electronic filing, addressed to:

David E. Landau, Esquire
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch St., 22nd Floor
Philadelphia, PA 19102
dlandau@wolfblock.com

                                                          RG574
                                         Rudolph Garcia, Esquire

Date:  August 6, 2004