**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-CV-2733 (HB) |
| | : | |
| v. | : | |
| | : | |
| POWERWEB, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF, CONSTELLATION NEWENERGY, INC.'S
PROPOSED JURY INSTRUCTIONS**

Plaintiff, Constellation NewEnergy, Inc. ("NewEnergy"), proposes that the following

instructions be given to the jury in this action.  NewEnergy requests leave to revise or

supplement its proposed jury instructions as may be necessary during or after the presentation of

evidence at trial.

Respectfully submitted,

_____s/DL422_____
David E. Landau, Esquire
Matthew A. White, Esquire
Zachary C. Glaser, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street,  22nd Floor
Philadelphia, PA 19103-2097
(215) 977-2000

Dated:  August 8, 2004

**Point for Charge No. 1**

**<u>Breach of Contract Claim</u>**

(Plaintiff's Count I, Defendant's Counts I & III)

To recover on a breach of contract claim, the plaintiff/counterclaimant must prove each of the following four elements by a preponderance of the evidence:

    (1)      the existence of a contract to which Powerweb and NewEnergy are parties;

    (2)      the essential terms of that contract;

    (3)      a breach of duty imposed by the contract; and

    (4)      damages as a result of the breach.

The burden of proof rests on NewEnergy for its breach of contract claim against Powerweb and on Powerweb for its breach of contract claims against NewEnergy.

<u>Source</u>:  <u>Telamerica Media Inc. v. AMN Television</u>, No. 99-2572, 2002 U.S. Dist. LEXIS 18360, at *36 (E.D. Pa. Sept. 26, 2002).

**Point for Charge No. 2**

<u>**Breach of Contract Generally**</u>

In this case, there are two contracts at issue:  the Nondisclosure Agreement and the Exclusive Agreement for Bell Atlantic.  NewEnergy claims that Powerweb breached the Bell Atlantic Agreement by failing to produce a detailed project implementation plan, schedule and investment analysis for Bell Atlantic.  Powerweb claims that NewEnergy breached the Nondisclosure Agreement by disclosing Powerweb's Energy Technology to third parties.  Powerweb also claims that NewEnergy breached the Nondisclosure Agreement by using Powerweb's Energy Technology.  I will now instruct you on these breach of contract claims.

A breach of contract occurs when a party to the contract fails to perform any contractual duty of immediate performance or violates an obligation, engagement or duty and that breach is material.  A breach does not have to be defined in a contract.  Not every nonperformance, however, is to be considered a breach of contract.  If you find the nonperformance was immaterial, and thus the contract was substantially performed, you must find the breach of contract did not occur.

<u>Source</u>:  Pennsylvania Suggested Standards Civil Jury Instructions § 15.06 (2003).

**Point for Charge No. 3**

**<u>NewEnergy's Breach of Contract Claim</u>**

You must decide whether Powerweb breached the Exclusive Agreement for Bell Atlantic by failing to provide a project implementation plan and other materials set forth in the contract. If you find that Powerweb did not provide those materials, you may decide whether NewEnergy was damaged by that breach.  I will further instruct you later on damages.

**Point for Charge No. 4**

**Powerweb's Breach of Contract Claim**

I will now instruct you as to the meaning of the terms of the contract.

The contract specifically defines "Energy Technology." "Energy Technology" is:

      (a)     energy sensing and energy reduction inventions comprised of gas sensing technologies, electronic metering devices, electricity control devices and electricity consumption devices;

      (b)     patented integrated translations software (Omni-Link®);

      (c)     custom standby generation capacity credit program developed by Powerweb to sell back capacity in the open market as well as leverage energy procurement in deregulated-electricity territories.

Those were the only categories of products and technology which are subject to the Nondisclosure Agreement. If you find that NewEnergy did not use or disclose the specific categories, then you must find for NewEnergy. If NewEnergy used or disclosed other categories of technology or information provided to it by Powerweb, that is, not one of the three categories that I just instructed you on, then you must also find for NewEnergy under those circumstances.

I further instruct to you that the information that it is in the public domain or common knowledge in the industry is not within the scope of "Energy Technology" information and therefore is not within the scope with the Nondisclosure Agreement.

**Point for Charge No. 5**

<u>Use</u>

The Nondisclosure Agreement prohibits NewEnergy from using Powerweb's Energy Technology.  If you find that NewEnergy used Powerweb's Energy Technology, then you must find for Powerweb.  The contract does not, however, prohibit NewEnergy from using similar technology or business products that it developed independently or that were already in the public domain.  Powerweb does not own the exclusive right over its particular technology or business products.  Others in the field are free to develop precisely the same method and to use the same method so long as they obtain their knowledge through their own independent efforts. It is Powerweb's burden to show by preponderance of the evidence NewEnergy's load management and curtailment programs were not independently created.

**Point for Charge No. 6**

<u>**Elements of a Misappropriation of Trade Secrets Claim**</u>

(Count VII)

To recover on its misappropriation of trade secrets claim, Powerweb must prove each of the following four elements by a preponderance of the evidence:

(1)    Powerweb possessed a trade secret;

(2)    NewEnergy acquired the trade secret through improper means, through a confidential relationship with Powerweb, or under other circumstances giving rise to a duty not to use or disclose the trade secret without Powerweb's permission;

(3)    NewEnergy used or disclosed the trade secret without Powerweb's permission; and

(4)    Powerweb suffered harm as a direct and proximate result of NewEnergy's use or disclosure of Powerweb's trade secret, or NewEnergy obtained benefit from such use or disclosure.

I will go over each of these elements more specifically in a moment.

If, after you consider all of the evidence, you find that Powerweb has proven each of these elements in accordance with the legal requirements I will describe, then you must determine the amount of money damages to be awarded to Powerweb, if any, by following the instructions that I will give you relating to damages.

If, on the other hand, you find that Powerweb has not proven one or more of these elements, then NewEnergy is not liable, and your verdict must be for NewEnergy on this claim.

<u>Source</u>:  Model Jury Instructions: Business Torts Litigation § 8.02.

**Point for Charge No. 7**

**<u>Definition of Trade Secret</u>**

Before you consider NewEnergy's actions, you must first find that Powerweb had a trade secret.  Broadly speaking, a trade secret can be any formula, pattern, device, program, method, technique, process, or compilation of information.  However, to prove that each particular piece of information is a "trade secret," Powerweb must show:

(1)     that the information at issue is secret -- that is, not generally known in the industry; and

(2)     that Powerweb has taken reasonable measures to protect the secrecy of the information; and

(3)     that the information is valuable enough to give competitive advantage over Powerweb's business rivals; and

(4)     that the information is continuously used in Powerweb's business.

I will now discuss each of these elements in more details.


<u>Source</u>:  Model Jury Instructions: Business Torts Litigation § 8.03.

**Point for Charge No. 8**

**Secrecy**

To determine that a trade secret exists you must first decide whether the information was indeed secret. Matters that are generally known in the industry at large are not secrets. To deserve protection, alleged trade secrets must be particular secrets of Powerweb, not general secrets of the trade. In addition, information cannot be a trade secret if it can be recreated with reasonable ease from publicly-available information. A trade secret does not include know-how or experience, knowledge, memory and skill that is learned in employment. Finally, a trade secret must possess enough originality and uniqueness so that it can be distinguished from everyday knowledge.

The secrecy requirement for information to qualify as a trade secret, however, does not mean that it must be absolutely secret. Rather, it must be difficult for others to obtain the information without using improper means.

Of course, if the secret is disclosed to the public, it is not a secret.

Source: Model Jury Instructions: Business Torts Litigation § 8.03[1]; Federal Jury Practice and Instructions § 127.11; Robert Half of PA, Inc. v. Feight, 2000 WL 33223697 (Phila. C.P. June 29, 2000); Bell Fuel Corp. v. Cattolico, 544 A.2d 450 (Pa. Super. Ct. 1988); Morgan's Home Equip. Corp. v. Martucci, 136 A.2d 838, 842 (Pa. 1957); Hyman Co. v. Brozost, 964 F. Supp. 168, 174 (E.D. Pa. 1997); Pittsburgh Cut Wire Co. v. Sufrin, 38 A.2d 33 (Pa. 1944); Greenberg v. Crydon Plastics Co., Inc., 378 F. Supp. 806, 812 (E.D. Pa. 1974).

**Point for Charge No. 9**

**Reasonable Measures to Protect Secrecy**

Powerweb must also prove that it took reasonable measures to protect the secrecy of information for the information to be accorded trade secret protection. There are no absolute requirements that define what measures are "reasonable" in a given situation. That depends on the circumstances of each case, but factors you will wish to consider in evaluating whether "reasonable" measures were taken here could include the following:

(1)    whether Powerweb made it a practice to apprise its employees or others involved with its business that the information is a trade secret and/or is to be kept confidential;

(2)    whether Powerweb required employees or others involved in its business or with its business to sign confidentiality agreements or covenants not to compete regarding the information;

(3)    whether Powerweb restricted access to the information on a "need to know basis"; or

(4)    whether Powerweb generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

Source: Model Jury Instructions: Business Torts Litigation § 8.03[2]; Continental Data Sys., Inc. v. Exxon Corp., 638 F. Supp. 432, 442 (E.D. Pa. 1986).

**Point for Charge No. 10**

**<u>Competitive Advantage</u>**

A trade secret must be valuable either to Powerweb or to its business rivals in the sense that, as long as it is secret, the information provides Powerweb with an actual competitive business advantage over its rivals. A trade secret is valuable because it is not generally known to, and is not readily ascertainable by others in Powerweb's business. To help you determine whether Powerweb enjoyed, or was likely to enjoy, such a competitive advantage, you will want to consider such things as:

(1)    the degree to which the information was generally know or readily available by others;

(2)    the extent to which Powerweb used or uses the information in its business;

(3)    whether profits or increased efficiency enjoyed by Powerweb's business are due to the information;

(4)    what gain or benefits NewEnergy's business obtained from the information;

(5)    what money, effort, and time Powerweb expended to develop the information; and

(6)    the ease or difficulty of acquiring or duplicating the information through independent development, research of publicly available information, or taking apart and analyzing a product properly acquired to learn its secrets (a process called "reverse engineering").

<u>Source</u>:  Model Jury Instructions: Business Torts Litigation § 8.03[3]; Jury Instructions in Commercial Litigation § 11.02.

**Point for Charge No. 11**

**<u>Acquisition Or Use By NewEnergy</u>**

You must determine, whether NewEnergy acquired or used Powerweb's technology or business products.  If you find that NewEnergy did not use Powerweb's secret technology or business products, then you must find for NewEnergy on this claim.  The owner of a trade secret does not have an exclusive right over its business or technology.  Others in the field are free to develop precisely the same methods or products and technology and to use them so long as they obtain their knowledge through their own independent efforts.  In this case, NewEnergy has presented evidence that it independently created products and technology for energy information systems, load management and curtailment.  It is Powerweb's burden to show by a preponderance of the evidence that NewEnergy did not independently create the products and technology.  If Powerweb did not prove this, then you must find for NewEnergy.

<u>Source</u>:        <u>Moore v. Kulicke & Soffa Indus., Inc.</u>, 318 F.3d 561 (3d Cir. 2003).

**Point for Charge No. 12**

**<u>Improper Means</u>**

If you decide NewEnergy did acquire the Powerweb technology products, then you must decide if NewEnergy did so under circumstances that impose a duty on NewEnergy owed to Powerweb. NewEnergy would have a duty to Powerweb if NewEnergy acquired the information by using improper means, or under other circumstances imposing a duty on NewEnergy regarding use of the information.

If Powerweb proves that NewEnergy acquired the trade secret by theft, bribery, trespass, misrepresentation, then NewEnergy has used "improper means."

It is not improper, on the other hand, to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or trade shows), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). The owner of a trade secret does not have exclusive rights over the process or formula. Others in the field are free to arrive at precisely the same method and to use the method so long as they obtain their knowledge through their own independent efforts.

If you do not find that NewEnergy acquired the trade secret through improper means, then you must find for NewEnergy on the trade secret claim.

<u>Source</u>: Model Jury Instructions: Business Torts Litigation § 8.04[1]; <u>Greenberg v. Croydon Plastics, Inc.</u>, 378 F. Supp. 806, 812 (E.D. Pa. 1974).

**Point for Charge No. 13**

**<u>Tortious Interference with Contract</u>**

(Maryland law)

Powerweb asserts that NewEnergy intentionally interfered with the contractual relations existing between Powerweb and Baltimore Gas and Electric Company. Powerweb specifically contends that NewEnergy pressured an affiliated company, Baltimore Gas & Electric, to terminate its contract with Powerweb because Powerweb had sued NewEnergy. One who intentionally and improperly induces or otherwise intentionally and improperly causes the third person not to perform a contract with another is responsible to the other for the loss it suffered as a result of the breach of the contract.

To prevail on a claim for tortious interference with a contract, Powerweb must prove each of the following elements by a preponderance of the evidence:

(1)    New Energy committed an intentional and willful action;

(2)    calculated to cause damage to Powerweb by causing Powerweb to lose a contract;

(3)    done with malice, or an unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of NewEnergy; and

(4)    that actual damages resulted.

In determining whether NewEnergy intended to interfere with contractual relations, mere knowledge of a contractual relation that is somehow interfered with by a party is not sufficient to state a cause of action. There needs to be proof that NewEnergy acted with a specific intent and with malice to cause damage to Powerweb's business.

Source:    <u>See Alexander & Alexander, Inc. v. Evander & Assocs., Inc.</u>, 650 A.2d 260, 269 (Md. 1994); <u>Macklin v. Robert Logan Assocs.</u>, 639 A.2d 112, 117 (Md. 1994).

**Point for Charge No. 14**

<u>**Agency**</u>

You must find in favor of NewEnergy if you find that it was Constellation Energy Group and not NewEnergy that interfered in Powerweb's relationship with Baltimore Gas & Electric.

**Point for Charge No. 15**

**<u>Tortious Interference with Contract</u>**

You must find in favor of NewEnergy if you find that Baltimore Gas & Electric had valid business reasons for terminating its contract with Powerweb, irrespective of any actions by NewEnergy.  Put another way, before you decide in favor of Powerweb, you must find, by a preponderance of the evidence, that but for the actions of NewEnergy, Baltimore Gas & Electric would have continued its contract with Powerweb and not terminated it.

Source:        Model Jury Instructions, Business Torts Litigation (3d ed. 1996), § 1.03[5](c).

**Point for Charge No. 16**

**<u>Elements of a Tortious Interference with Prospective Contractual Relations Claim</u>**

(Count VIII)

To recover on a tortious interference with prospective contractual relations claim,

Powerweb must prove each of the following four elements by a preponderance of the evidence:

(1)    Powerweb had a prospective contract;

(2)    NewEnergy had a purpose or intent to harm Powerweb by preventing the specific

relation from occurring;

(3)    the absence of privilege or justification on the part of NewEnergy; and

(4)    Powerweb suffered actual damages as a result of NewEnergy's conduct.

<u>Source</u>:        <u>W.G. Nichols, Inc. v. Ferguson</u>, No. 03-824, 2004 U.S. Dist. LEXIS 7331,
at *44 (E.D. Pa. Apr. 21, 2004).

**Point for Charge No. 17**

**<u>Reasonable Probability</u>**

In order to find that NewEnergy interfered with a prospective contract, it is necessary that Powerweb had a reasonable probability of realizing that contract in the future.  You are, therefore, further instructed that to find for Powerweb, you must be satisfied from the facts that Powerweb had a reasonable probability of realizing that contract in the future.

<u>Source</u>:            Jury Instructions in Commercial Litigation § 3.07; <u>W.G. Nichols, Inc. v.  </u> <u>Ferguson</u>, No. 03-824, 2004 U.S. Dist. LEXIS 7331, at *44 (E.D. Pa. Apr. 21, 2004).

**Point for Charge No. 18**

**<u>Knowledge of Prospects</u>**

To find for Powerweb, you must also find that NewEnergy knew of the existence of Powerweb's business expectancies.  To have knowledge means that NewEnergy had information concerning the business expectancy which was discovered by NewEnergy or brought to NewEnergy's attention by others.

In this regard, knowledge may be found to exist if, from the facts and circumstances of which NewEnergy had knowledge, NewEnergy should have known of the existence of such business expectancy.

<u>Source</u>:  Model Jury Instructions: Business Torts Litigation § 2.04[1].

**Point for Charge No. 19**

**<u>Intentional Interference Element</u>**

You must determine whether NewEnergy intended to prevent Powerweb from acquiring these business relationships.  Conduct is intentional if done deliberately, with the purpose of interfering with Powerweb's business expectancies.  If you find that NewEnergy's conduct was not intentional, then you must find for NewEnergy.

<u>Source</u>:  Model Jury Instructions: Business Torts Litigation § 2.06.

**Point for Charge No. 20**

**<u>Elements for an Unjust Enrichment Claim</u>**

(Plaintiff's Count V)

If you do not find that the Exclusive Agreement with Bell Atlantic was a valid contract or you do not find that Powerweb breached this agreement, then NewEnergy may still recover its $100,000 on an unjust enrichment theory.

NewEnergy must establish three elements for you to find that Powerweb has been unjustly enriched:

(1)    a benefit conferred on Powerweb by NewEnergy;

(2)    appreciation of such benefit by Powerweb; and

(3)    acceptance and retention of such benefits under such circumstances that it would be inequitable for Powerweb to retain the benefit without payment of value.

If you find that the $100,000 NewEnergy deposited with Powerweb was a benefit conferred upon Powerweb, that Powerweb appreciated the benefit, and that it was inequitable for Powerweb to retain the $100,000 without providing anything to NewEnergy in return, then you will find in favor of NewEnergy on this claim.

<u>Source</u>:  <u>Schenck v. K.E. David, Ltd.</u>, 666 A.2d 327, 328 (Pa. Super. Ct. 1995).

**Point for Charge No. 21**

**<u>Elements of a Breach of Fiduciary Duty Claim</u>**

(Count V)

To recover on a breach of fiduciary duty claim, Powerweb must prove each of the following three elements by a preponderance of the evidence:

(1)    a fiduciary relationship existed at the time of the occurrence of the events which gave rise to this litigation;

(2)    NewEnergy breached a duty which was owed to Powerweb; and

(3)    Powerweb suffered damages or losses which were caused by the breach of that duty by NewEnergy.

<u>Source</u>:  Jury Instructions in Commercial Litigation § 1.01.

**Point for Charge No. 22**

**<u>Establishing a Fiduciary Relationship</u>**

In this case, Powerweb has alleged that its contracts with NewEnergy have caused NewEnergy to become a fiduciary to Powerweb.  Under the law, it is for you to determine whether the contracts and the parties' conduct under those contracts give rise to a fiduciary duty.

Generally, the mere fact that parties have a contract or business dealings with one another does not make them owe a fiduciary duty to each other.  A fiduciary duty can only exist where one party exerts over-mastering dominance and the other has weakness, dependence or justifiable trust.  For instance, an attorney, who can speak on behalf of his client and bind his client to agreements, may owe a fiduciary duty to his client.  Another example where a fiduciary duty may arise is where someone has been appointed a guardian for a child or disabled adult.  Other considerations include weakness of age, mental strength, business intelligence, a superior knowledge of facts involved or other conditions giving one party a significant advantage over the other.

If Powerweb has not proven to you by a prepondence of the evidence that it was dealing with NewEnergy on significantly unequal terms, then it cannot prevail in establishing the existence of a fiduciary duty.

Source:  Model Jury Instructions:  Business Torts Litigation § 7.04; <u>Chrysler Credit Corp. v. BJM, Jr., Inc.</u>, 834 F. Supp. 813, 842 (E.D. Pa. 1993); <u>Tyler v. O'Neill</u>, 994 F. Supp. 603, 611 (E.D. Pa. 1998); <u>Ellis v. Steck Mfg. Co., Inc.</u>, No. 00-3761, 2001 U.S. Dist. Lexis 21053, at *22 (E.D. Pa. Dec. 19, 2001); <u>Kligman v. Advanced Polymer Sys., Inc.</u>, No. 00-580, 2001 U.S. Dist. Lexis 15854, at *24 (E.D. Pa. Oct. 2, 2001); <u>Paul J. Muller Assoc., Inc. v. Transamerica Occidental Life Ins.</u>, No. 90-3128, 1991 U.S. Dist. Lexis 18489, at *10 (E.D. Pa. Dec. 23, 1991).

**Point for Charge No. 23**

**Elements of a Fraudulent Misrepresentation Claim**

(Count VI)

To recover on a fraudulent misrepresentation claim, Powerweb must prove each of the following five elements by clear and convincing evidence:

(1)    that NewEnergy made a misrepresentation of material fact;

(2)    that NewEnergy had a specific intent to induce action on the part of the Powerweb when the misrepresentation was made;

(3)    that Powerweb relied on the misrepresentation and was justified in doing so; and

(4)    that such reliance proximately caused damage to Powerweb.

Source:  Pennsylvania Suggested Standard Civil Jury Instructions §15.34; Pacitti by Pacitti v. Macy's, 193 F.3d 766, 778 (3d. Cir. 1999); Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999).

**Point for Charge No. 24**

**<u>Material Fact Defined</u>**

For purposes of a fraudulent misrepresentation claim, a fact is material if a reasonable person would consider that fact important or significant in making decisions in a transaction similar to the one that is the subject of this litigation or that NewEnergy knew or had reason to know that Powerweb regards, or is likely to regard, the matter as important.

<u>Source</u>:  Jury Instruction in Commercial Litigation § 2.07; Model Jury Instructions: Business Torts Litigation § 6.05.

**Point for Charge No. 25**

**<u>Requirement of Justifiable Reliance</u>**

For Powerweb to recover against NewEnergy, Powerweb must prove that its loss resulted

from Powerweb's justifiable reliance on the misrepresentation.  Powerweb's reliance cannot be

justified if it could have ascertained for itself whether a fact was true -- especially one for which

the source is a third party equally available to both Powerweb and NewEnergy.

<u>Source</u>:  <u>Grumman Allied Indust., Inc. v. Rohr Indus., Inc.</u>, 748 F.2d 729, 737 (2d
Cir. 1984) ("[w]hen the means of knowledge are open and at hand … and no effort is made to
prevent the party from using them -- he will not be heard to say that he has been deceived to his
injury by the misrepresentations of the vendors.") (<u>quoting</u> <u>Shappirio v. Goldberg</u>, 192 U.S. 232,
241-42 (1904)).

**Point for Charge No. 26**

**<u>Fraud Defined -- Intent/Scienter</u>**

A misrepresentation is fraudulent if the maker of the statement intends his/her assertion

to induce a party to take certain action and the maker knows or believes that the assertion is not

true or knows that there is no basis for the representation as stated.

<u>Source</u>:  Pennsylvania Suggested Standard Civil Jury Instructions §15.34; Jury
Instructions in Commercial Litigation § 2.03; <u>Bortz v. Noon</u>, 729 A.2d 555, 561 (Pa. 1999).

**Point for Charge No. 27**

**<u>Unfair Competition Claim</u>**

(Count X)

Powerweb has asserted a separate claim for Unfair Competition.  To establish this claim,

Powerweb must prove by a preponderance of evidence that NewEnergy took, without

permission, technology that was valuable and in the sole possession of Powerweb and that this

conduct was the proximate cause of harm to Powerweb.


<u>Source</u>:  Restatement (Third) Unfair Competition § 38.  The other torts for Unfair
Competition envision the types of conduct that would ordinarily be addressed by the Lanham
Act, Copyright Act, or patent law, for which, for some reason, these statutes would not apply.
Here, there has been no claim made of trademark, patent, or copyright violation.  Nor has there
been any general allegation of deceptive marketing or disparagement of tradename or tradedress.
The only remaining claim cognizable as an Unfair Competition Claim would be some type of
misappropriation of trade value <u>not</u> otherwise addressed by Powerweb's breach of contract claim
or misappropriation of trade secret.

**Point for Charge No. 28**

**<u>Unfair Competition Claim</u>**

Similar to Powerweb's trade secret claim, Powerweb must establish that it had some formula, program, method or technique that was of value, not merely everyday knowledge, not generally known in the industry, and not already known to NewEnergy.

Source:  <u>See</u> Model Jury Instructions: Business Torts Litigation § 8.03.

**Point for Charge No. 29**

**Unfair Competition Acquisition or Use by NewEnergy**

There can be no unfair competition if NewEnergy was merely competing. In this case, NewEnergy is free to develop the same methods or products and technology so long as it obtained that knowledge through publicly available sources or developed it independency. Here, Powerweb must prove by a preponderance of the evidence that NewEnergy did not independently create its products and technology. If Powerweb did not prove this, then you must find for NewEnergy.

Source: <u>Moore v. Kulicke & Soffa Indus., Inc.</u>, 318 F.3d 561 (3d Cir. 2003).

**Point for Charge No. 30**

**<u>Limitations on Unfair Competition</u>**

If you find that Powerweb's claim for unfair competition seeks the same redress as its

other claims, than you cannot find for Powerweb on its claim for unfair competition, and you

must return a verdict for NewEnergy.

<u>Source</u>:  Restatement (Third) Unfair Competition § 38, cmt. b ("The better approach, and
the one most likely to achieve an appropriate balance between the competing interests, does not
recognize a residual common law tort of misappropriation.").

**Point for Charge No. 31**

**<u>Proximate Cause</u>**

In order for Powerweb to recover in this case, NewEnergy's breaches of duty, if any, must have been a proximate cause in bringing about Powerweb's damages. Proximate cause or legal cause is defined as that which, in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which the injury would not have occurred. It need not be the sole cause, but it must be a substantial factor in bringing about the harm. <u>Whitner v. Von Hintz</u>, 263 A.2d 889, 892 n.1, 895 (1970); <u>Fredericks v. Castora</u>, 360 A.2d 696, 698-99 (Pa. Super. Ct. 1976) (per curiam); <u>Takach v. B.M. Root Co.</u>, 420 A.2d 1084, 1086 (Pa. Super. Ct. 1980); <u>Van Buskirk v. Carey Canadian Mines, Ltd.</u>, 760 F.2d 481, 492 (3d Cir. 1985); <u>Pachesky v. Getz</u>, 510 A.2d 776, 780 (Pa. Super. Ct. 1986).

A substantial factor is an actual, real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with the injury alleged. Pa. SSJI (Civ.) § 3.25. <u>Hamil v. Bashline</u>, 392 A.2d 1280 (Pa. 1978).

Powerweb must prove two things to show proximate cause: (1) that NewEnergy's acts were substantial factors in bringing about the loss, and (2) that the likelihood of injury would have been foreseeable to persons in NewEnergy's position under similar circumstances.

You must weigh the evidence and decide whether NewEnergy's breaches of duties, if any, were a substantial factor in bringing about the losses and, if so, whether the losses sustained were reasonably foreseeable to persons in NewEnergy's position. If you find that Powerweb has not proven both elements, there can be no liability for any losses that may have been sustained

by Powerweb, irrespective of any breach of any duty, and you must find for NewEnergy.  MJI

Ch. 7.08[4].

**Point for Charge No. 32**

**<u>Statute of Limitations</u>**

NewEnergy has asserted the statute of limitations as a defense to some of Powerweb's claims.  Pennsylvania has a law that requires each of Powerweb's claims for breach of fiduciary duty, fraudulent misrepresentation, misappropriation of trade secrets, tortious interference with prospective contract, and unfair competition to have been asserted by Powerweb within two years from the date that Powerweb knew, or in the exercise of reasonable diligence, should have known, that it was injured.  This instruction does not apply to the claim associated with Baltimore Gas & Electric or to Powerweb's breach of contract claims.  It does apply to all other claims, however.

If you find that Powerweb knew of the facts giving rise to these claims at any time on or before August 21, 2000, then you must find that Powerweb's claims for each of these claims is untimely, and you must find in favor of NewEnergy on all of these claims.

<u>Source</u>:  42 Pa. C.S.A. § 5524.

**Point for Charge No. 33**

**<u>Reasonable Damages Not Speculative</u>**

Damages must be reasonable.  If you find that Powerweb is entitled to a verdict, you may award it only the amount of damages necessary to compensate it reasonably for any losses caused by NewEnergy's alleged breach of duty.

You are not permitted to award speculative damages.  This means that you may not include any compensation in the verdict for any prospective loss that, although possible, is not reasonably certain to occur.

<u>Source</u>:  Model Jury Instructions:  Business Torts Litigation § 7.09[2].

**Point for Charge No. 34**

**<u>Damages - Misappropriation of Trade Secrets</u>**

Powerweb claims that it has lost profits from misuse of trade secrets.  If you find that Powerweb would have realized profits from employing trade secrets in its business that it has lost due to the wrongful conduct of NewEnergy, then you may measure damages by the amount of such lost profits for the particular periods of time that I will cover with you in a moment.

On the other hand, Powerweb is not to be awarded purely speculative damages.  An allowance for lost profits may be included in the damages awarded, only when there is some reasonable basis in the evidence in the case for determining that Powerweb has in fact suffered a loss of profits.

Powerweb is entitled to recover the greater of (1) its own lost profits, or (2) NewEnergy's gained profits.

These are, however, alternative approaches to damages, not cumulative measures of damages.  Therefore, if you were to find damages, you may award damages based on only one of these alternative approaches; that is, Powerweb's lost profits *or* NewEnergy's gained benefits, but you may not award *both* types of damages.

<u>Source</u>:  Model Jury Instructions:  Business Torts Litigation § 8.06[1]; Federal Jury Practice and Instructions §129.30.

<u>Source</u>:  Model Jury Instructions:  Business Torts Litigation § 8.06[2].

Point for Charge No. 35

**Damages for Fraudulent Misrepresentation**

Powerweb must prove that any damage it suffered as a result of its justifiable reliance of any misrepresented material fact was proximately caused by such reliance. The damages that Powerweb is entitled to recover if it produces all elements of its fraud claim are its "out-of-pocket" damages, which are the difference between the actual value of the property at the time of the misrepresentation and the value the property as diminished by the purported misrepresentation.

Source: Model Jury Instructions: Business Torts Litigation§ 6.09; Sands v. Forrest, 434 A.2d 122, 124 (Pa. Super. Ct.1981).

**Point for Charge No. 36**

**<u>Damages - Interference with Contractual Relations</u>**

Should you find that NewEnergy has interfered with Powerweb's contract with Baltimore Gas and Electric, you may award such damages as will reasonably compensate Powerweb for the actual losses it has sustained from the breach of its contract.  Powerweb must prove its damages with reasonable certainty.

In determining the amount of damages, if any, that Powerweb is entitled to receive, you may consider whether Powerweb suffered any measurable loss of profits by reason of NewEnergy's conduct.  In arriving at the amount of Powerweb's lost profits, you are entitled to consider Powerweb's past earnings, and in particular, the earnings resulting from contracts of the nature that NewEnergy is accused of interfering with in this case.

<u>Source</u>:        Model Jury Instructions Bus. Torts Litig. §§  1.06[1] and 1.06[3].

**Point for Charge No. 37**

**<u>Damages -- Breach of Nondisclosure Agreement</u>**

If you find that Powerweb has demonstrated that NewEnergy violated the terms of the

Non-Disclosure Agreement, then Powerweb is entitled to recover damages that puts Powerweb

in the same position that it would have been in had NewEnergy not breached the agreement.

Generally, the measure of damages is the sum that will compensate the plaintiff for the direct

loss caused by the breach.  If you find that NewEnergy breached the contract, then you must

decide, based on the evidence that Powerweb has presented, what amount of money will

compensate Powerweb for those injuries that were the directly foreseeable result of the breach,

and that the parties could have reasonably foreseen with certainty at the time they made the

contract.

<u>Source</u>:  Pennsylvania Suggested Standard Civil Jury Instructions § 15.06 (2003).

**Point for Charge No. 38**

**<u>Compensatory Damages</u>**

If you find that NewEnergy is liable to Powerweb for its conduct, then you should consider whether Powerweb has suffered monetary damages as a result. You should address the issue of damages, however, only if you first determine that NewEnergy is liable to Powerweb on any of the bases we have discussed previously.

The fact that I am instructing you on the subject of damages does not mean that Powerweb is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a preponderance of the evidence that Powerweb is entitled to recover damages.

As with issues of liability, Powerweb has the burden to prove to you that it has suffered harm due to the wrongful conduct of NewEnergy. Powerweb has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to speculate as to damages.

<u>Source</u>:  Model Jury Instructions: Business Torts Litigation § 8.06; Federal Jury Practice
       and Instructions § 127.14.

**Point for Charge No. 39**

**<u>Limitation on Double Recovery</u>**

In this action, Powerweb has alleged a series of bases of recovery.  If you find for Powerweb on any of those bases of liability, you shall award Powerweb such damages as will reasonably compensate Powerweb for the losses suffered.  In awarding damages, however, you must use care to award Powerweb damages only once for each loss suffered.  The mere fact that you may find that NewEnergy is liable under more than one of the bases of liability does not permit you to award the measure of loss more than once.

<u>Source</u>: Jury Instructions in Commercial Litigation § 17.13.

**Point for Charge No. 40**

**<u>Punitive Damages</u>**

In addition to the claims for damages already mentioned, you should consider whether Powerweb is entitled to punitive damages. These are awarded in exceptional cases as a punishment and as a warning to others to keep them from following the defendant's example. You may award punitive damages if you determine by a preponderance of the evidence that one or more of NewEnergy's acts were done with either:

(1)     actual malice, which is nothing more or less than intentional wrongdoing -- an evil-minded act; or

(2)     a wanton and willful disregard for the rights of another -- in other words, a deliberate act with knowledge of a high decree of probability of harm to another and reckless indifference to the consequences of the act.

Powerweb has produced what it considers evidence of NewEnergy's evil-minded intent or wanton and willful disregard for Powerweb's rights to its trade secrets.

In considering an award for punitive damages, you must assess whether NewEnergy's conduct was, in fact, reprehensible. Some of the factors to consider include:

(1)     whether the harm caused was physical, as opposed to economic;

(2)     whether the conduct showed indifference to the health or safety of others;

(3)     whether the conduct involved repeated actions or was an isolated incident; and

(4)     whether the harm was the result of intentional malice, trickery, or deceit and as contrasted with harm resulting from and accident.

The absence of these factors, while not exclusive, would make the award of punitive damages suspect.

Again, it is for you to determine the credibility, relevance, and significance of each piece of evidence and whether it supports Powerweb's contention that punitive damages should be awarded.

If you determine that the facts justify an award of punitive damages, you should try to determine a fair, just, and reasonable amount for Powerweb under all the circumstances. Punitive damages are not intended to compensate Powerweb for injuries, but rather to punish NewEnergy and to prevent similar conduct in the future. Thus, if you award punitive damages, you should consider NewEnergy's net worth and the impact on NewEnergy of paying that award.

Punitive damages must bear a reasonable relationship to the plaintiff's actual injury. However, no single numerical equation has been made to easily link punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all of the relevant factors. They include:

(1)     the impact or severity of the defendant's conduct;

(2)     the amount of time that NewEnergy conducted itself in this manner;

(3)     the amount of compensatory damages;

(4)     the potential profits that NewEnergy may have made from this conduct;

(5)     the attitudes and actions of NewEnergy's management after the misconduct was discovered;

(6)     the effect of the damage award on NewEnergy's financial condition; and

(7)     any punishment that NewEnergy may receive from other sources.


Source:      State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003); Model Jury Instructions Employment  Litig. § 1.07[4]; Model Jury Instructions Bus. Torts Litig. § 8.07;

Greenberg v. Croydon Plastics Co., Inc., 378 F. Supp. 806, 807 (E.D. Pa. 1974); Reinforced Molding Corp. v. General Elec. Co., 592 F. Supp. 1083, 1089 (W.D. Pa. 1984).

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 8, 2004, I caused a true and correct copy of Plaintiff Constellation

NewEnergy, Inc.'s Proposed Jury Instructions to be served electronically upon:

        Kara Goodchild, Esquire
        SAUL EWING LLP
        Centre Square West
        1500 Market Street, 38th Floor
        Philadelphia, PA  19102-2186

The document is available for viewing and downloading from the ECF system.

                      <u>      s/DL422            </u>
                      David E. Landau