IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.   :       CIVIL ACTION
                             :
         v.             :
                             :
POWERWEB, INC., et al.       :       NO. 02-2733

MEMORANDUM
_____

Bartle, J.                                August    , 2004

      Now before the court is the motion of plaintiff Constellation NewEnergy, Inc. ("NewEnergy") to strike a revised expert report offered by defendant Powerweb, Inc. ("Powerweb") and to preclude Powerweb from presenting at trial evidence presented in that report.

I.

      On January 7, 2000, NewEnergy, a retail provider of electricity, and defendant and counterclaimant Powerweb entered into a contract entitled the "Exclusive Agreement for Bell Atlantic."  Under this contract, the two companies agreed to market to Bell Atlantic Powerweb's Omni-Link system.  This system purports to allow large companies to use their own emergency electrical generators at peak demand periods when the prices of electricity are highest, and even sell their excess capacity back to the electrical grid during those peak periods.  Pursuant to the agreement, Powerweb was to create a detailed project implementation plan for Omni-Link.  NewEnergy agreed to pay $100,000 to Powerweb in support of the joint marketing effort.

The parties also entered into a confidentiality agreement to assure that Powerweb's energy management technologies would not be disclosed to third parties.

In May, 2000, Bell Atlantic determined that it was not interested in using the Omni-Link system. NewEnergy brings this suit for return of the $100,000 that it advanced to the marketing effort. Powerweb has counterclaimed for more than $100 million. It alleges that NewEnergy breached the confidentiality agreement and caused Powerweb's proprietary energy management technology improperly to be shared with others.

In accordance with our second scheduling order, the fact discovery period closed on March 1, 2004. The parties were required to serve by April 1, 2004 reports of expert witnesses with respect to issues on which they have the burden of proof. Responsive expert reports were due by May 3, 2004. Summary judgment motions followed on June 1, 2004. The second scheduling order stated that the case would be placed in the trial pool on August 2, 2004 should the case not be disposed of by summary judgment. On July 8, 2004, the court, with limited exceptions, denied the motions for summary judgment. This lengthy and complex trial is now scheduled to begin in a few days, on August 13, 2004.

Powerweb served the report of its expert, Constantinos Pappas, CPA, on April 1, 2004. In the report, Mr. Pappas calculates four categories of damages that purportedly resulted from NewEnergy's breach of the confidentiality agreement: (1)

-2-

lost sales to NewEnergy's customers; (2) lost sales to Baltimore Gas & Electric ["BG&E"]; (3) lost sales to Verizon, Inc.; and (4) lost sales on "[c]ontracts Powerweb would have obtained but for NewEnergy's conduct." Id. at 1.  In calculating the damages for the last category, the report assumes "[t]hat one basic model would be representative of each of the 13 Utilities to which Powerweb submitted a bid." Id. at 5.  The report essentially multiplies the values from the "basic model" by thirteen to arrive at the damages suffered.  However, the report does not name the thirteen utilities, nor does it provide any other details about them.  This report is also noteworthy because it predicted the value of lost profits under the thirteen contracts based upon "penetration rates" that had been drawn from studies by BG&E and the Brattle Group.  Penetration rates represent the degree to which energy customers are expected to subscribe to various energy services.

On May 3, 2004, NewEnergy served three responsive reports from its experts.  NewEnergy's expert Dr. Rosenzweig leveled a number of criticisms against Mr. Pappas' April 1 report, two of which are relevant here.  Dr. Rosenzweig disputed the penetration rates used by Mr. Pappas to project lost revenues.  Dr. Rosenzweig noted that the Pappas report did not state "where and with whom [the thirteen] contracts would have been signed and there is therefore no economic way to assess whether Powerweb would have been successful in all 13 bidding processes." Powerweb Mem. at 5.

On May 27, 2004, Powerweb served a revised report from Mr. Pappas, which responded to Dr. Rosenzweig's criticisms. This second Pappas report, among other things, utilizes market penetration projections that were based on Powerweb's actual experience under current contracts, rather than the studies used in the first report. The second Pappas report also identifies the thirteen utilities for which Powerweb claims it lost prospective contract revenue, along with new detail about the number of each utility's customers that might have been a source of Powerweb's revenues were it not for NewEnergy's actions.

NewEnergy now contends that the second expert report prepared by Mr. Pappas should be stricken and that Powerweb should be precluded from presenting evidence at trial that relates to the "thirteen specific utilities" discussed in the second report. According to NewEnergy, it has been ambushed with only a short time remaining before trial, and it would be unfair to allow Powerweb to present the evidence contained in Mr. Pappas' revised report.

## II.

NewEnergy argues that Powerweb should be subject to Rule 37(a) sanctions for not making NewEnergy aware of any specific information related to the thirteen utilities for which Powerweb is claiming tortious interference with prospective contracts. NewEnergy first contends that Powerweb provided it with incomplete and inaccurate discovery responses, and that Powerweb failed to amend the responses appropriately. Rule 37(c)

-4-

of the Federal Rules of Civil Procedure provides in relevant part:

> A party that without substantial
> justification fails to disclose information
> required by Rule 26(a) or 26(e)(1), or to
> amend a prior response to discovery as
> required by Rule 26(e)(2), is not, unless
> such failure is harmless, permitted to use as
> evidence at trial, at a hearing, or on a
> motion any witness or information not so
> disclosed.

In its Third Set of Interrogatories, NewEnergy asked Powerweb to "state each separate category of damages you claim and the amount of damages you claim and the amount of damages for each category." Powerweb's response was as follows:

> Powerweb incorporates here all of the
> "General Objections" set forth above.
> Subject to and without waiving these
> objections, Powerweb responds as follows:  At
> trial, Powerweb will offer expert testimony
> as to the measure of damages to which
> Powerweb is entitled as a result of
> NewEnergy's outrageous, fraudulent, and
> deceptive conduct.  Powerweb's experts will
> be disclosed in this litigation in accordance
> with the Court's First Scheduling Order and
> Rule 26 of the Federal Rules of Civil
> Procedure.

As we have pointed out, Powerweb served the first expert report by Constantinos Pappas on April 1, 2004, consistent with the court's second scheduling order.  Mr. Pappas' initial report did not provide the identity of or any detail relating to the thirteen utilities.  However, Mr. Pappas' report clearly stated a response to NewEnergy's discovery request, because it stated four "categories of damages," and "amounts for each category."  Mr. Pappas' report did not list the names of the "thirteen

-5-

utilities," but NewEnergy's interrogatory did not ask for that specific information.  Accordingly, this argument cannot succeed.

NewEnergy next argues that Powerweb did not comply with the initial disclosure requirements of Rule 26(a)(1) because the latter did not provide any information related to the lost contracts with thirteen utilities.  Rule 26(a)(1) provides in relevant part:

> [A] party must, without awaiting a discovery request, provide to other parties:
>
>     (A)  the name, and if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information; [and]
>
>     (B)  a copy of, or a description by category and location of, all documents, data computations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

NewEnergy contends that Powerweb should have disclosed the names of and detail about the thirteen utilities in the initial disclosures.  However, Powerweb explains that it did not "identify the potential customers that it lost to [competitors] because it does not intend to call them to support its claim for the lost contracts."  Powerweb Opp'n at 7.

Powerweb submits that it complied with Rule 26(a)(1) because it "disclosed numerous individuals and documents that Powerweb then believed it might offer in support of its claims or

defenses, including Powerweb's President, Lothar E.S. Budike, Jr." Id. NewEnergy counters that Powerweb's 30(b)(6) corporate designee, Lothar E.S. Budike, Jr., failed to provide information about the thirteen prospective contracts in his deposition. Constellation sent a notice of deposition to Powerweb on October 9, 2003. The notice indicated NewEnergy's intention to examine Powerweb's designee on the following topics:

> 9. The "Energy Technology" information that "NewEnergy has improperly shared some or all of ... with numerous third parties that have used the information to compete with Powerweb and the Omni-Link System," as set forth and referred to in paragraph 140 of Powerweb's amended counterclaims.
>
> ...
>
> 12. "Energy Technology" information and other confidential and proprietary information about Powerweb's reserve capacity sales business and the Omni-Link System technology improperly used and disclosed to third parties without Powerweb's prior written approval as set forth and referred to in paragraphs 165, 187 and 198 of Powerweb's amended counterclaims.
>
> ...
>
> 16. The confidential proprietary information about the reserve capacity sales business and the Omni-Link System that "NewEnergy, CILCO and RETX purposefully and improperly obtained" as set forth and referred to in paragraph 208 of Powerweb's amended counterclaims.

Notably, Paragraph 187 of the amended counterclaim, referred to in the 30(b)(6) notice, states that "NewEnergy used the confidential proprietary information to develop a software system to compete with Omni-Link and to interfere with Powerweb's

existing and prospective economic relationships with commercial
energy consumers."  Paragraph 208 of the amended counterclaim,
also referred to in the notice, comes under a section entitled
"Tortious Interference with Prospective Contractual Relations."
It alleges:

> NewEnergy, CILCO and RETX purposefully and
> improperly obtained certain confidential
> proprietary information about the reserve
> capacity sales business and the Omni-Link
> System from Powerweb with the intention of
> interfering with Powerweb's prospective
> contractual relations with Bell Atlantic and
> other commercial energy consumers.  Their
> sole purpose in obtaining this information
> was to interfere with Powerweb's prospective
> contractual relations.

Based on the 30(b)(6) notice and its references to the amended
counterclaims, Powerweb was well aware that its 30(b)(6) designee
would be asked questions about Powerweb's claims for relief based
on its theory of "tortious interference with prospective
contractual relations."

The transcript of the October 22, 2003 deposition of
Mr. Budike reads as follows:

> Q.  Let's go back to the counterclaim ... to
> Page 32, Paragraph 207[1] ....  I have a count
> here for tortious interference with
> prospective contractual relations.  Other
> than Bell Atlantic, tell me who you ... were
> in contract negotiations with and lost the
> contract because of the actions of NewEnergy?
>
> A.  BG&E.

---

1.  Paragraph 207 of the amended counterclaim states:  "Powerweb
had several prospective contractual relations with Bell Atlantic
and other commercial energy consumers in which Powerweb could
provide them with the benefits of the Omni-Link System."

-8-

Q.  Okay.  Other than BG&E, is there anyone else?

A.  <u>Not that I can remember right off the top of my head</u>, but BG&E was the main one.  That was our biggest contract.

Q.  That was a contract.  I'm not talking about existing contracts, <u>I'm talking about prospective contracts.</u>

A.  Oh, prospective contracts.  Well, there were several prospective contracts, I believe, that were in the pipeline at the time....

Q.  Can you name me the names?

A.  <u>No, I can't name them off the top of my head.</u>  I'd have to look at the sales pipeline chart, look at the dates.

Dep. at 689-90 (emphasis added).  As the transcript reveals, Mr. Budike was repeatedly asked to provide the names of companies for which Powerweb purportedly lost prospective contracts as a result of NewEnergy's actions.  Mr. Budike was unable to list the names of the companies.  Our system of discovery requires more of a 30(b)(6) witness, especially when the witness represents a party seeking more than $100 million in damages.  Powerweb did not provide NewEnergy with the identity of the thirteen utilities until it delivered Mr. Pappas' second report on May 27, 2004.  This previously undisclosed information, therefore, was provided more than six months after the 30(b)(6) witness deposition, and only ten weeks before trial.  By that time, fact discovery had long ended.

In the face of the obvious deficiency on its part, Powerweb takes a different tack.  Powerweb now contends that the

damages on the "thirteen contracts" were "profits that Powerweb
would have earned on contracts that it lost to competitors," and
not claims for tortious interference with contracts.  Powerweb
Surreply at 2.  We do not understand the distinction Powerweb is
attempting to draw.  In any event, the 30(b)(6) deposition of Mr.
Budike, taken together with the first Pappas report, suggests
that the damages related to the thirteen utilities were
considered by Powerweb to be claims for "tortious interference
with prospective contractual relations."  In his deposition, Mr.
Budike describes "prospective contracts" as ones which "were in
the pipeline," and for which there had been "general discussions"
or "proposals on the table."  Dep. at 689-90.  The first Pappas
report recognizes that the "13 Utilities" were ones "to which
Powerweb submitted a bid."  Section IV.  NewEnergy operated
throughout discovery with the reasonable understanding that the
losses related to the "thirteen utilities" fell under the
umbrella of Powerweb's counterclaim for tortious interference
with prospective contractual relations.

Powerweb's 30(b)(6) witness, despite direct questioning
in the context of a deposition, failed to provide NewEnergy with
any information about the thirteen utilities for which Powerweb
was making a claim for tortious interference with prospective
contractual relations.  That the 30(b)(6) witness may have been
unprepared is no excuse.  As our Court of Appeals has explained:

> In reality if a Rule 30(b)(6) witness is
> unable to give useful information he is no
> more present for the deposition than would be

> a deponent who physically appears for the
> deposition but sleeps through it.  Indeed, we
> believe that the purpose behind Rule 30(b)(6)
> undoubtedly is frustrated in the situation in
> which a corporate party produces a witness
> who is unable and/or unwilling to provide the
> necessary factual information on the entity's
> behalf.  See generally Fed. R. Civ. P. 30
> advisory committee's notes (stating that the
> procedure outlined in subdivision (b)(6)
> should be viewed as "an added facility for
> discovery" and would "curb the 'bandying' by
> which officers or managing agents of a
> corporation are deposed in turn but each
> disclaims knowledge" of relevant facts) ....
> [W]e hold that when a witness is designated
> by a corporate party to speak on its behalf
> pursuant to Rule 30(b)(6), "producing an
> unprepared witness is tantamount to a failure
> to appear" that is sanctionable under Rule
> 37(d).  See [United States v. Taylor, 166
> F.R.D. 356, 363 (M.D.N.C. 1996)].

Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275,

304 (3d Cir. 2000).  We therefore find that Mr. Budike "failed to

appear" in a meaningful way for that portion of the Rule 30(b)(6)

deposition which discussed the interference with prospective

contractual relations with thirteen utilities.

We must now consider what Rule 37 sanctions, if any,

are appropriate.

Rule 37(d) provides as follows:

> If a party or an officer, director, or
> managing agent of a party or a person
> designated under Rule 30(b)(6) ... to testify
> on behalf of a party fails ... to appear
> before the officer who is to take the
> deposition, after being served with a proper
> notice ... the court in which the action is
> pending on motion may make such orders in
> regard to the failure as are just, and among
> others it may take any action authorized
> under subparagraphs (A), (B), and (C) of
> subdivision (b)(2) of this rule.

Subdivision (b)(2)(B) of Rule 37 provides that we may enter "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence."

The decision about whether to impose Rule 37 sanctions is within the sound discretion of our district court. Newman v. GHS Osteopathic, 60 F.3d 153, 156 (3d Cir. 1995). Nevertheless, we are mindful that excluding the counterclaimant's evidence related to the thirteen utilities would be an "extreme" sanction. Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977). Before this court precludes the presentation of evidence at trial, our Court of Appeals requires that the party to be sanctioned "(1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence." Stein v. Foamex Int'l, Inc., No. CIV.A. 00-2356, 2001 WL 936566, at *3 (E.D. Pa. Aug. 15, 2001). When deciding these issues, we will consider "(1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the Rule 37 sanctions would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness of the party failing to make a required disclosure." Id.

Exclusion of the evidence related to the thirteen utilities is appropriate. This jury trial is expected to last at least several weeks, and the factual and legal issues presented are complex. Scheduling is a major concern. The factual and expert witnesses will be traveling here from different parts of the country. Moreover, this is one of the oldest cases on the court's docket and cannot be easily rescheduled in the foreseeable future due to the press of other civil and criminal matters. Trial is now "imminent." It is to begin on August 13. NewEnergy has been unfairly surprised only ten weeks before trial and after the close of discovery by Powerweb's identification of specific utilities for which it claims it would have earned contracts. NewEnergy is prejudiced because it cannot perform another round of discovery and depositions before trial, as it would obviously need to do. There is nothing that Powerweb can do now to cure the prejudice before this case goes to trial. If we waived Rule 37 sanctions against Powerweb, principles of fairness would require us to continue the trial date to give NewEnergy time to conduct further discovery on the newly-identified utilities. Doing so "would disrupt the orderly and efficient trial of the case." Id. at *2.

       In sum, Powerweb shall be precluded from introducing any evidence at trial related to the prospective lost contracts with the thirteen utilities.[2]

---

2.  As a result of our analysis, NewEnergy's arguments related to penetration rates are now moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.    :        CIVIL ACTION
                                 :
         v.                      :
                                 :
POWERWEB, INC., et al.           :        NO. 02-2733

ORDER

AND NOW, this        day of August, 2004, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

(1)  the motion of Constellation NewEnergy, Inc. to
strike the second expert report of Constantinos Pappas and
preclude evidence is GRANTED in part and DENIED in part;

(2)  Powerweb, Inc. is precluded from introducing any
evidence concerning the "thirteen utilities" identified for the
first time in the second expert report of Constantinos Pappas;
and

(3)  the motion is otherwise DENIED.

BY THE COURT:

_____
                                                              J.