```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.    :    CIVIL ACTION
                                 :
        v.                       :
                                 :
POWERWEB, INC.                   :    NO. 02-2733
```

MEMORANDUM

Bartle, J.                                           August   , 2004

Constellation NewEnergy, Inc. ("NewEnergy") has filed a motion in limine to exclude Powerweb, Inc. ("Powerweb") from offering at trial the expert testimony and expert reports of Constantinos Pappas, Certified Public Accountant ("CPA").[1] NewEnergy argues that under the standards set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) ("Daubert") and Rule 702 of the Federal Rules of Evidence, Mr. Pappas is not qualified as an expert, his methodologies are not reliable, and he has failed to apply reliable principles and methods to the facts of the case.

Powerweb intends to call Mr. Pappas to testify about Powerweb's lost profits over a ten-year period as a result of NewEnergy's alleged breach of a Non-Disclosure Confidentiality Agreement with Powerweb. Powerweb also seeks to have Mr. Pappas testify as to Powerweb's lost profits as a result of NewEnergy's

---

1. The expert reports are hearsay, and we will sustain NewEnergy's objection to their admissibility. See Fed. R. Evid. 801.

alleged tortious interference with a three-year contract between Baltimore Gas & Electric Company ("BG&E") and Powerweb.

Rule 702 of the Federal Rules of Evidence governs the use of expert opinion testimony.  It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2000).  This rule codifies the admissibility standards set forth in Daubert, in which the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony.  509 U.S. at 589.  To this end, we are required to undertake a flexible inquiry to determine:  (1) whether the proposed witness is a qualified expert in the area in which he or she is being offered as an expert; (2) whether the proposed expert's testimony is reliable; and (3) whether the expert's testimony will assist the trier of fact.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994) (quoting Daubert, 509 U.S. at 595).  Courts often refer to these requirements as qualifications, reliability, and fit.

First, NewEnergy contends that Mr. Pappas is not qualified to testify on lost profits because he has no

-2-

specialized knowledge, skill, experience, training or education in the calculation of lost profits. The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." Paoli, 35 F.3d at 741 (citations omitted). While the witness does not have to be the best qualified, "the level of expertise may affect the reliability of the expert's opinion." Id.

Mr. Pappas is a certified public accountant who has worked as Powerweb's outside accountant for four years. In his deposition, he noted that when preparing Powerweb's lost profits analysis, he referred to Powerweb's income tax returns, financial statements, receivables, payables, depreciation, contracts, and employment agreements. See Pappas Dep. at 159, l.4-8. NewEnergy contends that Mr. Pappas is unqualified as an expert because this is the first time he has attempted to provide litigation support services and because he has never conducted a lost profits analysis. It attempts to discredit Mr. Pappas' qualifications on the ground that he did not review any of the pleadings, written discovery or deposition transcripts in this litigation.

We find that Mr. Pappas, while not specialized in accounting for the energy industry as such, "is sufficiently qualified to make the damages estimate contained in his report." Main Street Mortgage, Inc. v. Main Street Bancorp, Inc., 158 F. Supp. 2d 510, 513 (E.D. Pa. 2001). He is a CPA "who has conducted valuations of various businesses[, including that of Powerweb,] and previously performed analysis similar to that done

here."  Id.  We find that his background as a CPA and experience in analyzing financial data are sufficient to qualify him to testify on lost profits.  See Main Street Mortgage, Inc., 158 F. Supp. 2d at 513.

Next, NewEnergy contends that the testimony of Mr. Pappas is not reliable.  However, NewEnergy does not contest the underlying framework that he uses to compute Powerweb's lost profits, which incorporates setup fees, license fees, monthly access fees, equipment charges, and projected penetration rates for customers who would have used the Omni-Link load management and energy management functions.  His financial model also considered appropriate cost factors.  What is being disputed are some of the specific values that Mr. Pappas inserts in his framework to reach his projected profit loss.

NewEnergy's major objection concerns Mr. Pappas' use of the penetration rates set forth in an energy information management study ("EIM report") undertaken for Baltimore Gas & Electric Company ("BG&E"), a regulated utility in the Baltimore, Maryland area.  The penetration rate is the percentage of customers of an energy supplier that are expected to sign up for a program such as Powerweb's Omni-Link to save energy and profit from curtailment.  The EIM report predicts, with some caveats, that of current BG&E large or key customers, 35%, 42%, and 49% would use the Omni-Link system in 2000, 2001, and 2002, respectively.

We cannot say that Mr. Pappas' reliance on this report of penetration rates to calculate Powerweb's lost profits was not proper.  Significantly, Powerweb had a contract with BG&E to supply its Omni-Link system.  Mr. Pappas reviewed his entire report with the Brattle Group, a team of independent energy consultants, which endorsed his numbers.  In addition, Mr. Pappas relied on the knowledge of Lothar Budike, Jr., the president of Powerweb, who had knowledge of the customers of BG&E, including those for whom he had installed the Omni-Link system.

> Rule 703 of the Federal Rules of Evidence provides:
>
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703.  We find that the facts or data relied upon by Mr. Pappas meet this test.

We agree with NewEnergy that the EIM report may not be the best indicator of Omni-Link's possible nationwide penetration.  However, the test for determining the admissibility of Mr. Pappas' testimony is

> not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research.  Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology. The admissibility inquiry thus focuses on principles and methodology, not on the

> conclusions generated by the principles and
> methodology. The goal is reliability, not
> certainty. Once admissibility has been
> determined, then it is for the trier of fact
> to determine the credibility of the expert
> witness.

In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999) (internal citations and quotations omitted).

We have reviewed the remaining arguments of NewEnergy and find them to be unconvincing. None of them is sufficient to undercut the qualifications of Mr. Pappas to testify as an expert or to cause the court to hold that the Daubert standards of reliability or fit have not been satisfied.

Our role in a Daubert hearing is not to determine whether Mr. Pappas' lost profit analysis is correct or persuasive. NewEnergy clearly has cogent points for cross-examination which may affect the weight and credibility of his opinion. However, these are matters for the jury, and not this court.

Accordingly, we will deny the motion of NewEnergy to exclude the testimony of Mr. Pappas without prejudice.[2]

---

2. We are deciding this motion before all the liability testimony has been received and before Mr. Pappas testifies before the jury. Thus, it is possible that circumstances may change to affect our ruling.

```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSTELLATION NEWENERGY, INC.    :      CIVIL ACTION
                                 :
          v.                     :
                                 :
POWERWEB, INC.                   :      NO. 02-2733
```

ORDER

AND NOW, this      day of August, 2004, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion in limine of NewEnergy, Inc. ("NewEnergy") to exclude Powerweb, Inc. ("Powerweb") from offering at trial expert reports of Constantinos Pappas, CPA is GRANTED on the ground that these reports are hearsay; and

(2)  the motion in limine of NewEnergy to exclude Powerweb from offering at trial the expert testimony of Constantinos Pappas, CPA is DENIED without prejudice.

                              BY THE COURT:


                              _____
                                                          J.